UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA           :

    - v. -                                                     :

NEIL COLE,                                         :   19 Cr. 869 (ER)

    Defendant.                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# THE GOVERNMENT'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO QUASH THE DEFENDANT'S RULE 17 SUBPOENA

AUDREY STRAUSS
United States Attorney
Southern District of New York
One St. Andrews Plaza
New York, New York 10007

Edward Imperatore
Scott Hartman
Jared Lenow
Assistant United States Attorneys
- Of Counsel -

**Table of Contents**

PRELIINARY STATEMENT ................................................................................................... 1

DISCUSSION ........................................................................................................................... 1

   I. The Subpoena Does Not Comply With Rule 17 ...................................................... 1

      A. The *Nixon* Standard Applies to the Subpoena ................................................... 3

      B. The Subpoena Fails the *Nixon* Requirements .................................................... 4

         1. Cole's Request for Documents Relating to Horowitz's Separation from BBM…………5

         2. Cole's Request for Settlements of Allegations Against Horowitz……………………  .7

   II. The Government Has Standing, and the Subpoena Is Reviewable in Any Event .................. 8

CONCLUSION........................................................................................................................ 11

## PRELIINARY STATEMENT

The Government respectfully submits this reply in further support of its motion to quash a Rule 17(c) subpoena that counsel for defendant Neil Cole served on Baked by Melissa ("BBM"), where Seth Horowitz, a Government cooperating witness, was employed (the "Subpoena").

The Subpoena fails to meet each of Rule 17's requirements of relevancy, admissibility, and specificity. Cole's opposition brief underscores that the Subpoena is an improper "fishing expedition" intended to dig up inadmissible impeachment material on Horowitz. In fact, as discussed below, this Court recently rejected a nearly identical defense Rule 17 subpoena issued to the prior employer of a cooperating witness in a securities fraud case. The Government, moreover, has standing on multiple grounds to move to quash, and this Court should consider the merits of this motion irrespective of the Government's standing. For the reasons discussed herein and in the Government's opening brief (Docket 56), the Subpoena should be quashed.

## DISCUSSION

### I. The Subpoena Does Not Comply With Rule 17

As an initial matter, this Court recently rejected a defense Rule 17 subpoena as improper in the very same circumstances presented here. In *United States v. Blakstad*, the defendant was charged with securities fraud offenses for obtaining and trading on inside information about Illumina, a public company, that the defendant had obtained from Martha Bustos, an accountant employed by Illumina. *United States v. Blakstad*, 19 Cr. 486 (ER), 2020 WL 5992347, at *1, 11 (S.D.N.Y. Oct. 9, 2020). Bustos pled guilty to committing insider trading offenses pursuant to a cooperation agreement. The defendant sought to issue a Rule 17 subpoena to Illumina for, among other things, Bustos's personnel file, including "any documents related to her termination from employment at Illumina, the reasons for such termination, and any memorialization of statements she presented in regards to her termination." *Id.* at *11. Like Cole, the defendant argued that the subpoenaed information was relevant and admissible because, among other things, it tended to show "statements she gave to her

employers regarding her conduct." *Id.*

In a written Opinion & Order, this Court rejected the subpoena as improper under Rule 17 because it failed to satisfy the requirements of relevancy, admissibility, and specificity set forth in *United States v. Nixon*, 418 U.S. 683, 699-700 (1974). *Blakstad*, 2020 WL 5992347, at *11-12. This Court determined that "[t]he breadth of [the defendant's] request suggests that he is in fact fishing for impeachment evidence for use against Bustos, should she testify." *Id.* at *12. The Court also observed that "rather than asking for specific parts of Bustos' personnel file and proving to the Court how they would be relevant and admissible, he seeks the entirety of her file, *including all documents related to her termination from Illumina*." *Id.* (emphasis added). The defendant in *Blakstad* likewise failed to show how the requested documents "would be admissible, rather than excluded by the hearsay rule or some other bar." *Id.*; *see United States v. Jasper*, 00 Cr. 825 (PKL), 2003 WL 1107526, at *2 (S.D.N.Y. Mar. 13, 2003) (quashing defendant's subpoena for personnel files of Government witnesses as improper "fishing expedition").

