UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

– against –

NEIL COLE,

                Defendant.

**OPINION AND ORDER**

19 Cr. 869 (ER)

Ramos, D.J.:

    Pending before the Court is the Government's motion to quash Neil Cole's Rule 17(c) trial subpoena for the production of documents relating to his alleged co-conspirator's employment history. Doc. 56. For the following reasons, the motion is GRANTED.

I.    BACKGROUND

    A. The Indictment

    A Southern District grand jury returned an indictment against Cole in December 2019. Doc. 1. The indictment alleges one count of conspiracy to commit securities fraud, to make false filings with the Securities and Exchange Commission ("SEC"), and to improperly influence the conduct of audits; one count of securities fraud; six counts of making false SEC filings; one count of improperly influencing the conduct of audits; and one count of conspiracy to destroy, alter, and falsify records in a federal investigation. *Id.*

    Cole is a former chief executive officer of Iconix Brand Group, Inc. ("Iconix"), a publicly traded brand management company. *Id.* ¶¶ 1–2. Seth Horowitz is the former chief operating officer of Iconix. *Id.* ¶ 3. According to the indictment, Cole and Horowitz engaged in a scheme to inflate Iconix's reported revenue and earnings per share by orchestrating a series of transactions in which Cole and Horowitz induced a Hong Kong-based international apparel licensing company (the "Company") to pay artificially

inflated buy-in purchase prices for interests in business ventures. *Id.* ¶ 13. The indictment further alleges that Iconix thereafter reimbursed the Company for those overpayments. *Id.* ¶ 14.

Pursuant to this scheme, Cole allegedly arranged for Iconix to enter into three joint ventures with the Company. *Id.* The indictment also alleges that Cole and Horowitz hid from Iconix's lawyers and outside auditors that Cole and Horowitz had reached an understanding with the Company to artificially increase the consideration it paid Iconix in exchange for their agreement to reimburse it for the overpayment that Iconix received. *Id.* ¶¶ 15, 26, 29, 34.

### B. The Subpoena

Horowitz resigned from Iconix in April 2015 and began working at Baked by Melissa, a New York-based bakery, as the company's chief executive officer in September 2016. On February 25, 2020, Cole served a Rule 17(c) subpoena signed by the Clerk of Court on Baked by Melissa, requesting that it produce the following documents:

> 1. All personnel records for Seth Adam Horowitz, including but not limited to human resources files, employment applications, employment contracts, records of disciplinary actions and separation agreements.
>
> 2. All documents relating to any complaint or allegation made by any current or former employee or consultant of Baked By Melissa against or concerning Seth Adam Horowitz, including but not limited to any actual or threatened litigation or settlements.
>
> 3. All documents relating to the resignation or termination of Seth Adam Horowitz from Baked By Melissa.

Doc. 56-1 at 4. The return date listed on the subpoena is May 11, 2020, the original trial date in this case. *See id.* at 1. Due to the Covid-19 pandemic, the trial date—and with it the subpoena return date—has since been adjourned, and a new date is yet to be finalized.

### C. Relevant Procedural History

On December 5, 2019, in a separate action in this District, Horowitz pled guilty to securities fraud and other offenses in connection with the scheme alleged in the indictment and is cooperating with the Government—including by potentially serving as a witness in the instant case.  Doc. 56 at 3; *United States v. Horowitz*, No. 19 Cr. 861 (S.D.N.Y.) (JFK).

On December 29, 2020, the Government filed the instant motion to quash the subpoena served on Baked by Melissa.  Doc. 56.  The parties appeared for a conference regarding that motion on February 2, 2021, after which the motion was taken under advisement.  Doc. 65.

## II.  DISCUSSION

### A. Standing

The parties dispute whether the Government has standing to move to quash a subpoena issued to a third party.  Under "the majority rule in this District," the Government has standing to quash a subpoena of a non-party "only if the alleged victim has asked it to, or if the Government can assert legitimate interests of its own in quashing the subpoenas."  *United States v. Ray*, No. 20 Cr. 110 (LJL), 2020 WL 6939677, at *7 (S.D.N.Y. Nov. 25, 2020); *see also United States v. Bergstein*, No. 16 Cr. 746 (PKC), 2017 WL 6887596, at *2 (S.D.N.Y. Dec. 28, 2017).  Baked by Melissa has not asked for the Government's motion, so only the second prong applies.  "Preventing the undue harassment of a cooperating witness is a legitimate governmental interest giving rise to standing in this context," as is the Government's "interest in controlling the timing of disclosures as to a cooperating witness," or preventing any prejudicial overemphasis on the witness's credibility or any undue lengthening of trial.  *See Bergstein*, 2017 WL 6887596, at *2–3; *see also United States v. Giampa*, No. 92 Cr. 437 (PKL), 1992 WL 296440, at *1 (S.D.N.Y. Oct. 7, 1992) (holding that Government had standing to move to quash Rule 17(c) subpoenas to non-party witness based on its "interest in preventing any

undue lengthening of the trial, any undue harassment of [the witness] and his family, and any prejudicial over-emphasis on [the witness's] credibility").

