UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

NEIL COLE,

Defendant.

19 Cr. 869 (ER)

**MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO
EXCLUDE EVIDENCE OF PRIOR SEC INVESTIGATION AND SETTLEMENT**

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Lorin L. Reisner
Richard C. Tarlowe
Andrew D. Reich
1285 Avenue of the Americas
New York, New York 10019-6064
T:  212-373-3000

*Attorneys for Neil Cole*

Dated: September 10, 2021

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .........................................................................1

BACKGROUND .........................................................................................2

ARGUMENT.................................................................................................5

I.      THE COURT SHOULD EXCLUDE EVIDENCE RELATING TO THE
        CANDIE'S MATTER .................................................................................5

        A.      Admissibility of Other Acts Evidence ........................................5

        B.      The Candie's Evidence Is Not Admissible as Direct Proof of the
                Charged Offenses..........................................................................6

        C.      The Candie's Evidence Is Not Admissible Under Rule 404(b).................11

        D.      The Candie's Evidence Should Be Excluded Under Rule 403.................14

CONCLUSION............................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

C**ASES**

*In re Adler, Coleman Clearing Corp.*,
    No. 95–08203 (JLG), 1998 WL 160036 (Bankr. S.D.N.Y. Apr. 3,
    1998) ........................................................................................................................13

*United States* v. *Bailey*,
    696 F.3d 794 (9th Cir. 2012) .............................................................9, 13–14

*United States* v. *Cook*,
    557 F.2d 1149 (5th Cir. 1977) ...................................................................14

*United States* v. *Cushing*,
    No. S3 00 Cr. 1098 (WHP), 2002 WL 1339101 (S.D.N.Y. June 18,
    2002) ........................................................................................................12

*Dodson* v. *CBS Broadcasting, Inc.*,
    423 F. Supp. 2d 331 (S.D.N.Y. 2006) .......................................................17

*United States* v. *Dolney*,
    No. 04 Cr. 159 (NGG), 2005 WL 2129169 (E.D.N.Y. Sept. 1, 2005),
    *aff'd sub nom. United States* v. *Pirgousis*, 290 F. App'x 388 (2d Cir.
    2008) ......................................................................................................7–8

*Dooley* v. *Columbia Presbyterian Med. Ctr.*,
    No. 06 Civ. 5644 (JCF), 2009 WL 2381331 (S.D.N.Y. July 29, 2009) ....................17

*United States* v. *Figueroa*,
    618 F.2d 934 (2d Cir. 1980) ...................................................................14

*United States* v. *Garcia*,
    291 F.3d 127 (2d Cir. 2002) .........................................................................9

*Gogol* v. *City of New York*,
    No. 15 Civ. 5703 (ER), 2018 WL 4616047 (S.D.N.Y. Sept. 26, 2018)
    (Ramos, J.) ................................................................................................17

*United States* v. *Gonzalez*,
    110 F.3d 936 (2d Cir. 1997) .........................................................................7

*United States* v. *Gordon*,
    987 F.2d 902 (2d Cir. 1993) .........................................................................9

*United States* v. *Hatfield*,
    685 F. Supp. 2d 320 (E.D.N.Y. 2010) .........................................................9

**TABLE OF AUTHORITIES**
**(Continued)**

Page(s)

*United States* v. *Johnson*,
    469 F. Supp. 3d 193 (S.D.N.Y. 2019) ......................................................................6–7

*United States* v. *Kahale*,
    789 F. Supp. 2d 359 (E.D.N.Y. 2009), *aff'd sub nom. United States* v.
    *Graham*, 477 F. App'x 818 (2d Cir. 2012).............................................................15–16

*United States* v. *Kassir*,
    No. 04 Cr. 356 (JFK), 2009 WL 976821 (S.D.N.Y. Apr. 9, 2009) ..............................7

*United States* v. *Klein*,
    No. 16 Cr. 442 (JMA), 2017 WL 1316999 (E.D.N.Y. Feb. 10, 2017).................12, 17

*United States* v. *Levy*,
    No. S5 11 Cr. 62 (PAC), 2013 WL 655251 (S.D.N.Y. Feb. 22, 2013) .......................16

*Manko* v. *United States*,
    No. 95 Civ. 1611 (KMW), 1998 WL 391129 (S.D.N.Y. July 13, 1998),
    *aff'd*, 63 F. App'x 570 (2d Cir. 2003)..........................................................................16

*United States* v. *Martoma*,
    No. 12 Cr. 973 (PGG), 2014 WL 31191 (S.D.N.Y. Jan. 6, 2014)................6–7, 10, 14

