UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

NEIL COLE,

Defendant.

19 Cr. 869 (ER)

**MEMORANDUM OF LAW IN SUPPORT OF NEIL COLE'S MOTION *IN
LIMINE* TO EXCLUDE EVIDENCE OF STOCK SALE PROCEEDS**

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
Lorin L. Reisner
Richard C. Tarlowe
Andrew D. Reich
1285 Avenue of the Americas
New York, New York 10019-6064
T:  212-373-3000

*Attorneys for Neil Cole*

Dated:  September 10, 2021

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................1

FACTUAL BACKGROUND...........................................................................................2

ARGUMENT....................................................................................................................4

I.  EVIDENCE OF MR. COLE'S STOCK SALE PROCEEDS IS
    IRRELEVANT AND SHOULD BE EXCLUDED................................................4

II. EVEN IF RELEVANT, THE EVIDENCE OF MR. COLE'S STOCK
    SALE PROCEEDS SHOULD BE EXCLUDED UNDER RULE 403...................8

    A.  The Proposed Evidence Risks Misleading the Jury.....................................8

    B.  The Proposed Evidence Would Create an Unnecessary
        Distraction and Risk Confusing the Jury. ....................................................9

    C.  The Proposed Evidence Would Create a Risk of Unfair Prejudice...........10

CONCLUSION................................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

<span style="font-variant: small-caps;">CASES</span>

*In re Exec. Telecard, Ltd. Sec. Litig.*,
    979 F. Supp. 1021 (S.D.N.Y. 1997) ..............................................................................7

*In re Iconix Brand Grp., Inc.*,
    No. 15 CIV. 4860 (PGG), 2017 WL 4898228 (S.D.N.Y. Oct. 25, 2017) ...................10

*La Plante* v. *Am. Honda Motor Co.*,
    27 F.3d 731 (1st Cir. 1994)........................................................................................11

*In re Northern Telecom Ltd. Sec. Litig.*,
    116 F. Supp. 2d 446 (S.D.N.Y. 2000) ........................................................................7

*S.E.C.* v. *Jensen*,
    No. CV 11-5316-R, 2013 WL 12129377 (C.D. Cal. Mar. 13, 2013)..............5–6, 9, 10

*United States* v. *Bradley*,
    644 F.3d 1213 (11th Cir. 2011) .................................................................................11

*United States* v. *Cassese*,
    290 F. Supp. 2d 443 (S.D.N.Y. 2003), *aff'd on other grounds*, 428
    F.3d 92 (2d Cir. 2005) ...............................................................................................11

*United States* v. *Ferguson*,
    676 F.3d 260 (2d Cir. 2011) ...............................................................................passim

*United States* v. *Ferguson*,
    No. 6 Cr. 137 (CFD), 2007 WL 4240782 (D. Conn. Nov. 30, 2007)...........................4

*United States* v. *Schiff*,
    538 F. Supp. 2d 818 (D.N.J. 2008) .............................................................................7

*United States* v. *Shapiro*,
    No. 15 Cr. 155 (RNC) (D. Conn.) ..............................................................................4

*United States* v. *Singer*,
    No. 9:05-CR-00928, 2010 WL 146165 (D.S.C. Jan. 8, 2010) ................................5, 7

*United States* v. *Socony-Vacuum Oil Co.*,
    310 U.S. 150 (1940)..................................................................................................11

*United States* v. *Stahl*,
    616 F.2d 30 (2d Cir. 1980) .......................................................................................11

*United States* v. *Stewart,*
    433 F.3d 273 (2d Cir. 2006) ......................................................................10

**OTHER AUTHORITIES**

Fed. R. Evid. 401 ............................................................................1, 4, 8

Fed. R. Evid. 402 ........................................................................................1

Fed. R. Evid. 403 ....................................................................................8, 11

## PRELIMINARY STATEMENT

The government plans to call a summary, non-expert witness at trial to introduce evidence that, in October 2014, Mr. Cole received substantial proceeds from the sale of one million shares of Iconix stock, which Mr. Cole acquired through the exercise of long-held stock options that were nearing their expiration dates.  The Court should preclude evidence of Mr. Cole's stock sale proceeds because it is irrelevant.  In addition, any potential probative value is substantially outweighed by its unfair prejudice and capacity to mislead the jury and confuse the issues.

Although the government's theory appears to be that the transactions challenged in the indictment favorably impacted Iconix's stock price, the government does not intend to call an expert witness on that issue.  The jury will therefore have no basis to assess whether the charged conduct had any effect on the stock price and, if so, how much of an effect.  Absent an established causal connection between the charged conduct and the stock price, the proceeds from Mr. Cole's stock sale bear no relationship to the charges, are wholly irrelevant and should be excluded under Federal Rules of Evidence 401 and 402.

