UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>             v.<br><br>NEIL COLE,<br><br>                         Defendant. | 19 Cr. 869 (ER) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF NEIL COLE'S MOTIONS *IN LIMINE***

PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
Lorin L. Reisner
Richard C. Tarlowe
Andrew D. Reich
1285 Avenue of the Americas
New York, New York 10019-6064
T:  212-373-3000

*Attorneys for Neil Cole*

Dated:  September 29, 2021

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT...................................................................................................................................2

I. EVIDENCE OF THE PROCEEDS OF MR. COLE'S STOCK SALE
   SHOULD BE EXCLUDED. ................................................................................................2

   A. Evidence of Mr. Cole's Stock Sale Proceeds Is Irrelevant. .........................2

   B. Even if Relevant, the Evidence of Mr. Cole's Stock Sale
      Proceeds Should Be Excluded Under Rule 403. .........................................6

II. EVIDENCE OF MR. COLE'S FINANCIAL RESOURCES AND
    PERSONAL SPENDING SHOULD BE EXCLUDED. ........................................8

CONCLUSION................................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Abu Dhabi Com. Bank* v. *Morgan Stanley & Co.*,
   No. 08 Civ. 7508 (SAS), 2013 WL 1155420 (S.D.N.Y. Mar. 20, 2013) ......................3

*United States* v. *Block*,
   No. 16 Cr. 595 (JPO) (S.D.N.Y. June 5, 2017),
   *aff'd*, 797 F. App'x 668 (2d Cir. 2020)..........................................................................4

*United States* v. *Bradley*,
   644 F.3d 1213 (11th Cir. 2011) ......................................................................................7

*United States* v. *Cassese*,
   290 F. Supp. 2d 443 (S.D.N.Y. 2003) ...........................................................................7

*In re Centerline Holdings Co. Sec. Litig.*,
   613 F. Supp. 2d 394 (S.D.N.Y. 2009) ...........................................................................9

*eBay Domestic Holdings, Inc.* v. *Newmark*,
   16 A.3d 1 (Del. Ch. 2010) ............................................................................................10

*In re Francesca's Holdings Corp. Secs. Litig.*,
   Nos. 13-cv-6882, 13-cv-7804 (RJS),
   2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015)...............................................................10

*La Plante* v. *American Honda Motor Co., Inc.*,
   27 F.3d 731 (1st Cir. 1994)............................................................................................7

*United States* v. *Mitchell*,
   172 F.3d 1104 (9th Cir. 1999) .......................................................................................9

*United States* v. *Petit*,
   No. 19-cr-850 (JSR) (S.D.N.Y. Feb. 21, 2021)..............................................................9

*United States* v. *Quattrone*,
   441 F.3d 153 (2d Cir. 2006) ........................................................................................10

*United States* v. *Reyes*,
   660 F.3d 454 (9th Cir. 2011) .....................................................................................5, 7

*Rombach* v. *Chang*,
   355 F.3d 164 (2d Cir. 2004) ..........................................................................................9

*United States* v. *Shapiro*,
   No. 15 Cr. 155 (RNC) (D. Conn. Apr. 24, 2017) ......................................................3, 7

*United States* v. *Singer*,
    No. 9:05-CR-00928, 2010 WL 146165 (D.S.C. Jan. 8, 2010) ......................................3

*United States* v. *Socony-Vacuum Oil. Co.*,
    310 U.S. 150 (1940) ..................................................................................................7

*United States* v. *Stahl*,
    616 F.2d 30 (2d Cir. 1980) .......................................................................................7

**OTHER AUTHORITIES**

Fed. R. Evid. 403 ...........................................................................................................passim

This reply memorandum of law is respectfully submitted in further support of Neil Cole's motions *in limine*.

## **PRELIMINARY STATEMENT**

Mr. Cole's motions *in limine* demonstrated that the government should be precluded from offering three categories of evidence: (1) the financial proceeds of Mr. Cole's sale of Iconix stock in October 2014 following the exercise of long-held stock options that were approaching their expiration dates; (2) Mr. Cole's financial resources that he accumulated throughout his successful career, and his personal spending; and (3) an SEC investigation and settlement (on a neither-admit-nor-deny basis) concerning unrelated events that took place more than two decades ago at Iconix's predecessor company, Candie's, Inc. The government has indicated that it no longer seeks to offer evidence of Mr. Cole's wealth or personal spending, and the government's arguments as to the other categories of evidence are meritless.

