PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL     (1946-1956)
SIMON H. RIFKIND     (1950-1995)
LOUIS S. WEISS       (1927-1950)
JOHN F. WHARTON      (1927-1977)

WRITER'S DIRECT DIAL NUMBER

(212) 373-3250

WRITER'S DIRECT FACSIMILE

(212) 492-0250

WRITER'S DIRECT E-MAIL ADDRESS

lreisner@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
SCOTT A. BARSHAY
PAUL M. BASTA
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
BRIAN BOLIN
ANGELO BONVINO
ROBERT A. BRITTON
DAVID W. BROWN
WALTER BROWN*+
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
MEREDITH DEARBORN*+
ARIEL J. DECKELBAUM
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
ANDREW J. FOLEY
VICTORIA S. FORRESTER
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
MELINDA HAAG*
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
JOSHUA HILL
MICHELE HIRSHMAN
JARRETT R. HOFFMAN
ROBERT E. HOLO
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
KYLE J. KIMPLER
ALEXIA D. KORBERG
ALAN W. KORNBERG

DANIEL J. KRAMER
BRIAN KRAUSE
CAITH KUSHNER
DAVID K. LAKHDHIR
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
RANDY LUSKEY*+
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
BRAD R. OKUN
LINDSAY B. PARKS
ANDREW M. PARLEN
DANIELLE C. PENHALL
CHARLES J. PESANT
JESSICA E. PHILLIPS*
AUSTIN POLLET*+
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
CULLEN L. SINCLAIR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
DAVID TARR
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
KRISHNA VEERARAGHAVAN
JEREMY M. VEIT
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
JOHN WEBER
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
ADAM WOLLSTEIN
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR
+ADMITTED ONLY TO THE CALIFORNIA BAR

October 2, 2021

**Via ECF**

Honorable Edgardo Ramos
United States District Judge
United States Courthouse
40 Foley Square
New York, NY 10007

    Re:    *United States* v. *Neil Cole,*
            19 Cr. 869 (ER)

Dear Judge Ramos:

        As discussed at the final pretrial conference, we respectfully submit this letter to request that the Court reconsider its decision to allow the government to introduce evidence of the *proceeds* of Mr. Cole's sale of Iconix stock in 2014. To be clear, we do not object to the government introducing evidence of Mr. Cole's compensation, the fact that he was a large shareholder of Iconix, or that he exercised stock options and sold the resulting shares of Iconix stock on October 31, 2014. We object to the introduction of the *dollar amount of the proceeds* from that stock sale because that evidence is irrelevant, unfairly prejudicial and highly misleading.

        The stock options were awarded to Mr. Cole by the board of directors of Iconix in 2005, the year in which Iconix was formed, and approximately nine years before the stock sale at issue. At the time the options were granted, in March 2005 and December 2005, the Iconix stock price was $4.62 per share and $10.00 per share, respectively. Over the next nine years, as the company grew from just two brands to over thirty brands, the company's market value increased exponentially. The day *prior* to the first earnings announcement including allegedly inflated results, the Iconix stock price was $38.65.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Honorable Edgardo Ramos     2

Thus, from the time of the option grant in March 2005, the Iconix stock price increased by more than 700%, and the company's market capitalization from approximately $130 million to approximately $2 billion, *before* any allegedly false information was provided to the market. Virtually all of Mr. Cole's stock sale proceeds reflect that enormous creation of shareholder value over that nine-year period, and *not* any allegedly fraudulent activity. In fact, had Mr. Cole exercised the stock options and sold the underlying shares prior to the first allegedly false filing (and, thus, *before* the stock price possibly could have been impacted by any of the alleged misstatements), his stock sale proceeds would have been approximately $27,140,000, instead of the approximately $28,000,000 in proceeds from the sale of stock *after* the allegedly inflated results were announced to the market.

        The $28 million figure the government wants to put before the jury is not only inflammatory, but highly misleading because the jury will draw the incorrect inference that it represents proceeds from the alleged misstatements when, in fact, it does not. Again, we do not object to evidence of the fact of the stock sale and its timing relative to the company's third quarter earnings announcement, and we understand that the government will use that evidence to argue that Mr. Cole had a motive to engage in conduct that he believed would help the stock price. We do not object to such arguments.

