**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON  (1946-1991)
RANDOLPH E. PAUL  (1946-1956)
SIMON H. RIFKIND  (1950-1995)
LOUIS S. WEISS  (1927-1950)
JOHN F. WHARTON  (1927-1977)

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

HONG KONG CLUB BUILDING, 12TH FLOOR
3A CHATER ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3250

WRITER'S DIRECT FACSIMILE
(212) 492-0250

WRITER'S DIRECT E-MAIL ADDRESS
lreisner@paulweiss.com

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
DAVID J. BALL
SCOTT A. BARSHAY
PAUL M. BASTA
JOHN F. BAUGHMAN
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
ROBERT BRITTON
DAVID W. BROWN
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
RACHAEL G. COFFEY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
ANDREW J. FOLEY
ANDREW J. FORMAN*
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MEREDITH J. KANE
JONATHAN S. KANTER
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY

BRIAN KIM
KYLE J. KIMPLER
ALEXIA D. KORBERG
ALAN W. KORNBERG
DANIEL J. KRAMER
CAITH KUSHNER
DAVID K. LAKHDHIR
JOHN E. LANGE
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
LINDSAY B. PARKS
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
DAVID R. SICULAR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

October 18, 2021

**Via ECF**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:   *United States* v. *Neil Cole*, 19 Cr. 869 (ER)

Dear Judge Ramos:

We respectfully submit this letter on behalf of Neil Cole in opposition to the government's letter regarding its exhibits 1068 and 1139 (the "Government Exhibits"). The Government Exhibits do not fall into any of the three hearsay exceptions under which the government seeks to admit them, and are therefore inadmissible.

I.   The Government Exhibits Do Not Fall Within the Coconspirator Exception.

Federal Rule of Evidence Rule 801(d)(2)(E) provides in relevant part that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy." To admit a statement under this rule, a court must find two facts by a preponderance of the evidence: first, that a conspiracy that included the defendant and the declarant existed; and, second, that the statement was made during the course and in furtherance of that conspiracy. *Bourjaily* v. *United States*, 483 U.S. 171, 175 (1987); *United States* v. *Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Edgardo Ramos                                                                                                   2

"No one can join a conspiracy without knowledge of its existence—the gravamen is an *agreement* to commit an offense." *United States* v. *García-Torres*, 200 F.3d 1, 4 (1st Cir. 2002) (citing *United States* v. *Innamorati*, 996 F.2d 456, 469–70 (1st Cir. 1993), *cert. denied*, 510 U.S. 1120 (1994)). Even if an individual knows that a conspiracy exists, "one who allegedly 'joins' . . . can hardly be deemed to have 'agreed' to conspire through his conduct unless he has the aim to forward or assist the conspiracy." *García-Torres*, 200 F.3d at 4 (citing *United States* v. *Morillo*, 158 F.3d 18, 23 (1st Cir. 1998). Indeed, "[t]he law of conspiracy requires agreement as to the 'object' of the conspiracy," and though conspirators need not agree "on the details of their criminal enterprise . . . the 'essential nature of the plan' must be shown." *United States* v. *Rosenblatt*, 554 F.2d 36, 38 (2d Cir. 1977); *United States* v. *Lee*, 416 F. Supp. 3d 126, 136 (D. Conn. 2019).

The government has not carried its burden to show that a conspiracy "with some specific criminal goal" existed involving Ethan Cole and Neil Cole. *Gigante*, 166 F.3d at 83. Indeed, the government's own 3500 productions demonstrate that Ethan Cole was a low level employee and recent college graduate who had only worked at GBG for several months at the time the at-issue materials were drafted. Ethan Cole and his counsel have repeatedly represented to the government that Ethan Cole did not knowingly participate in any alleged conspiracy.

- Ethan Cole's counsel told the government that he understood that "GBG believed it could recoup by billing Iconix for marketing and strategy work," but "[a]t the time, *Ethan did not think there was anything improper about that*." (DX-3517-003 (Exhibit A) at 1 (emphasis added)). Ethan Cole's counsel also told the government that "[h]e *did not have any knowledge* about whether Iconix and GBG actually talked about that, or whether it was done internally at GBG." (*Id.* (emphasis added)).

- Ethan Cole told the government that he "thought the accountants, lawyers, and auditors all knew everything. Cole had been there for a few months and there were other deals and things being done at the C-level. These were deals that were happening at the most senior level. The giveback did not seem like an issue to Cole at the time." (DX-3517-004 (Exhibit B) at 7.)

