

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

<em>The Silvio J. Mollo Building<br/>One Saint Andrew's Plaza<br/>New York, New York 10007</em>

October 23, 2021

BY ECF AND EMAIL

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *United States v. Neil Cole*, 19 Cr. 869 (ER)

Dear Judge Ramos:

  The Government writes to request the following modifications to the draft jury charge that the Court circulated on October 21, 2021[1]:

**Pages 10-11**

  The Government respectfully requests that the Court strike the language, "To act willfully . . . . aware that his conduct was illegal," and replace it with the following language that was included in the Government's request to charge: "To act 'willfully' means to act voluntarily and with a wrongful purpose."

  Counts Two through Nine charge violations of Section 32(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78ff, which criminalizes the "willful" violation of various provisions of the Act, as well as rules and regulations promulgated under the Act. The law of this Circuit has long been clear that a conviction under Section 78ff does not require proof that a defendant knew he was acting unlawfully. *See, e.g.*, *United States v. Kaiser*, 609 F.3d 556, 569 (2d Cir. 2010) (holding that willfulness under Section 32(a) "do[es] not require a showing that a defendant had an awareness of the general unlawfulness of his conduct, but rather, that he had an awareness of the general wrongfulness of his conduct"); *United States v. Dixon,* 536 F.2d 1388, 1395 (2d Cir. 1976) (" 'A person can willfully violate an SEC rule even if he does not know of its existence.' " (quoting *United States v. Peltz,* 433 F.2d 48, 54 (2d Cir. 1970))); *accord United States v. Tarallo,* 380 F.3d 1174, 1188 (9th Cir. 2004) ("Under our jurisprudence, . . . 'willfully' as it is used in § 78ff(a) means intentionally undertaking an act that one knows to be wrongful; 'willfully' in this context does *not* require that the actor know specifically that the conduct was unlawful."); *United States v. O'Hagan,* 139 F.3d 641, 647 (8th Cir. 1998) ("Courts that have interpreted 'willfully' in § [78ff] have reached the same conclusion that we reach in this case:

---

[1] The Government may raise additional proposed modifications at the charge conference beyond those discussed herein.

'willfully' simply requires the intentional doing of the wrongful acts—no knowledge of the rule or regulation is required.").

Those decisions are entirely consistent with how explicit statutory willfulness requirements have been interpreted in the context of other statutory regimes, including by Your Honor and other courts in this district. *See generally United States v. Dawkins*, No. 17 Cr. 684 (ER), Trial Tr. at 1620-21 (in the wire fraud context, defining "willfully" to mean "to act voluntarily and with a wrongful purpose"); *United States v. Mittendorf*, No. 18 Cr. 36 (JPO), 2019 WL 4254025, at *7 (S.D.N.Y. Sept. 9, 2019) (discussing *Kaiser* and rejecting Sand model instruction on willfulness in wire fraud case). For example, statutory willfulness is often defined in terms of voluntariness. *See United States v. Temple*, 447 F.3d 130, 137 (2d Cir. 2006) (" 'Willful' repeatedly has been defined in the criminal context as intentional, purposeful, and voluntary, as distinguished from accidental or negligent."). Similarly, statutory willfulness is often defined with respect to conduct that is "wrongful," rather than "unlawful." *See United States v. George*, 386 F.3d 383, 393-94 (2d Cir. 2004) (explaining that "the criminal statutory *mens rea* term 'willful' " is interpreted "to require only the minimum *mens rea* necessary to separate innocent from wrongful conduct").

While it is true that there exists a line of insider-trading cases in which the Second Circuit has "seemed to endorse a higher standard for willfulness," *Kaiser*, 609 F.3d at 569, as the Kaiser court observed, the need for a stricter willfulness standard in insider-trading cases does not extend to the securities fraud charges relevant here:

> Unlike securities fraud, insider trading does not necessarily involve deception, and it is easy to imagine an insider trader who receives a tip and is unaware that his conduct was illegal and therefore wrongful. The same cannot be said of one who deliberately misleads investors about a security.

