PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

| | | |
|---|---|---|
| 1285 AVENUE OF THE AMERICAS<br>NEW YORK, NEW YORK 10019-6064<br><br>TELEPHONE (212) 373-3000<br><br>LLOYD K. GARRISON (1946-1991)<br>RANDOLPH E. PAUL (1946-1956)<br>SIMON H. RIFKIND (1950-1995)<br>LOUIS S. WEISS (1927-1950)<br>JOHN F. WHARTON (1927-1977) | UNIT 5201, FORTUNE FINANCIAL CENTER<br>5 DONGSANHUAN ZHONGLU<br>CHAOYANG DISTRICT, BEIJING 100020, CHINA<br>TELEPHONE (86-10) 5828-6300<br><br>HONG KONG CLUB BUILDING, 12TH FLOOR<br>3A CHATER ROAD, CENTRAL<br>HONG KONG<br>TELEPHONE (852) 2846-0300<br><br>ALDER CASTLE<br>10 NOBLE STREET<br>LONDON EC2V 7JU, UNITED KINGDOM<br>TELEPHONE (44 20) 7367 1600<br><br>FUKOKU SEIMEI BUILDING<br>2-2 UCHISAIWAICHO 2-CHOME<br>CHIYODA-KU, TOKYO 100-0011, JAPAN<br>TELEPHONE (81-3) 3597-8101<br><br>TORONTO-DOMINION CENTRE<br>77 KING STREET WEST, SUITE 3100<br>P.O. BOX 226<br>TORONTO, ONTARIO M5K 1J3<br>TELEPHONE (416) 504-0520<br><br>2001 K STREET, NW<br>WASHINGTON, DC 20006-1047<br>TELEPHONE (202) 223-7300<br><br>500 DELAWARE AVENUE, SUITE 200<br>POST OFFICE BOX 32<br>WILMINGTON, DE 19899-0032<br>TELEPHONE (302) 655-4410 | |

WRITER'S DIRECT DIAL NUMBER

(212) 373-3250

WRITER'S DIRECT FACSIMILE

(212) 492-0250

WRITER'S DIRECT E-MAIL ADDRESS

lreisner@paulweiss.com

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
DAVID J. BALL
SCOTT A. BARSHAY
PAUL M. BASTA
JOHN F. BAUGHMAN
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
MITCHELL L. BERG
MARK S. BERGMAN
DAVID M. BERNICK
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
ANGELO BONVINO
ROBERT BRITTON
DAVID W. BROWN
SUSANNA M. BUERGEL
JESSICA A. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
RACHEL G. COFFEY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
ARIEL J. DECKELBAUM
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
ANDREW J. FOLEY
ANDREW J. FORMAN*
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
ERIC GOODISON
CHARLES H. GOGGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS GROOMBRIDGE
BRUCE A. GUTENPLAN
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
MICHELE HIRSHMAN
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MEREDITH J. KANE
JONATHAN S. KANTER
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY

BRIAN KIM
KYLE J. KIMPLER
ALEXIA D. KORBERG
ALAN W. KORNBERG
DANIEL J. KRAMER
CAITH KUSHNER
DAVID K. LAKHDHIR
JOHN E. LANGE
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
LORETTA E. LYNCH
JEFFREY D. MARELL
JEFFREY J. MASTI
DAVID W. MAYO
ELIZABETH R. McCOLM
JEAN M. McLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
ALEX YOUNG K. OH
BRAD R. OKUN
KELLEY D. PARKER
LINDSAY B. PARKS
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
WALTER RIEMAN
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
DAVID R. SICULAR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

October 24, 2021

**Via ECF**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

Re:     *United States* v. *Neil Cole*, 19 Cr. 869 (ER)

Dear Judge Ramos:

We respectfully submit this letter on behalf of Mr. Cole in opposition to the government's letter regarding the Court's proposed jury instructions.[1]

**I.     The Court's Willfulness Charge Is Consistent With Settled Law And Should Not Be Altered.**

The government's request that the Court alter its jury instruction as to willfulness should be denied. Your Honor's proposed charge as to willfulness provides:

> To act willfully means to act deliberately and with a purpose to do something that the law forbids. However, to show that Mr. Cole acted willfully, the Government does not need to prove that he knew he was breaking any particular law;

---

[1]     The defense takes no issue with the government's request to add the phrase "chief executive officer" to page 17 of the Court's jury charge or to modify the instrumentalities of interstate commerce examples on page 13. (Gov't Ltr. at 3–4.)

rather, it is sufficient in this context for the Government to prove that Mr. Cole was aware that his conduct was illegal.

