**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

               v.

NEIL COLE,

               Defendant.

No. 19-cr-00869 (ER)

**MEMORANDUM OF LAW IN SUPPORT OF NEIL COLE'S MOTION *IN LIMINE* TO EXCLUDE CONSPIRACY EVIDENCE AND ARGUMENT**

Dated: October 3, 2022

**KAPLAN HECKER & FINK LLP**
Sean Hecker
Jenna M. Dabbs
Rebecca Sussman
Jeffrey Then
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883

**MARKUS/MOSS PLLC**
David Oscar Markus
A. Margot Moss
40 NW 3rd Street, PH 1
Miami, Florida 33128
Telephone: (305) 379-6667

*Attorneys for Neil Cole*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

CONCLUSION........................................................................................................................ 7

APPENDIX A ........................................................................................................................ 8

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ashe v. Swenson*,
    397 U.S. 436 (1970)............................................................................................ 2

*United States v. Bertram*,
    No. 3:15-cr-14, 2017 WL 4355679 (E.D. Ky. Sept. 29, 2017)................................... 1

*United States v. Cala*,
    521 F.2d 605 (2d Cir. 1975).................................................................................... 2

*United States v. Estrada*,
    320 F.3d 173 (2d Cir. 2003).................................................................................... 2

*United States v. Garavito-Garcia*,
    827 F.3d 242 (2d Cir. 2016).................................................................................... 2

*United States v. Hicks*,
    5 F.4th 270 (2d Cir. 2021) ........................................................................... 2, 3, 5, 6

*United States v. Jackson*,
    778 F.2d 933 (2d Cir. 1985)............................................................................ 2, 3, 6

*United States v. Kramer*,
    289 F.2d 909 (2d Cir. 1961).................................................................................... 2

*United States v. Nelson*,
    599 F.2d 714 (5th Cir. 1979) ................................................................................ 3, 6

*United States v. Taylor*,
    816 F.3d 12 (2d Cir. 2016)...................................................................................... 3

*United States v. Zemlyansky*,
    908 F.3d 1 (2d Cir. 2018) ........................................................................................ 2

**Statutes**

U.S. Const. amend. V................................................................................................ 1

Defendant Neil Cole respectfully submits this memorandum of law in support of his motion *in limine* to prohibit evidence and argument that has the specific purpose of proving conduct of which Mr. Cole has been acquitted.

## PRELIMINARY STATEMENT

Trial by jury is one of the fundamental pillars of the American justice system.  The nation's founders agreed that "[a] man's legal fate should not be decided at the hands of a king, a judge, or some other trained mind, … but by a group of one's peers."  *United States v. Bertram*, No. 3:15-cr-14, 2017 WL 4355679, at *1 (E.D. Ky. Sept. 29, 2017), *aff'd*, 900 F.3d 743 (6th Cir. 2018).  In 2021, a jury of twelve peers decisively acquitted Neil Cole of two conspiracies to commit offenses with Seth Horowitz and other unnamed alleged co-conspirators—conspiracy to commit securities fraud, to make false filings with the SEC, to improperly influence the conduct of audits; and to destroy, alter, and falsify records in federal investigations.  There is no question about the jury's conclusion; the jury's verdict is significant and final.  Consequently, Mr. Cole must be given the benefit of the jury's finding.

At Mr. Cole's retrial on the remaining substantive counts, this judgment of the jury requires the government to exclude any argument or evidence which would violate the Double Jeopardy Clause of the Fifth Amendment.  Therefore, the government and any witnesses should be precluded from introducing any evidence, statement, or suggestion that Mr. Cole participated in any conspiracy with other individuals, because this issue has been determined in Mr. Cole's favor by a valid final judgment.

## ARGUMENT

The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V. "The purposes served by the constitutional prohibition against double jeopardy include protection

against the hazards of trial and possible conviction more than once for the same offense; preservation of the finality of judgments; and deprivation of an opportunity for the prosecution to supply evidence at a successive trial that it failed to present the first time around." *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003).

