## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

NEIL COLE,

Defendant.

No. 19-cr-00869 (ER)

**MEMORANDUM OF LAW IN SUPPORT OF NEIL COLE'S MOTION *IN LIMINE* TO PRECLUDE CROSS-EXAMINATION AS TO THE CANDIE'S INTERNAL INVESTIGATION, SEC INVESTIGATION, AND SETTLEMENT**

Dated: October 3, 2022

**KAPLAN HECKER & FINK LLP**
Sean Hecker
Jenna M. Dabbs
Rebecca Sussman
Jeffrey Then
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883

**MARKUS/MOSS PLLC**
David Oscar Markus
A. Margot Moss
40 NW 3rd Street, PH 1
Miami, Florida 33128
Telephone: (305) 379-6667

*Attorneys for Neil Cole*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

RELEVANT FACTUAL BACKGROUND ............................................................................... 2

   I.   The SEC Candie's Investigation into Events Occurring 23 Years Prior to Trial ............. 2

   II.  The Court's Ruling to Exclude the Remote and Unduly Prejudicial Testimony ............... 4

   III. The Government's Improper Cross-Examination of Mr. Cole Regarding the
        Candie's Evidence ...................................................................................................... 5

ARGUMENT ............................................................................................................................. 6

   I.   The Court Should Preclude Cross-Examination as to the Candie's Evidence ................... 6

      A.  Cross-Examination as to the Candie's Evidence is Improper Under Rule 608. .......... 7

          i.   The Candie's Evidence is Not Probative of Truthfulness. ................................... 7

          ii.  The Candie's Evidence is Too Remote to Have Any Probative Value. ............. 10

          iii. Cross-Examination Concerning Candie's Would Lead to a Distracting
              Digression, Again. ......................................................................................... 12

      B.  The Court Should Again Conclude That Any Probative Value of the Candie's
          Evidence is Substantially Outweighed by Unfair Prejudice. .................................... 13

   II.  Neither Limiting the Government's Questioning Nor Providing a Limiting
       Instruction is Sufficient to Guard Against Unfair Prejudice ............................................ 16

CONCLUSION ......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*,
    37 F.3d 1460 (11th Cir. 1994) ........................................................................... 8, 10

*Anwar v. United States*,
    648 F. Supp. 820 (N.D.N.Y. 1986) .................................................................... 11

*Bachir v. Transoceanic Cable Ship Co.*,
    No. 98-CIV-4625 (JFK), 2002 WL 413918 (S.D.N.Y. Mar. 15, 2002) ............ 10, 12

*Boggs v. Collins*,
    226 F.3d 728 (6th Cir. 2000) ............................................................................. 15

*Carter v. Hewitt*,
    617 F.2d 961 (3d Cir. 1980)............................................................................... 13

*Hartman v. Snelders*,
    No. 04-CV-1784(CLP), 2010 WL 11626508 (E.D.N.Y. Jan. 28, 2010) ............ 8, 11

*Hollins v. City of Milwaukee*,
    574 F.3d 822 (7th Cir. 2009) ............................................................................. 8

*In re 3M Combat Arms Earplug Prod. Liab. Litig.*,
    No. 3:19MD2885, 2022 WL 1104746 (N.D. Fla. Apr. 13, 2022) ...................... 8

*In re Adler, Coleman Clearing Corp.*,
    No. 95–08203 (JLG), 1998 WL 160036 (Bankr. S.D.N.Y. Apr. 3, 1998) ................ 9

*United States v. Ahmed*,
    No. 14-CR-277 (DLI), 2016 WL 3647686 (E.D.N.Y. July 1, 2016)................................. passim

*United States v. Aponte*,
    No. 20-624, 2021 WL 3854069 (2d Cir. Aug. 30, 2021) .................................. 14, 16

*United States v. Bailey*,
    696 F.3d 794 (9th Cir. 2012) ............................................................................. 9

*United States v. Bari*,
    750 F.2d 1169 (2d Cir. 1984)........................................................................2, 12, 15

*United States v. Calderon-Urbina*,
    756 F. Supp. 2d 566 (S.D.N.Y. 2010)................................................................ 11

*United States v. Cox*,
    536 F.2d 65 (5th Cir. 1976) ............................................................................... 11

*United States v. Crowley*,
    318 F.3d 401 (2d Cir. 2003) ........................................................................ passim

*United States v. Masino*,
    275 F.2d 129 (2d Cir. 1960) ................................................................................ 13

*United States v. Schwab*,
    886 F.2d 509 (2d Cir. 1989) ........................................................................ passim

