**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

NEIL COLE,

              Defendant.

No. 19-cr-00869 (ER)

**MEMORANDUM OF LAW IN SUPPORT OF NEIL COLE'S MOTION *IN LIMINE* TO EXCLUDE STATEMENTS BY ETHAN COLE**

Dated: October 3, 2022

**KAPLAN HECKER & FINK LLP**
Sean Hecker
Jenna M. Dabbs
Rebecca Sussman
Jeffrey Then
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883

**MARKUS/MOSS PLLC**
David Oscar Markus
A. Margot Moss
40 NW 3rd Street, PH 1
Miami, Florida 33128
Telephone: (305) 379-6667

*Attorneys for Neil Cole*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 2

ARGUMENT ........................................................................................................................ 4

    I.      Following the Jury's Verdict, the Government Cannot Prove by a Preponderance
           of the Evidence That Ethan Cole's Emails Should Be Admitted as Co-Conspirator
           Statements and Therefore His Internal GBG Emails are Inadmissible Hearsay. ............. 4

           a.      The Government Cannot Demonstrate That There Was a Conspiracy. ............... 5

           b.      The Government Cannot Demonstrate That Ethan Cole and Neil Cole Were
                  Knowing and Willful Participants in the Alleged Conspiracy. ........................... 6

           c.      The Government Cannot Demonstrate That the Statements It Sought to
                  Admit of Ethan Cole Pursuant to the Co-Conspirator Exception Were Made
                  During the Course of and in Furtherance of the Conspiracy. ........................... 10

    II.     Ethan Cole's Emails, GX 1068, GX 1139, and GX 1165, Are Also Not
           Admissible Pursuant to the Statements Against Penal and Pecuniary Interest
           Hearsay Exception. ..................................................................................................... 11

    III.    Ethan Cole's Emails Are Also Not Admissible Under the "State of Mind" Hearsay
           Exception. .................................................................................................................... 12

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Bourjaily v. United States*,
   483 U.S. 171 (1987)...........................................................................................................8

*Dutton v. Evans*,
   400 U.S. 74 (1970)............................................................................................................4

*Grunewald v. United States*,
   353 U.S. 391 (1957)..........................................................................................................5

*Krulewitch v. United States*,
   336 U.S. 440 (1949)..........................................................................................................4

*Shepard v. United States*,
   290 U.S. 96 (1933)..........................................................................................................12

*United States v. Clark*,
   613 F.2d 391 (2d Cir. 1979)..............................................................................................5

*United States v. Coppola*,
   671 F.3d 220 (2d Cir. 2012)..............................................................................................4

*United States v. García-Torres*,
   280 F.3d 1 (1st Cir. 2002).................................................................................................6

*United States v. Gigante*,
   166 F.3d 75 (2d Cir. 1999)..................................................................................6, 8, 9, 10

*United States v. Gil*,
   604 F.2d 546 (7th Cir. 1979) .........................................................................................5, 6

*United States v. Hassell*,
   547 F.2d 1048 (8th Cir. 1977) ..........................................................................................7

*United States v. Innamorati*,
   996 F.2d 456 (1st Cir. 1993).............................................................................................6

*United States v. Johnson*,
   927 F.2d 999 (7th Cir. 1991) ............................................................................................4

*United States v. Maliszewski*,
   161 F.3d 992 (6th Cir. 1998) .........................................................................................10

*United States v. Mandell*,
   752 F.3d 544 (2d Cir. 2014)..............................................................................................4

*United States v. Ojudun*,
   915 F.3d 875 (2d Cir. 2019) ................................................................. 11

*United States v. Perez*,
   989 F.2d 1574 (10th Cir. 1993) ............................................................... 4

*United States v. Russo*,
   302 F.3d 37 (2d Cir. 2002) ............................................................... 5, 10

*United States v. Tellier*,
   83 F.3d 578 (2d Cir. 1996) .................................................................... 6

*United States v. Urbanik*,
   801 F.2d 692 (4th Cir. 1986) ............................................................... 10

