# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0889
DIRECT EMAIL shecker@kaplanhecker.com

October 3, 2022

**BY ECF AND E-MAIL**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: *United States v. Neil Cole*, No. 19 Cr. 869 (ER)

Dear Judge Ramos:

  We respectfully submit this letter on behalf of our client Neil Cole to request that the Court authorize the issuance of two subpoenas, attached hereto as Exhibits A and B, pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. As the Court is aware, Mr. Cole's prior counsel moved this Court to issue two subpoenas seeking evidence of the substance of "attorney proffers" made on behalf of Seth Horowitz—the government's cooperating and principal witness—to Richards Kibbe & Orbe LLP ("RKO"), counsel for a Special Committee of the Iconix Board of Directors, in September and October 2015. *See* ECF No. 71. From our limited understanding of the proffers, based on vague government disclosures and notes from a conversation prior counsel had with counsel for the Special Committee,[1] it is evident that the substance of the proffers is entirely inconsistent in material respects with the testimony Mr. Horowitz provided under oath during Mr. Cole's first trial, and exculpatory as to Mr. Cole.

  At trial, Mr. Horowitz testified that he met with his lawyers prior to their meeting with the Special Committee, and that at the time his lawyers met with the Special Committee, he was aware of what his lawyers told the Special Committee on his behalf. But then, in completely implausible fashion while still under oath, Mr. Horowitz disclaimed knowledge of information we understand his lawyers told the Special Committee, including that Mr. Horowitz believed he did nothing wrong or inappropriate, and that he was transparent in negotiating the joint venture transactions at issue here. Tr. 666-67.[2] Mr. Horowitz disclaimed knowledge of these statements even when

---

[1] *See* Exhibit C.
[2] All references to "Tr." refer to the transcript from Neil Cole's first trial.

presented with a summary of what his lawyers recall telling the Special Committee. Tr. 666-67; *see also* Exhibit C.

The Court should authorize the issuance of the proposed subpoenas for two principal reasons. *First*, the documents requested in the subpoenas satisfy each of the requirements of relevancy, admissibility and specificity set forth in *United States* v. *Nixon*, 418 U.S. 683 (1974). In light of Mr. Horowitz's potentially false testimony on these topics during Mr. Cole's first trial, the case for the relevancy and admissibility of these documents, as impeachment material, is even stronger now. *Second*, in the time since Mr. Cole's first trial, where he was acquitted of two of the Indictment's charges, the government has continued to refuse to obtain information of these proffers from counsel to the Special Committee. The government's refusal to attempt to obtain highly relevant information about their principal witness poses a severe injustice given the fact that the government has requested and received similar information about other witnesses, but has simply declined to do so with respect to Mr. Horowitz. It is especially troubling that the government was completely comfortable requesting similar information from counsel to the Special Committee about Mr. Cole but is refusing to do so for Mr. Horowitz. These selective decisions by the government run completely counter to the government's fundamental interest in a criminal case that "justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935); *see* ECF No. 71 at 5-6.

Accordingly, because the subpoenas satisfy each of the requirements of relevancy, admissibility and specificity set forth in *Nixon*, 418 U.S. 683, and in the interest of justice, we respectfully request that the Court authorize the issuance of the proposed subpoenas.

## I. Background

### A. Mr. Horowitz's Attorneys Proffered that He Did Not Believe He Was Doing Anything Wrong.

Mr. Horowitz is a former senior executive at Iconix who resigned in April 2015. Tr. 61, 384. When he resigned, and while he was represented by his attorneys at WilmerHale, Mr. Horowitz submitted a letter to the Iconix Board of Directors in which he claimed that he participated in a scheme to inflate the value of two joint venture transactions. Tr. 386-89. After Mr. Horowitz resigned, Iconix formed a Special Committee of the Iconix Board of Directors, and an internal investigation was conducted on behalf of the Special Committee by attorneys from RKO.

