# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63RD FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL    212.763.0889
DIRECT EMAIL shecker@kaplanhecker.com

October 28, 2022

**BY ECF AND E-MAIL**

The Honorable Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    *United States v. Neil Cole*, No. 19 Cr. 869 (ER)

Dear Judge Ramos:

    We respectfully submit this letter on behalf of our client Neil Cole, in further support of our October 3, 2022 letter (the "Rule 17 Letter") requesting that the Court authorize the issuance of two subpoenas pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure. ECF No. 221. The two requested subpoenas seek evidence of the substance of "attorney proffers" made on behalf of Seth Horowitz to Richards Kibbe & Orbe LLP ("RKO"), counsel for a Special Committee of the Iconix Board of Directors, in September and October 2015. *Id.*

    On October 27, 2022, the Court heard argument on the Rule 17 Letter and invited the defense to supplement its submission to explain why the requested subpoenas satisfy the admissibility requirement set forth in *United States* v. *Nixon*, 418 U.S. 683 (1974). As discussed further below, the subpoenas meet the admissibility prong for two independent reasons. *First*, the materials sought by the subpoena will be used to impeach Seth Horowitz, and this Court has already held – in this case – that "evidence sought for impeachment can satisfy the admissibility prong under *Nixon*." *See* Order on Motion to Quash, ECF No. 68, at 7 (finding that defense subpoena to Mr. Horowitz's former employer satisfied the admissibility prong because the evidence was sought for impeachment purposes). *Second*, the evidence is admissible as Mr. Horowitz's prior inconsistent statements, under Federal Rule of Evidence 613.

    Accordingly, because the subpoenas meet *Nixon*'s admissibility prong, on two independent grounds, the requested subpoenas should be authorized.

### I.   Evidence Sought for Impeachment Satisfies the Admissibility Prong.

As a threshold matter, this Court has already found, in this case, "that evidence sought for impeachment can satisfy the admissibility prong under *Nixon* and, therefore, be sought through a Rule 17(c) trial subpoena." *See* Order on Motion to Quash at 7 (finding that defense subpoena met admissibility prong because evidence was sought for impeachment purposes).

On February 25, 2020, Mr. Cole's prior counsel served a Rule 17(c) subpoena on Baked by Melissa, one of Mr. Horowitz's former employers. *Id.* at 2. In resolving the government's motion to quash, the Court considered the question of "whether a Rule 17(c) subpoena may ever be used to obtain materials that can be used only for impeachment." *Id.* at 6. The Court observed that "several courts in this District have concluded that trial subpoenas seeking evidence for impeachment are permissible under Rule 17(c). *Id.* at 7 (collecting cases).

There is no question that the materials sought contradict Mr. Horowitz's testimony from the first trial, and, unless he plans to change his story (yet again), will impeach his testimony in the retrial. For example, Mr. Horowitz testified that he committed offenses with Neil Cole, Tr. 60-61, and that he "knew that [Mr. Cole and he] had done something wrong," Tr. 355.[1] But the statement Mr. Horowitz's counsel made to RKO on his behalf in the fall of 2015 squarely contradicts this testimony and would serve to impeach Mr. Horowitz. During the attorney proffers he authorized, Mr. Horowitz's counsel represented that Mr. Horowitz believed he had not done anything wrong. *See* Exhibit C to Rule 17 Letter.[2]

Given the Court's prior ruling on this issue, which is law of the case, evidence sought for impeachment, such as the subpoenas at issue here, "can satisfy the admissibility prong under *Nixon* and, therefore, be sought through a Rule 17(c) trial subpoena." Order on Motion to Quash at 7. At a minimum, because the evidence sought through these subpoenas would clearly impeach Mr. Horowitz, meeting the admissibility prong of *Nixon*, the Rule 17 Letter requesting authorization of the subpoenas should be granted.

### II.   Prior Inconsistent Statements Plainly Satisfy *Nixon*'s Admissibility Prong.

In addition to meeting *Nixon*'s admissibility prong because the evidence sought will be used for impeachment purposes, the evidence sought would independently be admissible under Federal Rule of Evidence 613, because the materials consist of prior inconsistent statements.