*Blakstad* is dispositive here, and the Subpoena should be quashed. Like the subpoena to Illumina, Cole's Subpoena seeks three broad categories of documents from BBM without limitation to time frame: (1) "*All* personnel records for [] Horowitz, *including but not limited to* human resources files, employment applications, employment contracts, records of disciplinary actions and separation agreements"; (2) "*All* documents relating to any complaint or allegation made by any current or former employee or consultant of Baked By Melissa against or concerning [] Horowitz, *including but not limited to* any actual or threatened litigation or settlements"; and (3) "*All* documents relating to the resignation or termination of [] Horowitz from Baked By Melissa" (Mot. (Dkt. 56) Ex. A) (emphasis added). In fact, Cole's Subpoena goes beyond the subpoena requested in *Blakstad* because it seeks not only *all* of Horowitz's personnel records, but also *all* documents related to

2

allegations made against him of any type and *all* documents related to his separation from BBM. (*Id.*) As Cole appears to acknowledge, BBM has nothing to do with the Iconix scheme charged in the Indictment. And like the *Blakstad* defendant, Cole seeks to justify the Subpoena based upon his speculation that the requested records, which he fails to identify or specify, may bear on Horowitz's credibility because they likely would reflect what Horowitz told or did not tell BBM about the Iconix fraud. (Cole Br. 13-14). As discussed below, this is improper.

### A. The *Nixon* Standard Applies to the Subpoena

Although Cole argues briefly that *Nixon* may not apply to subpoenas returnable at the time of trial or issued to third parties (Cole Br. 12-13), these arguments can be quickly rejected. The only judicial decision that Cole cites whose holding comports with either position is *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008) (Scheindlin, *J.*), which held that *Nixon* did not apply to defense subpoenas to third-parties.[1] *Tucker*, however, is an outlier. *United States v. Barnes*, S9 04 Cr .186 (SCR), 2008 WL 9359654, at *3 (S.D.N.Y. April 2, 2008) ("Though the *Tucker* Court found this relaxed standard appropriate, it is not the prevailing law. Indeed, all district courts within the Second Circuit, aside from the *Tucker* court, have applied the *Nixon* analysis to third-party subpoenas issued by the defense."). Courts in this Circuit have overwhelmingly applied *Nixon* to Rule 17(c) subpoenas regardless of the recipient. *See, e.g., United States v. Ulbricht*, 858 F.3d 71, 109-10 (2017); *United States v. Conway*, 615 F. App'x 46, 48 (2015); *United States v. Pena*, 15 Cr. 551

---

[1] Cole's citations to Government filings are not persuasive authority for the proposition that *Nixon* does not apply. In each case, the materials sought were independently relevant and admissible and thus met the *Nixon* standard. *See, e.g.*, *United States v. Block*, 16 Cr. 595 (JPO) (S.D.N.Y. June 13, 2017), Dkt. 88 (subpoena returnable only "if, as, and when" defendant testified, and subpoena sought material that was independently relevant and admissible); *United States v. Tuzman*, 15 Cr. 536 (PGG) (S.D.N.Y. Aug. 23, 2017), Dkt. 375 (explaining that subpoenas did not seek impeachment material, but instead records that were relevant and admissible to show defendant's knowledge of rules and regulations).

3

(AJN), 2016 WL 8735699, at *1 (S.D.N.Y. Feb. 12, 2016).

Cole's argument that the *Nixon* standard does not apply to subpoenas returnable at the time of trial has likewise been roundly rejected. *See, e.g.*, *United States v. Percoco*, 16 Cr. 776 (VEC), 2018 WL 9539131, at *1 (S.D.N.Y. June 14, 2018)) ("The Court is not persuaded that trial subpoenas for impeachment material are subject to less demanding scrutiny or a lower standard than pre-trial subpoenas for other evidence."). Indeed, the case law upon which Cole relies establishes that a subpoena returnable on the trial date must comply with *Nixon*. (Cole Br. 11 (citing *United States v. Avenatti*, 19 Cr. 373 (PGG), 2020 WL 508682 (S.D.N.Y. Jan. 31, 2020)). Moreover, this Court in *Blakstad* drew neither of the distinctions urged by Cole. Instead, this Court held that the subpoena failed the *Nixon* standard without regard to the return date. *Blakstad*, 2020 WL 5992347, at *11-12.

### B. The Subpoena Fails the *Nixon* Requirements

Assessed in light of *Nixon*, Cole's subpoena fails to satisfy the requirements of (1) relevancy, (2) specificity, and (3) admissibility. *Blakstad*, 2020 WL 5992347, at *11-12. The overbreadth of the Subpoena requires that it be quashed. As this Court reasoned in *Blakstad*, "[t]he breadth of [Cole's] request suggests that he is in fact fishing for impeachment evidence for use against [Horowitz], should []he testify." *Id.* at *12. If anything, the subpoena that this Court rejected in *Blakstad* was less of a "fishing expedition" than Cole's Subpoena. The subpoena in *Blakstad* sought Bustos's personnel file from the same company at which she misappropriated and disseminated inside information, as well as emails Bustos exchanged around the relevant earnings announcements. Here, by contrast, Cole seeks Horowitz's personnel file at BBM, a company at which Horowitz worked only after the Iconix scheme ended and that has no conceivable relationship to this case.