The parties contest whether the Government has a legitimate interest in quashing the subpoena. The Government argues that it has standing to bring its motion because Horowitz is its witness, and it notes that the requests are overly expansive and likely to result in a mini-trial regarding his employment with Baked by Melissa. Cole responds that Horowitz has not been publicly identified as a witness and is not particularly vulnerable, so the Government lacks the requisite interest to move here.

The Court concludes that it may review the propriety of the subpoena. The Government has represented not simply that Horowitz is a potential witness but rather that, as a cooperating witness, he will testify at trial. *Cf. United States v. Nachamie*, 91 F. Supp. 2d 552, 560 (S.D.N.Y. 2000). It therefore has a legitimate interest in controlling the timing of disclosures as to its cooperating witness, and preventing any prejudicial overemphasis on Horowitz's credibility and the undue lengthening of the trial. *See Ray*, 2020 WL 6939677, at *7; *Bergstein*, 2017 WL 6887596, at *2–3; *Giampa*, 1992 WL 296440, at *1. Accordingly, the Government has standing to move to quash the subpoena.[1]

### B. Applicable Legal Standard for Rule 17(c) Trial Subpoenas

Rule 17 of the Federal Rules of Criminal Procedure allows a party to subpoena documents for use as evidence at trial. Fed. R. Crim. P. 17. Rule 17(c) "allows parties to subpoena any books, papers, documents, data, or other objects the subpoena designates." *United States v. Seabrook*, No. 16 Cr. 467 (ALC), 2017 WL 4838311, at *1 (S.D.N.Y.

---

[1] The Court notes that it could still review the propriety of the subpoena regardless of whether the Government had standing, as other courts in this Circuit have "consider[ed] the merits of a motion to quash irrespective of any determination on standing because of an independent duty of the court to ensure the propriety of Rule 17(c) subpoenas." *Bergstein*, 2017 WL 6887596, at *3; *see also Ray*, 2020 WL 6939677, at *7.

Oct. 23, 2017). "Notably, [Rule 17] is not a method of discovery that supplements Rule 16." *United States v. Blakstad*, No. 19 Cr. 486 (ER), 2020 WL 5992347, at *11 (S.D.N.Y. Oct. 9, 2020) (citing *United States v. Nixon*, 418 U.S. 683, 698 (1974)).

"On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17 17(c)(2). "When a party moves to quash the subpoena[] as unduly 'unreasonable or oppressive,'" the proponent of the subpoena must make a preponderance showing that the materials requested satisfy the standard under Rule 17. *See Seabrook*, 2017 WL 4838311, at *1 (quoting Fed. R. Crim. P. 17(c)(2)).

The parties disagree over the correct legal standard for reviewing a Rule 17(c) trial subpoena.  Generally, the party requesting a subpoena has the burden of showing

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Nixon*, 418 U.S. at 699–700 (footnote omitted).  More succinctly, "the party seeking issuance of the subpoena 'must clear three hurdles:  (1) relevancy; (2) admissibility; (3) specificity.'" *Blakstad*, 2020 WL 5992347, at *11 (quoting *Nixon*, 418 U.S. at 700).  The Government contends that the same standard applies in the instant circumstances.

Cole argues that this standard does not apply to subpoenas issued to third parties that are returnable at trial; instead, Cole asserts that the Court adopt the standard set forth in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008).  In *Tucker*, the district court applied a less stringent standard than the *Nixon* standard when reviewing pretrial subpoenas issued to third parties.  *See id.* at 66.  Under that standard, the proponent need only show that the request is "(1) reasonable, construed as 'material to the defense,' and

(2) not unduly oppressive for the producing party to respond." *Id.*  In his supplemental letter, Cole notes that, recently, another court in this District endorsed this same test when reviewing a subpoena issued to a third party, emphasizing that "no binding authority requires" applying the *Nixon* factors in such circumstances.  *United States v. Weigand*, 20 Cr. 188 (JSR), Doc. 177 at 5 (S.D.N.Y. Feb. 20, 2021).