*United States* v. *McCallum*,
    584 F.3d 471 (2d Cir. 2009) .........................................................................6, 11–12

*United States* v. *Nachamie*,
    101 F. Supp. 2d 134 (S.D.N.Y. 2000) ............................................................6, 13–14

*United States* v. *Newton*,
    No. S 101 Cr. 635 (CSH), 2002 WL 230964 (S.D.N.Y. Feb. 14, 2002)...........7, 10, 15

*United States* v. *Peterson*,
    808 F.2d 969 (2d Cir. 1987) ......................................................................................12

*United States* v. *Rajaratnam*,
    No. S1 13 Cr. 211 (NRB), 2014 WL 2696568 (S.D.N.Y. June 10,
    2014)........................................................................................................................6, 15

*United States* v. *Rubin/Chambers, Dunhill Ins. Servs.*,
    831 F. Supp. 2d 779 (S.D.N.Y. 2011) .......................................................................16

*United States* v. *Shatzle*,
    901 F.2d 252 (2d Cir. 1990) ......................................................................................16

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*States* v. *Stratos*,
   No. 11 Cr. 537 (TLN), 2015 WL 1814315 (E.D. Cal. Apr. 21, 2015) ...................... 14

*United States* v. *Stein*,
   521 F. Supp. 2d 266 (S.D.N.Y. 2007) ........................................................................ 8

*In re Tenet Healthcare Corp. Sec. Litig.*,
   No. CV 02-8462-RSWL (RZX), 2007 WL 5673884 (C.D. Cal. Dec. 5,
   2007) ......................................................................................................................... 16

*United States* v. *Ulbricht*,
   79 F. Supp. 3d 466 (S.D.N.Y. 2015) ........................................................................ 11

**OTHER AUTHORITIES**

Fed. R. Evid. 403 ......................................................................................................... passim

Fed. R. Evid. 404(a) ............................................................................................................. 6

Fed. R. Evid. 404(b) ................................................................................................... passim

Fed. R. Evid. 404(b)(1) .................................................................................................. 5, 11

Fed. R. Evid. 404(b)(2) ...................................................................................................... 11

This memorandum of law is submitted on behalf of Neil Cole in support of his motion *in limine* to exclude evidence of an SEC investigation and settlement involving transactions that occurred more than twenty years ago. For the reasons described below, the evidence is inadmissible. In addition, any conceivable probative value is heavily outweighed by its unfairly prejudicial impact.

## PRELIMINARY STATEMENT

The government has provided notice that it proposes to introduce at trial "evidence regarding an inquiry into potential accounting improprieties at Iconix's predecessor company, Candie's, in or about 1999, and the subsequent settlement that Candie's and Cole entered with the SEC" in 2003 (the "Candie's Evidence"). (March 23, 2020 Letter from Government, at 1 (attached as Exhibit A).) There is no valid basis, however, to place before the jury evidence of a prior, unrelated SEC investigation or settlement (on a neither admit nor deny basis) involving unproven allegations concerning transactions that occurred more than twenty years ago and that have no connection to this case. The Court should reject the government's improper attempt to introduce irrelevant and unfairly prejudicial evidence at trial.

*First*, the Candie's Evidence is not direct evidence of the charged offenses. The transactions that were the subject of the Candie's matter took place between 1997 and 1999, involve entirely different counterparties, and have no connection to the transactions at issue in this case. There is no credible basis to claim that the Candie's Evidence somehow provides context that is necessary for the jury to understand and evaluate the charges in this case.

*Second*, the Candie's Evidence is not admissible under Rule 404(b).  As a threshold matter, there is no basis to support a finding that the "other acts" actually occurred.  Even if the government could clear that hurdle, which it cannot, the Candie's Evidence is not relevant to any proper purpose for which evidence of other acts may be admitted.

*Third*, the evidence is inadmissible under Rule 403 because any possible probative value is limited and substantially outweighed by the danger of unfair prejudice, jury confusion and undue delay.  For those reasons, courts routinely exclude this type of evidence under Rule 403.

## BACKGROUND

In 1999, Candie's, Inc., the predecessor company to Iconix Brand Group, announced publicly that the SEC had initiated an investigation relating to the company's accounting for certain historical sales transactions with customers.[1]  The SEC conducted a lengthy investigation in which it subpoenaed documents and took testimony from various witnesses.  Mr. Cole was the CEO of Candie's at the time and provided investigative testimony to the SEC over the course of three separate days in 2002.  Mr. Cole and other executives also were interviewed by counsel for a Special Committee of the Board of Directors as part of an internal investigation.  That Special Committee investigation concluded with no disciplinary action against Mr. Cole.