Even if the government could demonstrate that this evidence somehow is relevant, it still should be excluded under Rule 403.  First, evidence of Mr. Cole's stock sale proceeds presents a significant risk of misleading the jury into believing that the money he received from the stock sale is related in some way to the charged conduct when, in fact, it is not.  Second, and relatedly, if the government were permitted to introduce this evidence, the defense would seek to rebut it by calling an expert witness to demonstrate – through event studies and statistical regression analyses – that the challenged transactions did not have an impact on the stock price.  This would unnecessarily introduce additional

complexity into a trial already expected to include multiple expert witnesses and last approximately four weeks.  Third, evidence that Mr. Cole received millions of dollars from selling Iconix stock is the type of evidence of a defendant's wealth that, as many courts have recognized, presents a serious danger of unfair prejudice.

## FACTUAL BACKGROUND

Mr. Cole is the founder of Iconix Brand Group and served as its Chairman and CEO until August 2015.  Almost ten years before the transactions referenced in the indictment, in March and December 2005, as disclosed in the Company's public SEC filings, Iconix awarded Mr. Cole ten-year stock options.  The options gave Mr. Cole the right to purchase (a) 800,000 shares of Iconix stock at a price of $4.62 per share on or before March 29, 2015 and (b) 200,000 shares of Iconix stock at a price of $10.00 per share on or before December 28, 2015.  (*See* Iconix Brand Group, Inc., Statement of Changes in Beneficial Ownership (Form 4) (Mar. 31, 2005) (attached as Exhibit A) (reporting March 29, 2005 acquisition by Neil Cole); Iconix Brand Group, Inc., Statement of Changes in Beneficial Ownership (Form 4) (Dec. 29, 2005) (attached as Exhibit B) (reporting December 28, 2005 acquisition by Neil Cole).)

In 2014, as those stock options were nearing their expiration dates, Mr. Cole explored the possibility of exercising the options.  After receiving authorization from the Company and its counsel, on October 31, 2014, Mr. Cole exercised the stock options and sold the underlying shares to Barclays in a pre-arranged transaction.  Mr. Cole's sale of stock took place during an open trading window – i.e., a period (typically following an earnings announcement) in which officers and directors of a public company are authorized

2

to trade the company's stock in the open market.[1]  Mr. Cole timely filed with the SEC a

Form 4 disclosing the details of the transaction.  (*See* Iconix Brand Group, Inc., Statement

of Changes in Beneficial Ownership (Form 4) (Nov. 4, 2014) (attached as Exhibit E)

(reporting October 31, 2014 sale by Neil Cole).)  Following Mr. Cole's sale of stock in

October 2014, Mr. Cole still continued to hold more than two million shares of Iconix stock

and subsequently increased his overall position in March 2015.  (*See* Iconix Brand Group,

Inc., Statement of Changes in Beneficial Ownership (Form 4) (Mar. 9, 2015) (attached as

Exhibit F) (reporting March 5, 2015 acquisition by Neil Cole).)  Mr. Cole ultimately

incurred substantial losses that exceeded the amount of his gain on the October 2014 stock

sale.

On March 16, 2020, as part of its pretrial disclosures, the government

provided notice to the defense that it intends to call at trial a non-expert, summary witness

from the SEC to provide testimony concerning, among other things, "the profits realized

from Neil Cole's sale of Iconix stock in or about October 2014."  (March 16, 2020 Letter

from Government, at 1 (attached as Exhibit G).)  The government's notice states that this

witness will be providing testimony that is "most accurately classified as summary

testimony rather than expert testimony."  (*Id.*)  In addition, it appears that the government

plans to offer Barclays records relating to the transaction.  The government has provided

no expert notice relating to the stock sale, and its deadline for doing so has passed.

---

[1]    Other Iconix executives and directors – whom the government does not allege are co-conspirators – also sold Iconix stock during the same trading window.  (*See* Iconix Brand Group, Inc., Statement of Changes in Beneficial Ownership (Form 4) (Oct. 31, 2014) (attached as Exhibit C) (reporting October 30, 2014 sale by Executive Vice President David Blumberg); Iconix Brand Group, Inc., Statement of Changes in Beneficial Ownership (Form 4) (Nov. 7, 2014) (attached as Exhibit D) (reporting November 5, 2014 sale by board member Mark Friedman).)