*First*, in opposing Mr. Cole's motion to exclude his stock sale proceeds, the government largely focuses on the purported relevance of the *fact* and *timing* of the transaction, but does not meaningfully engage with the actual subject of Mr. Cole's motion: evidence of the monetary *proceeds* from the sale of stock. That evidence is irrelevant because it lacks any connection to the alleged misstatements, and even if it had some limited probative value, which it does not, it should be excluded under Rule 403.

*Second*, the government concedes that it will not introduce in its case-in-chief "evidence of how Mr. Cole spent his money" or "generalized information about [his] wealth." (Gov. Opp. at 15.) As the government knows, such evidence plainly would be improper. The government persists, however, in its effort to place before the jury large dollar figures that serve no legitimate purpose and obviously are intended to appeal to

potential class prejudice. The Court should not permit the government to sneak this evidence in through the back door by claiming it is probative of motive, intent, and materiality. The evidence is irrelevant and also should be excluded under Rule 403.

*Third*, the government advances no new arguments in support of the admission of the Candie's evidence in its opposition. The government's arguments already have been addressed in Mr. Cole's memorandum of law in opposition to the government's motion *in limine* to admit the Candie's evidence and therefore are not repeated here.

## ARGUMENT

**I.  EVIDENCE OF THE PROCEEDS OF MR. COLE'S STOCK SALE SHOULD BE EXCLUDED.**

Evidence of the monetary proceeds of Mr. Cole's sale of Iconix stock in October 2014 following the exercise of stock options is irrelevant and, in any event, should be excluded under Rule 403.

**A.  Evidence of Mr. Cole's Stock Sale Proceeds Is Irrelevant.**

The government contends that the so-called "stock sale evidence" will be offered to "demonstrate" Mr. Cole's "motive" and "intent." (Gov. Opp. at 1.) The government may use the fact of the options' exercise and subsequent sale of stock for that purpose, but the *proceeds* that Mr. Cole received from the stock sale are irrelevant (and highly misleading) because there is no causal link between the alleged misstatements and the size of the proceeds received.

The government's opposition (and 3500 material recently produced by the government) confirms that the government intends to argue (or at least strongly imply) that Mr. Cole received "net proceeds of over $28 million" *as a result of* the alleged fraud. (Gov. Opp. at 5.) But the jury will have no basis to assess whether and to what extent any portion

2

of those proceeds was "derived from" the allegedly "fraudulent activities."  Telephonic Conference Tr. at 20, *United States* v. *Shapiro*, No. 15 Cr. 155 (RNC) (D. Conn. Apr. 24, 2017), ECF No. 372.  The amount of proceeds—as distinguished from the fact of the transaction—is therefore irrelevant to motive and intent.  *See id*.; *United States* v. *Singer*, No. 9:05-CR-00928, 2010 WL 146165 (D.S.C. Jan. 8, 2010); *Abu Dhabi Com. Bank* v. *Morgan Stanley & Co.*, No. 08 Civ. 7508 (SAS), 2013 WL 1155420, at *6–7 (S.D.N.Y. Mar. 20, 2013) (excluding "generalized evidence of [defendant rating agencies'] profits" as irrelevant but allowing evidence of "how the fees and incentives for the [specific financial product at issue] differed from fees for ratings of other structures" as probative of motive).

The amount of proceeds only could be potentially relevant if the government could establish that the stock price in fact was inflated at the time of the transaction due to the alleged misstatements.  Just as the court held in *Singer*, however, the proposed evidence is irrelevant because the stock price (and, in turn, proceeds of the sale of stock) cannot be "attributed to the alleged conduct for which motive and intent are probative." 2010 WL 146165, at *5.  The government asserts, without support, that the "nexus between [Mr. Cole]'s fraud and the stock price" is stronger than that in *Singer*.  (Gov. Opp. at 11–12.)  There is no basis for that claim.

In fact, the government's claim is contradicted by the fact that the Iconix stock price was higher *before* the allegedly inflated results were announced than *after*.  Prior to the announcement of second quarter 2014 results (which included the allegedly "inflated" revenue from the SEA 2 transaction), the Iconix stock price was $42.71 per share.  When the stock sale took place, after the announcement of both second quarter and

3

third quarter results (which included the allegedly "inflated" revenue from the SEA 3 transaction), the stock price was approximately $40.01.  (*See* Iconix Historical Stock Data Report at 2–3, Bloomberg Finance (attached as Exhibit A).)   That means that if Mr. Cole sold Iconix stock *prior to* the alleged misstatements, he would have realized *more* proceeds than he did by selling *after* the alleged misstatements.  This fact reinforces the misleading nature of the evidence of the stock sale proceeds.