        The $28 million figure, however, is not relevant because it bears no logical connection to the alleged misstatement. Instead, as demonstrated above, it represents nearly nine years of appreciation in the stock. The difference between the stock price prior to the first allegedly false filing ($38.65) and the price at which Mr. Cole sold stock ($39.51) was just $0.86 per share. Even if there were some incremental probative value to the *proceeds* (as compared to the *fact* and *timing* of the stock sale), and there is not, it should be excluded under Rule 403 because it is unfairly prejudicial and misleading in that it will falsely suggest to the jury that Mr. Cole profited from the alleged scheme to the tune of $28 million.

        In *United States* v. *Singer*, the court rejected the same argument the government seeks to make here as logically flawed, and explained why the stock sale proceeds are not relevant to motive or intent. The government in *Singer* sought to argue what it characterized as "logical inferences," namely, that "the defendants engaged in fraud to make the stock value increase, which it did, and [that defendants], as a result, intended to unlawfully enrich themselves when they sold their stock." No. 5 Cr. 928, 2010 WL 146165, at *4 (D.S.C. Jan. 8, 2010). The fundamental "flaw" in the government's reasoning, according to the court, was that "it would be impossible, without unsupported speculation, for the jury to conclude that defendants' allegedly fraudulent conduct caused a rise in the stock price." *Id*. The court concluded therefore that the evidence was not relevant because neither an increase in stock price nor resulting stock gains could be "attributed to the alleged conduct for which motive and intent [were] probative." *Id.* at *5. Similarly, in *S.E.C.* v. *Jensen*, the court precluded the SEC from mentioning that the defendant, a public-company CEO charged with falsely inflating the company's revenue, had made $9 million by selling his company's stock at allegedly inflated prices. The court

Honorable Edgardo Ramos                                                                                            3

concluded that the proceeds were "irrelevant" because they could not be attributed specifically to the alleged misstatements. No. 11 CV. 5316, 2013 WL 12129377 (C.D. Cal. Mar. 13, 2013), at *6. The same is true here: the $28 million in proceeds cannot be attributed to the allegedly false statements and thus is not probative of Mr. Cole's motive or intent.[1] The dollar amount of the proceeds from the stock sale should therefore be excluded as irrelevant.

Even if the dollar amount of the proceeds had some incremental probative value over the fact and timing of the stock sale, the danger of admitting the total dollar value substantially outweighs any conceivable probative value. Fed. R. Evid. 403. The evidence presents a serious "danger of misleading the jury into believing that this was a [$28 million] fraud when in fact it wasn't." Conference Tr. at 21, *United States* v. *Shapiro*, No. 15 Cr. 155 (D. Conn. Apr. 24, 2017), ECF No. 372. The evidence will misleadingly suggest a connection between the amount of the stock sale proceeds and the charged conduct, even though there is none. *See United States* v. *Ferguson*, 676 F.3d 260, 274–75 (2d Cir. 2011) (holding that evidence misleadingly suggested to the jury that stock movements were the result of alleged misstatements). In addition to lacking probative value and presenting a serious risk of misleading and confusing the jury, the evidence also presents a risk of unfair prejudice because the large dollar figure "play[s] into a bias against people of wealth." *United States* v. *Cassese*, 290 F. Supp. 2d 443, 457 (S.D.N.Y. 2003); *see also United States* v. *Reyes*, 660 F.3d 454, 463–64 (9th Cir. 2011) (affirming the decision of the district court, which "showed sensitivity to undue prejudice concerns when it forbade the introduction of evidence that [the defendant] made $500 million from the sale of [his company]'s stock, reasoning that such evidence was unduly prejudicial, whereupon the parties agreed that the jury would be told only that [the defendant] sold 'a significant amount of [the company]'s stock'").

For all these reasons, we respectfully request that the Court reconsider Mr. Cole's motion to exclude evidence of the stock sale proceeds. Thank you for your consideration.

Respectfully submitted,

/s/ Lorin L. Reisner
Lorin L. Reisner

---

[1] Iconix's stock price increased only slightly after the third quarter earnings release, from $37.84 per share to $39.44 per share. Even if this modest increase could be attributed entirely to the alleged misstatement (which is an unreasonable assumption given other positive information in the earnings release and the government's concession that Iconix would have met third quarter consensus EPS estimates *even without the alleged inflation of revenue*), that increase would account for just a small fraction of the $28 million in proceeds from the stock sale.