- Ethan Cole's counsel told the government that he was in his first few months of his "first real job" after graduating "joint undergrad/law school in 2013." (Exhibit A at 1.) As an "assistant to Jared [Margolis]," his responsibilities included "help[ing] Jared make sure things didn't slip through the cracks" and "typ[ing] emails for Jared." (*Id.*)[1]

---

[1] The government cannot credibly contend that "Ethan Cole . . . had a sophisticated understanding of legal and accounting principles." (Gov. Ltr. at 6 n.7.) When asked about his legal education, Ethan Cole told government attorneys that he "did not think [his] studies touched on American securities law" and that after graduating from his joint undergraduate and law program, he "spent six to seven

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Edgardo Ramos                                                                                        3

        Moreover, Ethan Cole met Neil Cole only once, and had only limited contact with alleged co-conspirator Jason Rabin, who himself testified that he did not believe he had committed any crimes in connection with any of the three transactions at issue in this case (Tr. 828:01–02; Tr. 828:15–16) and that he was not aware of a conspiracy with Neil Cole or others to break the law (Tr. 828:07–10).

- Ethan Cole "once met [Neil] Cole as part of larger meeting." (Exhibit A at 3.)

- Ethan Cole's "[d]irect contact with Jason [Rabin] was somewhat limited given wide gap in seniority." (*Id*. at 1.)

        "Even assuming" that any conspiracy existed—none did—"it is a distortion of the facts and circumstances surrounding [Ethan Cole's] relationship with [Neil Cole] to say that defendant was a participant in [the] scheme." *United States* v. *Asaro*, No. 14-CR-26 (ARR), 2015 WL 5841804, at *4 (E.D.N.Y. Oct. 7, 2015). "Ultimately," the government has only shown that Ethan Cole "interacted with-but was not a member of" the alleged co-conspirators, "so the coconspirator exception cannot permit admission of this recorded hearsay." *United States* v. *Asaro*, No. 14-CR-26 (ARR), 2015 WL 5841804, at *4 (E.D.N.Y. Oct. 7, 2015) (holding evidence could not come in under the coconspirator exception as a "loosely expressed, purportedly common goal does not adequately show 'the unity of interests stemming from a specific shared criminal task that justifies Rule 801(d)(2)(E) in the first place.'" (quoting *U.S.* v. *Gigante,* 166 F.3d 75, 83 (2d Cir.1999)).[2]

    II.      The Government Exhibits Do Not Qualify As Statements Against Penal and Pecuniary Interest.

        Federal Rule of Evidence 804(b)(3)(A) permits a party to introduce otherwise inadmissible hearsay statements made by a declarant who is unavailable to testify. Specifically, a statement against interest—one in which "a reasonable person in the declarant's position would have made only if the person believed it to be true" is excluded from the rule against hearsay "because, when made, [the statement] was so contrary to the declarant's proprietary or pecuniary interest" such that it could "expose the declarant to civil or criminal liability." Fed. R. Evid. 804(b)(3)(A). Such a statement is

---

    months working at a corporate securities firm in Toronto" before he "quit his current job to work for Margolis." (Exhibit B at 1.)

[2]  It is worth noting that, as further support for its contention that "substantial evidence" shows that Ethan Cole was a knowing member of an alleged conspiracy, the government offers Horowitz's trial testimony that Ethan Cole "dropped off two large folders full of invoices and proposed backup to those invoices and told me that we should pay whatever – whichever of these invoices we wanted to pay that added up to how much money we owed them." (Tr. 332:2–20; *see also* Tr. 1126:02–07.) However, this is squarely at odds with Horowitz's prior statements to the government. Horowitz claimed that *Margolis* brought him these invoices, not Ethan Cole: "*Margolis* hand-delivered the second batch of invoices to the Iconix office and said we need to get these paid right away." (DX-3539-083 (Exhibit C) at 3 (emphasis added).) The government's 3500 material with respect to Ethan Cole does not describe any such incident involving Ethan Cole.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Edgardo Ramos                                                                                                              4

only admissible if it is supported by corroborating circumstance that clearly indicate its trustworthiness.  Fed. R. Evid. 804(b)(3)(B).