*Id*. Thus, whether or not a higher *mens rea* standard applies in insider-trading cases, the Court of Appeals has been clear that the standard of willfulness articulated in *Peltz* and reaffirmed in *Kaiser* applies where, as here, the defendant is charged with "deliberately mislead[ing] investors about a security." *Kaiser*, 609 F.3d at 569; *see also United States v. Petit*, No. 19 Cr. 850 (JSR), Trial Tr. 2091-2092 (in an accounting fraud case, rejecting a defense request to instruct the jury that "[i]ntentionally and willfully mean to act deliberately and with a bad purpose either to disobey or to disregard the law"); and Trial Tr. 2490 (instructing the jury that " 'Intentionally' and 'willfully' mean to act deliberate and with a bad purpose, rather than innocently.").

**Bottom Page 11**

The Government respectfully requests that the Court strike the clause, "if Mr. Cole honestly believed that Iconix's revenue and EPS figures were accurately reported," and replace it with the clause, "if Mr. Cole honestly believed that Iconix's statements to investors were accurate and not misleading."

SEC Rule 10b-5 makes it unlawful to "make any untrue statement of a material fact" or to "omit to state a material fact necessary in order to make the statements made, in the light of the

circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). By its terms, the rule prohibits not only any statement that is "untrue outright" (i.e., false), but also one that is "misleading by virtue of what it omits to state." *In re Vivendi, S.A. Secs. Litig.*, 838 F.3d 223, 239 (2d Cir. 2016). "Statements of literal truth can become, through their context and manner of presentation, devices which mislead investors." *Kleinman v. Elan Corp.*, 706 F.3d 145, 153 (2d Cir. 2013); *see also Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 92 (2d Cir. 2010) ("The veracity of a statement or omission is measured not by its literal truth, but by its ability to accurately inform rather than mislead prospective buyers."). Thus, "[t]he law is well settled" that "so called 'half-truths'—literally true statements that create a materially misleading impression—will support claims for securities fraud." *SEC v. Gabelli*, 653 F.3d 49, 57 (2d Cir. 2011).

Consistent with the text of the Rule, the law in this Circuit has long been that, in order to obtain an accounting fraud conviction, the Government need not prove that particular metrics were in fact misstated under GAAP, but, instead, need only prove that the defendant sought to publish financial reports that were intentionally and materially misleading to investors. As the Second Circuit explained in *United States v. Ebbers*, "even where improper accounting is alleged, the statute requires proof only of intentionally misleading statements that are material, i.e., designed to affect the price of a security." *Ebbers*, 458 F.3d at 125 (citing 15 U.S.C. § 78ff). Thus, in *Ebbers* the court recognized that revenue recognition practices or changes in the presentation of financial information could be "intentionally misleading" and thus support a conviction for securities fraud even where the accounting "may or may not have been proper under some GAAP rule." 458 F.3d at 126. Similarly, in *United States v. Simon*, the Second Circuit affirmed a conviction in a case that involved technically correct disclosures that were nonetheless fraudulently misleading. 425 F.2d 796, 807 (2d. Cir. 1969) ("The jury could reasonably have wondered how accountants who were really seeking to tell the truth could have constructed a footnote so well designed to conceal the shocking facts."); *accord United States v. Rigas*, 490 F.3d 208, 221 (2d Cir. 2007) ("The jury heard testimony that the debt reclassifications were specifically designed to mislead investors about the amount of money the Rigas family and their other companies owed Adelphia, and it could have reasonably found that Defendants committed fraud. Even if Defendants complied with GAAP, a jury could have found, as the jury did here, that Defendants intentionally misled investors.").