Court's Proposed Jury Charge at 10–11.

The government proposes that the Court instead instruct the jury that "[t]o act 'willfully means to act voluntarily and with a wrongful purpose." (Gov't Ltr. at 1.) Because the Court's proposed definition of "willfulness" follows Supreme Court and Second Circuit precedent and has been delivered (as drafted) in numerous cases in this district, it should not be disturbed.

In *United States* v. *Block*, 16 Cr. 595 (S.D.N.Y. June 29, 2017) for example, Judge Oetken charged as follows:

An act is done willfully if it is done with knowledge that one's conduct is unlawful and with the knowledge to do something the law forbids, that is to say, with bad purpose to disobey or disregard the law.

*Block*, Trial Tr. at 2504:19–22, ECF No. 146.

This instruction mirrors willfulness instructions in other securities and wire fraud cases in this district, including *United States* v. *Amanat*, 15 Cr. 536 (PGG) (S.D.N.Y. Oct. 26, 2018). There, Judge Gardephe instructed the jury that a "person acts 'willfully' if he acts deliberately and with the intent to do something the law forbids, that is, with a bad purpose to disobey or disregard the law." Tr. at 847:8–11, *Amanat*; *see also* Tr. at 7174:6–8, *United States* v. *Tuzman*, 15 Cr. 536 (PGG) (S.D.N.Y. Dec. 22, 2017).

The Court's willfulness instruction is also consistent with leading model instructions, which provide that willfully "means to act with knowledge that one's conduct is unlawful and with the intent to do something the law forbids, that is to say with the bad purpose to disobey or to disregard the law." 1 Leonard B. Sand *et al.*, Modern Federal Jury Instructions: Criminal, Instruction 3A-3.

The Supreme Court has approved a similar interpretation of willfulness, stating that in the criminal context, "in order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan* v. *United States*, 524 U.S. 184, 191–92 (1998) (internal quotation marks omitted); *see also United States* v. *Tagliaferri*, 820 F.3d 568, 574 (2d Cir. 2016) ("To violate [Section 206 of the Investment Advisers Act] willfully is to do so with a bad purpose, or with knowledge that such conduct was unlawful." (internal quotations and citations omitted)).

The government's proposed alternative would effectively eliminate the willfulness requirement by eliminating the concept that the conduct must be undertaken with knowledge that it is something the law forbids and with a purpose to disobey or disregard the law. The Court will separately charge the jury that the Defendant must have acted "knowingly," meaning "intentionally, deliberately, and voluntarily, rather than by

Hon. Edgardo Ramos                                                                                   3

mistake, accident, ignorance, or carelessness." (Court's Proposed Jury Charge at 10). Were the government's proposal to be adopted, it would effectively eliminate the willfulness requirement. *See United States* v. *Starnes*, 583 F.3d 196, 210 (3d Cir. 2009) (proof that defendant acted with knowledge that conduct was unlawful is usually required where the term "willfully" is used in a criminal statute in conjunction with "knowingly"). The diluted *mens rea* instruction would be particularly unfair and prejudicial where, as here, the Defendant argues that he acted in good faith.

## II.      The Court Should Retain The Example of Good Faith Set Forth In The Proposed Charge.

The government requests that the Court delete the instruction that "if Mr. Cole honestly believed that Iconix's revenue and EPS figures were accurately reported, that would be a complete defense to the charge of securities fraud, even if that belief ultimately proved to be inaccurate." (Gov't Ltr. at 2.) This request should be denied. The Court's proposed charge is entirely appropriate and consistent with charges given in recent similar cases in this district. The example is exactly on point given the allegations in this case.