The Double Jeopardy Clause has two components. The first consists of a claim preclusion rule barring double punishment for offenses constituting the same offense. *United States v. Garavito-Garcia*, 827 F.3d 242, 250 (2d Cir. 2016). The second component, and the one relevant here, is "issue preclusion" or collateral estoppel. This component "preclude[s] prosecution of an offense when an issue of ultimate fact or an element essential to conviction has necessarily been determined in favor of the defendant by a valid and final judgment in a prior proceeding." *United States v. Cala*, 521 F.2d 605, 607–08 (2d Cir. 1975) (summarizing *Ashe v. Swenson*, 397 U.S. 436 (1970)).

To determine whether a party is collaterally estopped from offering certain evidence, the court must first determine what the jury's verdict in the prior case decided. *United States v. Jackson*, 778 F.2d 933, 938 (2d Cir. 1985) (citing *United States v. Kramer*, 289 F.2d 909, 913 (2d Cir. 1961)). Then, the court must consider how that jury finding bears on the instant case. *Id.* at 939.

Acquittal on a conspiracy charge reflects that the jury either found that the conspiracy never existed or that the defendant never joined it. *United States v. Hicks*, 5 F.4th 270, 277 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1157 (2022). Although there is no blanket bar to the government's use of the same evidence it used in a first trial, at a retrial, the government may not "'reuse the [challenged] evidence for the specific purpose of proving conduct of which [a defendant] was previously acquitted.'" *Id.* at 276 (quoting *United States v. Zemlyansky*, 908 F.3d 1, 13 (2d Cir.

2

2018)).  It cannot argue or introduce evidence that "b[ears] solely on [the defendant's] intention to be a conspirator." *Jackson*, 778 F.2d at 942; *see also Hicks*, 5 F.4th at 276; *United States v. Nelson*, 599 F.2d 714, 716–17 (5th Cir. 1979) ("We note … that in a second trial the doctrine of collateral estoppel will prohibit the Government from using evidence which, if believed, would necessarily indicate participation in the conspiracy which the Government failed to prove in the first trial.").

Mr. Cole was charged with ten counts.  Two of the ten counts charged him with conspiracy. Indictment, ECF No. 1. Count One charged Mr. Cole with Conspiracy to Commit Securities Fraud, to Make False Filings with the SEC, and to Improperly Influence the Conduct of Audits.  *Id.*  Count Ten charged Mr. Cole with Conspiracy to Destroy, Alter, and Falsify Records in Federal Investigations.  *Id.*  At Mr. Cole's first trial, he was acquitted of Counts One and Ten and the jury hung on counts Two through Nine.  Verdict, ECF No. 141.  No conspiracy charges remain.  Thus, Mr. Cole's retrial concerns only substantive counts.  The jury's acquittal on the conspiracy charges reflects that the jury either found that the conspiracy never existed or that Mr. Cole never joined it.  *See Hicks*, 5 F.4th at 276 (citing *United States v. Taylor*, 816 F.3d 12, 19 (2d Cir. 2016)).

In order to protect Mr. Cole's Fifth Amendment right at his retrial, the government, and all witnesses, should not offer any evidence, make statements or arguments, or use language which "would necessarily indicate [Mr. Cole's] participation in the conspiracy[ies] which the Government failed to prove in [Mr. Cole's] first trial."  *Nelson*, 599 F.2d at 716-17.  This includes during voir dire, opening statement, the questioning and testimony of witnesses, and closing argument.

For example, at Mr. Cole's first trial, the government repeatedly referred to the existence of a conspiracy of which Mr. Cole was alleged to be a part.

- "As you might imagine, to pull this scheme off, the defendant did not work alone. There were others that worked hand in hand with him to cook the books at Iconix,

insiders.  These witnesses, they know the details of the fraud because they worked with the defendant to make it happen, and they are going to give you a firsthand account that only an insider can."  Tr. 35-36 (government opening statement).