*United States v. Silverstein*,
    737 F.2d 864 (10th Cir. 1984) ............................................................................ 10

*United States v. Stoecker*,
    215 F.3d 788 (7th Cir. 2000) .............................................................................. 11

*United States v. Teman*,
    465 F. Supp. 3d 277 (S.D.N.Y. 2020) ................................................................. 8

*United States v. Tomblin*,
    46 F.3d 1369 (5th Cir. 1995) .............................................................................. 10

*United States v. Toner*,
    728 F.2d 115 (2d Cir. 1984) .......................................................................... 11, 12

*United States v. Vereen*,
    No. 3:99-CR-279 (CFD), 2000 WL 490740 (D. Conn. Mar. 2, 2000) .................... 11

## Rules

Fed. R. Evid. 403 ........................................................................................ passim

Fed. R. Evid. 404(b) ............................................................................... 1, 4, 11, 15

Fed. R. Evid. 608 ........................................................................................ passim

Fed. R. Evid. 609 .............................................................................................. 11

## Other Authorities

1 McCormick on Evidence § 41 (8th ed.) ................................................................ 7

## PRELIMINARY STATEMENT

Prior to Mr. Cole's first trial, the government sought to introduce evidence of a decades-old, unrelated investigation by the Securities and Exchange Commission (the "SEC") into Candie's, Inc., the predecessor company to Iconix Brand Group, as both direct evidence and pursuant to Federal Rule of Evidence 404(b) (the "Candie's Evidence").  *See* March 23, 2020 Letter from the government (attached as Exhibit A); ECF No. 115.  Following cross motions *in limine* on the admissibility of the Candie's Evidence, the Court correctly excluded the evidence, concluding that it was too old, too distinct from the accounting issues now alleged, and too confusing for the jury.  Final PTC Tr. 13-14 (Sept. 30, 2021).  Nevertheless, during trial, the government convinced the Court to allow cross-examination of Mr. Cole on the Candie's Evidence pursuant to Federal Rule of Evidence 608(b).  The government exploited the "very limited leeway" it was given and interrogated Mr. Cole at length on the unrelated, distant Candie's events.  Tr. 2186.  Further, it was improperly permitted to admit extrinsic evidence regarding Mr. Cole's credibility.  *See* Tr. 2186, 2348.[1]

Prior to Mr. Cole's re-trial, and with full knowledge of the Court's prior *in limine* ruling, the government has again renewed its notice of intent to offer the Candie's Evidence under the vague cloak that it "may [] become admissible because of Mr. Cole's trial strategy or the testimony of defense witnesses."  *See* September 26, 2022 Letter from the government (attached as Exhibit B).

In light of Mr. Cole's acquittal on the counts of conspiracy and destruction of documents,[2] the Court now having had the benefit of hearing all the evidence, and new briefing specifically

---

[1] All references to "Tr." refer to the transcript from Mr. Cole's first trial.

[2] The government's original notice included that it wished to offer the Candie's Evidence, in part, "to provide context for (1) references made to the Candie's investigation during the course of the *charged conspiracy* and (2) Cole's and Horowitz's *destruction of documents*."  *See* Exhibit A (emphasis added).

addressing character and extrinsic evidence, we request that *all* testimony or documents regarding the Candie's Evidence, including during cross-examination of Mr. Cole, be prohibited.   The decades-old, unproven allegations have marginal, if any, probative value for assessing Mr. Cole's character for veracity under Rule 608.  *See United States v. Schwab*, 886 F.2d 509, 513-14 (2d Cir. 1989); *United States v. Ahmed*, No. 14-CR-277 (DLI), 2016 WL 3647686, at *3 (E.D.N.Y. July 1, 2016).   And the government's cross-examination showed that even a limited inquiry results in a confusing, prejudicial digression and the improper admission of extrinsic evidence on a collateral credibility issue.  *See United States v. Crowley*, 318 F.3d 401, 417-18 (2d Cir. 2003); *United States v. Bari*, 750 F.2d 1169, 1179 (2d Cir. 1984).

## RELEVANT FACTUAL BACKGROUND

**I.**      **The SEC Candie's Investigation into Events Occurring 23 Years Prior to Trial**

In 2003, Mr. Cole entered into a no-admit, no-deny settlement with the SEC related to events that occurred from 1997 to 1999 at Candie's, the predecessor company to Iconix Brand Group.[3]   The settlement followed an extensive internal investigation by a Special Committee for the Board of Directors and lengthy external investigation by the SEC after Candie's outside auditors, Ernst & Young ("E&Y"), raised questions regarding certain accounting transactions during fiscal year 1999—*twenty-three years* before Mr. Cole's October 2022 retrial.   E&Y was concerned about the recognition of revenue prior to the physical delivery of shoes from alleged "bill and hold" sales and "barter" transactions and certain credit agreements related to the sourcing of shoes from a buying agent.