*United States v. West*,
   142 F.3d 1408 (11th Cir. 1998) .......................................................... 10

*United States v. Wexler*,
   522 F.3d 194 (2d Cir. 2008) ............................................................... 11

**Rules**

Fed. R. Evid. 803(3) ................................................................................ 12

Fed. R. Evid. 804(b)(3)(A) ..................................................................... 11

Fed. R. Evid. 804(b)(3)(B) ..................................................................... 11

Fed. R. Evid. 801(d)(2)(E) ............................................................. passim

Defendant Neil Cole respectfully submits this memorandum of law in support of his motion *in limine* to exclude statements made by Ethan Cole that were admitted in Neil Cole's first trial pursuant to the co-conspirator hearsay exception.

## PRELIMINARY STATEMENT

The government should not be permitted to introduce Ethan Cole's[1] out-of-court statements as co-conspirator statements in this trial.  In Neil Cole's first trial, after mid-trial briefing and argument, the Court ultimately admitted certain out-of-court statements made by a young, low-level GBG employee, Ethan Cole, into evidence pursuant to Federal Rule of Evidence 801(d)(2)(E).  Now having had the benefit of the full evidentiary record, including examination of the witnesses through which the Ethan Cole emails were admitted and Neil Cole's testimony, as well as the jury's decisive verdict from the first trial, the Court should revisit this decision.  The facts (relating to the lack of a relationship between Ethan Cole and Neil Cole) that support a ruling to exclude have not changed.  It remains true that Neil Cole and Ethan Cole do not know each other.  There are no email communications between them or including both of them.  They never discussed Iconix and GBG business.  They never reached or discussed any agreement with each other, illegal or otherwise.  This makes sense given that they operated at the polar ends of the corporate hierarchy at their respective companies—Neil Cole, the longtime CEO of Iconix, and Ethan Cole, a recent college graduate and relatively junior assistant at GBG.  And importantly, in addition to the paucity of communication or contact between Ethan Cole and Neil Cole, the witness used to admit two of the objectionable Ethan Cole emails admitted that the GBG invoices to Iconix were not shams.  Based on the full evidentiary record at the first trial, the jury reached a verdict finding Neil Cole not guilty of conspiracy.  These undisputed facts, as well as Neil Cole's acquittal

---

[1] Though they share a last name, Neil Cole and Ethan Cole are not related.

1

on all charges of conspiracy, are both relevant and compelling reasons to conclude that the government cannot demonstrate—as it must to satisfy its burden—the existence of a conspiracy by a preponderance of the evidence.  Accordingly, the Court should not permit the government to introduce Ethan Cole's presumptively unreliable out-of-court statements under the co-conspirator, or any other, exception to hearsay.

## BACKGROUND

Ethan Cole began working at GBG as a low-level employee one year after graduating from school in 2013.  He was about twenty-four years old at the time.  In Neil Cole's first trial, the government did not call Ethan Cole as a witness.  It chose, instead, to maneuver around Ethan Cole's absence at trial by seeking to admit two internal GBG emails authored by Ethan Cole, GX 1068 and GX 1139, midway through trial, pursuant to the co-conspirator hearsay exception, Rule 801(d)(2)(E). Tr. 1124-25 (GX 1068), 1168-70 (GX 1139).[2]  GX 1068 is an email dated August 28, 2014, from Ethan Cole to his GBG supervisor Jared Margolis, with no text in the email, but attaching a document titled "Summary of Various Amounts with Iconix," which appears to reflect various accounts receivable between GBG and Iconix.  GX 1139 is an email dated December 1, 2014, from Ethan Cole to Margolis, with the subject line "Notes for Iconix Meeting," which appears to summarize several different business deals between Iconix and GBG.  Neither email at either GX 1068 or GX 1139 was sent to or even referenced *anyone* employed by Iconix, let alone Neil Cole.  During the first trial, the defense argued that the emails were inadmissible hearsay because the government failed to establish that Ethan Cole was a co-conspirator given the limited amount of testimony connecting him to any alleged agreement with Neil Cole to violate the law. *See* Tr. 1124-27 (GX 1068), 1168-70 (GX 1139).  The Court inquired whether this issue had been

---

[2] All references to "Tr." refer to the transcript from Neil Cole's first trial.

the subject of motion *in limine* practice prior to the start of trial—it had not been—and suggested

that that "might have been helpful." Tr. 1125.  The Court told the government "don't use this, and

we will discuss it some more" and noted that "[t]here could be people at lower levels of the

organization that are told the facts and not know that there is a corrupt agreement."  Tr. 1127.