Counsel for the Special Committee interviewed more than twenty witnesses, including Mr. Cole. Mr. Horowitz declined to be interviewed, but his attorneys provided two attorney proffers to RKO in September and October 2015. RKO subsequently made detailed factual presentations to the SEC and to the U.S. Attorney's Office during which RKO provided them with substantive downloads of statements that had been made to RKO by witnesses or by their attorneys during attorney proffers.

KAPLAN HECKER & FINK LLP

Through government disclosures of limited excerpts of notes that SEC attorneys memorialized during a December 2015 meeting with RKO,[3] and through the notes from a February 9, 2021 call between counsel for the Special Committee and Mr. Cole's prior counsel,[4] during which counsel to the Special Committee relayed what RKO had previously told the SEC about the substance of the proffers RKO received from Mr. Horowitz's counsel, it is clear that the information that Mr. Horowitz's attorneys provided both contradicts the testimony Mr. Horowitz provided under oath during Mr. Cole's first trial, and is exculpatory as to Mr. Cole. For example, based on the call notes from the February 9, 2021 call, it appears that Mr. Horowitz's lawyers had proffered that:



See Exhibit C. Again, these statements, which run counter to Mr. Horowitz's testimony in Mr. Cole's first trial, are clearly exculpatory and at the very least, highly relevant and admissible impeachment material.

### B. Mr. Horowitz Testified that He Did Not Recall What His Lawyers Told the Special Committee.

During the September 30, 2021 final pretrial conference before Mr. Cole's first trial, the Court heard argument on Mr. Cole's previous request for the Court to authorize the issuance of Rule 17 subpoenas. During the conference, prior counsel explained that the subpoenas were necessary in order to obtain the substance of the proffers. See Final PTC Tr. 68 (Sept. 30, 2021). The Court posited that, at trial, Mr. Horowitz would presumably testify that his lawyers communicated to the Special Committee that Mr. Horowitz had done nothing wrong. See id. The Court likely assumed that the substance of the statements Mr. Horowitz's lawyers made to the Special Committee—that he did nothing wrong—would both be something that Mr. Horowitz would remember and be something about which he would testify truthfully.

But what the Court reasonably believed would happen at trial did not in fact happen. Instead, Mr. Horowitz testified that he could not recall what his attorneys had told the Special Committee, even when confronted with the notes from the February 9, 2021 call where counsel for the Special Committee summarized what it recalled Mr. Horowitz's attorneys communicating

---

[3] See Exhibits D and E.
[4] See Exhibit C.

during these proffers. *See* Tr. 666-67. What's more, Mr. Horowitz testified that at or around the time his lawyers spoke to the Special Committee he: (1) had met with his lawyers prior to their meeting with the Special Committee, (2) was aware that his lawyers had spoken to the Special Committee on his behalf, and (3) was aware of what his lawyers had told the Special Committee. *Id.* In other words, Mr. Horowitz testified to once being aware of these meetings and what was said in them. But immediately after testifying that he was once aware of what statements were made by his lawyers to the Special Committee, Mr. Horowitz claimed that he could not recall any of the specific statements that he was confronted with in court. *Id.*

Mr. Horowitz's testimony is wholly implausible. Given Mr. Horowitz's extensive and expansive recollection of conversations, events, negotiations, and details from around the same time period, it is both unlikely and arguably suspicious that Mr. Horowitz just happened to not recall these contradictory and exculpatory statements.

C. The Government Has Selectively Chosen Not to Request a Download from the Special Committee of the Proffers Provided by Mr. Horowitz's Counsel.

In its investigation and in preparation for trial, the government has at times requested and received downloads from RKO of interviews the Special Committee conducted of witnesses, or of attorney proffers made to the Special Committee. The government has not been shy about seeking this information when it suited them—it made a request for a download of Mr. Cole's interview, for example. Mr. Cole's prior counsel conferred with the government on various occasions to request that the government obtain downloads of these proffers, as it had done with those of or on behalf of other witnesses, but counsel was rebuffed time and time again. *See, e.g.*, ECF No. 71 at 4.