---

[1] All references to "Tr." refer to the transcript from Neil Cole's first trial. All references to "FPTC Tr." refer to the transcript from the October 27, 2022 final pretrial conference.

[2] Mr. Horowitz also testified that Iconix promised to make future payments to GBG in exchange for an increase in purchase price. *See, e.g.*, Tr. 136 (testifying to discussions that "revolved around giving [Li & Fung] something back in exchange for increasing the purchase price"); Tr. 150 ("The purchase price of the JV changed because Iconix assured GBG that it would get the $5 million back to them"); Tr. 152 ("Iconix and GBG agreed that GBG would pay $5 million more for the joint venture in exchange of Iconix paying them back at a later date."). But Mr. Horowitz's proffer to the Special Committee squarely contradicts his trial testimony and would serve to impeach Mr. Horowitz. He told the Special Committee, through his lawyers, that there was no promise made to make a future payment and that SEA 2's purchase price was the result of business negotiations. *See* Exhibit C to Rule 17 Letter.

KAPLAN HECKER & FINK LLP

Under Rule 613, extrinsic evidence of a witness's prior inconsistent statement is admissible if "(1) the statement is inconsistent with the witness's trial testimony, (2) the witness is afforded an opportunity to deny or explain the same, and (3) the opposing party is afforded the opportunity to cross-examine the witness thereon." *United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995) (citing Fed. R. Evid. 613(b)).

A. Mr. Horowitz's Proffer to the Special Committee Contradicted His Trial Testimony.

Mr. Horowitz's prior statements to the Special Committee through his counsel are admissible as prior inconsistent statements in two regards and thus easily satisfy *Nixon*'s requirement that there be a "sufficient likelihood" of admissibility before granting a Rule 17(c) subpoena. *United States v. Bergstein*, No. 16-cr-746 (PKC), 2018 WL 9539846, at *2 (S.D.N.Y. Jan. 24, 2018) (quoting *Nixon*, 418 U.S. at 700); *see also United States v. Ray*, No. 20-cr-110 (LJL), 585 F. Supp. 3d 445, 455 (S.D.N.Y. Feb. 8, 2022) (citing *Nixon* for the proposition that "[t]he defense need only make a sufficient preliminary showing of admissibility and relevance").

*First*, the Court correctly noted at the final pretrial conference that when a witness is unable to recall a prior statement, the prior statement may be admissible as a prior inconsistent statement. FPTC Tr. 85, 86-87. Indeed, the "conclusion that prior testimony inconsistent with a present lack of memory may be admissible as a contradiction is not a novel one." *United States v. Insana*, 423 F.2d 1165, 1169 (2d Cir. 1970). And when a witness "claims an inability to recollect a matter, a former affirmation of it should be admitted as a contradiction." *Id.* (citing III Wigmore, Evidence, § 1043 (3d ed. 1940).

The government plainly agrees with this proposition. First, it agreed at the final pretrial conference. FPTC Tr. 85 ("[W]e certainly think there's law for both sides that supports the notion that under certain circumstances a lack of recollection can be impeached."). And second, at the first trial, and again in its Opposition to Mr. Cole's motion to exclude evidence related to Candie's, the government argued that both GX 600 and GX 1889 were admissible on the theory that Mr. Cole's "failure of memory" regarding events more than twenty years prior was impeached by the documents. ECF No. 226, Gov. Opp. at 44-45. GX 600 is a memo prepared by Candie's general counsel that the government asserts Mr. Cole "helped prepare." *Id*. At trial, the Court admitted the memo following the government's argument that "Mr. Cole has repeatedly testified that he has no recollection of these issues being raised. This document impeaches that assertion." Tr. 2340-42. The Court explained that the document was appropriate to "challenge" Mr. Cole's "recollection." Tr. 2341. As to GX 1889, Mr. Cole's prior testimony before the SEC, the government has asserted that the exhibit was properly admitted as a "prior inconsistent statement[] pursuant to Rule 613" because "Cole claimed he did not remember his own admission." Gov. Opp. at 49 (arguing the document "rebutted his assertions on the stand that he 'didn't know' and did not 'recall' back-dating documents").