Cole's opposition brief likewise underscores that the Subpoena is based upon pure speculation. Cole does not even attempt to justify the entire swath of material sought by the

Subpoena.  For example, Cole does not articulate any basis to obtain Horowitz's entire "personnel records," such as "human resources files, employment applications, [or] employment contracts." (Mot. Ex. A).   Instead, Cole attempts to justify his speculation that BBM likely possesses two types of records (which he fails to identify or specify) that comprise only a small subset of the Subpoena: (1) documents relating to Horowitz's separation, and (2) settlements of allegations of "misconduct" against Horowitz.  As discussed below, his requests fail each of *Nixon*'s requirements.

### 1. Cole's Request for Documents Relating to Horowitz's Separation from BBM

First, Cole speculates that because Horowitz worked at BBM until shortly after his guilty plea, Horowitz must have lied to or mislead BBM about his role in the Iconix scheme, and BBM might have records to that effect.  But this proffered justification fails for two independent reasons.  First, "the proponent of a Rule 17(c) subpoena may have reason to believe certain materials exist, but the proponent must still specifically identify the materials the proponent is seeking to bear out his or her suspicions under Rule 17(c)."  *United States v. Bergstein*, 16 Cr. 746 (PKC), 2017 WL 6887596, at *5 (S.D.N.Y. Dec. 28, 2017).  Here, because Cole fails to identify any such records at BBM, his request fails *Nixon*'s requirements.  (Br. 14-15).  *United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) (affirming district court order quashing defense Rule 17 subpoenas as "a fishing expedition for documents the government did not obtain and that [defendant] admittedly cannot identify") (internal quotation marks omitted); *Blakstad*, 2020 WL 5992347, at *12.  Second, this Court in *Blakstad* rejected the very justification that Cole advances here to obtain those records: to show what Horowitz purportedly said or did not say to BBM about his participation in the Iconix fraud.  *Blakstad*, 2020 WL 5992347, at *11 (rejecting justification that defendant was entitled to subpoenaed information about Bustos "because it tends to show . . . statements she gave to her employers regarding her conduct").  Cole's request is thus an improper fishing expedition.

5

Even if Cole's request for such records were sufficiently specific under *Nixon* (and it is not), he fails to show how such records would be admissible. Putting aside Cole's speculation about the contents of Horowitz's personnel file, any document reflecting what, if anything, Horowitz told BBM would be admissible at trial under Rules 608(b) and 613 only if the document is inconsistent with Horowitz's trial testimony about what he told BBM (to the extent such a line of questioning is even permissible), and there is no reason to assume prior to trial that there will be any such inconsistency. *See, e.g.*, *United States v. Carollo*, 10 Cr. 654 (HB), 2012 WL 1195194, *2 (S.D.N.Y April 12, 2012). Indeed, it is for this reason that some courts, including this Court, have concluded that material sought only for impeachment may not be obtained pursuant to Rule 17 subpoena. *See Blakstad*, 2020 WL 5992347, at *11 ("Courts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary use is limited to impeachment." (quoting *United States v. Cherry*, 86 F. Supp. 547 553 (S.D.N.Y. 1995)).

Even those courts that allow for the production of impeachment material often hold that such material may not be produced to a party until *after the witness has testified* and, in some cases, maintain the responsive documents *in camera* until their relevance and admissibility can be determined in light of the witness's testimony. *United States v. Skelos*, 15 Cr. 317 (KMW), 2018 WL 2254538, at *2 (S.D.N.Y. May 17, 2018) (noting that "many courts have held that production of impeaching evidence pursuant to Rule 17(c) is not required until after the witness testifies," and holding that third parties in receipt of Rule 17(c) subpoenas seeking impeachment materials must produce any responsive documents to the court, and that the court would then "release any relevant and admissible documents to Defendants and the Government after [the witness's] testimony"); *United States v. Seabrook*, 16 Cr. 467 (ALC), 2017 WL 4838311, at *2 (S.D.N.Y. Oct. 23, 2017) ("[D]espite the fact that it is a virtual certainty that [the witness] will testify in this matter, the