However, the Second Circuit and district courts in this Circuit have almost unanimously "applied the *Nixon* standard to Rule 17(c) subpoenas requested by a defendant," *United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019) (summary order), including to subpoenas served on third parties, *see United States v. Skelos*, No. 15 Cr. 317 (KMW), 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018).  Further, several other courts in this District have applied the *Nixon* standard in reviewing trial subpoenas. *See United States v. Avenatti*, No. 19 Cr. 373 (PGG), 2020 WL 508682, at *3 (S.D.N.Y. Jan. 31, 2020); *United States v. Percoco*, No. 16 Cr. 776 (VEC), 2018 WL 9539131, at *2 (S.D.N.Y. June 14, 2018).  Consistent with the overwhelming majority of courts in this District, along with the Second Circuit's statement in *Bergstein*, the Court applies the *Nixon* standard to review the instant trial subpoena served upon a third party.

### C. Analysis

#### 1. Subpoenaing Documents for Impeachment

Before analyzing the subpoena under *Nixon*, the parties raise a preliminary question of whether a Rule 17(c) subpoena may ever be used to obtain materials that can be used only for impeachment.  The Government argues that a Rule 17(c) subpoena cannot be used in this manner, emphasizing that extrinsic evidence of prior conduct for the purpose of impeachment is not admissible under Federal Rule of Evidence 608 and, therefore, would fail the admissibility prong under *Nixon*.  The Government points to language in *Nixon* to support its argument, noting the Supreme Court there stated that "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production."  418 U.S. at 701.

However, in its argument, the Government omits a critical portion of the *Nixon* Court's analysis that is relevant here: "[g]enerally, the need for evidence to impeach witnesses is insufficient to require its production *in advance of trial*." *Id.* (emphasis added). Thus, the *Nixon* Court did not hold that subpoenas pursuant to Rule 17(c) could not be used to procure impeachment evidence at trial. Here, Cole propounded trial subpoenas, and at trial, impeachment evidence is certainly relevant to a witness's testimony. *See Skelos*, 2018 WL 2254538, at *2. Notably, several courts in this District have concluded that trial subpoenas seeking evidence for impeachment are permissible under Rule 17(c).[2] *See Avenatti*, 2020 WL 508682, at *3; *Skelos*, 2018 WL 2254538, at *2; *Percoco*, 2018 WL 9539131, at *1; *Seabrook*, 2017 WL 4838311, at *2. The Court likewise concludes that evidence sought for impeachment can satisfy the admissibility prong under *Nixon* and, therefore, be sought through a Rule 17(c) trial subpoena.

2. The Subpoena

The Government challenges all three document requests in the Rule 17(c) trial subpoena. Again, the first request seeks: "All personnel records for Seth Adam Horowitz, including but not limited to human resources files, employment applications, employment contracts, records of disciplinary actions and separation agreements." Doc. 56-1 at 4. The Government argues that these documents are neither relevant nor admissible because they are sought for the purpose of impeachment. As to specificity, the Government emphasizes that the use of the word "all" renders the request too broad.

Cole argues that these documents are relevant because they concern Horowitz's credibility and trustworthiness, stating that the personnel file will provide evidence that Horowitz hid information from and made inconsistent statements to Baked by Melissa concerning his conduct at Iconix. As to admissibility, Cole contends that these

---

[2] Indeed, the Government even argued this position in another case in this District. *United States v. Block*, No. 16 Cr. 595 (JPO), Doc. 88 at 1 (S.D.N.Y. June 13, 2017).

7

documents would be, at a minimum, admissible for impeachment.  Further, any statements Horowitz made after he began cooperating with the Government would be admissible to show his bias and motives.  As to specificity, Cole notes that he need not describe fully every document requested.   Instead, as here, the request need only be limited to a reasonable time period and to specific subject matter.

Regardless of whether the request meets the admissibility and relevancy prongs, Cole fails to satisfy the specificity prong, as this request represents a classic "fishing expedition." *See Nixon*, 418 U.S. at 700.  To satisfy the specificity prong, a "Rule 17(c) subpoena 'must be able to reasonably specify the information contained or believed to be contained in the documents sought rather than merely hop[e] that something useful will turn up.'" *Avenatti*, 2020 WL 508682, at *4 (quoting *United States v. Mendinueta-Ibarro*, 956 F. Supp. 2d 511, 512–13 (S.D.N.Y. 2013).  Of course, the words "any" and "all" do not automatically render a document request so broad that it must be quashed.  *See, e.g.*, *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 322–323 (S.D.N.Y. 2011).  However, "rather than asking for specific parts of [Horowitz's] personnel file and proving to the court how they would be relevant," Cole simply "seeks the entirety of" the records. *Blakstad*, 2020 WL 5992347, at *12.  Accordingly, this request is quashed.