In April 2003, the SEC filed a complaint in the United States District Court for the Southern District of New York and thereafter instituted administrative cease and desist proceedings against Candie's and six of the company's officers and directors,

---

[1]   Candie's changed its name to Iconix effective July 1, 2005.

including Mr. Cole.   The SEC principally alleged that, between 1997 and 1999, (a) "Candie's former COO directed employees to engage in a practice known as bill and hold," in which Candie's recorded revenue from purchase orders calling for future delivery of shoes, prior to shipment of the shoes and (b) "Candie's former vice president of finance negotiated and signed" two agreements with a barter company for the sale of shoes that led Iconix to record revenue for those sales before the shoes were shipped.   The SEC alleged that Mr. Cole "caused" Candie's to violate certain provisions of the federal securities law. The SEC did not allege that Mr. Cole intentionally violated any law.

At the same time those proceedings were initiated, Candie's and Mr. Cole each entered into separate settlements with the SEC, without admitting or denying the SEC's allegations.   (*See* Order Instituting Proceedings, Exchange Act Release No. 47769, at 1 (Apr. 30, 2003) (attached as Exhibit B).)   As part of the settlement, Mr. Cole agreed to pay a civil penalty of $75,000.   The SEC did not impose any suspension or officer/director bar, and Mr. Cole continued to serve as CEO of Candie's following the settlement.   The government's characterization of the settlement—*i.e.*, that Mr. Cole "did not contest that Candie's earnings were improperly inflated"—is, at best, incomplete, as Mr. Cole made no admissions, and his agreement with the SEC expressly permits him to contest the SEC's allegations in other proceedings, such as this trial.   Indeed, Mr. Cole contests and rejects the government's characterization.

On March 23, 2020, the government provided notice to the defense that it "may" offer evidence of the SEC's "inquiry into potential accounting improprieties" at Candie's and "the subsequent settlement that Candie's and Cole entered with the SEC." (Exhibit A at 1.)   Although the government's notice refers to "the" settlement, there in fact

were separate settlement agreements entered into between the SEC and each of Candie's and Mr. Cole.  The government's March 23 notice stated that:

> The Government may offer this evidence as direct proof of the offenses charged in the Indictment, including to establish Cole's understanding of the relevant accounting rules and issues and of scrutiny of revenue recognition rules and practices, and to provide context for (1) references made to the Candie's investigation during the course of the charged conspiracy and (2) Cole's and Horowitz's destruction of documents during the inquiry by the SEC's Division of Corporate Finance.

(Exhibit A at 2.)  The government also has asserted that, alternatively, the Candie's Evidence is admissible under Rule 404(b) to prove "motive, opportunity, intent, preparation, plan, knowledge, absence of mistake and/or lack of accident as to the offenses charged in the Indictment."  (Exhibit A at 2.)

On December 7, 2020, the government notified the defense by email that it had "firmed-up [its] intentions with respect to" the Candie's Evidence and that it intended to offer such evidence "both as direct evidence of the conduct charged in this case and under Rule 404(b)."  (December 7, 2020 Email from Government (attached as Exhibit C).) For the first time, the government advised that it intended to "prove-up" the "existence" not only of the SEC investigation, but also of the internal investigation, as well as purported "concerns about round-trip transactions raised by auditors at Candie's."  (Exhibit C.)

The government also advised that it had obtained "voluminous" records from the SEC's investigation concerning Candie's as well as archived records from an investigation by the U.S. Attorney's Office (which led to no criminal charges being filed). (Exhibit C.)  The government offered on December 7, 2020 to make those records available to the defense for review, but produced what we understand to be only a small fraction of

the investigative file, including transcripts of Mr. Cole's testimony and that of an additional witness.  (Exhibit C.)

Proposed stipulations provided by the government on June 1, 2021 indicate that the government intends to introduce a variety of documents from the Candie's matter, including contemporaneous transaction and accounting records.  The specific documents the government seeks to introduce include, at a minimum, the following:  a May 1999 memorandum from the then-General Counsel of Candie's to Mr. Cole and a former Candie's executive regarding "Redwood Accounting Issues;"[2] an "accounts receivable confirmation" submitted by Redwood Shoes to Candie's outside auditor, dated January 31, 1999; a "journal entry form for Candie's;" notes from a 1999 meeting of the audit committee of the board of directors of Candie's; and the April 2003 SEC order instituting proceedings.  (June 1, 2021 Proposed Stipulation at 1–2 (attached as Exhibit D).)  For the reasons described below, all of this purported evidence should be excluded.