**ARGUMENT**

**I.     EVIDENCE OF MR. COLE'S STOCK SALE PROCEEDS IS
        IRRELEVANT AND SHOULD BE EXCLUDED**

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." Fed. R. Evid. 401. In the absence of an established causal connection between the alleged misstatements and the Iconix stock price at the time of Mr. Cole's stock sale, the proceeds received by Mr. Cole from that stock sale are not probative of any fact at issue. Accordingly, the Court should exclude evidence of Mr. Cole's stock sale proceeds, just as other courts have done in similar circumstances.

Mr. Cole acquired the shares at issue through the exercise of stock options he was granted by the Company in 2005 in his role as CEO. For a defendant's compensation to be relevant to allegations of fraud, there must be an actual connection between the alleged fraud and that compensation. *See, e.g.*, Transcript of Telephonic Conference at 20:5–7, *United States* v. *Shapiro*, No. 15 Cr. 155 (RNC) (D. Conn. Apr. 24, 2017), ECF No. 372 (excluding evidence of defendants' compensation in securities fraud case because, even if the fraud affected the defendants' compensation, the "compensation numbers themselves don't tell us to what extent the defendants' compensation was based on profits derived from fraudulent activities"); *United States* v. *Ferguson*, No. 6 Cr. 137 (CFD), 2007 WL 4240782, at *1 (D. Conn. Nov. 30, 2007) (excluding evidence of salary and bonus compensation as "irrelevant to the charges" but permitting evidence of deferred compensation plan that was tied to the alleged fraud). Where, as here, the government seeks to introduce evidence of a defendant's stock sale proceeds, it must therefore establish a causal connection between the alleged misstatements and the stock price at the time of

the sale; otherwise, no relationship exists between the alleged fraud and the stock sale proceeds. *S.E.C.* v. *Jensen*, No. CV 11-5316-R, 2013 WL 12129377, at \*6 (C.D. Cal. Mar. 13, 2013); *United States* v. *Singer*, No. 9:05-CR-00928, 2010 WL 146165, at \*4–5 (D.S.C. Jan. 8, 2010); *see also United States* v. *Ferguson*, 676 F.3d 260, 273–75 (2d Cir. 2011).

In *United States* v. *Singer*, for example, the government argued that evidence of the defendants' stock sale proceeds was probative of the defendants' motive and intent to commit accounting fraud.  Similar to what the government apparently proposes to do here, the government in *Singer* sought to argue what it characterized as "logical inferences," namely, that "the defendants engaged in fraud to make the stock value increase, which it did, and [that defendants], as a result, intended to unlawfully enrich themselves when they sold their stock." 2010 WL 146165, at \*4.  Rejecting that argument, the court described a fundamental "flaw" in the government's reasoning:  "[W]ithout an event analysis and expert testimony, it would be impossible, without unsupported speculation, for the jury to conclude that defendants' allegedly fraudulent conduct caused a rise in the stock price."  *Id.*  The evidence at issue, therefore, was not relevant because neither an increase in stock price nor resulting stock gains could be "attributed to the alleged conduct for which motive and intent [were] probative."  *Id.* at \*5.  Accordingly, the court excluded the evidence.

The court in *Singer* also rejected the government's claim that evidence of the defendants' stock sale proceeds was admissible to show that the defendants "derived economic benefit as a result of their fraud."  *Id.*  As the court explained, "[t]he issue is not whether the government argues that the intent was to inflate stock price and receive an economic benefit; the problem is in putting forth evidence to show intent, and putting forth

evidence of an actual rise in stock price, and then arguing to the jury that they are causally related, all without any expert testimony to substantiate that connection." *Id.*

Similarly, in *S.E.C.* v. *Jensen*, the SEC alleged that the defendant (a public company CEO) had falsely inflated the company's reported revenue to boost its stock price, and that he earned $9 million by selling stock at allegedly inflated prices. The court precluded the SEC from mentioning the $9 million figure at trial, explaining that the stock proceeds were "irrelevant" because they could not be attributed specifically to the alleged misstatements. 2013 WL 12129377, at *6. The causal link (between the charged conduct and the stock price) that the courts found lacking in *Singer* and *Jensen* is similarly lacking in this case.

In other accounting fraud cases, courts likewise have held that evidence of stock price movements (and resulting investment gains or losses) is not relevant in the absence of an established causal connection between the alleged misstatements and the stock price. In *United States* v. *Ferguson*, for example, the defendants were charged with securities fraud for allegedly engaging in a fraudulent transaction designed to artificially inflate publicly-reported financial results. At trial, the government introduced evidence of stock price movements on particular days following certain announcements related to the alleged accounting fraud. On appeal, the Second Circuit vacated the defendants' convictions, holding that the district court had abused its discretion in admitting the stock price evidence because it implied a cause-and-effect relationship (between the misstatements and stock price) when no relationship had been established by the government through expert testimony. 676 F.3d at 274–75.