Although the government relies on *United States* v. *Block* in support of its argument that the stock sale evidence should be admitted (Gov. Opp. at 8), the Court in *Block* expressly recognized the same fundamental principle on which Mr. Cole's motion to preclude this evidence is based.  In *Block*, Judge Oetken held that "evidence about the amount and structure of [the defendant's] compensation and bonus and his [company] stockholdings" is admissible only "*insofar as they are tied to earnings numbers or in another way connected to the alleged fraud*." Hr'g Tr. at 9, No. 16 Cr. 595 (JPO) (S.D.N.Y. June 5, 2017), ECF No. 107 (emphasis added), *aff'd*, 797 F. App'x 668 (2d Cir. 2020). Here, the amount of proceeds is not "connected to the alleged fraud." *Id.*

Mr. Cole does not, as the government asserts, contend that stock sale evidence necessarily is irrelevant "without expert testimony in the form of an event study." (Gov. Opp. at 1.)  But, here, the government has not established—through an event study or otherwise—the requisite connection between the stock price (and, thus, the proceeds from the stock sale), on the one hand, and the alleged misstatements, on the other.

Mr. Cole's incentive-based stock compensation plan—which the government discusses in its opposition—provides a useful comparison to illustrate the

4

distinction.[1]  If, for example, the government could establish a difference between (a) the number of performance-based shares that vested based on the company's reported results and (b) the number of such shares that would have vested absent the alleged "overstatement" of revenue, that compensation evidence might be tied to the alleged misstatement.  By contrast, the government cannot show that any portion (much less what portion) of the stock price at the time of Mr. Cole's stock sale was attributable to any alleged misstatement and, therefore, cannot show that the $28 million figure it wishes to present to the jury is in any way derived from the alleged misstatements.[2]

This same principle also was recognized by the court in *United States* v. *Reyes*, 660 F.3d 454 (9th Cir. 2011), which the government cites for the proposition that "the stock sale evidence offers substantial and specific evidence of Cole's motive and intent."  (Gov. Opp. at 13 (citing *Reyes*, 660 F.3d at 464).)  In *Reyes*, however, the court allowed only evidence of the gain related to the exercise of stock options *that were directly tied to the charged conduct*.  660 F.3d at 463–64.  Moreover, the court recognized the potential for prejudice and "forbade the introduction of evidence" showing the specific amount of money that Reyes made from the sale of his company's stock.  *Id.*

---

[1]   The government's suggestion that Mr. Cole received additional incentive-based compensation as a result of the alleged misstatements (Gov. Opp. at 8) is wrong.  We expect that the evidence will demonstrate that the government's allegations of inflated revenue had *no* impact on Mr. Cole's incentive-based compensation.

[2]   Indeed, the stock price the day prior to the third quarter 2014 earnings announcement was $37.84, and on the day of the announcement, the stock closed at $39.44.  (Exhibit A at 3.)  Given the overall information included in that announcement, it would be entirely unreasonable to attribute that increase to the reporting of an alleged incremental $6 million of revenue (as compared to total revenue that quarter of $113.8 million).  (*See* Gov. Opp. Ex. K at 4.)  To further highlight the problem with the government's intended approach, even if one were to assume that the increase in stock price could be attributed *entirely* to the alleged misstatement, that would translate to incremental proceeds of approximately $1.6 million.

5

Finally, to the extent that the Court credits the government's claim that it wishes to admit evidence of Mr. Cole's "sale of stock" to prove that any alleged misstatement of Iconix's financial results was "in connection with" the purchase or sale of securities (Gov. Opp. at 14), that has no bearing on the admissibility of the stock sale *proceeds*. The fact of the purchase or sale of stock is what matters for those purposes; the amount of money generated from the purchase or sale is wholly irrelevant.[3]

**B.   Even if Relevant, the Evidence of Mr. Cole's Stock Sale Proceeds Should Be Excluded Under Rule 403.**

Even if the amount of proceeds from Mr. Cole's stock sale was relevant (and it is not), it should be excluded under Rule 403 because any limited probative value is substantially outweighed by the risk of unfair prejudice, confusing the issues and misleading the jury.