Here, the government fails to show by a preponderance of the evidence that the statement would be "perceived by a reasonable person in the declarant's shoes to be detrimental to his or her own penal interest." *United States* v. *Ojudun*, 915 F.3d 875, 885 (2d Cir. 2019).  "[T]he key to [the Rule 804(b)(3)] inquiry is whether the statement is sufficiently 'self-inculpatory,' which the district court must evaluate on a 'case-by-case basis." *United States* v. *White*, No. 17 Cr. 611 (RWS), 2018 WL 4565140, at *3 (S.D.N.Y. Sept. 24, 2018) (citation omitted).  This "question can be answered only in light of all the surrounding circumstances." *United States v. Herring*, 754 Fed. Appx. 67, 68 (2d Cir. 2019) (internal citations omitted).  Rule 804(b)(3) is "to be read narrowly concerning a declarant's statement against penal interest." *United States* v. *DeSalvo*, No. S1 94 Cr. 119 (RPP), 1995 WL 479487, at *3 (S.D.N.Y. Aug. 10, 1995).  Contrary to the government's position, the statements in the Government Exhibits do not show any "acknowledgment or participation" by Ethan Cole in any alleged accounting fraud.  As outlined above, Ethan Cole was a low-level employee executing instructions from his superior.  He believed when he prepared these documents that he had done nothing wrong, and he had no reason to believe that there was anything improper about what he was being asked to do.  "The traditional approach has required apparent awareness by the declarant that the statement was contrary to his interests." *United States* v. *Lozado*, 776 F.3d 1119, 1127 (10th Cir. 2015).  In fact, courts have acknowledged that a "declarant must have understood the statement to be against his interests" under Rule 804(b)(3).  *Id.*; *see also United States* v. *Zirpolo*, 704 F.2d 23, 27 (1st Cir. 1983) (holding that an affidavit could not be admitted under Rule 804(b)(3) because the declarant signed it without a full understanding that it was against his interest to sign the document).

III.  The Government Exhibits Are Not Admissible Under Rule 803(3).

The government's attempt to rely on the "state of mind" hearsay exception is similarly unavailing.  Although "statements of the declarant's then-existing state of mind" might be admissible despite the rule against hearsay, this exception does "not includ[e] a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will."  Fed. R. Evid. 803(3).  As the Second Circuit has explained, "[t]his exclusion is necessary to prevent the exception from swallowing the hearsay rule." *United States* v. *Cardascia*, 951 F.2d 474, 487 (2d Cir. 1991).  Otherwise, the "state of mind" exception would allow "one's state of mind, proved by a hearsay statement, to provide an inference of the happening of an event that produced the state of mind." *Id.*  In *Shepard* v. *United States*, 290 U.S. 96 (1933), the Supreme Court refused to admit a hearsay statement under the "state of mind" exception for this very reason, nothing that "the testimony now questioned faced backward and not forward," and that "even more important[ly], it spoke to a past act, and even more than that, to an act by someone not the speaker." *Shephard*, 290 U.S. at 487.

The government fails to explain how the Government Exhibits are offered for anything other than "to provide an inference of the happening of an event that produced the state of mind." *Cardascia*, 951 F.2d at 487.  Indeed, as to government exhibit GX-

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Edgardo Ramos     5

1068, the government contends that hearsay statements included in the Government Exhibits "reflect[] Ethan Cole's 'then-existing' state of mind with respect to the fact that *there had been a $5 million* overpayment with respect to SEA 2, *that there was* an agreement for Iconix to return that $5 million overpayment through specific proposed means, and that an overpayment on SEA 3 was in the offing." (Gov. Ltr. at 12) The first two of these statements are plainly backward-facing, "spoke to a past act, and even more than that, to an act by someone not the speaker." *Shephard*, 290 U.S. at 487. By offering the Government Exhibits under the state of mind exception to the hearsay rule, the government has apparently conceded that these exhibits are offered for the truth of the matter asserted, that the alleged agreements were in place. *See Smith* v. *Duncan*, 411 F.3d 340, 346 n.4 (2d Cir. 2005) ("Offering evidence under the state of mind exception is different than offering it for a non-hearsay purpose-[such as] to show declarant's state of mind. The *exception* to the hearsay rule is invoked when the statement is offered for the truth of the matter asserted *and* shows the declarant's state of mind.").

        The same holds true for government exhibit GX 1139, an email sent by Ethan Cole to Mr. Margolis on December 1, 2014, months after each of the SEA 2 and SEA 3 transactions closed. The government's reliance on statements concerning MENA, a transaction that was yet to close at the time, is misplaced. Even if *those* statements are admissible under Rule 803(3), they do not render admissible other, backward-looking statements included in the offered exhibit, which concern events that allegedly already occurred as of the date Ethan Cole sent this email.

        For all these reasons, we respectfully request that the Court deny the government's motion requesting admission of the Government Exhibits.

        Respectfully submitted,

/s/ Lorin L. Reisner
Lorin L. Reisner
Richard C. Tarlowe