Here, while Mr. Cole's belief that the technical accounting rules allowed for Iconix to record revenue in the manner that it did would certainly be relevant to a claim of good faith, it would not be dispositive on that issue. To take just one example, if the jury were to conclude that the qualitative descriptions of the material terms of the SEA joint ventures in the footnotes to Iconix's public filings were intentionally and materially misleading, for example, because they omitted key aspects of the deals, it would be entitled to return a conviction on Count Two, even if the technical accounting were correct.

**Page 13**

The Government respectfully requests that the Court strike the language beginning, "Interstate telephone calls . . ." and continuing through the end of the paragraph, and replaced it with the following, "Examples of instrumentalities of interstate commerce include telephone calls,

emails, or text messages, or use of a facility of a national securities exchange, such as a stock or options trade made on the NASDAQ."

The decisions of the Second Circuit uniformly interpret the phrase "facility of interstate commerce" to include facilities capable of transmitting communications from one state to another, even where, on the facts of the particular case, the use of those facilities did not cross state lines. *See, e.g. Freschi v. Grand Coal Venture*, 767 F.2d 1041, 1048 (2d Cir.) (holding without discussion that a telephone network is an "instrumentality of interstate commerce" for purposes of Exchange Act § 10(b), 15 U.S.C. § 78j), *vacated on other grounds*, 478 U.S. 1015 (1986); *United States v. Perez*, 414 F.3d 302, 304 (2d Cir.2005) (per curiam) (national telephone network is a "facility of interstate . . . commerce" for purposes of the federal murder-for-hire statute, 18 U.S.C. § 1958(b)(2)); *United States v. Giordano*, 442 F.3d 30, 39 (2d Cir. 2006) (intrastate telephone calls constituted use of "any facility or means of interstate . . . commerce" for the purposes of the enticement statute, 18 U.S.C. § 2425); *see also Glazer v. AA Premier Realty, Ltd.*, 294 F. Supp. 2d 296, 304 (E.D.N.Y. 2003) ("It is well-settled that making intrastate telephone calls is jurisdictionally sufficient for a private securities fraud action under section 10(b).")

Additionally, the statute allows the jurisdictional element to be established by the use of the facilities of a national securities exchange, which is not addressed in the current draft of the charge.

**Page 17**

The Government respectfully requests that the Court add "chief executive officer" to the list of "officers."

**Page 27**

For the reasons explained above, the Government respectfully requests that the Court modify the example presented in the "good faith" instruction as follows: "By way of example, if Mr. Cole honestly believed that Iconix's statements to investors were accurate and not misleading, that would be a complete defense to Count Two, even if that belief ultimately proved to be inaccurate. Similarly, if Mr. Cole honestly believed the SEC filings referenced in Counts Three through Eight were accurate and not misleading, that would be a complete defense . . . ."

The Government also requests that the Court include the following language, which was included in the Government's request to charge:

> In considering whether or not a defendant acted in good faith, however, you are instructed that a belief by the defendant, if such belief existed, that ultimately everything would work out so that no investors would lose any money does not necessarily constitute good faith. No amount of honest belief on the part of a defendant

that the scheme will ultimately make a profit for the investors will excuse fraudulent actions or false representations by him.

Finally, the Government notes that the defense has cross-examined a number of Government witnesses regarding the merger clauses in the SEA contracts. The Government understands that the purpose of these questions is to elicit evidence from which the defense will be able to argue that Mr. Cole believed in good faith that no side agreements existed or to provide circumstantial evidence that, as a matter of fact, there were no such agreements. The Government believes that such arguments would be proper. To the extent the defense intends to argue, however, that the presence of the merger clauses provides an affirmative defense to the charges that would require the jury to acquit the defendant as a matter of law, the jury should be instructed otherwise.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: \_\_\_/s/_____
Scott Hartman
Noah Solowiejczyk
Andrew Thomas
Assistant United States Attorneys
(212) 637-2357 / 2473 /2106

cc: Counsel for Neil Cole (by ECF)