The indictment expressly charges Mr. Cole with participating in "a scheme to falsely inflate Iconix's reported revenues and EPS." Indictment ¶ 13 (emphasis added). It further alleges that the alleged scheme was undertaken "for the purpose of enabling Iconix to report fraudulently inflated revenue and EPS figures." *Id.* (emphasis added); *see id.* ¶¶ 17, 19, 21–24, 27, 29, 32–33, 38–39. If Mr. Cole honestly believed that Iconix's revenue and EPS figures were accurately reported (and not inflated), that would be a complete defense and establish that he did not participate in the charged scheme. Accordingly, the Court's instruction is entirely proper and should remain in the jury charge. Although there may be cases in which the government can establish securities fraud even where the challenged accounting is in conformity with GAAP, here the government has expressly charged a scheme to inflate revenue and EPS; thus if those metrics were not inflated, the scheme alleged by the government cannot be proven.[2]

---

[2]    The government cannot seriously contend that a jury could properly convict Mr. Cole, even if he believed revenue and EPS were accurate, if it concluded that a "footnote[]" to Iconix's public filings" was incomplete. (Gov't Letter at 3.) The government's theory is that Mr. Cole made improper give-back agreements to fraudulently inflate revenue and EPS. *See* Trial Tr. at 29:18–22 ("We are not talking about details or minutia, ladies and gentlemen. We are talking about big-ticket basic stuff. The defendant was having Iconix lie about revenue, which is one of the most fundamental and basic things there is in a company's public filings."). If the jury does not find that Mr. Cole intended to overstate revenue and EPS, convicting him based on some other theory would be an impermissible constructive amendment or prejudicial variance. *See United States* v. *Dove*, 884 F.3d 138, 147 (2d Cir. 2018) (it would be a constructive amendment for a defendant to be "charged with conspiracy to possess with intent to distribute cocaine and methamphetamines" but convicted based on evidence he

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Edgardo Ramos                                                                                      4

The Court's proposed charge is nearly identical to the charge issued by Judge Rakoff in *United States* v. *Petit*, No. 19 Cr. 850 (S.D.N.Y. Nov. 16, 2020), a case that similarly involved allegations of inflated revenue and earnings.  In that case, Judge Rakoff instructed the jury as follows:

> In this regard, let me advise you that a defendant's good faith is a complete defense to both the charges in this case. If the defendant you are considering believed in good faith that he was acting properly, even if he was mistaken in that belief, and even if others were injured by his conduct, there would be no crime. <u>Thus, just by way of example, if a given defendant honestly believed that MiMedx's revenue figures were accurately reported, that would be a complete defense to the charge of securities fraud, even if the defendant's belief ultimately proved to be inaccurate</u>.

*Petit*, Trial Tr. at 2494:19–2495:3, ECF No. 191 (emphasis added).

For these reasons, the government's request should be denied.

### III.    The Court Should Reject the Government's Proposed "No Ultimate Harm" Charge.

The government also asks the Court to add a "no  ultimate harm" instruction.  (Gov't Ltr. at 4–5.)  Such an addition risks confusing the issues, as the defense has not solicited testimony or introduced evidence that would support such an argument.

The Second Circuit has held that "a 'no ultimate harm' instruction . . . is proper where (1) there was sufficient factual predicate to necessitate the instruction, (2) the instruction required the jury to find intent to defraud to convict, and (3) there was no evidence that the instruction caused confusion."  *United States* v. *Percoco*, 13 F.4th 158, 176 (2d Cir. 2021) (quoting *United States* v. *Lange*, 834 F.3d 58, 79 (2d Cir. 2016)).  "The requisite predicate for such an instruction is present where there is evidence that a defendant intended an immediate cognizable harm, but he argues that there was no harm in the long run."  *Id.* at 176–77.

Here, there is no factual predicate to necessitate a no ultimate harm instruction.  As the Second Circuit explained in *United States* v. *Rossomondo*, 144 F.3d 197 (2d Cir. 1998), providing a "no ultimate harm" instruction where no sufficient factual predicate exists risks confusing the jury into thinking that it may convict a defendant without finding the government proved an essential element of the charged conduct beyond a reasonable doubt.  144 F.3d at 200–01.

---

"possessed with the intent to distribute marijuana").  The Court's proposed charge properly protects against such a result.

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Edgardo Ramos                                                                          5

IV.     **The Court Should Instruct the Jury that, as a Matter of Law, an Alleged Oral Agreement Is Not Binding Where A Written Contract Contains an Unambiguous Integration Clause.**

The defense respectfully requests that the Court instruct the jury that alleged oral agreements cannot be binding as a matter of law where a contract has an unambiguous integration clause.  That is an accurate statement of law that is relevant from an accounting standpoint for the reasons described below.