- "Mr. Cole, in deal after deal after deal, rigged the prices.  He lied to the auditors. He filed false documents to the SEC.  And he told the public something that wasn't true.  When Neil Cole did that, he committed crimes.  When Neil Cole lied to the auditors, he hindered their audits.  When Neil Cole lied to the SEC, he falsified records.  When Neil Cole lied to investors, he was committing fraud.  When Neil Cole did all of that with other people, he committed conspiracy."  Tr. 2436 (government closing argument).[1]

The government also elicited testimony from witnesses to the effect that Mr. Cole was a member of a conspiracy.

- Seth Horowitz testified, "Q. Did you commit those offenses alone or with other people?  A. I committed those offenses with other people.  Q. Do you see anyone in the courtroom today who was involved in committing those offenses with you? A. I see Neil Cole."  Tr. 60-61.

- Seth Horowitz further testified, "Q. Mr. Horowitz, you don't say anything in this paragraph about committing fraud in connection with this transaction. Why not? A. I was on a fence. I wanted to have the company get the accounting right, and I did not want to admit that we had committed fraud. . . . Q. For two years you committed fraud with Mr. Cole, according to your telling. Why change your view now?  A. Neil had -- he had turned on me. He had started to – he didn't start to. He denied knowledge of things that were his creation. He denied reading my e-mails, e-mails that we discussed over and over again. We worked extremely closely together. And now he was distancing himself from the things that he knew we did wrong. And that was not OK."  Tr. 392.

The examples above (and numerous others) were offered by the government in an attempt to show that Mr. Cole participated in conspiracies with Seth Horowitz and others.  The jury, however, conclusively rejected the government's allegations when it declared Mr. Cole was Not Guilty of the charged conspiracies.  To avoid violating the Fifth Amendment's Double Jeopardy Clause, the government, as well as the witnesses, should be prohibited from making arguments and statements in Mr. Cole's retrial along the lines of the examples identified above, as they would

---

[1] All references to "Tr." refer to the transcript from Neil Cole's first trial.

be used for the unlawful "specific purpose" of attempting to prove Mr. Cole joined a conspiracy, despite his acquittal. *Hicks*, 5 F.4th at 276. But these are just illustrative examples—the government either made arguments or elicited testimony from other witnesses also suggesting that Mr. Cole participated in a conspiracy. Appendix A details other examples of testimony and argument that the Court should prohibit along the same lines as the examples discussed above.

Further, to be clear, the prohibition should not be limited to use of the word "conspiracy." *See Hicks*, 5 F.4th at 277 (offending language referred to an "agreement" between Hicks and others). Instead, the Court should preclude the government from violating Mr. Cole's Fifth Amendment rights by eliciting testimony or arguing that Mr. Cole entered, joined, or participated in any sort of conspiracy, agreement, scheme, joint plot or plan, or committed wrongdoing or illegal acts with others.

Mr. Cole's request is that which was contemplated by the Second Circuit's analysis in *Hicks*. At his first trial, Hicks was acquitted of cocaine and cocaine base trafficking conspiracies, and the jury was unable to reach a verdict on the Racketeer Influenced and Corrupt Organization ("RICO") conspiracy. *Hicks*, 5 F.4th at 272. At Hicks's retrial on the RICO conspiracy charge, the Second Circuit found the government's summation problematic because of "the prosecutor's arguably contrary suggestion that [Hicks] had joined the conspiracy." *Id.* at 277-28. The government argued,

> "Contreras told you that they became members, right; that he came up in November of 2010 with 16 kilograms of cocaine and they established what the prices were going to be and how they were going to be sold .... [T]hey established their agreement then. [Hicks] knew that he was a member, knew what he was getting into."