---

[3] Candie's changed its name to Iconix effective July 1, 2005.

In 1999, counsel for the Special Committee interviewed Mr. Cole, who was the CEO of Candie's at the time, as part of the internal investigation.  This investigation concluded with no disciplinary action or other consequences against Mr. Cole.

In response to the SEC external investigation, Mr. Cole provided investigative testimony to the SEC over the course of three separate days in 2002.  In its subsequently filed Complaint, the SEC principally alleged that, between 1997 and 1999, (a) Candie's former COO—not Mr. Cole— "directed employees to engage in a practice known as bill and hold," in which Candie's recorded revenue from purchase orders calling for future delivery of shoes, prior to the actual shipment of the shoes, (b) Candie's former vice president of finance—not Mr. Cole—"negotiated and signed" two agreements with a barter company for the sale of shoes that led Candie's to record revenue for those sales before the shoes were shipped, and (c) documents—drafted by someone other than Mr. Cole—"inaccurately reflected credits with Candie's buying agent."  The SEC did not allege or find that Mr. Cole intentionally violated any law.  *See* Order Instituting Proceedings, Exchange Act Release No. 47769, at 1-4 (Apr. 30, 2003).  Nor did it allege that the company engaged in inflating sales prices or round tripping with other vendors.

At the same time those proceedings were initiated, Candie's and Mr. Cole each entered into separate settlements with the SEC, without admitting to or denying the SEC's allegations.  *See id.* at 1.  As part of the settlement, Mr. Cole agreed to pay a civil penalty of $75,000.  The SEC did not impose any suspension or officer/director bar, and Mr. Cole continued to serve as CEO of Candie's following the settlement.

The Department of Justice did not independently investigate the alleged 1997–1999 events, played no role in the SEC investigation, and never pursued any charges.

3

II.        **The Court's Ruling to Exclude the Remote and Unduly Prejudicial Testimony**

Prior to Mr. Cole's first trial, and over twenty years after these investigations had concluded, the parties extensively litigated the admissibility of this evidence at trial.  On March 23, 2020, the government provided notice to the defense pursuant to Rule 404(b) that it "may" offer evidence of the SEC's "inquiry into potential accounting improprieties" at Candie's and "the subsequent settlement that Candie's and Cole entered with the SEC."  Exhibit A at 1.  Both parties subsequently filed concurrent motions *in limine*, resulting in almost forty pages of briefing on this question.  ECF Nos. 106, 115, 120, 121, 124, 125.  The government argued that the evidence would establish Mr. Cole's "knowledge of certain accounting rules" and his intent to commit the charged crimes.  ECF No. 115 at 1.  The government represented that any prejudice would be minimal because it did not "plan to offer proof or to argue to the jury that Cole committed any wrongdoing whatsoever in connection with the Candie's conduct."  ECF No. 120 at 18; *see also* ECF No. 115 at 11.  Mr. Cole moved to exclude the evidence because the decades-old investigations and settlement involved distinct accounting issues and would only serve to unfairly prejudice Mr. Cole, confuse the jury, and unduly delay an already lengthy and complicated trial.  ECF Nos. 106, 121.

After full briefing from both parties and argument at the final pretrial conference, the Court granted Mr. Cole's motion.  The Court concluded that the evidence was unduly prejudicial to Mr. Cole and noted that it was too remote in time, "about 20 years or more old," involved "different types of accounting issues," and raised issues that would "only tend to confuse the jury."  Final PTC Tr. at 13-14.[4]

---

[4] Based on a recent discussion with the government, it is our understanding that the parties agree that the Court's pretrial ruling excluding evidence as to Candie's in the government's case in chief remains in force.