Following this exchange, the government argued in a letter to the Court that the two

exhibits were admissible pursuant to (1) the co-conspirator hearsay exception, (2) as statements

against penal and pecuniary interest pursuant to Rule 804(b)(3)(A), and (3) as evidence of Ethan

Cole's "state of mind" pursuant to Rule 803(3).  ECF No. 130 at 4-12.  The defense opposed the

application, arguing in response that none of the government's proffered grounds were valid.  ECF

No. 131.

On October 18, 2021, following receipt of the parties' letters, the Court heard argument

regarding the admissibility of GX 1068 and GX 1139.  Tr. 1174-78.  The government argued that

"there is plenty of evidence that Ethan Cole was a member of [] a securities fraud conspiracy

involving the overpayments and givebacks, as well as a wire fraud conspiracy . . . ."  *Id.* 1178.

The defense argued that there was no evidence that Ethan Cole and Neil Cole were ever a part of

any conspiracy, let alone the same conspiracy, such that Ethan Cole, the junior assistant at GBG,

was an agent of the Iconix CEO.  *Id.* 1176.  The following day, the Court admitted the emails under

the preponderance of the evidence standard for co-conspirator statements.  *Id.* 1337.  In addition

to GX 1068 and GX 1139, the government later offered GX 1165 into evidence during Ms.

Wolfson's testimony.  *Id.* 2110.  Like GX 1068 and GX 1139, GX 1165 is an internal GBG email

from Ethan Cole, with no text in the body of the email, that he sent to Jared Margolis's secretary,

Toni Lombardi, asking her to print an attached spreadsheet titled "Invoice summary."  The

government argued that the attached document summarized all of the invoices submitted to Seth

Horowitz for payment.  *Id*. 2111.  The Court admitted this document into evidence over the defense's hearsay objection.  *Id*. 2112-13.

After having the opportunity to hear the full record—including the cross-examinations of Seth Horowitz, Jason Rabin, and Jared Margolis; and Neil Cole's testimony—on November 1, 2021, the jury returned a verdict acquitting Neil Cole of the two conspiracy counts with which he was charged.  Specifically, the jury returned a verdict of not guilty on Count 1, which charged Neil Cole with conspiring to commit securities fraud, make false filings with the Securities and Exchange Commission, and improperly influence the conduct of audits.  Verdict, ECF No. 141. The jury also acquitted Neil Cole of Count 10, which charged him with conspiracy to destroy, alter, and falsify records in federal investigations.  *Id.*

## ARGUMENT

I.      **Following the Jury's Verdict, the Government Cannot Prove by a Preponderance of the Evidence That Ethan Cole's Emails Should Be Admitted as Co-Conspirator Statements and Therefore His Internal GBG Emails are Inadmissible Hearsay.**

Federal Rule of Evidence 801(d)(2)(E) provides a limited hearsay exception where an out-of-court statement is "offered against an opposing party and was made by the party's coconspirator during and in furtherance of the conspiracy."  To admit a co-conspirator statement pursuant to this rule, the government must prove by a preponderance of the evidence "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy."  *United States v. Mandell*, 752 F.3d 544, 552 (2d Cir. 2014) (quoting *United States v. Coppola*, 671 F.3d 220, 246 (2d Cir. 2012)).  This rule thus provides for a "narrow exception to the hearsay rule," *Krulewitch v. United States*, 336 U.S. 440, 444 (1949), and it is a "*limitation* on the admissibility of co-conspirators' statements that is meant to be taken seriously."  *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (quoting *United States v. Johnson*, 927 F.2d 999,