During the final pretrial conference in advance of Mr. Cole's first trial, the government represented that it could not recall whether it did in fact request that RKO provide a download of the attorney proffers made on behalf of Mr. Horowitz or whether RKO provided the government with "witness-by-witness" downloads. Final PTC Tr. 76.[5]

Given this level of ambiguity, on September 7, 2022, the undersigned wrote to the government to seek further clarity on these questions. *See* Exhibit F. We asked the government to confirm whether it was still refusing to ask for a download of these proffers from counsel to the Special Committee, and in the event that it was, to provide us with clarity as to the extent to which it has requested downloads for some individuals, but not others. *Id.*

In its response, dated September 16, 2022, the government confirmed that the government had not requested a download or "read-out" of the attorney proffers made to the Special Committee by lawyers for Mr. Horowitz. *See* Exhibit G. And instead of offering further clarity on the government's decisions to request downloads from RKO of witness interviews or attorney proffers, the government simply provided a vague and generic response. *See id.* (noting that the

---

[5] Final PTC Tr. 76 ("Court: Let me ask Mr. Hartman, this issue that the defen[se] keep[s] bringing up, this selective request for downloads, is that so? Mr. Hartman: Your Honor, I would have to look back. I don't remember whether they [] gave us witness-by-witness downloads in this case…. The Court: The question is if you asked for certain witnesses and refused to ask for others. Mr. Hartman: I don't recall if we asked for Mr. Horowitz. I believe we asked for Mr. Cole and they told us no, but I don't remember for sure.").

government's productions "have included notes by the U.S. Attorney's Office or by the SEC of what either investigative team was told by the Special Committee relating to the substance of witness statements obtained by the Special Committee").[6]

Given the importance of Mr. Horowitz to the government's case, it is concerning that the government continues to refuse to obtain relevant information about their principal witness, especially when such information appears to call Mr. Horowitz's credibility into question and is clearly exculpatory as to Mr. Cole.

### D. The Proposed Subpoenas

Because of the government's refusal to seek information about Mr. Horowitz, which it willingly requested for other witnesses, and Mr. Horowitz's contradictory testimony at trial, Mr. Cole is left with no other option but to ask the Court to issue the proposed subpoenas. The subpoenas, attached as Exhibits A and B, seek relevant, admissible, and targeted information relating to two specific meetings that took place within a two-month period in 2015. Specifically, the proposed subpoenas seek the following:

1. Subpoena to Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") (counsel for Seth Horowitz) (Exhibit A): Talking points or other script, or presentation materials used during, and contemporaneous notes or memoranda memorializing, attorney proffers made on behalf of Seth Horowitz to counsel for the Special Committee of the Board of Directors of Iconix that took place in September 2015 and October 2015.

2. Subpoena to Perkins Coie LLP (counsel for Special Committee of Iconix Board of Directors)[7] (Exhibit B): Contemporaneous notes, memoranda memorializing, or any presentation materials utilized during attorney proffers made on behalf of Seth Horowitz to counsel for the Special Committee of the Board of Directors of Iconix that took place in September 2015 and October 2015.

For the reasons already discussed and discussed further below, the Court should authorize the issuance of the proposed subpoenas.

### II. The Court Should Authorize the Rule 17 Subpoenas.

The proposed subpoenas satisfy each of the requirements of relevancy, admissibility and specificity set forth in *Nixon*, 418 U.S. 683.

#### A. The Documents Sought Are Highly Relevant to Mr. Cole's Defense.

*First*, the subpoenas seek clearly relevant information. A Rule 17(c) subpoena seeks relevant information as long as there is a "'sufficient likelihood' that its requests [will] reach

---

[6] The government even cited to two such documents; one of which consists of two-pages which are completely redacted, save for six words, in line with the government's vague and opaque approach to this topic. *See* Exhibit H.
[7] The lawyers from RKO representing the Special Committee now are partners with the law firm Perkins Coie LLP.

materials 'relevant to the offenses charged in the indictment.'" *United States v. Bergstein*, No.-16 Cr.-746 (PKC), 2018 WL 9539846, at *2 (S.D.N.Y. Jan. 24, 2018) (quoting *Nixon*, 418 U.S. at 700); *see also United States v. Ray*, No. 20-CR-110 (LJL), 2022 WL 374367 at *5 (S.D.N.Y. Feb. 8, 2022) (citing *Nixon* for the proposition that "[t]he defense need only make a sufficient preliminary showing of admissibility and relevance").