The documents sought by Mr. Cole fit squarely within this analytical framework. At Mr. Cole's initial trial, Mr. Horowitz claimed, implausibly, that he did not recall what his personal attorneys proffered to the Special Committee on his behalf. *See* FPTC Tr. 83 (Court recalling Mr. Cole's "defense counsel being very frustrated that Mr. Horowitz did not recall whether or not his lawyer represented to the special committee that he had done nothing wrong"); Sept. 30, 2021

3

KAPLAN HECKER & FINK LLP

Final Pretrial Conference Tr. 68 (Court positing that, at Mr. Cole's first trial, Mr. Horowitz would "presumably" testify that his lawyers communicated to the Special Committee that Mr. Horowitz had done nothing wrong). His purported failure of recollection followed his testimony that he had met with his attorneys prior to the proffer and was "aware of what [his] lawyers told the special committee on [his] behalf." Tr. 666. Accordingly, should Mr. Horowitz again testify that he does not recall his attorneys' statements on his behalf, Mr. Cole is entitled to move for the admission of (1) materials that Mr. Horowitz helped his attorneys prepare that were shared with third parties; and (2) any notes memorializing the proffer, in each case, as prior inconsistent statements. *See* FPTC Tr. 83-84 (Court: "Mr. Horowitz is a very important witness and obviously defense counsel is entitled to test his purported lack of recollection.").

*Second*, the materials would be admissible as prior inconsistent statements even if Mr. Horowitz manages to recall what his attorneys proffered during his testimony at Mr. Cole's retrial. *See Strother*, 49 F.3d at 876. In *Strother*, the Second Circuit held that the trial court erred by excluding extrinsic evidence of a prior inconsistent statement included in a memo and found that the error was not harmless, even though the witness had been cross-examined about the memo and acknowledged the prior inconsistent statement while on the witness stand. The court explained that "[e]xtrinsic evidence of a prior inconsistent statement is more persuasive to a jury than a witness's acknowledgement of inconsistencies in a prior statement." *Id*. Mr. Horowitz's testimony at Mr. Cole's retrial will assuredly contradict his prior statements once again that he believed he did nothing wrong and that the SEA 2 purchase price was arrived at through a business negotiation. *See* Tr. 667. Consistent with Second Circuit precedent, and the government's efforts to admit impeachment testimony at Mr. Cole's first trial and his retrial, Mr. Cole is entitled to admit evidence impeaching this inconsistent testimony.

B. Statements Made by Mr. Horowitz's Attorneys to the Special Committee on His Behalf are Mr. Horowitz's Own Statements.

Moreover, there is reasonable debate that the statements made by Mr. Horowitz's attorneys to the Special Committee are properly attributable to him. And, at a minimum, there is a "sufficient likelihood" that the materials sought are properly subscribed to Mr. Horowitz. *Bergstein*, 2018 WL 9539846, at *2 (quoting *Nixon*, 418 U.S. at 700). *Nixon* requires no higher of a showing.

Mr. Cole seeks notes and presentation materials memorializing the proffers his attorneys made *on his behalf* to the Special Committee. As the Court recognized in its colloquy with counsel, lawyers are agents of their clients, and their acts are attributed to their clients. *See* Tr. 85 (government agreeing with the Court that "one third party [is] the agent of Mr. Horowitz"); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962); *Lopez v. Ramos*, No. 11-CV-07790 NSR, 2013 WL 6912692, at *3 (S.D.N.Y. Dec. 30, 2013) ("[L]awyers are agents. Their acts (good and bad) are attributed to the clients they represent.") (quoting *Johnson v. McBride,* 381 F.3d 587, 589-90 (7th Cir. 2004)). Accordingly, courts have held that attorneys' notes and interview memos containing prior inconsistent statements of a witness satisfy the admissibility prong and are the proper subject of a Rule 17(c) subpoena. *See, e.g.*, *United States* v. *Ferguson*, No. 3:06 Cr. 137 (CFD), 2007 WL 4577303, at *2–3 (D. Conn. Dec. 26, 2007).