6

weight of the authority in this Circuit favors production when the witness testifies."); *United States v. Giampa*, 92 Cr. 437 (PKL), 1992 WL 296440, at *4 (S.D.N.Y. Oct. 7, 1992). Cole's request for documents relating to Horowitz's separation from BBM therefore fails the *Nixon* standard.[2]

### 2. Cole's Request for Settlements of Allegations Against Horowitz

In his opposition brief, Cole does not seek to justify his sweeping request for "*all documents relating to any complaint or allegation* made by any current or former employee or consultant of" BBM against Horowitz. (Mot. Ex. A) (emphasis added). Instead, Cole argues that he is entitled to records that would purportedly show whether Horowitz engaged in some unidentified "misconduct" at BBM. (Cole Br. 3). Cole asserts that he "learned from interviews of potential witnesses that Mr. Horowitz had been accused of serious workplace misconduct at BBM and that the allegations against Mr. Horowitz led to one or more settlements that includes non-disclosure provisions." (Cole Br. 3). Cole's vague allegations are a speculative fishing expedition. He fails to specify the alleged "misconduct," much less identify any such documents at BBM. His request fails for this reason alone. *Bergstein*, 788 F. App'x at 746 (2d Cir. 2019); *Blakstad*, 2020 WL 5992347, at *11-12; *see also Nixon*, 418 U.S. at 698-99 (Rule 17(c) does not "provide a means of discovery for criminal cases"). Cole indeed acknowledges that BBM objects to producing such records. (Cole Br. 3-4).

Curiously, Cole relies upon case law that squarely undermines his position. In *United States v. Avenatti*, 19 Cr. 373 (PGG), 2020 WL 508682 (S.D.N.Y. Jan. 31, 2020), the defense subpoenaed all communications sent by two witnesses over a nine-month period that referenced the defendant.

---

[2] The Government intends to produce documents relating to Horowitz's separation from BBM when it makes its Jencks Act and *Giglio* production. That the Government is prepared to produce documents the defendant seeks through an improper subpoena supplies an additional reason to quash the Subpoena. *See Blakstad*, 2020 WL 5992347, at *12 (observing that the defendant had "not shown that he is unable to get this same information through the normal channels of Rule 16 discovery").

Judge Gardephe quashed the defense subpoena and observed that the defendant "can only speculate about what might be in communications between [the witnesses] that took place during the nine months after his arrest" and that the defendant had failed to meet his burden of demonstrating that the communications he sought "contain either admissible evidence or impeachment material." *Id.* at 6. The same is true here. Cole's fishing expedition should be rejected.

Even if his request were sufficiently specific under *Nixon* (and it is not), Cole cannot establish that the documents about which he speculates are relevant and admissible for multiple reasons. First, any alleged "misconduct" at BBM would have taken place after Horowitz left Iconix and the charged conspiracy ended and, accordingly, would have nothing to do with this case, as Cole appears to acknowledge. (Cole Br. 14). Second, Cole has articulated no basis to conclude that such alleged "misconduct" bears upon Horowitz's credibility as a witness, and he acknowledges that it may not. (Cole Br. 14). And third, any BBM-related allegation against Horowitz or resulting settlement would be inadmissible on multiple grounds, including because it would be (1) irrelevant, (2) hearsay, and (3) unfairly prejudicial under Rule 403. *See Skelos*, 2018 WL 2254538, at *2 ("Rule 17(c) subpoenas cannot be used to obtain documents that would be excluded on hearsay grounds or would otherwise be inadmissible as evidence at trial." (internal quotation marks omitted)). Thus, Cole's request for documents relating to employment-related allegations against Horowitz is improper.

## II. The Government Has Standing, and the Subpoena Is Reviewable in Any Event

In his opposition brief, Cole argues that the Government lacks standing to quash the Subpoena because, he claims, the Subpoena was served on a third party and does not bear upon the Government's legitimate interests. Cole is wrong. The Government has standing on multiple grounds, and in any event, the Court has an independent basis to review the Subpoena, which Cole issued under the aegis of the Court.