The second request seeks:  "All documents relating to any complaint or allegation made by any current or former employee or consultant of Baked By Melissa against or concerning Seth Adam Horowitz, including but not limited to any actual or threatened litigation or settlements." Doc. 56-1 at 4.  As to relevancy, the Government argues that any alleged misconduct took place after Horowitz left Iconix, so those documents have nothing to do with the alleged activities in the instant case.  As to admissibility, the Government contends that these documents are irrelevant, hearsay, and unfairly prejudicial, along with being sought solely for the purpose of impeachment.  And as to specificity, the Government argues that Cole fails to allege any specific misconduct or identify any specific documents, thereby rendering the request a fishing expedition.

Cole contends that the underlying conduct recorded in these complaints reflects Horowitz's lack of trustworthiness, and is therefore relevant to his credibility. As to admissibility, Cole argues that the alleged conduct would be relevant to show Horowitz's bias and motives if those actions occurred after he agreed to cooperate with the Government, and that this evidence, at a minimum, could be used for impeachment. And as to specificity, Cole emphasizes that his request need only be limited to a reasonable time period and to a specific subject matter. Moreover, Cole notes that he has learned from potential witnesses that Horowitz has been accused of serious workplace misconduct while at Baked by Melissa.

As with the first request, the Court concludes that, regardless of the relevancy and admissibility prongs, the second request fails to satisfy the specificity prong under the *Nixon* standard, as Cole casts too wide of a net in his request. *See Seabrook*, 2017 WL 4838311, at *2. Although Cole notes that he has learned of allegations of Horowitz's misconduct at Baked by Melissa, the request fails to identify the type of misconduct, and Cole fails to narrow the timeframe or the subject matter in his request such that the documents would be associated more directly with the instant case. *See Blakstad*, 2020 WL 5992347, at *12. Accordingly, Cole's second document request is quashed.

The third request seeks: "All documents relating to the resignation or termination of Seth Adam Horowitz from Baked By Melissa." Doc. 56-1 at 4. As with the other two requests, the Government contends that these documents are neither relevant nor admissible because Cole seeks them for impeachment. As to specificity, the Government argues that Cole fails to identify the specific records he seeks.

In response, Cole contends that these documents are relevant because they address Horowitz's credibility and trustworthiness, alleging that Horowitz concealed information from Baked by Melissa until he pleaded guilty for his actions at Iconix. As with the other two requests, Cole argues that these documents are admissible because they can be used for impeachment and to show bias or motive. And with respect to specificity, Cole

asserts that this request is limited to a reasonable time period and identifies a particular set of documents.

Unlike the other two requests, the third request seeks documents from a narrow time period and relates to a specific subject matter—namely, to Horowitz's resignation or termination. *See Nixon*, 418 U.S. at 700; *see also Blakstad*, 2020 WL 5992347, at *12; *Avenatti*, 2020 WL 508682, at *4. Moreover, Cole argues that these documents are relevant to Horowitz's credibility, asserting that they show that Horowitz hid information from and made inconsistent statements to Baked by Melissa concerning his conduct at Iconix and the investigations into that conduct. *See Seabrook*, 2017 WL 4838311, at *3. Accordingly, the request satisfies the specificity and relevancy requirements. And as noted, Rule 17(c) also authorizes service of trial subpoenas to obtain impeachment material, as that evidence would be admissible at trial. *See Skelos*, 2018 WL 2254538, at *2; *Seabrook*, 2017 WL 4838311, at *2–3. Here, Cole seeks this evidence for impeachment purposes, rendering it admissible.

However, both in its briefing and at the hearing, the Government has represented to Cole and the Court that it intends to produce documents relating to Horowitz's separation from Baked by Melissa—*i.e.*, the documents responsive to Cole's request. Doc. 63 at 9 n.2; Doc. 65 at 7:24–8:8. Because Cole fails to provide an explanation as to why these documents "are not otherwise procurable" in light of the Government's representation, *see Nixon*, 418 U.S. at 699, Rule 17(c) is not the proper method for obtaining these materials at this time. *Blakstad*, 2020 WL 5992347, at *12; *Skelos*, 2018 WL 2254538, at *5. Instead, these documents should "be disclosed by the Government in accordance with its obligations under 18 U.S.C. § 3500; *Brady v. Maryland*, 373 U.S. 83 (1963); and *Giglio v. United States*, 405 U.S. 150 (1972)." *Skelos*, 2018 WL 2254538, at *5 (citing *Nixon*, 418 U.S. at 699). Accordingly, Cole's third document request is quashed.

## III.     CONCLUSION

For the foregoing reasons, the Government's motion to quash Cole's Rule 17(c) subpoena is granted. The Clerk of Court is respectfully directed to terminate the motion. Doc. 56.

It is SO ORDERED.

Dated:   March 10, 2021
         New York, New York

                                            EDGARDO RAMOS, U.S.D.J.