## ARGUMENT

### I.   THE COURT SHOULD EXCLUDE EVIDENCE RELATING TO THE CANDIE'S MATTER

#### A.   Admissibility of Other Acts Evidence

Evidence of other acts "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Such evidence "tends to distract the trier of fact from the main question of what actually happened on the particular occasion.  It subtly permits the trier of fact . . . to punish the bad man because of [his] . . . character[] despite what the

---

[2]   We understand that "Redwood" refers to the name of a buying agent from which Candie's purchased shoes.

evidence in the case shows actually happened." Fed. R. Evid. 404(a) advisory committee's note to 1972 proposed rule (quotation omitted). The rule recognizes the danger that this type of evidence will overly influence the finder of fact and "undermine the presumption of innocence." *United States* v. *McCallum*, 584 F.3d 471, 475 (2d Cir. 2009).

Evidence of other acts therefore may be admitted only in limited circumstances, namely: (1) if the evidence is "intrinsic" to the crime charged, and so not a separate act at all, *see United States* v. *Martoma*, No. 12 Cr. 973 (PGG), 2014 WL 31191, at *2 (S.D.N.Y. Jan. 6, 2014); or (2) to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," without requiring impermissible propensity reasoning. Fed. R. Evid. 404(b)(2). The government "bears the burden of demonstrating the admissibility of evidence under Rule 404(b)." *United States* v. *Nachamie*, 101 F. Supp. 2d 134, 137 (S.D.N.Y. 2000). Additionally, any evidence of prior acts also must satisfy the balancing test required under Federal Rule of Evidence 403. *See Martoma*, 2014 WL 31191, at *4; *United States* v. *Rajaratnam*, No. S1 13 Cr. 211 (NRB), 2014 WL 2696568, at *3 (S.D.N.Y. June 10, 2014).

**B.      The Candie's Evidence Is Not Admissible as Direct Proof of the Charged Offenses.**

Although Rule 404(b) does not limit the admissibility of evidence that is "direct evidence" or "intrinsic proof" of the charged offense, *Martoma*, 2014 WL 31191, at *2 (citing *United States* v. *Nektalov*, 325 F. Supp. 2d 367, 370 (S.D.N.Y. 2004)); *United States* v. *Johnson*, 469 F. Supp. 3d 193, 204 (S.D.N.Y. 2019), the Candie's Evidence is neither direct evidence nor intrinsic proof of the offenses charged in this case. An act is "intrinsic" to a charged offense "if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence

6

regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States* v. *Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) (quotation omitted). "Uncharged conduct is not 'inextricably intertwined' with charged conduct simply because it 'provides context or is relevant' to charged conduct." *Johnson*, 469 F. Supp. 3d at 204.

Indeed, "[c]ourts in this District employ a narrow construction in determining whether uncharged crimes are direct evidence of charged offenses." *Id.*; *see also Martoma*, 2014 WL 31191, at *3. "[A]lthough the Second Circuit's intrinsic evidence standard appears at first glance to be fairly broad, in practice, its usage has often been limited to instances where the intrinsic evidence is contemporaneous with the charged conduct." *United States* v. *Dolney*, No. 04 Cr. 159 (NGG), 2005 WL 2129169, at *2 (E.D.N.Y. Sept. 1, 2005), *aff'd sub nom. United States* v. *Pirgousis*, 290 F. App'x 388 (2d Cir. 2008); *see also United States* v. *Newton*, No. S 101 Cr. 635 (CSH), 2002 WL 230964, at *2 (S.D.N.Y. Feb. 14, 2002); *United States* v. *Kassir*, No. 04 Cr. 356 (JFK), 2009 WL 976821, at *2 (S.D.N.Y. Apr. 9, 2009) (describing decisions applying Rule 404(b) analysis to uncharged conduct rather than admitting it as direct evidence).