In order to establish the necessary causal connection between the alleged misstatements and the Iconix stock price at the time of Mr. Cole's stock sale, the government would need to elicit expert testimony. Without an expert analysis, it would not be possible for the jury to disaggregate the myriad confounding factors contributing to the Company's stock price and isolate the impact of a particular alleged misstatement. *See United States* v. *Schiff*, 538 F. Supp. 2d 818, 835 (D.N.J. 2008) ("The reason for the use of expert testimony in this context is clear: the formulas for calculating the reaction of the market to specific disclosures are complicated and not common sense observations that could be left to the jury."); *see also Ferguson*, 676 F.3d at 273–75; *Singer*, 2010 WL 146165, at *4 ("causal connection" necessary to link stock price to allegedly fraudulent conduct "can only be established by an expert"); *In re Northern Telecom Ltd. Sec. Litig.*, 116 F. Supp. 2d 446, 456–57, 460 (S.D.N.Y. 2000) (expert must "perform an event study or similar analysis to remove the effects on stock price of market and industry information"); *In re Exec. Telecard, Ltd. Sec. Litig.*, 979 F. Supp. 1021, 1026 (S.D.N.Y. 1997) (expert must "distinguish between fraud-related and non-fraud related company specific influences on [company's] stock price").[2]

The government in this case, however, has provided no expert notice, and its deadline for doing so has passed. Instead of calling an expert, the government seeks simply to put before the jury, through a summary, non-expert witness, the amount of money generated by Mr. Cole's stock sale, with no basis for the jury to assess how, if at all, that

---

[2] For the same reason, it would be improper for the government to argue to the jury that the Iconix stock price was "inflated," or otherwise to suggest that the stock price increased as a result of alleged misstatements, absent expert testimony providing a proper evidentiary foundation for such a claim.

number would have differed absent the alleged misstatements.  That is precisely what the law does not permit the government to do.  Accordingly, the proposed summary evidence of Mr. Cole's stock sale proceeds should be excluded under Rule 401.

## II.      EVEN IF RELEVANT, THE EVIDENCE OF MR. COLE'S STOCK SALE PROCEEDS SHOULD BE EXCLUDED UNDER RULE 403

Even if the government could show that evidence of Mr. Cole's stock sale proceeds somehow is relevant to the charges, any probative value of that evidence would be seriously limited and "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Accordingly, even if the evidence has some relevance, which it does not, it should be excluded under Rule 403.

### A.      The Proposed Evidence Risks Misleading the Jury.

Evidence of Mr. Cole's stock sale proceeds would create a serious risk of misleading the jury by suggesting a connection between the amount of the stock sale proceeds and the charged conduct, even though there is none.  *See Ferguson*, 676 F.3d at 274–75 (holding that evidence misleadingly suggested to the jury that stock movements were the result of alleged misstatements).  Even as alleged by the government, the challenged transactions had only a minimal impact on the Company's reported financials. The indictment alleges, for example, that in 2014, Iconix overstated (a) reported revenue by a total of $11 million, representing just 2.4% of the Company's reported revenue of $461 million and (b) non-GAAP EPS by $0.08 per share, or just 3% of the Company's reported non-GAAP EPS of $2.78 per share.  Indictment ¶ 38.  The stock sale evidence thus "carries a danger of misleading the jury into believing that this was a [multi-million

8

dollar] fraud when in fact it wasn't." *Shapiro*, No. 15 Cr. 155, at 21:21–22.   The

government should not be permitted to invoke a substantial, unrelated dollar figure to

create a false and misleading impression about the magnitude and financial impact of the

alleged offense.

The stock sale evidence also risks misleading the jury into believing that

Mr. Cole was financially enriched, by many millions of dollars, *as a result of* the challenged

transactions when, in fact, there is no basis to conclude that *any* of the proceeds, much less

a material portion of it, is attributable to any alleged misstatement.  *See Ferguson*, 676 F.3d

at 274–75; *Jensen*, 2013 WL 12129377, at *6 (finding probative value of defendant's stock

sale proceeds "outweighed by a danger of unfair prejudice and confusing the issue[s]").[3]

### B.    The Proposed Evidence Would Create an Unnecessary Distraction and Risk Confusing the Jury.

If the government were permitted to introduce evidence of Mr. Cole's stock

sale proceeds, the defense would need to rebut that evidence through its own expert

testimony.  Specifically, Mr. Cole would seek to elicit expert testimony to demonstrate that

the stock sale proceeds were not materially impacted by the challenged transactions.  To

do so, an expert would have to rely on complicated formulas involving event studies and

statistical regression analyses, thereby adding further complexity to a trial the government

already has estimated may last four weeks and in which the defense plans to call other