For the reasons described, the evidence is misleading and unfairly prejudicial because it suggests (and the jury is likely to believe) that Mr. Cole received $28 million from the alleged misstatements when, in fact, no portion of that can be attributed to the alleged misstatements. The government's improper attempt to link the alleged misstatements to that substantial dollar figure is clear from a demonstrative it recently produced as part of the 3500 material for its "summary witness" that directly ties the supposed "Revenue Inflation" and "Non-GAAP Earnings Per Share ('EPS') Inflation" to

---

[3] The government also argues that the stock sale is relevant because Mr. Cole's concerns about the timing and appearance of the sale demonstrate his "personal views on the materiality of his misstatements." (Gov. Mot. at 1.) Again, this has no bearing on the relevance or admissibility of the *proceeds* from the sale. Moreover, as the government surely knows, any concern that was expressed about the stock sale months later had nothing to do with "the risk the [alleged] scheme would be discovered." (Gov. Opp. at 6.) The record is clear that such concern related to the timing of the stock sale relative to an unrelated change the outside auditors made to the presentation of certain information in the company's third-quarter 10-Q. The record also is clear that Mr. Cole was unaware of that change at the time of the stock transaction.

6

"Mr. Cole's Profits from Sale of Iconix Securities." (*See* Production No. 3622-014 at 31 (attached as Exhibit B).)

The same concerns that led the courts in *Shapiro* and *Reyes* to exclude compensation evidence are applicable here. In *Shapiro*, for example, the court held that "the probative value of the actual compensation numbers . . . is substantially outweighed by the danger of unfair prejudice" because "jurors would be struck by these numbers," which could "unduly prejudice a defendant during jury deliberations," and, further, would "misl[ead]" them into thinking the total compensation was the result of fraud. *Id.* at 20–21. As in *Shapiro*, the government here will not be able to establish what Mr. Cole's proceeds "would have been without the [allegedly] fraudulent" statements. *Id.* at 20. Similarly, in *Reyes*, the court concluded that evidence of the amount of stock sale proceeds would be "unduly prejudicial" when such proceeds did not flow directly from the charged conduct. 660 F.3d at 464.

Moreover, and especially in light of its limited probative value, the actual dollar number presents a serious risk of unfair prejudice based on Mr. Cole's wealth. The government is overly dismissive of cases cited in Mr. Cole's motion acknowledging the dangers of appeals to class prejudice. (*See* Gov. Opp. at 13–14 (discussing *United States* v. *Socony-Vacuum Oil. Co.*, 310 U.S. 150, 238–39 (1940); *United States* v. *Cassese*, 290 F. Supp. 2d 443, 457 (S.D.N.Y. 2003); *United States* v. *Stahl*, 616 F.2d 30, 32–33 (2d Cir. 1980); *La Plante* v. *American Honda Motor Co., Inc.*, 27 F.3d 731, 740 (1st Cir. 1994); and *United States* v. *Bradley*, 644 F.3d 1213, 1272 (11th Cir. 2011)).) These cases reinforce the danger of unfair prejudice resulting from such evidence.

7

Finally, this evidence risks confusing the issues before the jury. If the government presents this evidence, the defense will need to demonstrate to the jury that the stock sale proceeds were *not* impacted by the alleged misstatements, which necessarily will raise complex and distracting issues that risk needlessly confusing the jury.

The Court should therefore grant Mr. Cole's motion *in limine* to exclude evidence of the stock sale proceeds.

## II.   EVIDENCE OF MR. COLE'S FINANCIAL RESOURCES AND PERSONAL SPENDING SHOULD BE EXCLUDED.

In response to Mr. Cole's motion *in limine* to exclude evidence of his financial resources and spending, the government now concedes that it will not offer "evidence of how Mr. Cole spent his money" and "generalized information about the wealth of the defendant" in its case-in-chief. (Gov. Opp. at 15.) The government argues that it nevertheless should be permitted to introduce so-called "motive, intent, and materiality evidence" concerning "(a) the nature of Cole's Iconix compensation plan; (b) the fact, size, and concentration of Iconix stock holdings as a percentage of his overall wealth; and (c) the fact, size, and timing of Cole's sale of Iconix stock." (Gov. Opp. at 15.)