During his testimony, Lawrence Shapiro of BDO explained that an oral agreement only affects the accounting for a transaction if it binds the company.   In particular, he testified:

> Q.     If there were oral agreements on the Southeast Asia joint venture transactions that had not been supplied to you previously, would you have expected management to bring them to your attention before making this representation?

> A.     Yes, clearly, if it affected the accounting or the proper accounting for that underlying transaction. There is no distinction between whether something is written or oral <u>as long as it binds the company</u>. It would be something we should know about if it affects the accounting for the transaction.

Trial Tr. at 1812:4–12 (emphasis added).

In other words, an alleged oral agreement cannot impact revenue or earnings from an accounting perspective if it is not binding.  The jury should therefore be instructed that, as a matter of law, oral statements or agreements cannot be binding where there is an unambiguous integration clause.  This is an uncontroversial proposition of law that has important accounting consequences in the context of this case.

As the Court is aware, SEA 2 and SEA 3 contain integration clauses.  *See, e.g.*, DX-303-A2 at DX-303-A2-002 ("This letter agreement and the agreements referred to herein . . . constitute the entire agreement, and supersede all prior agreements and undertakings, both written and oral, among the parties, or any of them, with respect to the subject matter hereof and thereof."); DX-304-A2 at DX-304-A2-002.  It is settled law that where a contract includes a merger and integration clause stating that the agreement contains the entire understanding and agreement between the parties with respect to the subject matter, an oral agreement with respect to that subject matter cannot be binding as a matter of law.  *See* N.Y. General Obligations Law § 15-301(1) ("A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."); *Supply Company, LLC* v. *Hardy Way, LLC*, No. 652855/2016, 2020 WL 4586307 (N.Y. Sup. Ct. Aug. 10, 2020) ("[A]n oral agreement is barred by the general merger clause of the License Agreement, which provides: 'This Agreement contains the

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Hon. Edgardo Ramos                                                                                          6

entire understanding and agreement between the parties hereto with respect to the subject matter hereof, supersedes all prior oral or written understandings and agreements relating thereto and may not be modified, discharged or terminated, nor may any of the provisions hereof be waived, orally.' The merger clause 'establish[es] the parties' intent that the Agreement is to be considered a completely integrated writing' and 'precludes extrinsic proof to add to or vary its terms.'") (citations omitted); *Fierro* v. *Gallucci*, No. 06 Civ. 5189, 2008 WL 2039545, at *6 (E.D.N.Y. May 12, 2008) ("In the instant case, the operative agreement contains an integration clause, thereby making such a contract fully integrated. Thus, any oral representations between the parties in this case cannot sustain a breach of contract claim. In fact, New York law requires such restrictive covenants to be in writing precisely to prevent the sorts of breach of contract issues present here.").[3]

Accordingly, the defense respectfully requests that the Court provide the following instruction:

> Where a contract includes a merger and integration clause stating that the agreement contains the entire understanding and agreement between the parties with respect to the subject matter, an oral agreement with respect to that subject matter cannot be binding as a matter of law.

Respectfully submitted,

/s/ Lorin L. Reisner
Lorin L. Reisner
Richard C. Tarlowe

---

[3]   Principles of New York law apply here for two separate reasons.  First, the SEA 2 and SEA 3 contracts are subject to Hong Kong law and the contract law principles of New York and Hong Kong are "substantially similar."  *Master Grp. Glob. Co., Ltd.* v. *Toner. Com Inc.*, No. 19 Civ. 6648, 2020 WL 5260581, at *7 (E.D.N.Y. Aug. 10, 2020).  Second, under applicable choice of law rules, New York law applies because there is no "material conflict" between New York law and Hong Kong law with respect to contract law principles.  *Blue Ridge Farms, Inc.* v. *Crown Equip. Corp.*, No. 01 Civ. 8460SJ, 2005 WL 755756, at *9 (E.D.N.Y. Mar. 28, 2005) ("In the absence of a 'material conflict' a court should bypass choice of law analysis and apply New York law . . . even when a dispute is governed by a contract containing a choice of law provision.") (citations omitted)).