*Id.* at 277. The Second Circuit recognized that suggesting that Hicks had agreed to join a cocaine conspiracy despite his acquittal on that charge risked violating Hicks's substantial rights. *Id.* at

278.[2]

Following the logic of *Hicks*, the Court should limit evidence and argument from Mr. Cole's first trial that, if introduced again at Mr. Cole's retrial, would "b[ear] solely on [the defendant's] intention to be a conspirator." *Jackson*, 778 F.2d at 942. The arguments and testimony identified herein are precisely the types of testimony that the Circuit found so problematic from the government's summation in *Hicks* – the defendant's participation in a conspiracy of which he has been acquitted.

Finally, this analysis is not altered by instructing the jury that it can find Mr. Cole guilty of the substantive offenses by finding that he aided and abetted the commission of the substantive offenses.[3] "[A]iding and abetting the commission of a crime and conspiracy to commit that crime are separate and distinct offenses;" only conspiracy "requires proof of an agreement to commit an offense." *Nelson*, 599 F.2d at 716. While the Double Jeopardy Clause does not preclude prosecution for aiding and abetting a substantive offense following acquittal on conspiracy to commit that offense, "collateral estoppel precludes relitigation of issues determined favorably to the defendant in the judgment of acquittal on the conspiracy charge." *Id.* Accordingly, the limited set of argument and testimony that had the specific purpose of proving that Mr. Cole engaged in a conspiracy should still be excluded from Mr. Cole's retrial. *See id.* at 716-17 ("[I]n a second trial the doctrine of collateral estoppel will prohibit the Government from using evidence which, if believed, would necessarily indicate participation in the conspiracy which the Government failed to prove in the first trial.").

---

[2] The Second Circuit, under plain error review, declined to reverse Hicks's conviction, because Hicks did not object to the offending argument. *Hicks*, 5 F.4th at 278.

[3] This is especially true in light of the fact that the Indictment contains no allegations that Mr. Cole aided and abetted in the commission of any offenses. *See generally* Indictment, ECF No. 1.

## CONCLUSION

For the reasons set forth above, Mr. Cole respectfully requests that the Court grant its motion *in limine* to prohibit evidence and argument that has the specific purpose of proving conduct of which Mr. Cole has been acquitted.

Dated: October 3, 2022

Respectfully submitted,

_____
Sean Hecker
Jenna M. Dabbs
Rebecca Sussman
Jeffrey Then
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
shecker@kaplanhecker.com
jdabbs@kaplanhecker.com
rsussman@kaplanhecker.com
jthen@kaplanhecker.com

David Oscar Markus*
A. Margot Moss*
MARKUS/MOSS PLLC
40 NW 3rd Street, PH 1
Miami, Florida 33128
Telephone: (305) 379-6667
dmarkus@markuslaw.com
mmoss@markuslaw.com