**III.     The Government's Improper Cross-Examination of Mr. Cole Regarding the
           Candie's Evidence**

Mr. Cole subsequently testified at trial, and the government moved under Rule 608 to
cross-examine him about the Candie's Evidence.[5]  The government argued that because Mr. Cole
had allegedly been involved in deceptive practices at Candie's, and that because, during the
investigation, Mr. Cole had admitted to backdating certain documents, the evidence spoke to his
character for truthfulness.  Tr. 2183.  Despite the Court's pretrial ruling concluding that the
decades-old matter involved "different types of accounting issues" and was unduly prejudicial, the
government sought to ask Mr. Cole about a bevy of issues stemming from his time at Candie's:
Mr. Cole's meeting with the auditors, E&Y's concerns about credits, the internal investigation, the
fact that Mr. Cole gave testimony to the SEC, Mr. Cole's justification for backdating documents,
and whether Mr. Cole "profited at the time as well." Tr. 2307-08.  The Court allowed it based on
the government's representation that the twenty-year-old investigation involved similar
accusations of round tripping, but expected a brief inquiry.  Tr. 2310-11.  The accounting issues
the government has alleged in this case, however, are in fact entirely different from those at issue
in connection with the Candie's investigation decades ago.   There, the alleged accounting
improprieties related to the recognition of revenue earlier than permitted by the applicable
accounting rules, namely, recognizing revenue for goods sold prior to their actual physical
shipment and improperly documented credits that reduced expenses.  In this case, the government
has alleged that the amount of revenue recognized in connection with a series of joint venture

---

[5] In his direct testimony, Mr. Cole mentioned his time at Candie's as part of a chronology of his professional
background.  In the event this testimony was viewed as having opened the door to cross-examination on the Candie's
matter, should Mr. Cole testify at his retrial, Mr. Cole will not testify to his time at Candie's, or any Candie's related
evidence.

transactions was deliberately overstated because it did not account for secret side deals that caused the actual dollar value of the transactions to be lower.

Recognizing that the evidence posed a significant risk of prejudicing Mr. Cole's right to a fair trial, the Court ruled that it would permit only a "very limited inquiry" into Mr. Cole's backdating of documents pursuant to Rule 608 and his prior knowledge of issues surrounding "improper transactions that lacked [economic] substance." Tr. 2311-13. The government assured the Court it would ask a limited number of tailored questions. *See* Tr. 2185, 2312.

Despite these clear constraints, the government engaged in a "15 or 20 minute[]" cross-examination, spanning twenty transcript pages. Tr. 2333-53. During that extensive cross-examination, the government admitted two exhibits into evidence (excerpts of Mr. Cole's SEC testimony and an internal memorandum written by Candie's general counsel), providing extrinsic evidence of the credibility dispute. *See* Tr. 2342 (admitting GX 600); Tr. 2348 (admitting GX 1889). As explained below, the Court correctly concluded pretrial that this evidence is unfairly prejudicial and should now conclude that cross-examination and admission of evidence regarding any issues relating to the Candie's matter is improper under Rules 608 and 403. Accordingly, we respectfully submit that the Court should preclude this evidence.

## ARGUMENT

## I.     The Court Should Preclude Cross-Examination as to the Candie's Evidence.

Rule 608 bars extrinsic evidence "to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." Fed. R. Evid. 608(b). It allows for no exceptions, other than a criminal conviction, to this bar against admitting documents or other testimony regarding a witness's credibility. While a trial court has discretion to permit cross-examination into conduct "probative of the [witness's] character for truthfulness or untruthfulness," the "possibilities of abuse are substantial" for this form of cross-examination.

Fed. R. Evid. 608, advisory committee's note to 1972 proposed rule.  And the "significance of the prejudice is magnified" when the witness is the defendant.  *Schwab*, 886 F.2d at 513.

To guard against this cautioned abuse, courts consider factors such as: "the relevancy of the act of misconduct to untruthfulness," "the nearness or remoteness of the misconduct to the time of trial," and "whether the matter inquired into is likely to lead to time-consuming, distracting explanations on cross-examination or re-examination."  1 McCormick on Evidence § 41 (8th ed.). Further, the "overriding protection" of Federal Rule of Evidence 403—that the probative value is not outweighed by danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"—also applies.  Fed. R. Evid. 403; Fed. R. Evid. 608 advisory committee's note to 1972 proposed rule; *see Schwab*, 886 F.2d at 513.

## A.    Cross-Examination as to the Candie's Evidence is Improper Under Rule 608.

All the factors advise that cross-examination regarding the Candie's Evidence in this case should be precluded.  Should Mr. Cole testify at his retrial, cross-examination on this subject matter is improper under Rule 608 because the unproven, decades-old allegations have marginal, if any, probative value of Mr. Cole's character for untruthfulness.   Moreover, as proven by the government's actions in the first trial, it is a time-consuming diversion on allegations of unrelated transactions.