1001 (7th Cir. 1991)); *see also Dutton v. Evans*, 400 U.S. 74, 82 (1970) ("[T]he limited scope of the hearsay exception in federal conspiracy trials is a product . . . of the Court's 'disfavor' of 'attempts to broaden the already pervasive and wide-sweeping nets of conspiracy prosecutions.'") (quoting *Grunewald v. United States*, 353 U.S. 391, 404 (1957)).  The government cannot establish any of the three elements needed to take advantage of the "narrow" co-conspirator exception, let alone all three.

### a.   The Government Cannot Demonstrate That There Was a Conspiracy.

"Where evidence is offered against a defendant consisting of a declaration by an alleged co-conspirator in furtherance of some criminal act, . . . the court in each instance must find the existence [*between the defendant and the declarant*] of a specific criminal conspiracy [to do that criminal act]."  *United States v. Russo*, 302 F.3d 37, 44 (2d Cir. 2002) (brackets in original, emphasis added) (internal quotations omitted).  Although an acquittal on a conspiracy charge is not an *automatic* bar to admission of co-conspirator statements in a subsequent trial, *United States v. Clark*, 613 F.2d 391, 403 (2d Cir. 1979), nevertheless, "an acquittal [of the crime of conspiracy] might be relevant and persuasive in the determination of whether the Government has demonstrated the requisite criminal joint venture."  *United States v. Gil*, 604 F.2d 546, 549 (7th Cir. 1979).  In other words, a jury's verdict that the government did not adequately prove the same conspiracy purportedly giving rise to a hearsay exception must be given weight and meaning.

When this issue was initially presented to the Court during Neil Cole's first trial, the Court invited briefing on whether the government could demonstrate by a preponderance of the evidence that such a conspiracy existed.  At that time, and in ruling ultimately that the government had satisfied its burden, the Court did not have the benefit of the full evidentiary record from trial and, importantly, the jury's verdict.  Following the admission of the objectionable emails regarding invoices and Iconix/GBG deals (GX 1068 and GX 1139), on cross-examination, Margolis agreed

with counsel for Neil Cole that Iconix's payments to GBG after SEA 2 were pursuant to "invoices [that] reflected real work" and were not "fabricated." Tr. 1494. Additionally, the jury heard from Jason Rabin who did not believe he committed any crimes and was unaware of a conspiracy with Neil Cole or anyone else to break the law. *Id.* 828. The jurors learned that there was no giveback or round tripping following SEA 3. *Id.* 585; 879; 2165. And the jury witnessed Neil Cole adamantly deny knowing of or joining an illegal conspiracy. *See id.* 2158-59. After a complete record was presented, the jury found Neil Cole not guilty of all charged conspiracies; a final judgment now stands forever acquitting Mr. Cole of any conspiracy related to the SEA transactions. While Neil Cole's acquittal on conspiracy is not dispositive of the issue of admissibility of this evidence pursuant to 801(d)(2)(E), it is both "relevant and persuasive." *See Gil*, 604 F.2d at 549.

###### b. The Government Cannot Demonstrate That Ethan Cole and Neil Cole Were Knowing and Willful Participants in the Alleged Conspiracy.

Even if the Court finds that a conspiracy existed despite the jury's verdict, there is no evidence that *either* Ethan Cole *or* Neil Cole were knowing and willful participants of that conspiracy. In fact, Ethan Cole has not pleaded guilty to any offense, has not been charged with any offense, and has always maintained his innocence. "[W]hile the hearsay statement itself may be considered in establishing the existence of the conspiracy, 'there must be some independent corroborating evidence of the defendant's participation in the conspiracy.'" *United States v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999) (quoting *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996)). "No one can join a conspiracy without knowledge of its existence—the gravamen is an agreement to commit an offense." *United States v. García-Torres*, 280 F.3d 1, 4 (1st Cir. 2002) (emphasis omitted) (citing *United States v. Innamorati*, 996 F.2d 456, 469-70 (1st Cir. 1993), *cert. denied*, 510 U.S. 1120 (1994)); *see also* Tr. 1127 (Court: "There could be people at lower levels