Mr. Horowitz testified that SEA 2 involved a promise to make a future payment to GBG. *See, e.g.*, Tr. 391, 2409-10. During the attorney proffers, however, his counsel represented that Mr. Horowitz denied making a promise to make a future payment to GBG and that the SEA 2 purchase price was arrived at through a business negotiation. *See* Exhibit C. At trial, Mr. Horowitz claimed that he could not recall whether his lawyers told the Special Committee that he thought he had not done anything wrong and that the SEA 2 purchase price was arrived at through a business negotiation. Tr. 667. Statements by Mr. Horowitz's lawyers, in the form of an attorney proffer relaying what Mr. Horowitz would say on the subject, that the relevant transactions did not involve any promises to make future payments and were arrived at through business negotiation, bear directly on the allegations made and charges brought against Mr. Cole, and also bear directly on Mr. Horowitz's credibility.

Furthermore, given Mr. Horowitz's testimony that he did not recall that his attorneys told counsel to the Special Committee that he never did anything wrong and that SEA 2 was the result of a business negotiation, no record or document as to these prior statements was entered into evidence. In evaluating Mr. Horowitz's credibility, Mr. Cole should be able to present, and the jury should be able to consider, evidence of these prior, inconsistent statements—otherwise, the trial record will be both incomplete and misleading.

B.  The Materials Sought are Admissible.

*Second*, because the proposed subpoenas seek material that can be used to impeach Mr. Horowitz, the subpoenas satisfy the admissibility prong under *Nixon*. *See* Order on Motion to Quash, ECF No. 68, at 7 (collecting cases stating that a Rule 17(c) subpoena may be used to obtain impeachment material).

The statements made by Mr. Horowitz's counsel to RKO in the fall of 2015 squarely contradict core allegations in the Indictment and Mr. Horowitz's testimony during Mr. Cole's first trial. The government argued at trial that Mr. Cole "proposed to Rabin that Li & Fung pay more in exchange for getting the money back. . . . They all agreed to inflate the number for Iconix in exchange for a promise to get the money back." Tr. 2409-10. Yet, Mr. Horowitz, the principal Iconix employee negotiating the SEA 2 transaction, told the Special Committee, through his lawyers, the exact opposite: that there was no promise made to make a future payment and that SEA 2's purchase price was the result of business negotiations. The materials requested in the proposed subpoenas will clearly impeach Mr. Horowitz's testimony at trial.

And although the general rule is that "the need for evidence to impeach witnesses is insufficient to require its production in advance of trial," *Nixon*, 418 U.S. at 701, that general rule does not apply here where we are requesting the subpoenas in the context of a retrial, and Mr. Horowitz's testimony on these topics can clearly be anticipated and is ripe for impeachment. *See United States v. Avenatti*, No. S119-CR-373 (PGG), 2020 WL 508682, at *5 (S.D.N.Y. Jan. 31,

KAPLAN HECKER & FINK LLP

2020) ("Once a witness has testified at trial, however, prior inconsistent statements of the witness become admissible against him on cross-examination to undermine his credibility.") (internal quotation marks, alterations, and citation omitted)).

Relatedly, in addition to impeaching Mr. Horowitz, the documents sought by the proposed subpoenas may also be useful in refreshing Mr. Horowitz's recollection of his attorneys' statements to the Special Committee. *See id.* at *5 n.2 (noting in the Rule 17 context that "text message, e-mail statements, and other documentary information . . . may be useful to refresh the recollection of other witnesses or to impeach witnesses"); *United States v. Harry*, No. 86 CR 766, 1987 WL 30695, at *1 (E.D.N.Y. Dec. 23, 1987) (in response to a motion to quash a Rule 17 subpoena filed by defendant's former attorney, the Court observed that the notes "may possibly be used to refresh his recollection . . . if his recollection should fail at some point"); *Cf. United States v. James*, No. 02 CR 0778 (SJ), 2007 WL 914242, at *24 (E.D.N.Y. Mar. 21, 2007) (ordering government to produce government agent's notes relating to an arrest and interview in order to refresh the agent's recollection).