**KAPLAN HECKER & FINK LLP**

The government's objection that Mr. Horowitz did not speak directly and personally to the Special Committee ignores this well-established principle and the reality of an attorney proffer. Under the government's theory, a witness could shield himself from liability—let alone possible impeachment—by simply having his lawyers do his talking. That, obviously, is not the law.

And, again, the statements are admissible on the government's reasoning in this case. As noted, in its Opposition to Mr. Cole's motion to exclude evidence related to Candie's, the government argues that a memo authored by Candie's general counsel is admissible under Rule 613 as extrinsic evidence of Mr. Cole's prior inconsistent statement. Gov. Opp. at 44-45. Mr. Cole is not the author of that memo—the memo is directed *to* him. GX 600 (header detailing that memo was *from* Ms. Sorrel and *to* Mr. Cole). Yet the government argued that Mr. Cole had "adopted" the memo by helping to "prepare" it. Gov. Opp. at 44-45. Here, Mr. Horowitz plainly assisted in the preparation of his attorneys' proffer and adopted the positions advanced on his behalf. *See* Tr. 666 (testifying that he met with his attorneys prior to the proffer). Thus, on the government's own theory, the material would be admissible at trial.

Moreover, contemporaneous notes by counsel for the special committee memorializing the proffers would have evidentiary value under *Nixon* if and when Horowitz testifies to the contrary at trial. *See United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980) (noting, on motion to quash a Rule 17(c) subpoena, that the "verbatim and substantially verbatim statements of government witnesses" would have evidentiary value under *Nixon* if witnesses testified inconsistently at trial).

Accordingly, the materials sought—such as contemporaneous materials memorializing these statements and presentation materials used—would "challenge Mr. [Horowitz's] . . . recollection [and] his characterization of" his conduct in the SEA negotiations. Tr. 2341; *see also* FPTC Tr. 83-84 (Court: "Mr. Horowitz is a very important witness and obviously defense counsel is entitled to test his purported lack of recollection.").

### C. The Requested Documents Are Not Privileged.

Finally, the requested materials are not protected by the attorney-client privilege. The subpoenas are narrowly tailored to seek only the substance of proffers that were actually communicated to third parties. The attorney proffers were made to a third party, RKO, which was plainly cooperating with an SEC investigation and reporting to the SEC on its findings. Thus, Mr. Horowitz's lawyers no longer have a claim to privilege. *See, e.g.*, *United States Sec. & Exch. Comm'n v. Herrera*, 324 F.R.D. 258, 263-64 (S.D. Fla. 2017) (holding that law firm hired to conduct internal investigation waived work-product protection covering written notes and memoranda from twelve witness interviews by providing oral summaries to SEC); *In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 465-67 (S.D.N.Y. 2008) (holding that company waived work-product protection by disclosure of memoranda to the SEC).

Even assuming there is a plausible claim of privilege, that privilege is clearly overcome by Mr. Cole's "substantial need" for the documents sought. *See, e.g.*, *United States v. Weisman*, No. Sl 94 CR. 760 (CSH), 1995 WL 244522, at *6-9 (finding that defendant had shown substantial need to overcome work product privilege in order to obtain documents that would help establish

KAPLAN HECKER & FINK LLP

whether a common interest relationship existed between the relevant parties). At a minimum, the Court should so order the subpoenas so that the implicated parties may file a motion to quash to assert that compliance would be "unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

### III. Conclusion

For the reasons discussed above, we respectfully request that the Court issue the proposed subpoenas pursuant to Rule 17(c).

Very truly yours,

*[signature]*

KAPLAN HECKER & FINK LLP
Sean Hecker
Jenna M. Dabbs

MARKUS/MOSS PLLC
David Oscar Markus
A. Margot Moss

cc: Assistant United States Attorneys Jared Lenow, Justin Rodriguez, and Andrew Thomas (by ECF)