8

The Government has standing to move to quash. "[C]ourts in this Circuit have generally agreed that a party may also demonstrate standing to challenge a Rule 17(c) subpoena directed to a non-party based on the movant's legitimate interests." *United States v. Bergstein*, 16 Cr. 746 (PKC), 2017 WL 6887596, at *2 (S.D.N.Y. Dec. 28, 2017), *aff'd*, 788 F. App'x 742 (2d Cir. 2019); *see, e.g.*, *United States v. Jackson*, No. 02 CR.756 (LMM), 2006 WL 1993251, at *1 (S.D.N.Y. July 14, 2006) (finding the Government had standing to move to quash subpoena served on BOP because its "legitimate interests are affected"). *See United States v. Nektalov*, S2 03 Cr. 828 (PKL), 2004 WL 1574721, at *1 (S.D.N.Y. July 14, 2004) (a "party whose legitimate interests are affected by a subpoena may move to quash that subpoena"). "Interests considered 'legitimate' in other cases in this District include preventing undue lengthening of the trial, preventing undue harassment of witnesses, and protecting a privilege or proprietary interest in the material." *Id.* at 3 (citing *United States v. Giampa*, 1992 WL 296440, at *1-*2 (S.D.N.Y. Oct. 7, 1992) (internal citations omitted). In addition, "the government's legitimate interests are affected . . . in that the subpoenas do require the application of the *Nixon* standards." *Jackson*, 2006 WL 1993251, at *2 (quashing subpoena to MCC).

Here, the Subpoena implicates the Government's legitimate interests for at least three independent reasons. First, contrary to Cole's argument, the Subpoena risks unduly lengthening the trial. *See Netkalov*, 2004 WL 157421, at *1. The expansive requests of the Subpoena appear to be in service of a mini-trial on Horowitz's BBM employment and irrelevant purported employment-related "misconduct." Second, for substantially the same reasons, the Government has a legitimate interest in preventing "undue harassment of its witness" and "prejudicial over-emphasis on [the witness's] credibility," *Giampa*, 1992 WL 296440, at *1-2; as Cole seeks to put Horowitz on trial over his speculation about post-conspiracy employment and conduct that have nothing to do with

9

this case. *See Jackson*, 2006 WL 1993251, at *2 (finding standing to move to quash subpoena to MCC); *Bergstein*, 2017 WL 6887596, at *3 (noting that "[p]reventing the undue harassment of a cooperating witness is a legitimate governmental interest giving rise to standing in this context" and that "[t]he government has an interest in controlling the timing of disclosures" related to cooperating witnesses). Third, "the government's legitimate interests are affected . . . in that the [Subpoena] do[es] require the application of the *Nixon* standards." *Jackson*, 2006 WL 1993251, at *2. Cole, moreover, acknowledges that BBM objects to the Subpoena insofar as it seeks any employment allegation or settlement. (Cole Br. 3-4).

Even if the Government lacks standing (and it does not), Cole overlooks that "it is the Court's responsibility to ensure that the subpoena is for a proper purpose and complies with the requirements of Rule 17(c)." *United States v. Weissman*, 01 Cr. 529 (BSJ), 2002 WL 31875410, at *1 n.1. Thus, "[e]ven if the Court had doubts about the government's standing, the court recognizes a duty to ensure the propriety of Rule 17(c) subpoenas, like other courts in this Circuit." *Bergstein*, 2017 WL 6887596, at *3. *United States v. Ray*, 2020 WL 6939677 (S.D.N.Y. Nov. 25, 2020), upon which Cole relies, is not to the contrary. There Judge Liman recognized, citing *Weissman*, the court's responsibility to ensure that the subpoena complies with Rule 17(c). *Id.* at *7. But in *Ray*, the defense had sought the court's prior approval to issue the subpoena and the court had found "good cause" for its issuance. *Id.* at *1, 7. By contrast, it appears that Cole issued the Subpoena without this Court's review and approval.[3]

---

[3] Cole also argues that the Government's motion was not "prompt" within the meaning of Rule 17(c) because, he asserts, it did not move to quash the Subpoena immediately upon learning of it. (Br. 4). Cole's argument, which is unsupported by any case law, is meritless. The Subpoena is not returnable until the trial date, as Cole acknowledges. Yet the Covid-19 pandemic has caused the trial date to be adjourned repeatedly *sine die* over the course of several months. In these circumstances,

## **CONCLUSION**

For the reasons set forth above and in the Government's opening brief (Docket 56), the Subpoena should be quashed.

                                                 Respectfully submitted**,**

                                                 AUDREY STRAUSS
                                               United States Attorney
                                               Southern District of New York

                              By:   /s/
Dated: New York, New York              Edward Imperatore/Scott Hartman/Jared Lenow
        January 27, 2021                 Assistant United States Attorneys

---

there was no reason for the Government to move to quash the Subpoena—and certainly no prejudice to Cole—when no firm trial date was set and the Subpoena's return date did not yet exist. Cole's argument also overlooks that Cole apparently sought to secure BBM's compliance with the Subpoena well before trial, notwithstanding that the Subpoena was returnable at the time of trial. (Br. 3-4).

11