Applying these standards, the Candie's Evidence plainly is not "intrinsic" to the charged offenses. The allegations in the Candie's matter did not arise "out of the same transaction or series of transactions as the charged offense," nor is the Candie's matter "inextricably intertwined" with the charged conduct. The charges in this case concern three international joint venture transactions between Iconix and Li & Fung (or its spun-off subsidiary, GBG) that took place between October 2013 and September 2014 and that relate to the exercise of intellectual property rights in certain international territories. The Candie's matter, on the other hand, relates to the physical sale of shoes to wholesale

customers that took place more than 14 years before the earliest conduct charged in this case.  Given the temporal gap and lack of connection between those transactions and the allegations in this case, neither the existence of a prior investigation, nor the unproven allegations contained in the SEC's complaint, are direct proof of any of the charges in this case.  *See, e.g.*, *Dolney*, 2005 WL 2129169, at *2 ("This lapse in time cuts against a finding that the earlier conduct is 'inextricably intertwined' with . . . or 'necessary' to explain events that occurred two years later."); *United States* v. *Stein*, 521 F. Supp. 2d 266, 271 (S.D.N.Y. 2007) ("[The government] has not explained why details of the uncharged transaction are *necessary* to understand the charged transaction.  It therefore has failed to show that those details are inextricably intertwined with proof of the charged transaction.") (emphasis added; footnote omitted).

The government's strained effort to identify a basis for admitting this evidence reinforces that there is none.  The genuine (and prohibited) purpose for introducing this unfairly prejudicial evidence appears to be suggesting to the jury that because Candie's was the subject of an SEC investigation concerning potential accounting irregularities while Mr. Cole was its CEO, Mr. Cole must have participated in the alleged accounting irregularities charged in this case.  The government contends, for example, that the Candie's Evidence is admissible as direct evidence of the charged offenses to "establish Cole's understanding of the relevant accounting rules and issues and of scrutiny of revenue recognition rules and practices."  (Exhibit A at 2.)

The government does not identify, however, any specific "accounting rules and issues," nor does the government explain how unproven allegations from an unrelated matter could establish such an understanding of unspecified rules and their applicability to

very different transactions.  In *United States* v. *Bailey*, 696 F.3d 794 (9th Cir. 2012), the

court rejected a similar attempt by the government to use a past SEC complaint to show

that a defendant had knowledge of the law, explaining:

> There is some logic to the argument that evidence that Bailey had
> previously been accused of violating Rule S–8 shows that he was
> on notice of the type of prohibited conduct. But this is not enough.
> . . . [A] complaint would not establish knowledge even if the
> prosecution had purported to use it only for that reason. All a
> complaint establishes is knowledge of what a plaintiff claims. It
> does not establish the truth of either the facts asserted in the
> complaint, or of the law asserted in the complaint. ***Since the
> previous complaint was never proved, nor was the truth of any
> of it conceded, it could not have established knowledge of the
> law***.

*Id.* at 801–02 (emphasis added).  The same is true here.

Moreover, even if the fact of a prior investigation or a no-admit, no-deny

SEC settlement somehow could show Mr. Cole's understanding more than a decade later

of unidentified "accounting rules and issues and of scrutiny of revenue recognition rules

and practices," it would not make it admissible as direct evidence.  As noted, there is a

significant temporal gap and absence of any logical connection between the Candie's

matter and the charged conduct.  *See United States* v. *Garcia*, 291 F.3d 127, 137–39, 145

(2d Cir. 2002) (vacating convictions where district court admitted as evidence uncharged

conduct occurring twelve years before charged conduct); *United States* v. *Hatfield*, 685 F.

Supp. 2d 320, 325 (E.D.N.Y. 2010); *see also United States* v. *Gordon*, 987 F.2d 902, 908–

09 (2d Cir. 1993).  In addition, the purported "understanding" the government seeks to

establish is not probative of any material fact in dispute in this case.  The Candie's matter

involved recognition of revenue prior to the physical delivery of shoes from alleged "bill

and hold" sales and barter transactions (allegedly negotiated and executed by people other

than Mr. Cole), none of which is alleged in this case; and, like any public-company CEO, Mr. Cole obviously understood that revenue recognition practices could be the subject of "scrutiny."  That is neither relevant nor in dispute.

The government's claim that the Candie's Evidence also would "provide context" for (i) unspecified references to the Candie's investigation allegedly made during the course of the charged conspiracy and (ii) the government's allegation that emails were deleted by Mr. Horowitz and Mr. Cole during the Division of Corporation Finance comment letter process is groundless.  (Exhibit A at 2.)  The Candie's Evidence plainly is not "crucial information without which the jury will be confused or the government's theory of the case unfairly curtailed."  *Newton*, 2002 WL 230964, at *3.