---

[3]    Although the government has waived any right to call an expert witness by failing to provide the required notice, it is unlikely in any event that an expert could establish a connection between the challenged transactions and the stock price at the time of Mr. Cole's stock sale.  As discussed, even accepting the government's allegations, the challenged transactions had only a minimal impact on the Company's reported financials.  Moreover, the earnings announcement that preceded Mr. Cole's stock sale included other, more significant news that was favorable to the Company and entirely unrelated to the challenged transactions.

expert witnesses.  This would create an unnecessary distraction, cause undue delay, and risk confusing the jury.  *See Jensen*, 2013 WL 12129377, at \*5 (recognizing that expert testimony "measuring the exact amount of the stock inflation" could be relevant to defendant's motive, but finding that any probative value "is substantially outweighed by the danger of confusing the issues, misleading the jury, undue delay, and wasting time"); *see also United States* v. *Stewart*, 433 F.3d 273, 313 (2d Cir. 2006) (affirming exclusion of evidence that would result in a "mini-trial" in "an already lengthy and complex trial").

Further compounding the risk of confusion and undue delay, if the government is permitted to introduce evidence concerning the proceeds realized by Mr. Cole from the October 2014 stock sale, the defense likely would offer evidence about Mr. Cole's other Iconix stock holdings to provide necessary context to rebut the government's claims.  For example, the defense would introduce evidence showing that Mr. Cole maintained a substantial position in Iconix stock (over two million shares), actually *increased* his holdings in March 2015, and, by holding Iconix stock, ultimately lost more money than he made through the October 2014 sale.  In fact, in dismissing a securities class action lawsuit in which the plaintiffs alleged that Mr. Cole's October 2014 stock sale provided evidence of motive, another court in this District found that Mr. Cole's stock holdings in fact were "wholly *inconsistent* with fraudulent intent."  *In re Iconix Brand Grp., Inc.*, No. 15 CIV. 4860 (PGG), 2017 WL 4898228, at \*16 (S.D.N.Y. Oct. 25, 2017) (quotation marks omitted) (emphasis added).

### C.    The Proposed Evidence Would Create a Risk of Unfair Prejudice.

Finally, the stock sale evidence should be excluded under Rule 403 because of the risk of unfair prejudice.  The Supreme Court has long recognized that "appeals to class prejudice are highly improper, and cannot be condoned and trial courts should ever

be alert to prevent them." *United States* v. *Socony-Vacuum Oil Co.*, 310 U.S. 150, 239

(1940).  Evidence that Mr. Cole received millions of dollars from the sale of Iconix stock

would be "highly prejudicial" and "play[] into a bias against people of wealth." *United

States* v. *Cassese*, 290 F. Supp. 2d 443, 457 (S.D.N.Y. 2003), *aff'd on other grounds*, 428

F.3d 92 (2d Cir. 2005).  Indeed, in both civil and criminal cases, courts routinely preclude

parties from offering evidence that may arouse prejudice on the basis of a defendant's

wealth, even if that evidence may be probative.  *See, e.g.*, *United States* v. *Stahl*, 616 F.2d

30, 33 (2d Cir. 1980) (overturning conviction where prosecutor "appeal[ed] to class

prejudice"); *La Plante* v. *Am. Honda Motor Co.*, 27 F.3d 731, 740 (1st Cir. 1994)

("Although the evidence of [defendant's] profits from ATV sales was of some probative

value, we believe the danger that this evidence would unfairly prejudice the jury was

overwhelming.").  "[B]ecause financial gain is the motive for committing almost all

financial crimes," courts must be wary of "permitting the introduction of evidence that is

probative of nothing more than the defendant's financial success."  *United States* v.

*Bradley*, 644 F.3d 1213, 1271 (11th Cir. 2011).  Evidence of a multi-million dollar financial

gain from the sale of stock – particularly in the face of current economic challenges

plaguing many in New York and throughout the country – presents a serious danger of

undue prejudice, which substantially outweighs any possible probative value of the stock

sale evidence.

11

## **CONCLUSION**

For all of these reasons, the government should be precluded from introducing evidence of the proceeds of Mr. Cole's stock sale.

Dated:  September 10, 2021

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP

By: /s/ Lorin L. Reisner
Lorin L. Reisner
Richard C. Tarlowe
Andrew D. Reich
1285 Avenue of the Americas
New York, New York 10019-6064
T:  212-373-3000

*Attorneys for Neil Cole*

12