Although there may be specific objections to the particular evidence offered, Mr. Cole does not object generally to evidence of his incentive-based compensation plan. But the government's transparent effort to put before the jury prejudicial evidence of his wealth (*e.g.*, the market value of his Iconix holdings and his overall net worth) disguised as purported evidence of motive, intent or materiality is improper and should not be permitted. (Gov. Opp. at 15.) This evidence is irrelevant and, even if relevant, should be excluded under Rule 403.

8

The defense has no objection to evidence that Mr. Cole held Iconix stock. The specific amounts of stock, the market value of the stock and how that market value compared to Mr. Cole's overall estimated net worth are irrelevant, unnecessary and unfairly prejudicial. "[M]otives of compensation and job security . . . have been held not to be sufficient to give rise to an inference of fraudulent intent." *In re Centerline Holdings Co. Sec. Litig.*, 613 F. Supp. 2d 394, 401 (S.D.N.Y. 2009); *see also Rombach* v. *Chang*, 355 F.3d 164, 177 (2d Cir. 2004) ("'If scienter could be pleaded on that basis [of an executive having an incentive to increase stock prices] alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.'") (quoting *Acito* v. *IMCERA Grp.*, 47 F.3d 47, 54 (2d Cir. 1995)).

The dollar value of Mr. Cole's stock holdings (Gov. Opp. at 2 (citing $131 million figure)) is not probative of motive or intent because there is no reason to believe the absolute amount increased or decreased his incentive to commit fraud. *See United States* v. *Mitchell*, 172 F.3d 1104, 1108–09 (9th Cir. 1999) ("A rich man's greed is as much a motive to steal as a poor man's poverty. Proof of either, without more, is likely to amount to a great deal of unfair prejudice with little probative value."). Moreover, the government cannot establish the predicate necessary to admit such evidence. In *Block*, for example, the court held that it would only "admit evidence" about "the amount" of the defendant's "stockholdings insofar as they are tied to earnings numbers or in another way connected to the alleged fraud asserted by the government." Hr'g Tr. at 9, ECF No. 107. Here, the government has not established any such connection.[4]

---

[4] Although the trial court in *Petit*, No. 19 Cr. 850 (S.D.N.Y.), ultimately permitted the government to present the dollar value of the defendants' vested shares, Trial Tr. at 2031 (Nov. 11, 2020), ECF No. 185, the court did not address why the dollar value (as opposed to the fact of stock ownership) was necessary to establish motive, or whether the better approach under Rule 403 would be to admit the fact

9

In addition, with respect to the government's motive argument, the size of Mr. Cole's holdings and their dollar value are not necessary to establish the fact that Mr. Cole was a shareholder. There also is no dispute that as CEO, Mr. Cole of course wanted to maximize the value of the company; he had an obligation to do so. *See In re Francesca's Holdings Corp. Secs. Litig.*, Nos. 13-cv-6882, 13-cv-7804 (RJS), 2015 WL 1600464, at *11 (S.D.N.Y. Mar. 31, 2015) (noting a company's "obligation to shareholders" to increase value by negotiating the best possible terms of a transaction); *eBay Domestic Holdings, Inc.* v. *Newmark*, 16 A.3d 1, 34 (Del. Ch. 2010) (noting "the fiduciary duties and standards" "to promote the value of the corporation for the benefit of its stockholders"). Even if there were some additional probative value to the amount of Mr. Cole's stockholdings, as compared to the facts that Mr. Cole was a shareholder and the CEO, any marginal probative value would be substantially outweighed by the danger of unfair prejudice from telling the jury that Mr. Cole's stock was worth over $100 million. That is the type of "evidence of [] wealth" that the Second Circuit has cautioned "can unduly prejudice jury deliberations." *United States* v. *Quattrone*, 441 F.3d 153, 187 (2d Cir. 2006).

For all these reasons, Mr. Cole's motion *in limine* to exclude evidence of wealth should be granted.

## CONCLUSION

For all of these reasons, and the reasons set forth in Mr. Cole's motions *in limine*, the Court should grant each of Mr. Cole's motions *in limine*.

---

of stock ownership without creating the risk of unfair prejudice from showing the jury that, in this case, the defendant's holdings had a market value of over $100 million.

Dated:  September 29, 2021

           PAUL, WEISS, RIFKIND, WHARTON
           & GARRISON LLP

         By: <u>/s/ Lorin L. Reisner</u>
           Lorin L. Reisner
           Richard C. Tarlowe
           Andrew D. Reich
           1285 Avenue of the Americas
           New York, New York 10019-6064
           T:  212-373-3000

           *Attorneys for Neil Cole*