*Attorneys for Neil Cole*

*\*Admitted pro hac vice*

7

APPENDIX A

**Section 1 – Testimony**

| SECTION | REFERENCE |
|---|---|
| Horowitz Direct | "Q. Did you commit those offenses alone or with other people? A. I committed those offenses with other people. Q. Do you see anyone in the courtroom today who was involved in committing those offenses with you? A. Yes, I do. Q. Who do you see? A. I see Neil Cole." Tr. 60-61. |
| Horowitz Direct | "Q. At this point did you have any agreement with Mr. Cole about how to get that money back to GBG? A. Not other than loosely calling it marketing liabilities or marketing obligations." Tr. 180. |
| Horowitz Direct | "Q. Mr. Horowitz, after the comment letter and the short report came out, did Mr. Cole give you any instructions for what to do with materials that you had? A. Yes, he did. Q. Can you describe that conversation? A. Yes. It was an evening at the Iconix office, many people had gone home. I was at my desk. Neil came to my door, kind of stood outside my door, looking very frazzled and angry. And he said to me, quite simply, 'I need you to get rid of any e-mails with Jason and Jared and' -- I believe he said – 'Yapp, and I'm going to do the same,' and he stormed off to his office." Tr. 353. |
| Horowitz Direct | "Q. Mr. Horowitz, when you refer to having done things that were wrong, what are you referring to? A. [Neil and I] inflated our revenues to hit quarterly numbers, and we didn't tell our finance team about it. We didn't tell our legal team about it. We dragged out the payments so that way, at the end of the third quarter, we had over $11 million of revenue that was owed back to a partner that was not properly accounted for. And we would lie in our response to the SEC because we left out material terms on why those prices increased." Tr. 355. |
| Horowitz Direct | "Q. Mr. Horowitz, you don't say anything in this paragraph about committing fraud in connection with this transaction. Why not? A. I was on a fence. I wanted to have the company get the accounting right, and I did not want to admit that we had committed fraud… Q. For two years you committed fraud with Mr. Cole, according to your telling. Why change your view now? A. Neil had -- he had turned on me. . . . He denied knowledge of things that were his creation. He denied reading my e-mails, e-mails that we discussed over and over again. We worked extremely closely together. And now he was distancing himself from the things that he knew we did wrong. And that was not OK." Tr. 392. |
| Horowitz Direct | "Q. Mr. Horowitz, you said Mr. Cole had turned on you. Were you worried about your own exposure at this point? A. Yes. . . . I was a part of this fraud. I helped negotiate these deals. I hid the information from the finance team and from the legal team. I was Neil's right hand in this." Tr. 393. |

**Section 2 - Argument**

| SECTION | REFERENCE |
|---------|-----------|
| Government Opening | "As you might imagine, to pull this scheme off, the defendant did not work alone. There were others that worked hand in hand with him to cook the books at Iconix, insiders. These witnesses, they know the details of the fraud because they worked with the defendant to make it happen, and they are going to give you a firsthand account that only an insider can. One of the insiders you are going to hear from is named Seth Horowitz. He was the chief operating officer at Iconix and he was the defendant's right-hand man. He was in on the scheme to cook the books at Iconix."  Tr. 35-36. |
| Government Summation | "So Cole cheated. He developed a scheme with executives at one of Iconix's partners, Li & Fung, who were willing to play ball. They would overpay on joint venture deals so Cole could report more revenue. In exchange, Cole promised to send the overpayments back. The money would move in a circle. And then Cole and his collaborators, they put that plan into action."  Tr. 2385. |
| Government Summation | "He needed a scheme, and he needed partners to help him pull it off. And the defendant found both of those things at Li & Fung. See, the defendant found businessmen who were willing to work out something a little more than the ordinary deal guys who understood the saying: You scratch my back; I'll scratch yours. And, frankly, he found guys that were not as smart as he was."  Tr. 2393. |
| Government Summation | "There may have been a small, close-knit group at Iconix that included Mr. Horowitz. It was Mr. Cole's group, and Cole and Horowitz worked hand in glove to make things happen. Horowitz was the guy at Iconix who would know about the secret side deals, and he knew."  Tr. 2397. |
| Government Summation | "Cole, Rabin, Margolis and Horowitz all worked together to inflate the JV prices, and three of them admitted it."  Tr. 2398. |
| Government Summation | "It was the start of a sustained scheme to mislead Iconix's shareholders, and that's really what this case is about. Cole's agreement with others to tell investors that Iconix was doing better than it was, and all the false filings he had to make along the way to pull it off."  Tr. 2403. |
| Government Summation | "Ladies and gentlemen, this Government Exhibit 1255, these are notes ripped straight from the conspiracy. This is Neil Cole and Seth Horowitz trying to figure out how to bridge the gap in their books by engineering a second overpayment and giveback with Li & Fung, and it shows that they were already working it out on June 10th."  Tr. 2407. |