### i.    The Candie's Evidence is Not Probative of Truthfulness.

Rule 608(b) permits evidence by cross-examination of prior wrongdoing "only under very limited circumstances that are probative of truthfulness."  *Ahmed*, 2016 WL 3647686, at *3. Significantly, incidents involving unproven allegations have marginal, if any, probative value for assessing a witness's character for veracity.  *Id.* ("The Court does not consider the existence of a

complaint containing unproven allegations or a settlement agreement lacking any adverse findings probative of the witness' truthfulness.").

Accordingly, courts frequently preclude cross-examination regarding unproven allegations. *See, e.g.*, *Schwab*, 886 F.2d at 513-14 (finding error to permit cross-examination on acquitted income tax fraud charges); *United States v. Teman*, 465 F. Supp. 3d 277, 342-43 (S.D.N.Y. 2020) (concluding non-established claims of falsified certifications inadmissible under Rule 608(b)); *Hartman v. Snelders*, No. 04-CV-1784 (CLP), 2010 WL 11626508, at *13 (E.D.N.Y. Jan. 28, 2010) (finding probative value of arrests to be "quite low" because, *inter alia*, the witness was not ultimately convicted); *see also Hollins v. City of Milwaukee*, 574 F.3d 822, 828-29 (7th Cir. 2009) (affirming preclusion of cross-examination on unproven allegations of falsifying police records); *Ad-Vantage Tel. Directory Consultants, Inc. v. GTE Directories Corp.*, 37 F.3d 1460, 1464 (11th Cir. 1994) (cautioning that "when the allegations of wrongdoing were grave but no sanctions resulted, the danger was great that the jury would infer more from the investigation than was fairly inferable"); *In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19MD2885, 2022 WL 1104746, at *4 (N.D. Fla. Apr. 13, 2022) ("Injecting [d]efendants' unproven allegations into this case will inevitably devolve the proceedings into the kind of lengthy trial within a trial on a peripherally related matter that Rules 608(b) and 403 are designed to prevent.").

In *United States v. Schwab*, the Second Circuit found that it was error to permit cross-examination of the defendant about prior conduct for which he had been acquitted. 886 F.2d at 513. As the Second Circuit explained, "the blunt reality [is] that a witness who has been acquitted will almost certainly deny the misconduct, either because he did no wrong or because he may understandably believe that . . . he is entitled to have the law regard him as innocent." *Id.* Thus,

the only purpose served by the cross-examination is to place the accusation from the government's question before the jury. *Id.* Yet cross-examination as to unproven allegations risks great danger of undue prejudice. "*When the witness is the defendant, the significance of the prejudice is magnified.*" *Id.* Even in the rare circumstance where prior conduct may be relevant to a witness's credibility, the Second Circuit has held that it was not an abuse of discretion to preclude cross-examination of a witness regarding prior misconduct. This is so even when there is a "good faith basis" for inquiring about unproven allegations. *Crowley*, 318 F.3d at 418. In *Crowley*, the Second Circuit affirmed the trial court's preclusion of cross-examination, although the allegations were "certainly relevant to the witness's credibility" and there was a "good faith basis" for the inquiry. *Id.* at 417. The trial court's decision was "well within its discretion" because "the prejudicial impact of engendering speculation about the subject outweighed the minimal probative value." *Id.* at 418.

These cases instruct that cross-examination of Mr. Cole at his retrial regarding the Candie's Evidence—conduct which resulted in no disciplinary action after an internal investigation, an SEC investigation that concluded with a no-admit, no-deny settlement, and no inquiry made by the Department of Justice—is improper. Evidence of allegations "settled with no admission of liability is not probative of whether the defendant committed the prior conduct, much less whether he committed the conduct in question." *United States v. Bailey*, 696 F.3d 794, 800 (9th Cir. 2012); *see In re Adler, Coleman Clearing Corp.*, No. 95–08203 (JLG), 1998 WL 160036, at *8 (Bankr. S.D.N.Y. Apr. 3, 1998). The Candie's matter involves the kind of unproven allegations that courts routinely exclude under Rule 608. *See Ahmed*, 2016 WL 3647686, at *3.