of the organization that are told the facts and not know that there is a corrupt agreement.").  "In order for a statement by a coconspirator to be admissible against other conspirators, it must first be established . . . that at the time the statement was made the declarant had joined the conspiracy by express agreement to cooperate or by willful participation in it."  *United States v. Hassell*, 547 F.2d 1048, 1052 (8th Cir. 1977).

The attorney proffer by Ethan Cole's lawyer—presumably based on the voluntary, truthful statements of Ethan Cole, but never presented by the government to the jury—is especially useful and supportive of a finding that the young Ethan Cole was not a knowing and willful participant of any criminal conspiracy.  It establishes that Ethan Cole was a low-level employee at GBG. When he started working at GBG in 2014, just a matter of months before sending the emails at issue here, he had only recently graduated from college.  This was his "first real job" after graduating from "joint undergrad/law school" in Canada in 2013.  DX 3517-003 (Ethan Cole attorney proffer to the government).  He was Jared Margolis's assistant and his responsibilities included "help[ing] Jared make sure things didn't slip through the cracks" and "typ[ing] emails for Jared."  *Id.*  Neil Cole was the CEO of Iconix, a company that he founded in 2005 and grew in the subsequent ten years into a $3 billion enterprise.  Understandably, given their difference in seniority, Ethan Cole believes he met Neil Cole just once and only as part of a larger meeting.  DX 3517-003.

Ethan Cole and his counsel repeatedly represented that, while working at GBG, Ethan Cole did not believe he was doing anything improper, much less knowingly participating in any criminal conspiracy.  Ethan Cole's counsel told the government that he understood that "GBG believed it could recoup by billing Iconix for marketing and strategy work," but "Ethan did not think there was anything improper about that."  DX 3517-003.  Ethan Cole's counsel further explained that

Ethan Cole "did not have any knowledge about whether Iconix and GBG actually talked about that, or whether it was done internally at GBG." *Id.* Further, Ethan Cole and Jason Rabin, his alleged co-conspirator according to the government, themselves had limited direct contact "given [the] wide gap in seniority." *Id.* And importantly, Ethan Cole was never charged, never immunized, and never referenced as an unnamed co-conspirator.

The government repeatedly pointed to Seth Horowitz's testimony in an attempt to link Ethan Cole to the conspiracy. But Horowitz did not and could not say that Ethan Cole had any knowledge of any alleged conspiracy or that he was a willful participant. Further, out-of-court declarations by co-conspirators are presumptively unreliable, which is why the law dictates that their admission cannot be supported by the statement alone—there must be independent corroborating evidence. *See Bourjaily v. United States*, 483 U.S. 171, 180-81 (1987); *Gigante*, 166 F.3d at 82. So to the extent that Horowitz tries to link Ethan Cole to the conspiracy in this trial, the Court should view that testimony with great caution and require corroboration because Horowitz was a patently unreliable witness who repeatedly and without explanation contradicted his own prior statements. *See e.g.*, Tr. 446:3-447:8, 448:21-449:13, 450:4-451:6, 555:17-556:21, 680:21-681:17.

Horowitz testified that Ethan Cole "dropped off two large folders full of invoices and proposed backup to those invoices and told me that we should pay whatever—whichever of these invoices we wanted to pay that added up to how much money we owed them." Tr. 332:17-20. The government highlighted this testimony in its argument to the Court when it initially offered Ethan Cole's emails pursuant to the co-conspirator exception, Tr. 1126, in its written submission thereafter, ECF No. 130 at 4, and again when it offered into evidence additional statements by Ethan Cole pursuant to Rule 801(d)(2)(E), Tr. 2111. However, Ethan Cole's 3500 material makes

no reference to dropping off two large folders full of invoices, notwithstanding that the government questioned him and his counsel about these events.  This makes sense because it is plain from Horowitz's prior statements to the government that it was Jared Margolis, not Ethan Cole, who delivered invoices to Iconix's offices.  DX 3539-083.  Horowitz's contradictory statements cannot and should not be used to buttress presumptively unreliable testimony, and the Court should not credit them as independent corroborating evidence of the existence of any alleged conspiracy.