At Mr. Cole's first trial, counsel for Mr. Cole attempted to refresh Mr. Horowitz's recollection with high-level notes from a February 9, 2021 call between counsel for the Special Committee and Mr. Cole's prior counsel, during which counsel to the Special Committee relayed what Mr. Horowitz's counsel had told the Special Committee in 2015. *See* Exhibit C. Mr. Horowitz's recollection failed, however, and seeing those second-hand notes did not refresh his recollection. *See* Tr. 666-67. It is much more likely, however, that the materials sought by the proposed subpoenas—documents prepared at the time of the proffers that likely capture the proffer with a higher level of specificity and accuracy than the February 9, 2021 call notes—will be able to refresh Mr. Horowitz's recollection.

And because the attorney proffers were made to RKO, and RKO communicated the substance of the proffers to the SEC, RKO and Mr. Horowitz's lawyers no longer have a claim to privilege. *See, e.g., United States Sec. & Exch. Comm'n v. Herrera*, 324 F.R.D. 258, 263–64 (S.D. Fla. 2017) (holding that law firm hired to conduct internal investigation waived work-product protection covering written notes and memoranda from twelve witness interviews by providing oral summaries to SEC); *In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 465–67 (S.D.N.Y. 2008) (finding that company waived work-product protection by disclosure of memoranda to the SEC). Additionally, any claim of privilege that these parties *might* have is clearly overcome by Mr. Cole's "substantial need" for the documents sought by the proposed subpoenas. *See, e.g., United States v. Weisman*, No. S1 94 CR. 760 (CSH), 1995 WL 244522, at *6 (S.D.N.Y. Apr. 26, 1995) ("[I]n a criminal case where the defendant's liberty is at stake . . . 'substantial need' as originally contemplated by the civil discovery rules should be defined more flexibly." (internal quotation marks, alteration, and citation omitted)); *see also id.* at *8–*9 (finding that defendant had shown substantial need to overcome work product privilege in order to obtain documents that would help establish whether a common interest relationship existed between the relevant parties). Ultimately, the subpoena recipients will have every opportunity to review the relevant documents and redact any relevant materials for any mental impressions or attorney work product. All that is sought by these subpoenas is the substance that has been relayed to others, which is thus no longer privileged.

### C. The Materials Sought Clearly Meet the Specificity Element.

*Third*, the requested subpoenas "seek[] documents from a narrow time period and relate[] to a specific subject matter." Order on Motion to Quash, ECF No. 68, at 10. The subpoenas are narrowly tailored and concern a small universe of documents containing the actual substance of the proffers provided by Mr. Horowitz's attorneys. Courts routinely allow for Rule 17 subpoenas containing such narrowly tailored requests. *See Sokolow v. Palestine Liberation Org*, No. 04-cv-397, 2012 WL 3871380, at *3 (S.D.NY. Sept. 6, 2012) (denying the British Broadcasting Corporation's motion to quash subpoenas where the plaintiff sought likely relevant outtakes from two specific interviews).

### D. The Materials Sought Are Not Otherwise Procurable.

*Last*, the documents "are not otherwise procurable," *Nixon*, 418 U.S. 683 at 699, because the government continues to decline to request this information, even though it has requested similar information for other witnesses. And now that Mr. Horowitz has testified, it is clear that the information Mr. Cole has been able to procure about the attorney proffers apparently did not refresh Mr. Horowitz's recollection of these events. With Mr. Horowitz's claiming that he cannot recall the statements made by his attorneys and with Mr. Horowitz's claiming that the notes of the February 9, 2021 call did not refresh his recollection, Mr. Cole is unfairly prevented from making meaningful use of this highly exculpatory evidence at trial. *See* Tr. 666-67 (Mr. Horowitz testifying that reviewing Exhibit C did not refresh his recollection).