Indeed, the government's effort to introduce this evidence is undermined by its own Indictment.  Although the detailed, speaking Indictment in this case is 36 pages long and has 69 separately numbered paragraphs, there is just one, passing reference to the Candie's matter, and it is in the context of Count Ten only.  That evidence thus cannot possibly be necessary to understand the first nine counts.  *See Martoma*, 2014 WL 31191, at *3 (finding that "the Indictment itself refutes the Government's . . . claims, as it tells a compelling, complete, and detailed story" without reference to the other matter) (quoting *Hatfield*, 685 F. Supp. 2d at 323).  Even in the sole paragraph in which the Candie's reference appears, it is entirely gratuitous and certainly not "necessary" to understand anything.  Specifically, Paragraph 64 of the Indictment (Count Ten) alleges that, in February 2015, in connection with the Company's response to an inquiry from the SEC Division of Corporation Finance, emails supposedly were deleted by Mr. Cole and Mr. Horowitz:

> NEIL COLE, the defendant, *who had previously been the subject of an SEC enforcement action for improper revenue recognition practices while he was chief executive officer of Iconix's predecessor-in-interest, an entity named Candie's,* became concerned that the SEC would discover the fraudulent revenue inflation scheme involving the SEA JVs. Accordingly, COLE knowingly took steps during the Corp Fin inquiry to destroy and conceal relevant evidence.

Indictment ¶ 64 (emphasis added). It is clear from that description that the Candie's Evidence does not provide *necessary* context for any of the government's charges. The government's allegation in Count Ten is straightforward: it alleges that, after the SEC Corporation Finance inquiry began, Mr. Cole supposedly took steps to conceal evidence of an accounting fraud from the SEC. The fact of an unrelated SEC investigation fourteen years earlier is neither relevant to, nor necessary to understand, that allegation.

### C.   The Candie's Evidence Is Not Admissible Under Rule 404(b).

The Candie's Evidence also is not admissible under Rule 404(b). "Other act" evidence is inadmissible under Rule 404(b) if it is offered to prove the defendant's bad character or criminal propensity. Fed. R. Evid. 404(b)(1); *see United States* v. *McCallum*, 584 F.3d 471, 475–77 (2d Cir. 2009). Although evidence may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2), courts should reject and exclude evidence offered "ostensibly as probative of knowledge and intent when it is in reality 'propensity evidence in sheep's clothing.'" *United States* v. *Ulbricht*, 79 F. Supp. 3d 466, 480 (S.D.N.Y. 2015) (quoting *McCallum*, 584 F.3d at 477).

To be admissible under Rule 404(b), evidence must be (1) "offered for a proper purpose;" (2) "relevant to a disputed issue;" and (3) the probative value of the evidence must not be "substantially outweighed by its potential for unfair prejudice

pursuant to Rule 403." *McCallum*, 584 F.3d at 475 (quoting and citing *Huddleston* v. *United States*, 485 U.S. 681, 691–92 (1988)).  The Candie's Evidence plainly fails to satisfy these requirements.

   The government recites virtually the entire list of potential evidentiary bases to admit other acts evidence enumerated in Rule 404(b) (*see* Exhibit A at 2) without actually attempting to explain how they are applicable here.  The Candie's Evidence is not relevant for any proper purpose under Rule 404(b) because it is not "sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the . . . inference advocated by" the government.  *United States* v. *Peterson*, 808 F.2d 969, 974 (2d Cir. 1987).  The government cannot establish the requisite similarity by characterizing both matters generically as involving "potential accounting improprieties."  (Exhibit A at 1.)  The rule "does not invite the government 'to offer, carte blanche, any prior act of the defendant in the same category'" as the charged offenses.  *McCallum*, 584 F.3d at 475 (quoting *Garcia*, 291 F.3d at 137).

   Moreover, even if there were a sufficient similarity between the Candie's matter and the charged conduct, evidence of the existence of an SEC investigation, an internal investigation and/or an SEC settlement would have no relevance beyond improperly suggesting to the jury a propensity to violate the securities laws.  *See United States* v. *Klein*, No. 16 Cr. 442 (JMA), 2017 WL 1316999, at *8 (E.D.N.Y. Feb. 10, 2017) ("[T]he only purpose to be served by the admission of the SEC complaint and charging decision would be to suggest to the jury that it should reach the same conclusion that the SEC reached . . . ."); *see also United States* v. *Cushing*, No. S3 00 Cr. 1098 (WHP), 2002 WL 1339101, at *3 (S.D.N.Y. June 18, 2002) (evidence that defendant "lied to a separate

investigatory authority on a different subject at a different point in time . . . makes it no more likely that he knew he made an untruthful statement to the SEC" and thus such evidence "would only tend to demonstrate [the defendant's] willingness to lie to an investigatory authority," which is "exactly the type of consequence that Rule 404(b) seeks to preclude.").