| SECTION | REFERENCE |
|---|---|
| Government Summation | "Now, what does happen before that jump is that Cole tells Rabin that he understood the deal from Horowitz. It's right here, at Defense Exhibit 1281, where Cole confirms, perhaps, that they are all on the same page about how this giveback is going to happen. And after that, the deal documents suddenly reflect a new higher price of 15.9 million for that 50 percent interest. Ladies and gentlemen, it's no mystery why the price jumped. It's not because they were real assets with real value that got real big at that time. It's because there was a real conspiracy. It's because Cole proposed to Rabin that Li & Fung pay more in exchange for getting the money back. It's what Rabin said. It's what Horowitz said. It's what Margolis said, and it's what these documents show. They all agreed to inflate the number for Iconix in exchange for a promise to get the money back. That is proof beyond a reasonable doubt." Tr. 2409-10. |
| Government Summation | "And, of course, remember the Horowitz meeting with Neil Cole on June 10th and sketching out various ways to give back $10 million in overpayment to GBG. Those notes say nothing about the Lee Cooper option, and within a day or so, Horowitz is conducting an analysis of the Roc Kids licensing agreement. Isn't it coincidence that Horowitz is evaluating giveback possibilities right before the price jump? That's not a coincidence. That's a conspiracy." Tr. 2411-12. |
| Government Summation | "And after this, Cole and his conspirators, you know, they cranked the dirty deal machine into action once more. What happens is Horowitz hosts a meeting. You can see the invitation here. It's Government Exhibit 1082. It's a meeting at Iconix's offices, and all these guys get together. Neil Cole even pops into the room, Horowitz told us, and they try to figure out who owes what to who." Tr. 2413. |
| Government Summation | "But, ladies and gentlemen, here's an easy way to know that Horowitz, Rabin and Margolis are telling the truth. The conspiracy kept records. Cole's security fraud conspiracy involves so many different deals and so many different amounts, it became hard to track. It's one of the reasons, of course, that businesses have accountants. Following all the money can be hard, and here, both sides of the dirty deals wanted to follow the money; so they wrote it down. Remember this document? This is Government Exhibit 706. This is something Horowitz prepared on November 3rd, 2014, in the heart of the conspiracy, on the heels of an announcement. And you don't have to take his word for it on the timing, you can inspect the document properties right there. This is something Horowitz shared with Cole as they were trying to sort out who owes what to who, and it's a document that he brought with him to a meeting with the guys from Li & Fung or GBG. And what does this document show? It tallies up the costs of the conspiracy for Iconix. It has a net column. It calculates the difference between what the price should have been, based on the revenue multiple, you know, how these deals normally work, and the price that was actually paid, with the net showing what was owed back to GBG by Iconix." Tr. 2416-17. |

| SECTION | REFERENCE |
|---|---|
| Government Summation | "Mr. Cole, in deal after deal after deal, rigged the prices. He lied to the auditors. He filed false documents to the SEC. And he told the public something that wasn't true. When Neil Cole did that, he committed crimes. When Neil Cole lied to the auditors, he hindered their audits. When Neil Cole lied to the SEC, he falsified records. When Neil Cole lied to investors, he was committing fraud. When Neil Cole did all of that with other people, he committed conspiracy." Tr. 2436. |
| Government Rebuttal | "[I]t's just common sense that if Mr. Cole and Mr. Horowitz were intentionally engaging in a scheme to manipulate the numbers of the company, that would have mattered to investors." Tr. 2519. |
| Government Rebuttal | "But what you know, ladies and gentlemen, from looking at the evidence and from hearing the testimony over the course of the last three weeks, is that Mr. Cole and Mr. Horowitz were in this together. They conspired to mislead investors. They conspired to lie to auditors. They conspired to mislead the SEC." Tr. 2523. |
| Government Rebuttal | "This is Mr. Cole's day to be held accountable. The government has proved beyond a reasonable doubt that he conspired with Mr. Horowitz and others to mislead Iconix's investors, to lie to its auditors, and to lie to the SEC, and now it is your obligation to hold him responsible for his actions." Tr. 2525. |