The government's previous representations on this issue reflect a recognition that the Candie's Evidence has minimal probative value for wrongdoing by Mr. Cole. In its prior motion

*in limine*, the government explained that it did not "plan to offer proof or to argue to the jury that Cole committed any wrongdoing whatsoever in connection with the Candie's conduct." ECF No. 120 at 18. The representation was hardly a concession, given that there was never any finding of wrongdoing on behalf of Mr. Cole. Not only did Mr. Cole face no disciplinary action, but he continued serving as the CEO of Iconix for another twelve years. "[A] prosecutor may not use impeachment as a guise for submitting to the jury substantive evidence that is otherwise unavailable." *United States v. Tomblin*, 46 F.3d 1369, 1388-89 (5th Cir. 1995) (quoting *United States v. Silverstein*, 737 F.2d 864, 868 (10th Cir. 1984)). This Court should not permit the government to smuggle in otherwise unavailable evidence.

### ii.   The Candie's Evidence is Too Remote to Have Any Probative Value.

In addition to having marginal, if any, probative value, the allegations' remoteness in time equally favors preclusion. The government's argument at trial that Rule 608 contains no explicit time limitation was woefully incomplete. *See* Tr. 2185-86. Indeed, it is well established that an incident's remoteness in time is an important consideration in assessing probative value as "[t]emporally remote acts are only weakly probative of [a] witness's current credibility." *Ad-Vantage Tel. Directory Consultants, Inc.*, 37 F.3d at 1464; *Schwab*, 886 F.2d at 513-14. Accordingly, courts routinely exclude misconduct due to its remoteness to trial. *See Schwab*, 886 F.2d at 513 (charges made twenty-three and eighteen years prior to the trial); *Bachir v. Transoceanic Cable Ship Co.*, No. 98-CIV-4625 (JFK), 2002 WL 413918, at *10 (S.D.N.Y. Mar. 15, 2002) (resignation when facing medical fraud charges twenty years prior to trial); *Ahmed*, 2016 WL 3647686, at *3 (settlement of malpractice lawsuit more than twenty years before trial); *Hartman*, 2010 WL 11626508, at *13 (arrests less than ten years prior to trial); *United States v. Cox*, 536 F.2d 65, 72 (5th Cir. 1976) (false statements to immigration officials approximately

fifteen years before trial); *United States v. Stoecker*, 215 F.3d 788, 790 (7th Cir. 2000) (complaint of escrow account shortfall over fifteen years old).  For example, in *United States v. Calderon-Urbina*, the court excluded a witness's arrest twenty-one years prior to trial—even after concluding that the crime bore on the witness's character for veracity and admission would be permissible under Rule 403—because the arrest was simply "too remote in time to be probative in this case." 756 F. Supp. 2d 566, 568 (S.D.N.Y. 2010).  As these cases clearly show, incidents ten or fifteen years old—much less *twenty-three years old* like the Candie's Evidence here—are too remote and should be excluded.

Moreover, although Rule 608 does not include an explicit temporal limitation, courts generally apply the ten-year limit of Rule 609(b).  *United States v. Toner*, 728 F.2d 115, 122 (2d Cir. 1984) (concluding that it was "clearly appropriate" to exclude evidence of arrests because they would have been excludable under Rule 609 had they resulted in convictions); *see also United States v. Vereen*, No. 3:99-CR-279 (CFD), 2000 WL 490740, at *6 (D. Conn. Mar. 2, 2000) (Droney, J.) (noting this "general[]" rule).  Doing so avoids the inconsistency of disallowing impeachment by reference to convictions that are more than ten years old while allowing impeachment "by inquiry into mere arrests that are just as stale."  *Anwar v. United States*, 648 F. Supp. 820, 829 & n.12 (N.D.N.Y. 1986), *aff'd*, 823 F.2d 544 (2d Cir. 1987).

Applying this precedent to the Candie's Evidence makes clear that permitting any cross-examination into this area is improper.  This is true even if the government claims it would limit its cross-examination solely to the backdating of documents from decades ago.  This backdooring of excluded 404(b) evidence is similarly too remote and the risk of prejudice too great.  *See, e.g.*, *Bachir*, 2002 WL 413918, at *10 (precluding any cross-examination on witness's resignation when facing medical fraud charges twenty years prior to trial); *Toner*, 728 F.2d at 122 (finding it "clearly

appropriate" to exclude a witness's arrest for forgery due to it being more than ten years old). Like twenty-year-old charges of medical fraud and ten-year-old forgery arrests, the backdating of documents in 1999 does not speak to Mr. Cole's character for untruthfulness in 2022. The age of the incident alone requires exclusion by this Court.