Moreover, even if Ethan Cole dropped off invoices and made these statements, this is *not* proof of Ethan Cole's knowing and willful acts pursuant to a conspiracy.  Ethan Cole would still need to know that the invoices were part of some scheme to defraud.  Yet there is *no* evidence of that.  As the Court correctly observed when the defense first objected to the admissibility of this evidence: "There could be people at lower levels of the organization that are told the facts [but do] not know that there is a corrupt agreement."  Tr. 1127.  Additionally, following the Court's initial ruling midway through trial, both parties elicited additional testimony that is relevant to whether the government can satisfy its burden that Ethan Cole and Neil Cole entered into a criminal agreement together.  For example, Neil Cole testified on cross-examination in response to the government's questions that he did not know Ethan Cole, Tr. 2247, and that he "rarely" "dealt with Jared Margolis," Tr. 2248.  Neil Cole testified on redirect that despite being asked on cross-examination about a document that Ethan Cole had prepared, he never received a copy of that document.  Tr. 2362.  Neil Cole reaffirmed that he "never communicated with Ethan Cole" and that he did not "believe [he] even met [Ethan Cole]" but acknowledged "he might have been at a meeting that I was at, but I don't recall who he is."  Tr. 2362-63.

Here, as the jury ultimately found, there was no reliable evidence of *any* corrupt agreement, let alone one "with some specific criminal goal," that involved Neil Cole and Ethan Cole.  *See*

*Gigante*, 166 F.3d at 83.

  **c. The Government Cannot Demonstrate That the Statements It Sought to Admit of Ethan Cole Pursuant to the Co-Conspirator Exception Were Made During the Course of and in Furtherance of the Conspiracy.**

  The fact that Ethan Cole sent an email with a note about "AR" or allegedly dropped off invoices are not, by themselves, statements in furtherance of a conspiracy.  Statements are not in furtherance of a conspiracy if they are not in furtherance of "a specific criminal purpose."  *See Gigante*, 166 F.3d at 83.  "[T]he conspiratorial objective being furthered by the declarant's statement must in fact be the objective of a conspiracy between the defendant and the declarant."  *Russo*, 302 F.3d at 45.  The emails in question, GX 1068, GX 1139, and GX 1165, have nothing to do with Neil Cole.  Without Ethan Cole to explain why he was forwarding them or what was in his mind, the government cannot show why they are in furtherance of any conspiracy.  *See, e.g., United States v. Maliszewski*, 161 F.3d 992, 1008-09 (6th Cir. 1998) (statements not shown to be made in furtherance of the conspiracy); *United States v. West*, 142 F.3d 1408, 1413-14 (11th Cir. 1998), *vacated on other grounds*, 526 U.S. 1155 (1999) (finding that author of a drug ledger was not shown to be a member of the conspiracy and that the entries were not shown to be made in furtherance of the conspiracy); *United States v. Urbanik*, 801 F.2d 692, 698 (4th Cir. 1986) (finding statements not in furtherance).  And as discussed above, the government cannot satisfy its burden to show Ethan Cole, a low-level GBG employee, knowingly and willfully entered into any conspiracy, let alone one with Neil Cole, with whom he never had meaningful contact.  Accordingly, Ethan Cole's emails identified herein cannot be said to have been made during the course of and in furtherance of a conspiracy.  Under the government's reasoning, every email sent about these deals would be admissible regardless of who sent them and regardless of what the declarant believed about the email.  That cannot be the law.  Because the government cannot demonstrate by a preponderance of the evidence that these emails satisfy all three elements of the

co-conspirator exception to hearsay, the court must exclude them.