The proposed subpoenas, therefore, satisfy each of the requirements of relevancy, admissibility and specificity set forth in *Nixon*, 418 U.S. 683, and are not otherwise procurable or replaceable by anything Mr. Cole and the undersigned have in their possession. The Court should, therefore, authorize the issuance of the subpoenas.

## III. The Court Should Authorize the Subpoenas in the Interest of Justice.

There is no question that if the materials that Mr. Cole now seeks were in the government's possession, the government would be obligated to produce that information to Mr. Cole pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The material is clearly exculpatory and clearly undermines Mr. Horowitz's credibility.

The government maintains that Mr. Cole is already in possession of the substance that the subpoenas seek. *See* Final PTC Tr. 74 ("We're also making an argument about whether or not they already have the substance of this information. Our position is that they do given the core of the information was conveyed to the SEC. They will be able to exploit this information and ask Mr. Horowitz about it and cross-examine him."). But the government's position is unreliable and speculative—the government cannot know how the information Mr. Cole has in his possession compares to the information contained in the talking points, scripts, notes, and presentation materials the subpoenas seek, since the government has not obtained or seen those materials.

The government, by choice, has decided not to request this information from either counsel to the Special Committee or Mr. Horowitz's own lawyers. In other words, the government has chosen to prosecute Mr. Cole, relying in large part on Mr. Horowitz's testimony, but has expressly

KAPLAN HECKER & FINK LLP

declined to come into possession of information about Mr. Horowitz that does not help the government's case and that is exculpatory as to Mr. Cole. The injustice is only enhanced in these circumstances where Mr. Horowitz spuriously claimed at trial that he did not recall his attorneys stating to the Special Committee that he did not think he did anything wrong. Against this backdrop, the subpoenas present the only avenue to properly challenge Mr. Horowitz and correct the record, absent the government requesting this information as it has done for others and should similarly do for Mr. Horowitz.

Such a decision is inconsistent with the government's fundamental interest in a criminal case that "justice shall be done." *Berger*, 295 U.S. at 88. On its own, the injustice of such a practice is clear. But the injustice of such a practice is heightened when one considers that the government did seek such information from the Special Committee about Mr. Cole but has refused to request such information about their principal cooperating witness. And that is just one example, albeit the most striking example—the government has also requested and received similar information about other witnesses, while at the same time declining to do the same with respect to Mr. Horowitz.[8] *See* ECF No. 71 at 3 n.2.

The government notes that it did not "receive read-outs of all, or even most, of the interviews conducted by the Special Committee." Exhibit G. But the government's argument misses the point. Mr. Cole is not asking the government to seek read-outs or downloads from the Special Committee for every single witness interviewed over the course of the Special Committee's investigation—our request is actually much more narrow and designed solely to obtain relevant, exculpatory information. Mr. Cole is simply asking, where the government has built its case on the testimony of a cooperating witness who was interviewed by the Special Committee, that the government seek a detailed read-out about that specific individual, especially when the government already knows that at least some of the resulting information will be exculpatory as to Mr. Cole. What is significant about the government's statement in their September 16, 2022 letter is that they admit that they have the ability to request the information sought by the subpoena and the government has done so on other occasions, but has declined to do so here, in the case of Mr. Horowitz. *See id.* Justice requires more. Not only do the proposed Rule 17 subpoenas satisfy the *Nixon* elements—they satisfy the fundamental interest in a criminal case that "justice shall be done," and, therefore, they should be authorized. *Berger*, 295 U.S. at 88.

---

[8] Counsel for Mr. Cole has repeatedly requested clarity from the government as to what downloads it has received and requested but the government has refused to provide such clarity. *Compare* Exhibit F, *with* Exhibit G.

KAPLAN HECKER & FINK LLP

### IV. Conclusion

For the reasons discussed above, we respectfully request that the Court issue the proposed subpoenas pursuant to Rule 17(c).

Very truly yours,

KAPLAN HECKER & FINK LLP
Sean Hecker
Jenna M. Dabbs

MARKUS/MOSS PLLC
David Oscar Markus
Margot Moss

cc: Assistant United States Attorneys Jared Lenow, Justin Rodriguez, and Andrew Thomas