In addition, evidence is only relevant and admissible under Rule 404(b) if there is sufficient evidence to support a finding by the jury that the other act actually occurred and that the defendant was the actor. *See Nachamie*, 101 F. Supp. 2d at 140 (citing *Huddleston*, 485 U.S. at 689). Mr. Cole made no admissions as part of his settlement with the SEC and that settlement therefore cannot be used to establish that any of the underlying acts took place. Evidence of allegations "settled with no admission of liability is not probative of whether the defendant committed the prior conduct, much less whether he committed the conduct in question." *Bailey*, 696 F.3d at 802; *see In re Adler, Coleman Clearing Corp.*, No. 95–08203 (JLG), 1998 WL 160036, at *8 (Bankr. S.D.N.Y. Apr. 3, 1998).

In *In re Adler, Coleman Clearing Corp.*, the court precluded the trustee from introducing a prior SEC settlement as purported evidence of the claimants' knowledge and intent in defrauding the debtor. The court held that the settlement could not be used to show that the claimants "actually engaged in the conduct alleged" because the claimants "neither admitted nor denied the findings made therein." 1998 WL 160036, at *4, *8. The same is true of the settlement in the Candie's matter. Similarly, in *United States* v. *Bailey*, the court excluded evidence of a prior SEC settlement because it "does not establish the truth of either the facts asserted in the complaint, or of the law asserted in the complaint."

696 F.3d at 802; *see also United States* v. *Stratos*, No. 11 Cr. 537 (TLN), 2015 WL 1814315, at *4 (E.D. Cal. Apr. 21, 2015) (evidence of the defendant's default judgment and settlement with a third party was inadmissible under Rule 404(b) "until the Government produces sufficient evidence to prove" that the defendant engaged in the other acts); *United States* v. *Cook*, 557 F.2d 1149, 1152 (5th Cir. 1977) (defendants' settlement agreement with the SEC did not constitute a "bad act" under Rule 404(b) because the defendants did not "admit[] []or deny[] any act of any kind" in the settlement).

> **D.** **The Candie's Evidence Should Be Excluded Under Rule 403.**

Under Rule 403, otherwise relevant evidence should be excluded "if its probative value is substantially outweighed by a danger of," among other things, "unfair prejudice, confusing the issues, misleading the jury . . . [or] wasting time." Fed. R. Evid. 403. Even if the Candie's Evidence is admissible for a proper purpose—and it is not—it should still be excluded because any limited probative value is substantially outweighed by the danger of unfair prejudice, confusion of the jury and undue delay. *See Martoma*, 2014 WL 31191, at *5 (citing *United States* v. *Kahale*, 789 F. Supp. 2d 359, 385 (E.D.N.Y. 2009), *aff'd sub nom. United States* v. *Graham*, 477 F. App'x 818 (2d Cir. 2012)).

*First*, the Candie's Evidence creates a substantial risk of unfair prejudice. Evidence may create unfair prejudice if it has the tendency "to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *United States* v. *Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980); *see also Nachamie*, 101 F. Supp. 2d at 141–42.

Here, the introduction of a prior investigation by, and settlement with, a federal agency charged with enforcing the securities laws would create a substantial risk of the jury believing that Mr. Cole must have been involved previously in "accounting improprieties."

That risk is further compounded by introducing an SEC order that recites unproven allegations couched as the SEC's "findings."  Even if the jury were instructed that no charges were proven and that Mr. Cole denies those allegations, the formal allegations and a settlement carrying the imprimatur of the SEC could lead the jury to believe that, where there's smoke, there's fire.  At that point, it would be virtually impossible for the jury not to judge Mr. Cole based on improper character and propensity evidence.  *See Newton*, 2002 WL 230964, at *2 ("potential for unfairly prejudicing the jury by portraying [the defendant] as an immoral rule-breaker greatly outweighs th[e] slight probative value"); *see also Rajaratnam*, 2014 WL 2696568, at *3; *Kahale*, 789 F. Supp. 2d at 385–86.

Second, to try to limit the unfair prejudice from the Candie's Evidence, Mr. Cole would need to rebut those allegations and demonstrate not only that he is not guilty of the offenses charged here, but also that his conduct in the late 1990s relating to Candie's was entirely lawful and proper.  That would require a distracting and confusing detour into a multi-year investigation concerning complicated subject matter from over twenty years ago involving entirely different facts and witnesses and a "voluminous" investigative file. In addition to legal documents, for example, the government seeks to introduce contemporaneous transaction and accounting records, such as a 1999 "accounts receivable confirmation" and a Candie's "journal entry," further demonstrating why the introduction of the Candie's Evidence would create the need for a distracting mini-trial on unrelated allegations and transactions.  (Exhibit D at 2.)