### iii. Cross-Examination Concerning Candie's Would Lead to a Distracting Digression, Again.

Lastly, the government should be precluded from cross-examination on the Candie's Evidence because it would lead to a distracting mini trial. The prior unproven conduct is "completely unrelated" to the remaining charges and would unnecessarily distract the jury in an already complicated and overly lengthy trial. *Crowley*, 318 F.3d at 418; *Bari*, 750 F.2d at 1178-79 (noting that "[c]onducting a mini-trial on" the implications of Rule 608(b) evidence "might well have been a time-wasting, confusing digression ultimately degenerating into a battle of [expert] opinions").

Permitting cross-examination on the Candie's matter would invite this type of digression. The Court does not have to guess what this would entail. The first trial record demonstrates that even a "very limited inquiry" will waste time and confuse the issues. Despite the Court's strict parameters for cross-examination and the government's assurance that it would ask a limited number of tailored questions, the government engaged in a "15 or 20 minute[]" cross-examination in which the government cast the transactions as similar to the crimes charged and suggested that the Candie's transactions "could be illegal." Tr. 2352-53. This was misleading and untrue. The twenty-three-year-old Candie's transactions, which involved "bill and hold" and "barter" transactions and improperly documented credits, are decidedly distinct from the instant allegations; they had nothing to do with inflated sales, givebacks, or round tripping. That the

12

Candie's transactions ultimately impacted net income does not transform them into round tripping. All accounting issues and determinations ultimately impact reported results. Because this type of evidence involves complicated and distinct accounting issues, it is particularly ripe for misuse. And given the lack of probative value for assessing Mr. Cole's character for veracity, any cross-examination on these decades-old allegations would be highly prejudicial.

The cross-examination also led to the improper admission of extrinsic evidence. Because Mr. Cole struggled to recall the details of events that took place more than twenty years ago—and which the Court had previously ruled would not be permitted—the government was permitted to admit an excerpt of Mr. Cole's SEC testimony in response to this failed recollection. Tr. 2347-48 (admitting GX 1889).[6] Rule 608(b) speaks directly to the inadmissibility of extrinsic evidence and acts to prevent precisely this type of digression. *See Carter v. Hewitt*, 617 F.2d 961, 971 (3d Cir. 1980). "When a witness is cross-examined for the purpose of destroying his credibility by proof of specific acts of misconduct not the subject of a conviction, the examiner must be content with the answer. The examiner may <u>not</u>, over objection, produce independent proof to show the falsity of such answer." *United States v. Masino*, 275 F.2d 129, 133 (2d Cir. 1960) (emphasis added); *Crowley*, 318 F.3d at 418. We respectfully submit that it was improper to admit extrinsic evidence on a collateral credibility issue in Mr. Cole's first trial, and the Court should exclude any such evidence in Mr. Cole's retrial.

    **B.**    **The Court Should Again Conclude That Any Probative Value of the Candie's Evidence is Substantially Outweighed by Unfair Prejudice.**

Under Rule 403, otherwise relevant evidence should be excluded "if its probative value is substantially outweighed by a danger of," among other things, "unfair prejudice, confusing the

---

[6] The Court also admitted GX 600 as impeachment by contradiction. Tr. 2338-42. Mr. Cole continues to object to the admission of this evidence.

issues, misleading the jury, . . . [or] wasting time." Fed. R. Evid. 403. Even if cross-examination is proper pursuant to Rule 608(b), and it is not, the Court's pretrial decision to exclude the evidence pursuant to Rule 403 was correct. The Court properly concluded that the evidence is "unduly prejudicial to Mr. Cole and may raise issues that will only tend to confuse the jury." Final PTC Tr. 13-14. Courts in this Circuit routinely exclude evidence of regulatory inquiries or settlements under Rule 403. *See* ECF No. 106 at 16-17 (collecting cases). The same is true of evidence that may otherwise be relevant and admissible under Rule 608. *See United States v. Aponte*, No. 20-624, 2021 WL 3854069, at *2 (2d Cir. Aug. 30, 2021) (summary order).

At trial, the Court appeared to reconsider whether the accounting issues in the two matters are distinct. But the government's description of the Candie's transactions—that they involved "payments flowing in both directions" in an effort to "boost net income"—is both overly generic and inaccurate. *See* ECF No. 125 at 11; Tr. 2307. Many accounting improprieties can be described as having the general goal of "boost[ing] net income." That does not make the transaction mechanism the same. The extensive investigatory documents regarding Candie's never mention the term "round tripping." That is unsurprising—the Candie's transactions allegedly related to recognizing revenue before goods were shipped and improperly documented credits that reduced expenses. There was no allegation of selling assets in order to generate revenue with the intent to later buy back those assets. That is the distinct allegation the government makes now—that Iconix inflated and overstated revenue due to an overpayment for trademarks, for which it would later, through an alleged secret side deal, compensate GBG. The Court was correct to conclude before trial that these are "different types of accounting issues." Final PTC Tr. 13-14. Introducing these distinct issues would only serve to confuse and mislead the jury and lengthen an already complicated trial. *See Bari*, 750 F.2d at 1179; *Crowley*, 318 F.3d at 418; *Boggs v. Collins*, 226

14

F.3d 728, 744 (6th Cir. 2000).  Given the lack of probative value, the risk of Mr. Cole being unfairly prejudiced by the jury misusing this decades-old evidence is high.