## II. Ethan Cole's Emails, GX 1068, GX 1139, and GX 1165, Are Also Not Admissible Pursuant to the Statements Against Penal and Pecuniary Interest Hearsay Exception.

A party may introduce otherwise inadmissible hearsay statements if the statement was made by a declarant who is unavailable and his statement is against his penal or pecuniary interest. *See* Fed. R. Evid. 804(b)(3)(A).  To invoke this exception, the proponent of the statement "must show (1) that the declarant is unavailable as a witness, (2) that the statement is sufficiently reliable to warrant an inference that a reasonable man in [the declarant's] position would not have made the statement unless he believed it to be true, and (3) that corroborating circumstances clearly indicate the trustworthiness of the statement."  *United States v. Wexler*, 522 F.3d 194, 202 (2d Cir. 2008) (internal quotation marks omitted); *see also* Fed. R. Evid. 804(b)(3)(B).

As a threshold matter, the government cannot demonstrate that Ethan Cole is unavailable. The government has previously argued that Ethan Cole was unavailable because his counsel had "stated his intention to invoke [the privilege against self-incrimination] as recently as late September of [2021]."  ECF No. 130 at 10.  To the extent the government continues to maintain that Ethan Cole is unavailable, such a position would be unreasonable given that the statute of limitations has now run on any potential crimes arising out of the events at issue here.

Even assuming that the government continues to maintain that Ethan Cole is unavailable to testify at trial, it cannot show by a preponderance of the evidence that his out-of-court statements would be "perceived by a reasonable person in the declarant's shoes to be detrimental to his or her own penal interest."  *United States v. Ojudun*, 915 F.3d 875, 885 (2d Cir. 2019) (internal quotation marks omitted).  Rather than repeat those arguments here, we refer the Court to the prior defense

submission.  ECF No. 131 at 3-4.[3]

**III.     Ethan Cole's Emails Are Also Not Admissible Under the "State of Mind" Hearsay Exception.**

The "state of mind" hearsay exception under Rule 803(3) is similarly inapplicable to GX 1068 and GX 1139.  As explained in Neil Cole's prior submission, the key statements in each exhibit are plainly backward looking and therefore inadmissible under the "state of mind" exception. *Shepard v. United States*, 290 U.S. 96, 105-06 (1933).  ECF No. 131 at 4-5.  The same holds true for GX 1165, Ethan Cole's transmission of a document summarizing invoices, which is also plainly backward looking.  Accordingly, any attempt by the government to introduce Ethan Cole's emails identified herein pursuant to this exception should also be denied.[4]

<u>**CONCLUSION**</u>

For the reasons set forth above, Neil Cole respectfully requests that the Court grant his motion *in limine* to prohibit the government from offering into evidence Ethan Cole's statements that were admitted in Neil Cole's first trial pursuant to the co-conspirator hearsay exception.

Dated: October 3, 2022

---

[3] The Court never addressed whether Ethan Cole's email were admissible pursuant to Fed. R. Evid. 804(b)(3)(A) because the Court ruled that the emails were admissible pursuant to Fed. R. Evid. 801(d)(2)(E).

[4] The Court never addressed whether Ethan Cole's email were admissible pursuant to Fed. R. Evid. 803(3) because the Court ruled that the emails were admissible pursuant to Fed. R. Evid. 801(d)(2)(E).

Respectfully submitted,

Sean Hecker
Jenna M. Dabbs
Rebecca Sussman
Jeffrey Then
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, 63rd Floor
New York, New York 10118
Telephone: (212) 763-0883
shecker@kaplanhecker.com
jdabbs@kaplanhecker.com
rsussman@kaplanhecker.com
jthen@kaplanhecker.com

David Oscar Markus*
A. Margot Moss*
MARKUS/MOSS PLLC
40 NW 3rd Street, PH 1
Miami, Florida 33128
Telephone: (305) 379-6667
dmarkus@markuslaw.com
mmoss@markuslaw.com

*Attorneys for Neil Cole*

*Admitted pro hac vice*