In addition, if the government is permitted to introduce evidence of the SEC settlement, Mr. Cole also will need to place that in appropriate context by educating the jury about no-admit, no-deny SEC settlements and the reasons why someone who engaged

15

in no wrongdoing might nevertheless agree to a settlement with a modest penalty and no suspension or bar.  *See In re Tenet Healthcare Corp. Sec. Litig.*, No. CV 02-8462-RSWL (RZX), 2007 WL 5673884, at *1–2 (C.D. Cal. Dec. 5, 2007) (finding SEC allegations in settlement context "unreliable" because the defendants' "offers of settlement may be motivated by desire for peace") (quotation omitted).  Particularly in a trial that already is expected to last several weeks, include expert testimony and involve various accounting issues, any limited probative value of the Candie's Evidence is substantially outweighed by its risk of confusion and undue delay.  *See United States* v. *Shatzle*, 901 F.2d 252, 255–56 (2d Cir. 1990) (other acts evidence properly excluded where potential delay of a mini-trial on the contested issue outweighed its probative value); *United States* v. *Levy*, No. S5 11 Cr. 62 (PAC), 2013 WL 655251, at *1 (S.D.N.Y. Feb. 22, 2013) ("The introduction of [the other acts] evidence would lead to a confusing 'mini-trial'" that would present "a significant risk of . . . confusing the issues actually alleged in the Indictment, and misleading a jury that will already be tasked with determining the charged conduct . . . ."); *Kahale*, 789 F. Supp. 2d at 385–86 (admitting evidence of other acts "will necessarily result in delay, confusion of the issues, and may mislead the jury to make a determination of guilt based on propensity").

Relying on these same factors, courts in this Circuit routinely exclude evidence of regulatory inquiries or settlements under Rule 403.  *See, e.g.*, *United States* v. *Rubin/Chambers, Dunhill Ins. Servs.*, 831 F. Supp. 2d 779, 784 (S.D.N.Y. 2011) (excluding evidence of defendant's SEC settlement because of risk of creating "a high degree of confusion, delay and prejudice"); *Manko* v. *United States*, No. 95 Civ. 1611 (KMW), 1998 WL 391129, at *10 (S.D.N.Y. July 13, 1998) ("[P]resentation of evidence of [IRS]

settlement would divert the jury from the central issue of petitioners' guilt or innocence."), *aff'd*, 63 F. App'x 570 (2d Cir. 2003); *United States* v. *Klein*, No. 16 Cr. 442 (JMA), 2017 WL 1316999, at *8 (E.D.N.Y. Feb. 10, 2017) (SEC complaint and charging decision presented danger of unfair prejudice and would shift the jury's focus); *Dodson* v. *CBS Broadcasting*, *Inc.*, 423 F. Supp. 2d 331, 334 (S.D.N.Y. 2006) (evidence of a settled EEOC suit inadmissible under Rule 403 because its probative value was substantially outweighed by the "burden that the admission of this evidence would place on defendant to explain the circumstances at issue in the EEOC's lawsuit and its settlement, by the waste of time that would accompany such explanations, and by the danger that admission of this evidence will create unfair prejudice against defendant") (quotation omitted); *Dooley* v. *Columbia Presbyterian Med. Ctr.*, No. 06 Civ. 5644 (JCF), 2009 WL 2381331, at *2 (S.D.N.Y. July 29, 2009) (excluding evidence of civil consent order because it would contribute to creating a "mini-trial"); *see also Gogol* v. *City of New York*, No. 15 Civ. 5703 (ER), 2018 WL 4616047, at *4 (S.D.N.Y. Sept. 26, 2018) (Ramos, J.) (granting motion to preclude evidence of unrelated lawsuit because there had been "no finding of liability" and "the probative value of those mere charges is outweighed by the danger of unfair prejudice, confusion of the issues and considerations of undue delay").

## <u>CONCLUSION</u>

For the foregoing reasons, the government should be precluded from introducing the Candie's Evidence at trial.

Dated:  September 10, 2021

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: <u>/s/ Lorin L. Reisner</u>
    Lorin L. Reisner
    Richard C. Tarlowe
    Andrew D. Reich
    1285 Avenue of the Americas
    New York, New York 10019-6064
    T:  212-373-3000

*Attorneys for Neil Cole*