The government's cross-examination of Mr. Cole at the first trial reveals that the Court's pretrial concerns of unfair prejudice were well founded.  In its motion seeking to admit the Candie's Evidence, the government assured the Court that it would not "offer proof or . . . argue to the jury that Cole committed any wrongdoing whatsoever in connection with the Candie's conduct." ECF No. 120 at 18.  This would minimize any potential prejudice and avoid a mini trial, according to the government.  But, as detailed above, the government's lengthy cross-examination and admission of extrinsic evidence plainly did just that, despite being given "very little leeway" by the Court to inquire about two discrete issues.  The government's questioning regarding the internal investigation was designed to leave the jury with the improper impression that Mr. Cole participated in similar accounting improprieties as those currently charged.  For example, the government emphasized that the E&Y auditors "expressed concerns that these offsetting payments could have been part of an effort to manage earnings."  Tr. 2346.  The government characterized the investigation as a "big deal" at Candie's and noted that these offsetting payments "could be illegal."  Tr. 2350, 2353.  No context was provided—that Candie's involved "different types of accounting issues" and Mr. Cole was never found to have committed any wrongdoing either during the internal investigation nor the SEC's extensive investigation.

At bottom, the government's cross-examination repackaged its rejected Rule 404(b) evidence.  This was a clear attempt to persuade the jury that where there's smoke, there's fire.  By placing the Candie's allegations before the jury, the government intends for the jury to assume a propensity to engage in accounting improprieties and to violate the securities laws.  The Court should not permit the government to introduce this improper propensity evidence as thinly

disguised impeachment evidence. *See Aponte*, 2021 WL 3854069, at *2 (affirming district court's exclusion of Rule 608(b) evidence "due to the jury's potential improper consideration of the alleged conduct as propensity evidence and its marginal relevance to [the witness's] credibility").

**II.       Neither Limiting the Government's Questioning Nor Providing a Limiting Instruction is Sufficient to Guard Against Unfair Prejudice.**

Precluding cross-examination as to the Candie's Evidence is the only way to ensure that Mr. Cole is not unfairly prejudiced. Allowing even limited questioning would only heighten the prejudice by highlighting the evidence without providing context on the internal investigation and SEC settlement. On the other hand, permitting extensive questioning would further confuse the jury on the role of the evidence and lead to a mini trial and waste the Court's and the jury's time.

Nor can the risk of prejudice be sufficiently minimized by a limiting instruction in this instance. Even if the jury were instructed that no charges were proven and that Mr. Cole denies those allegations, the formal allegations and a settlement carrying the imprimatur of the SEC could unduly influence the jury's assessment of the evidence. *See Schwab*, 886 F.2d at 513. At that point, it would be virtually impossible for the jury not to judge Mr. Cole based on improper character and propensity evidence. *See Aponte*, 2021 WL 3854069, at *2.

The risk of prejudice in allowing cross-examination as to twenty-year-old unproven allegations involving distinct types of accounting issues greatly outweighs the marginal probative value of the evidence. The Court should adhere to its pretrial ruling and exclude all evidence pertaining to the Candie's investigation.

## CONCLUSION

For the reasons set forth above, Neil Cole respectfully requests that the Court grant his motion *in limine*, precluding cross-examination and the admission of evidence as to issues related to the Candie's matter.

16

Dated: October 3, 2022

Respectfully submitted,

Sean Hecker
Jenna M. Dabbs
Rebecca Sussman
Jeffrey Then
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
shecker@kaplanhecker.com
jdabbs@kaplanhecker.com
rsussman@kaplanhecker.com
jthen@kaplanhecker.com

David Oscar Markus*
A. Margot Moss*
MARKUS/MOSS PLLC
40 NW 3rd Street, PH 1
Miami, Florida 33128
Telephone: (305) 379-6667
dmarkus@markuslaw.com
mmoss@markuslaw.com

*Attorneys for Neil Cole*

*\*Admitted pro hac vice*