NAADCOLS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                    v.                          19 Cr. 869 (ER)

NEIL COLE,

                                                Sentence
                    Defendant.

------------------------------x

                                                New York, N.Y.
                                                October 10, 2023
                                                4:00 p.m.

Before:

                        HON. EDGARDO RAMOS,

                                                U.S. District Judge

                              APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
JARED P. LENOW
ANDREW MARK THOMAS
JUSTIN VICTOR RODRIGUEZ
     Assistant United States Attorney

SEAN HECKER
DAVID OSCAR MARKUS
ANITA MARGOT MOSS
     Attorneys for Defendant

Also Present:

Nicholas Kroll, Special Agent (FBI)

1              (Case called; appearances notes)

2              THE COURT:  Good afternoon to you all.

3         Everyone can be seated, and everyone can stay seated.

4    You don't have to stand to address the Court unless you can't

5    help yourself.

6         So this matter is on for sentencing, and in

7    preparation for today's proceeding, I've reviewed the

8    following:  I've reviewed the presentence report, which was

9    last revised on September 12, 2023, prepared by U.S. Probation

10   Officer Stephanie McMahon, which includes a recommendation;

11   I've also reviewed the various letters submitted by Mr. Cole's

12   legal team dated September 27, and 29, and October 9, 2023.

13   The first of those letters includes letters submitted by

14   various of Mr. Cole's family and friends, and one by his

15   therapist.  And the other two letters attach documents relating

16   to Mr. Cole's medical condition.

17        I have reviewed the government's submission of October

18   4, 2023; and there is a victim impact statement submitted by

19   counsel for Iconix, from Skadden, Arps, Mr. Zornow, which is

20   quoted extensively in the presentence report, but which I did

21   not receive a copy of until earlier today.  Just prior to

22   coming out, I received a proposed preliminary order of

23   forfeiture/money judgment by the government.

24        Is there anything else that I should have received or

25   viewed in connection with sentencing, Mr. Lenow?

NAADCOLS

1             MR. LENOW:  No, Judge.

2             THE COURT:  Mr. Hecker.

3             MR. HECKER:  No, your Honor.

4             THE COURT:  Very well.  Mr. Hecker, have you read the

5    presentence report and discussed it with your client?

6             MR. HECKER:  I have, your Honor.

7             THE COURT:  Mr. Cole, have you read the presentence

8    report, and discussed it with your attorneys?

9             THE DEFENDANT:  I have, your Honor.

10            THE COURT:  Aside from the sentencing guidelines

11   issues, are there any further objections regarding its factual

12   accuracy?

13            Mr. Lenow?

14            MR. LENOW:  No, Judge.

15            THE COURT:  Mr. Hecker?

16            MR. HECKER:  No, your Honor.

17            THE COURT:  Very well.  Although I am not required to

18   impose a sentence within the applicable guideline range, I am

19   required to consider the guidelines.  In order to do that, I

20   need to do the calculation.

21            Now, there are two issues, as I understand it, that

22   remain outstanding.  One relates to the enhancement for being a

23   manager or supervisor of an offense involving five or more

24   participants, or that was otherwise extensive.  The government

25   argues that it is appropriate in this case.  I think, because,

NAADCOLS

1    and correct me if I'm wrong, Mr. Lenow, there are at least five

2    participants, and the offense was otherwise extensive.  The

3    defense objects to the inclusion of that enhancement.

4           So, Mr. Hecker, I'm happy to hear you.

5           MR. HECKER:  Your Honor, we largely stand on what we

6    submitted in our letter.  Our perspective here is that,

7    assuming the five individuals are Mr. Neil Cole, Seth Horowitz,

8    Jason Rabin, Jerry Margolis, and Ethan Cole, I think

9    importantly only one of those individuals was charged in

10   connection with this offense.  And, as the Court knows, both

11   Mr. Rabin and Mr. Margolis both testified at trial they did not

12   believe they committed any crimes, and certainly not at

13   Mr. Cole's direction.

14          Ethan Cole, before trial, the Court will recall,

15   through counsel, indicated to the U.S. Attorney's Office that

16   he, too, did not believe he engaged in wrongdoing.  Under those

17   circumstances, I think, combined with the fact that at trial

18   one Mr. Cole was acquitted of conspiracy, we think that the

19   enhancement doesn't apply, shouldn't apply here.

20          THE COURT:  Mr. Lenow.

21          MR. LENOW:  Judge, I'm not sure I have much more to

22   add beyond what's in our submission.  If the Court has any

23   questions, of course I'm happy to address those.

24          THE COURT:  Well, I think Mr. Hecker makes an

25   interesting point.  First of all, I think that two people were

NAADCOLS

1    charged with the offense.

2           MR. HECKER:  I said other than Mr. Neil Cole and

3    Mr. Horowitz.

4           THE COURT:  Messrs. Rabin and Margolis, was it, both

5    testified pursuant to immunity agreements, that they hadn't

6    done anything wrong.  That, as far as they were concerned, they

7    hadn't done anything wrong.  And so do they, strictly speaking,

8    qualify as individuals that can be counted within the five, or

9    is the government relying on the otherwise extensive part of

10   that guideline?

11          MR. LENOW:  Judge, the answer is both.  In terms of

12   Rabin and Margolis, we submit that the actual facts of this

13   case, and there is extensive testimony from not just Rabin and

14   Margolis, but also Horowitz about a number of conversations

15   between the parties, it showed that these individuals were

16   involved in knowingly illegal conduct.  That's simply what the

17   evidence showed by a preponderance of the evidence.  But I

18   think the Court doesn't even have to make the finding.  I do

19   think the record supports it, and the witnesses kind of, who's

20   not a lawyer, bottom line, take-away view of what their conduct

21   was, is not dispositive.  What matters is the facts, and that

22   establishes by a preponderance that these were knowing persons

23   to the crime -- but, again, the enhancement also allows for it

24   to be applied when the conspiracy or the conflict conduct is

25   otherwise extensive.  So even if it were true, and, again, I

NAADCOLS

1    think the evidence shows it's beyond just Horowitz and Cole --

2    even if it were true that it were just Horowitz and Cole

3    involved in this conduct, there was extensive evidence and

4    testimony in the record about a number of other individuals who

5    were used as, essentially, tools and implements of the

6    conspiracy by Mr. Cole.  We list them specifically in our

7    submission.

8         And so I submit that even putting aside Rabin and

9    Margolis and Ethan Cole, that that is sufficient to make -- for

10   the Court, and the Court should find that enhancement applies.

11        THE COURT:  I do find that it applies, but I am not

12   counting -- and it applies because I believe that the conduct

13   here was otherwise extensive, and that Mr. Cole was a manager

14   or supervisor in connection with the conduct that was alleged

15   at the trial.  Not only were certainly these five individuals,

16   Mr. Cole, Mr. Horowitz, Mr. Ethan Cole, of no relation, and Mr.

17   Rabin and Mr. Margolis, not only were they involved actively

18   over the course of several months involving several meetings,

19   and significant negotiations, but other employees at Iconix

20   were utilized, including lawyers, et cetera.  So I do find

21   that, on the facts of the case, the enhancement is appropriate.

22        The other enhancement as to which there is dispute is

23   the obstruction of justice enhancement, and there, Mr. Hecker,

24   I don't quite understand the defendant's position.  I mean,

25   Mr. Cole obviously testified at both trials.  He testified

NAADCOLS

1    completely contrary to the testimony that was provided

2    primarily by Mr. Horowitz, but others.  The jury necessarily, I

3    think, had to have found that Mr. Cole's testimony was not

4    credible.

5            Why shouldn't this enhancement apply?

6            MR. HECKER:  Your Honor, I mean, we made the argument

7    in our letter.  I think that, in the context in which there

8    have been two trials, he was acquitted of trial one of

9    conspiracy, notwithstanding that the government is still

10   talking about conspiracy, where the Court in trial one

11   presumably accepted his testimony, and also that he looked back

12   at the notes of the interview -- the Court will recall during

13   the second trial we eventually got out of nowhere the interview

14   notes of Mr. Cole's interview by the special committee.

15           Mr. Cole's been telling the same story from the moment

16   these deals were done.  He believes it to this day.  And so I

17   think, in those circumstances, where, obviously, others had a

18   different understanding, the Court need not make a finding that

19   he intentionally gave false testimony.

20           THE COURT:  Mr. Lenow?

21           MR. LENOW:  Judge, so your Honor sat through two

22   trials, and in -- putting aside the jury for a second, I think

23   it's the Court's role to make an assessment here.  Your Honor,

24   even putting the jury verdict aside, your Honor saw Mr. Cole

25   testify twice, your Honor saw Mr. Horowitz testify, and I would

NAADCOLS

1  submit that just using standard demeanor assessments, using

2  assessment of the testimony, and also the documents in this

3  case -- there were a number of powerful documents in this case

4  that directly contradicted Mr. Cole's testimony -- I would

5  submit that your Honor should make a finding that Mr. Cole's

6  testimony was not credible, both because of his demeanor, and

7  because of its substance, and also because of the ultimate

8  determination of the jury beyond a reasonable doubt.

9       And we point to a few examples of even aside from the

10 big picture point, of Mr. Cole denying that he was part of this

11 illicit agreement.  There are a number of discrete examples

12 that were on their face incredulous, and we submit support the

13 enhancement.  We list some of them in our submission.  Mr. Cole

14 denied knowing about a GAAP, general -- the accounting

15 standard.  He denied having known Mr. Margolis, doing business

16 with him.  And there are some other examples we provide.

17      So I submit your Honor should make a finding, based on

18 your assessment of the witness, that he was not credible, and

19 that he perjured himself.

20      THE COURT:  Yes.  I believe the assessment is

21 appropriate.  As Mr. Lenow highlights, I sat through both

22 trials.  I saw Mr. Horowitz and Mr. Cole testify both times,

23 and I have to say I believed Mr. Horowitz.  I believed the

24 version of facts that he told.  I think it was consistent with

25 the documents that were put into evidence, the testimony of

NAADCOLS

Mr. Margolis and Mr. Rabin, notwithstanding their disclaiming

any liability or any wrongdoing.  Specifically, I did not

credit Mr. Cole's testimony that he had very little role in

negotiating these joint ventures; that, you know, to the extent

that anything untoward happened, it was all Mr. Horowitz'

doing.

I don't need to go through chapter and verse of the

particular areas where there was direct conflict.  I think it

is sufficient for me to find that Mr. Cole's purported lack of

knowledge of the way that the transactions were structured, the

reasons they were structured in that fashion, and the fact that

they ultimately were structured in a way that had no economic

substance is sufficient for me to find that he testified

falsely in that regard.  So I do believe that the enhancement

is appropriate.

I think those are the only areas of disagreement with

respect to the guidelines, and, accordingly, I find that the

base offense level in this case is 7, to which 14 levels are

added, because the loss was greater than $550,000.  I think

there's agreement as between the parties that the Court should

utilize the $790,000 amount.

So 7 plus 14.  An additional four levels are added,

because the offense involves securities law violation, and at

the time of the offense, Mr. Cole was an officer of a public

company.  Three levels are added because he served as a

NAADCOLS

1    manager, supervisor of conduct that involved at least five

2    people, or was otherwise extensive.  Two levels are added for

3    obstruction of justice based on his testimony.

4         So the total offense level is 30, and because Mr. Cole

5    has zero criminal history points, he's in Criminal History

6    Category I.  So, in summary, with a total offense level of 30,

7    and a Criminal History Category of I, the applicable guidelines

8    range is 97 to 121 months.

9         However, due to an amendment to the sentencing

10   guidelines that will become effective on November 1, an

11   additional two levels are subtracted for individuals with no

12   criminal history points, and who otherwise meet certain

13   criteria.  Because Mr. Cole meets those criteria, as the

14   government acknowledges, in that event, the total offense level

15   would be 28; and the applicable sentencing range will be 78 to

16   97 months.  The parties agree that I may sentence Mr. Cole

17   based on the impending amendment.  So, again, that's just the

18   math.

19        So I find that the applicable guideline range will be

20   78 to 97 months.

21        Does the government wish to be heard prior to the

22   imposition of sentence?

23        MR. LENOW:  Judge, just two preliminary points.  It

24   may be a good time to raise them now.  One is in terms of the

25   two-level downward -- two-level reduction your Honor mentioned,

NAADCOLS

1    the government does not oppose that, but we would ask that the

2    Court confirm with the defense that they're waiving any right

3    to a resentencing or a challenge to the sentence based on this

4    going into effect later on.

5        THE COURT:  I believe I received a letter from the

6    defense in that regard.

7        MR. HECKER:  Correct.

8        MR. LENOW:  Okay.  And the second, just very briefly,

9    Judge, on the leadership enhancement, the circuit guidance on

10   this seems to suggest that the Court should make a finding a

11   little more specific about who the individuals were, and so I

12   would note in our submission, for the otherwise extensive

13   aspect of the offense, we point to testimony and documents in

14   the record related to how Justin Abrahamson, Marcia McLaughlin,

15   Jason Schaefer, Lauren Gee, and Daisy Laremy-Binks, among

16   others, were used in critical ways in furtherance of the

17   offense.

18       So I would like to confirm the Court for the record

19   agrees that those individuals are appropriately considered as

20   part of the otherwise extensive nature of the offense.

21       THE COURT:  I do so find.

22       MR. LENOW:  Okay.  Thank you, Judge.

23       Turning to the 3553 factors, I won't repeat what's in

24   our submission.  I do want to emphasize one or two particular

25   points.  The first is this conduct was not aberrational.  It

1    wasn't a one time, one day incident.

2            As your Honor recalls, at trial there was extensive,

3    extensive planning months in advance of these deals, and then

4    months after them to cover them up.  And so in terms of when we

5    think about the level of culpability, and the defense points to

6    some aspects that they submit are mitigating factors that --

7    you know, the loss amount, we have a forfeiture order for your

8    Honor that is under a million dollars, for example, and they

9    point to that as being, you know, compared to some other cases,

10   perhaps a lower number.

11           One of the aggravating factors here is just the

12   extensiveness and the complexity of the conduct.  Mr. Cole was,

13   on a day-to-day basis at times trying to scheme to cheat and

14   lie in a number of ways in this case, and so I think just the

15   long standing, repeated, intricate nature of the offense is

16   really one of if not the most significant aggravating factors,

17   along with Mr. Cole's role, of course, at the helm of this very

18   substantial company.

19           And just the other point I want to address briefly is

20   the health issues that Mr. Cole raises.  We have no reason to

21   contest any of the assertions about Mr. Cole's health, and we

22   do agree that those are -- the Court should consider those in

23   fashioning a sentence.

24           I do note a couple of things, though.  One is that the

25   government at least is consenting to -- is consenting to

NAADCOLS

1    Mr. Cole being released -- continue having his bail outstanding

2    during the appeal.  Like, in other words, we're not seeking

3    remand prior to appeal, and so I do think there will be a

4    significant amount of time, a year, perhaps more, for Mr. Cole

5    to proceed with the various treatments that he outlines in his

6    submission.  And so if -- should the Court agree that bail

7    pending appeal is appropriate, I do think that is a significant

8    factor that recommends against a significant variance based on

9    Mr. Cole's health issues in light of the fact that that would

10   allow him to obtain the treatment that he submits he needs.

11            And I would also -- I'm sorry.

12            THE COURT:  I'm sorry.  So are you saying that the

13   government does not object to Mr. Cole remaining on bail

14   pending his appeal?

15            MR. LENOW:  Yes, Judge.

16            THE COURT:  Okay.

17            MR. LENOW:  And just the second point is the Bureau of

18   Prisons does -- even absent that factor, though, the Bureau of

19   Prisons does deal with these very serious illnesses,

20   unfortunately, on a somewhat routine basis.  There are many

21   individuals who are serving time in the Bureau of Prisons who

22   receive treatment, and significant -- and treatment that meets

23   the needs, even for serious illnesses.  And so even if the bail

24   pending appeal were not an issue here, and, again, we're

25   consenting to it, I do submit he would be able to receive the

NAADCOLS

1  care he needs in the Bureau of Prisons.  And I don't think

2  we've been given any reason that that would not be the case.

3          THE COURT:  Let me ask you, on restitution, the

4  government is not seeking restitution in this case, correct?

5          MR. LENOW:  We are not, your Honor.  Judge, we do

6  think that the Court could order it as a condition of

7  supervised release.  This is a Title 15 case, and so the normal

8  statutes are not implicated, but, as a condition of supervised

9  release, the Court I think would be within its discretion to

10  order it.

11          THE COURT:  So are you taking a position?

12          MR. LENOW:  May I have a moment, Judge?

13          THE COURT:  Sure.

14          MR. LENOW:  So, Judge, I think our position is that we

15  are not taking an affirmative position here.  Mr. Zornow is

16  here for the company, and can speak to any factual questions or

17  legal questions your Honor has on this.  It is our position

18  that the Court does have the ability to order restitution, but

19  I think Mr. --

20          THE COURT:  I take it that -- because, generally

21  speaking, in ordering restitution, there is a number that the

22  government proves up, and/or there's no objection to, and

23  that's the number that I order.  Here, and I haven't dealt with

24  this issue in the past, the company is requesting I think

25  $130 million in restitution, based on a number of different

NAADCOLS

1    factors.

2            I have the authority, as a condition of supervised

3    release, to order that he pay restitution.  Am I obligated to

4    accept the particular number, or can I order restitution within

5    zero to 130 million?

6            MR. LENOW:  Judge, our position is your Honor has the

7    discretion to pick the appropriate number, and I think -- I

8    have conferred with Mr. Zornow in advance of sentencing, and I

9    think he's best positioned to advocate for the company's

10   position.

11           THE COURT:  Okay.

12           MR. LENOW:  I do think what your Honor may hear from

13   him is the company appreciates the nuance in the facts here,

14   that there were multiple investigations, that certain work may

15   be more attributable to DOJ investigations, as opposed to the

16   SEC, and so I think the Court could make a finding that's

17   anywhere between zero and the larger number you cited.  So I

18   think there's certainly room for that nuance.

19           THE COURT:  Okay.  Anything else?

20           MR. LENOW:  No, Judge.

21           THE COURT:  I believe that's Mr. Zornow in the

22   gallery.

23           MR. ZORNOW:  It is, your Honor.

24           THE COURT:  Am I pronouncing your name right?

25           MR. ZORNOW:  Yes.

NAADCOLS

1          THE COURT:  Could you come up?

2          MR. ZORNOW:  Certainly, your Honor.

3          THE COURT:  Talk to me about the amount of restitution

4     you believe would be appropriate.

5          MR. ZORNOW:  Yes, your Honor.

6          First of all, we are not going to press the issue of

7     whether Title 15 offenses are covered by the restitution

8     statute, so what we're asking is that the Court impose

9     restitution as a condition of supervised release.  And, for

10    simplicity's sake, what we would press are the necessary

11    expenses that the company had in cooperating, as it did from

12    the moment the government contacted the company, expenses in

13    connection with that investigation and with the prosecution.

14         I don't have -- that number that I've been provided by

15    the company is roughly $14 million.  If you put to the side the

16    legal fees that were advanced for Mr. Cole's representation for

17    the two trials, which is well in excess of $20 million, you

18    know, we -- I've learned a lot about the restitution regime,

19    which is quite complicated, and read cases like *Afriyie*, if I'm

20    pronouncing that correctly.  We understand that we are not

21    entitled, under the provision dealing with necessary expenses,

22    to the cost of the original investigation, that we're confined

23    to expenses in connection with the Southern District of New

24    York investigation, and the trials.

25         What I would propose, your Honor, unless your Honor

NAADCOLS

1    has a figure in mind, under 18 U.S.C. 3664(d)(5), you can defer

2    a final order on restitution for up to 90 days.  And what I

3    would like to do is to go over all the bills, which include not

4    only our bills, but bills submitted by Lee Richard's firm,

5    which did the original internal investigation.  And we're not

6    going to, you know, put that in, but Mr. Richard was intimately

7    involved in briefing the Southern District and in responding,

8    as we were, to various requests that the Southern District had.

9    And then there are legal fees that were incurred by individual

10   counsel for various witnesses that were interviewed during the

11   course of the investigation, some of whom actually testified

12   during the trials.

13            And so what I'd like to do is be in a position, with a

14   little more time, if your Honor -- I wanted to see whether your

15   Honor was inclined to order restitution as a condition of

16   supervised release, and, if you are, I'd like to really give

17   you a conservative, precise number that lines up with the case

18   law in terms of what's in and what's out.

19            THE COURT:  It would be obviously useful -- I mean,

20   I'm not inclined to give you what you ask for in your letter,

21   but I believe that, you know, some reasonable amount is likely

22   appropriate based on the facts of this case as I know them.  It

23   would be useful to know, as well, the extent to which the

24   company was insured for any of these amounts that were

25   expended.

NAADCOLS

1    MR. ZORNOW:  Absolutely.  We would only be bringing

2    forth out-of-pocket, not covered by insurance.

3    THE COURT:  Okay.  Before I have you sit down,

4    Mr. Zornow --

5    Mr. Hecker, is there anything you want to say in this

6    regard?

7    MR. HECKER:  Well, I guess, look, before the Court

8    even considers awarding restitution as a matter of its

9    discretion in connection with supervised release, we'd want an

10   opportunity to challenge any evidence that's actually put

11   forward.  And I know the Court is signaling a willingness to

12   hear us on that.

13   I will say this.  I think it's an important factor

14   here, which is that Iconix is owned privately by a very wealthy

15   family that purchased the company after these expenses were

16   incurred, knowing full well that they were buying an asset that

17   had an ongoing government investigation, that was going to

18   require it to spend money to cooperate with the government.  So

19   I think net/net you're talking about awarding a billionaire

20   family a windfall that they really aren't entitled to, and that

21   the Court does not have to order in these circumstances.

22   Under all of the circumstances of the case, and I'm

23   happy to go into some of this, but the notion that they'd be

24   looking to Mr. Cole now to make them whole for agreeing to

25   cooperate with the government, I mean, I've never -- I haven't

NAADCOLS

1    seen that ordered in many cases I've been involved in, and

2    particularly where the owners of the business didn't go out of

3    pocket for those expenses.

4            THE COURT:  I get that ultimately, to the extent that

5    the stock owners, the stock holders of the company, they're not

6    going to benefit from any order of restitution, but I would

7    like to know what the facts are before I make that

8    determination.  As I indicated, I know that the PSR quoted from

9    your letter extensively, but I only just got the entirety of

10   the letter today when I asked.

11           So I'd be happy to await to get from you a submission

12   as to what the particular expenses were that you believe are --

13   ought to be compensated, and obviously you will -- Mr. Cole

14   will have an opportunity to respond, and to argue that no

15   restitution is appropriate in this case.  Okay?

16           MR. HECKER:  Very well, your Honor.

17           THE COURT:  Do you want a deadline, sir, or -- you

18   have 90 days for me to decide, so if you can get it within a

19   month, that would be helpful to the Court.

20           MR. ZORNOW:  30 days would be great, and I'll try to

21   do it before then.

22           THE COURT:  Okay.  Do we have a date for Mr. Zornow?

23           THE DEPUTY CLERK:  Yes.  November 10.

24           MR. ZORNOW:  Very well, your Honor.

25           THE COURT:  Thank you very much.

NAADCOLS

1          MR. ZORNOW:  Thank you, your Honor.

2          THE COURT:  Mr. Hecker.

3          MR. HECKER:  Thank you, your Honor.

4          And I'm aware the Court has read our lengthy

5     submissions, so I don't want to repeat what's said there, but I

6     do want to frame a couple of the key 3553(a) factors that, in

7     our view, support a request for a sentence of probation,

8     potentially with a period of home confinement.

9          First, I'm going to focus on Mr. Cole's extraordinary

10    history of contributions to society, philanthropy, and helping

11    others.  Second, I'm going to talk a little bit about some of

12    the particulars of the circumstances of the offense, including

13    the actual amounts involved of the purported inflated revenue,

14    and the concern here about disparate treatment.

15         Next, I want to focus on what consequences have

16    befallen Mr. Cole since the events of almost 10 years ago, and

17    the punishment that the system has meted out already.  Finally,

18    I want to talk about his health issue.  If I could just say a

19    minute about that up front, actually, because with respect to

20    my colleagues, who I have no doubt heard from the BOP that

21    they're capable of caring for someone with a recurrence of

22    cancer, with an underlying, significant health condition, it

23    doesn't provide me with a lot of comfort based on my own

24    experience representing clients with even modest health

25    conditions.  So, you know, I appreciate that the government has

NAADCOLS

1  agreed to bail pending appeal, because of the substantial

2  issues on appeal, but I don't know that that's a reason not to

3  factor it into the appropriate sentence as a 3553 factor as

4  well.

5          So just briefly, your Honor, you know, over the course

6  of two trials, which focused really on the exclusive question

7  of whether or not a couple of joint venture transactions from

8  almost a decade ago should have been treated as generating as

9  much revenue as had been booked, and where the key government

10 witness obviously had deep disregard for Mr. Cole, it's really

11 easy to get a distorted view of the man.  And the reality is

12 this is someone over an extended business career, who

13 positively impacted an incredibly large number of people, and

14 the Court sees that I think in the many letters that were

15 submitted.

16         If you go back even to the work that he did in

17 building the business his father had initially created, the

18 Candies business ultimately grew to over 100 stores and 300

19 employees, including folks like Dari Marder, who's written to

20 the Court to describe how supportive Mr. Neil was as a boss,

21 the way in which he was a partner to her, promoted her over

22 time.  She ultimately became the Iconix brand group's chief

23 marketing officer.  And she describes in detail Neil making her

24 and many other long-term employees feel like family, proud to

25 be part of the businesses that he built.

NAADCOLS

1          He could be demanding for sure, and that came out

2     during the trial, but he instilled loyalty, and supported those

3     who were with him.  And when he founded Iconix in 2005, he

4     completed revolutionized the brand licensing business.  He took

5     these Iconix legacy brands, harnessed the value of the

6     property, used it to generate royalties guaranteed by the

7     licensing agreements.  That model was incredibly successful,

8     and in just a few years, it became one of the fastest growing

9     companies in the world.

10          He employed countless people.  He enriched both his

11     employees and his investors.  One of our letters is from the

12     chief investment officer of the Baron Fund, Cliff Greenberg, a

13     very well-respected investor, who wrote to the Court describing

14     Neil as a trail blazer in the industry, someone who's quick to

15     support charitable causes, and who made real contributions in

16     business, politics, and society.  And I'd submit, Judge, that's

17     a theme than runs throughout all these letters, people he met

18     in business who looked to Neil as a model of how to take his

19     position, and what he created, and do good with it.  Something

20     that those who interacted with Neil did as a result of their

21     experiences with him.

22          The model he created became imitated widely, and he

23     was rightly viewed as a visionary in figuring out how to

24     effectively leverage brand intellectual property rights.  And

25     the businesses that succeeded as a result of following in his

1    footsteps is really a testament to him, and it says something

2    about the value he created in the world, and the people he

3    employed as a result.

4              And I want to talk just about the philanthropy,

5    because the reality is, as his business grew, and he became

6    successful, because he was a shareholder of the business that

7    he created and built and grew, he used those resources and the

8    relationships that he developed with others to do good.  And I

9    don't just mean by donating money.  I don't mean by donating

10   money, although he did that generously.  He supported HIV, AIDS

11   research, children's health care.  He took on issues of

12   homelessness through his contributions.  But I mean very

13   significant philanthropic projects that required real work

14   where the aim was about helping others.

15             And, your Honor, I'm sure the Court has been involved

16   in sentencing for countless people.  This is not typical.  This

17   is extraordinary.  He created the Candies Foundation in 2001 to

18   take on the epidemic of teen pregnancy.  Numerous letters write

19   about that work.  He leveraged relationships he developed

20   through his work with celebrities to create public service

21   announcements, so teens would see and care about those

22   announcements.

23             And the reality is that the Candies Foundation he

24   created was credited wildly with playing a significant role in

25   reducing the teen pregnancy rate in this country, and he's

NAADCOLS

1    quite proud of that understandably.  And many of the folks who

2    wrote in talked about the incredible impact of that foundation,

3    including former Governor Cuomo, Sam Edelman, who once worked

4    directly for Neil when he was at Candies, and became a lifelong

5    friend.  He really became a model to these folks in their own

6    careers as business leaders about how to do good in the world.

7         He also put in his own time, served on the board of

8    his daughter's school, of the Mt. Sinai Children's Foundation.

9    He got involved in government in positive ways, Governor

10   Cuomo's Spending and Government Efficiency Commission a decade

11   ago.  He created the Women's Equality Party.  And it's true

12   some of these endeavors were public, and I could see how one

13   could look at them and say, well, he's trying to make himself

14   look good, all of those things.  But the reality is we

15   submitted numerous letters about discrete episodes, even dating

16   back to Neil's youth, when he helped people personally, when he

17   was there when it mattered to people, outside the public eye,

18   not for credit, literally dating back to stopping by the side

19   of the road as a teenager, helping a young man who had a bike

20   accident.  That's in the letter from Mr. Fisher.  Mentoring

21   countless young people.  We have a number of letters where

22   people describe Neil taking time to meet with kids who were

23   starting off in their careers and having difficulty, unsure of

24   how to move forward, where he was there for them, helping them

25   with foundation work themselves, putting in the time.  He

NAADCOLS

1    didn't just contribute to those organizations.  He was willing

2    to go well beyond that.

3            And he's shown up for friends when they faced

4    difficult circumstances, and you have letters from folks like

5    Gary Bader, who talked about his own fight with cancer; Dr.

6    Lawrence Howard, who had a terrible medical emergency at dinner

7    with Neil, and Neil spent hours with him in the hospital.  He's

8    someone who's shown up for people, and he's done it in ways

9    large and small.  I think that's an important factor for the

10   Court to consider, and something that would have never been in

11   front of mind to the Court just sitting through these trials.

12           Turning to the offense conduct, and the events that

13   led us here, obviously the Court -- I mean, the jury in our

14   trial, the second trial, found that in connection with these

15   two transactions from June and September of 2014, that there

16   was an agreement to inflate the value of those transactions by

17   $5 million and $6 million respectively, a total of $11 million,

18   that the jury concluded shouldn't have been booked as revenue

19   that was booked.

20           And as we noted in our letter, in that year, Iconix

21   booked over $460 million of revenue.  We're talking about a bit

22   more than two percent of the company's revenue for the year.

23   And even the government's witness, the SEC economist who

24   testified at trial, said that those amounts were not necessary

25   to meet consensus revenue estimates for the year.  Obviously,

NAADCOLS

1    the issue that was presented focused on quarterly earnings, but

2    if you look at the entire year, these revenues weren't

3    necessary to hit the numbers.

4        We talked about this already in connection with the

5    enhancement, but for purposes of sentencing, I think there is a

6    significant concern about potential disparate treatment, of

7    disparity in sentencing.  Only two people have been prosecuted.

8    I know Mr. Horowitz has not yet been sentenced.  I think that,

9    under the circumstances, having Mr. Cole be the only one facing

10   significant sanction of this kind, when the other purported

11   coschemers, as the government put it in trial two, weren't

12   prosecuted, risks disparities in sentencing that would be

13   unjust.

14       And then, finally, I just want to talk about how this

15   has played out for Mr. Cole.  Mr. Horowitz' departure letter to

16   the Iconix board in 2015 led to this series of investigations

17   which precipitated Neil stepping down from the company in

18   August of 2015, eight years ago.  He wasn't only ousted from

19   the company he founded, the company that was his life's work.

20   He lost the vast majority of his wealth, and, in addition to

21   losing the value of the company's stock, since most of his

22   wealth was tied up in the stock, he returned $8 million to the

23   company after the company decided to restate its financials.

24   And as his brother Kenneth noted in his letter, his ouster

25   could not have been more devastating to Neil and his family.

NAADCOLS

1    He had two sons working at the company who also lost their

2    jobs.  In his subsequent attempts to rebuild new businesses,

3    into which he poured substantial resources of his own, really

4    couldn't get off the ground with this cloud of the government

5    investigation hanging over him.  That's in 2015 when he leaves

6    the company.

7         It's not until the end of 2019, five years after the

8    offense conduct, that he was arrested to face these charges,

9    and then COVID hits and delays even the first trial.  That

10   trial didn't take place until October of 2021, seven years

11   after the joint venture transactions at issue.  It's an

12   extraordinary amount of time between the offense conduct and

13   the trial.

14        And before the first trial, in the early days of

15   COVID, he loses his mother, who passed way in July of 2020.

16   His final conversations with his mother were devastating for

17   him.  They were consumed by her concern about what was going to

18   happen to her son, and she died tragically, with her son facing

19   indictment and trial.  That extended period of time

20   post-indictment, pretrial, under supervision is extraordinary.

21   We're talking about someone who will have been, by December, on

22   pretrial supervision for five years.  That's highly unusual in

23   a context like this.  Those are real consequences, and I think

24   the Court can consider them in determining what the appropriate

25   sentence is here.

NAADCOLS

1          He obviously was acquitted of the conspiracy count in

2     the first trial, with the jury unable to reach a verdict on the

3     remaining counts.  And he felt an understandable sense of

4     relief with that positive result, but then the government

5     decided to retry the case, and I think it's fair to say that to

6     those of us who follow such matters, it wasn't obvious that the

7     government would retry the case, first, because the jury had

8     rejected the core conspiracy charge in trial one.  It's hard to

9     interpret that aspect of the verdict as accepting the

10    government's theory, Mr. Horowitz' testimony, arguably

11    accepting Neil's testimony in that trial, and then by early

12    2022, we're talking about eight years from the time of the

13    offense conduct -- you don't see many trials brought so long

14    after the conduct at issue.

15         And, then, just the reality of this for Mr. Cole.

16    He'd been living with this hanging over his head for so many

17    years.  He'd been under a cloud since 2015.  He'd been unable

18    to start new businesses.  He had a pending SEC case.  We speak

19    about Iconix coming here and asking to be reimbursed for the

20    cost of cooperating with the investigation.  He had to sue

21    Iconix to get them to advance fees for his first trial.  I

22    mean, this was -- there was nothing easy about this, and it

23    lasted for a period that is extraordinary and atypical.

24         And so, look, the government could have said, look,

25    enough's enough.  We've done enough here.  But they decided to

NAADCOLS

1   press ahead, and as they have a right to do.  I'm not

2   criticizing that position.  I'm simply saying the upshot of it

3   is for someone in Mr. Cole's position, he has been through a

4   shocking amount over a shocking amount of time before coming to

5   this day.  We're not starting with someone committing conduct,

6   a year later goes to trial, is convicted, and then we're at

7   sentencing.  This is someone who's been under criminal

8   supervision for five years.

9          So I think that the upshot is he has suffered

10  massively from this entire case.  He still has a pending SEC

11  case.  It's not easy to get the SEC to engage and try to

12  resolve this matter.  The upshot is that the goals of both

13  specific deterrence and general deterrence can be met here

14  without a substantial sentence of imprisonment.

15         He's a first time offender.  He's 66 years old.  He's

16  been supervised for five years.  He has extremely serious

17  health issues in front of him.  He is -- he poses zero

18  recidivism risk.  That's the specific deterrence question.  And

19  in terms of general deterrence, it's very difficult to argue

20  that a CEO or a CFO confronted by difficulty hitting analyst

21  expectations in a given quarter is going to say to themselves,

22  I'm going to engage in accounting fraud, if they know the

23  consequences are going to consist of internal investigations,

24  restatements, being thrown out of the company they created,

25  sued by the SEC, subjected to not one but two criminal trials,

NAADCOLS

1    being branded a felon, as if that's not enough to deter them?

2    Respectfully, I think this is already a cautionary tale for the

3    market, for people in positions that the government cares about

4    when it comes to thinking about general deterrence.  It's the

5    ultimate cautionary tale to the corporate executives already.

6           I know we spoke in our letter about what's happened

7    since trial, but because of -- everything I just described is

8    all happening before trial.  Since trial, he's lost his family,

9    his nuclear family.  His wife announced she was seeking a

10   divorce the day after the verdict.  She separated from him,

11   taking their daughter with her.  The loss has been immense.

12          He's now confronting reemergence of a cancer that

13   began as a thyroid cancer back in 20 -- 2009, 2010.  The

14   cancer's returned to his lungs, and, as you can see from the

15   medical records, the treatment is a bit uncertain at the

16   moment.  But there's currently a recommendation for radioactive

17   iodine treatment at Sloan Kettering.  We're going to know more

18   in the coming months.  But his underlying condition, and we

19   talked about this in our letter, that dates back to childhood,

20   but still effects him, this fibrous dysplasia, makes it

21   difficult to make treatment determinations, because it can

22   affect his bone marrow, the treatments themselves.  And the

23   fact that he already had thyroid cancer.

24          So this isn't a minor issue.  It obviously hasn't

25   gotten to an advanced stage yet, but the prognosis is that this

1    issue is going to become more significant over time.  We are

2    grateful that he'll have bail pending appeal, so he can focus

3    on these issues now, and he will do that obviously.  And,

4    hopefully, in time, he'll come up with a treatment plan that

5    makes sense, and that can help fend this off.  But it's a very

6    serious issue, and it's one that of course the Court can

7    consider in determining the appropriate sentence here.

8              I would just say, finally, that this case has been

9    just tortuous for Mr. Cole, and I know that based on my own

10   countless discussions with him.  It rightly or wrongly consumes

11   every waking hour he has.  It prevents him from finding peace.

12   And you saw a description of that in the letter from his

13   treating psychologist, who he's been treating him now for a

14   year, that those consequences are real, too.  I'd argue every

15   bit, if not more real than the cancer diagnosis.

16             He's going to use the time he has before the appeal is

17   decided to continue to do his best to address these issues.

18   He's committed to doing that.  I think the letter from his

19   psychologist makes that quite clear.  He's going to try to

20   repair his relationships.  He's going to stay in therapy.  He

21   is going to try to rebuild his life.  But, your Honor,

22   respectfully, the sentence we're seeking we think would be

23   sufficient but not greater than necessary to achieve all the

24   purposes of sentencing.

25             THE COURT:  Thank you, Mr. Hecker.

NAADCOLS

1          Mr. Cole, you have an absolute right to address the

2    Court before I impose sentence.

3          Is there anything that you wanted me to know?

4          THE DEFENDANT:  Your Honor -- sorry.  Your Honor, I

5    stand before you a very different man than I was 10 years ago

6    when the events that lead to this case occurred.  In the last

7    decade, I humbly admit that I have lost everything that was so

8    meaningful to me.

9          Mr. Hecker spoke of many of these losses:  My family,

10   my health, my finances, my reputation, my charitable

11   foundation, many of my real friends -- or I found out who the

12   real ones were, and my career.  I, too, want to briefly touch

13   on these points, even though it's really hard to put into words

14   how difficult the time has been.

15         I'm deeply sorry for the pain this case and these

16   trials have caused for so many, the hundreds or so employees,

17   including my sons, who have all lost their jobs at Iconix; my

18   children, who have suffered greatly through trauma and bullying

19   due to their father's very public arrest and trials; the

20   company that meant so much to me, that I loved and worked so

21   hard for, to build, that was taken away; and the loss of my

22   charitable foundation that was really the true pride of my

23   work.

24         Shortly before my first trial, my mom passed away, and

25   I can't help but remember how painful it was for her to worry

1    about me as her health was declining.  The result in the second

2    trial was truly shocking to me, and obviously very painful.

3    The loss was compounded by the loss of my family, as my wife

4    left me the day of the verdict, taking my daughter with, and

5    the person that was -- I shouldn't say person, but my devoted

6    dog, Cookie.  As painful as this remembrance has been to me, I

7    can only imagine how painful it has been for my children, and

8    my family, my brother and sister.

9        I will live with the guilt of causing so much pain for

10   the rest of my life.  Your Honor, I am regretful, I'm

11   apologetic, and I'm sorry for the time this Court has had to

12   spend on this matter.  I truly hope you will give me the

13   opportunity to fight my cancer, and work on improving my mental

14   health, and the ability to provide for myself and my family.  I

15   want nothing more than to get better, improve myself, and

16   return to being a positive impact on society.

17       Thank you for listening.

18       THE COURT:  Thank you, Mr. Cole.

19       In deciding what sentence to impose, in addition to

20   the sentencing guidelines, I have considered all of the factors

21   set forth at section 3553(a) of Title 18 of the United States

22   Code, including, as most relevant to Mr. Cole, the nature and

23   circumstances of the offense, and his history and

24   characteristics.  I've considered the need for the sentence

25   imposed to reflect the seriousness of the offense, to promote

1   respect for the law, to provide a just punishment for the

2   offense, to afford adequate deterrence to criminal conduct, to

3   protect the public from further crimes, and to provide Mr. Cole

4   with needed medical care in the most effective manner.  I've

5   considered the need to avoid unwarranted sentence disparities

6   among similarly-situated defendants, and the need to provide

7   restitution to any victims of the offense.

8          Having considered these factors, it is my intention to

9   impose a sentence of 18 months on each count, to be served

10  concurrently.  That will be followed by three years of

11  supervised release on each count, also to be served

12  concurrently.

13         I will not impose a fine as I find that Mr. Cole will

14  not be able to pay a fine, due to the other financial aspects

15  of the sentence, and I will execute the proposed consent order

16  of forfeiture that has been provided.  I will await the

17  submission from Iconix concerning any possible restitution.  I

18  will order the mandatory special assessment of $100 on each

19  count of conviction, for a total of $800.

20         I believe that this sentence is sufficient but not

21  greater than necessary to comply with the purposes of

22  sentencing set forth at section 3553(a)(2) for the following

23  reasons:  As I noted earlier, Mr. Cole, I watched, I sat

24  through both trials, and, frankly, I believe Mr. Horowitz, and

25  I did not believe you.  I believe that you knew that the two

NAADCOLS

1    transactions involved had no economic substance.  I believe

2    that you entered into those transactions knowing that you would

3    be paying back the $5 million and $6 million.  I believe that

4    you did that because of your desire to have the company meet

5    its revenue market consensus -- consensus revenue targets, as

6    it had for so many quarters before, and you did it for that

7    reason.

8            Obviously, one of the cruel ironies of this case is

9    even if you hadn't met those two quarters, those quarterly

10   revenue targets, in 2014, you would still have met the

11   consensus revenue estimates for the entire year, as the

12   government acknowledged.  So I start there, and I start with

13   the fact that I believe that you knew that what you were doing

14   was wrong.

15           Importantly, in this case, I found that you obstructed

16   justice, and that is as bad as the offense that you were

17   charged with committing, perhaps in some circles, particularly

18   for folks who sit up on benches like this, perhaps even worse.

19   You had an opportunity I believe, there were extensive

20   negotiations with the government, to admit to your conduct, and

21   you chose not to.  You chose to go to trial, which is your

22   right.  You chose to take the stand, which is your right.  Then

23   you provided testimony which was not truthful, which is not

24   your right.  So because of that, I do believe that a sentence

25   of incarceration is necessary, in addition to the conduct for

NAADCOLS

1   which you were charged.

2           I want to come back to something that the government

3   said, because I do believe that a sentence below the applicable

4   guideline range, and indeed far below the applicable guidelines

5   range is appropriate.  The government said that this conduct

6   was not aberrational, and that is, strictly speaking, true,

7   because it wasn't a one time, thoughtless, reckless idea that

8   you had that was executed over the course of a day or two or

9   three.  This scheme did take place over several months, but I

10  think, as I think about this case, it was aberrational in terms

11  of the lifetime of this business.

12          There's nothing before me to suggest that you had

13  engaged in wrongdoing with respect to Iconix at any other time.

14  You were in charge of the company for many other.  It was a

15  successful company.  It was a company based on your idea, which

16  was fairly novel at the time, and you created something that

17  was real, that was substantial, and that was successful.  You

18  employed people.  I take all of the letters that were written

19  at their word, and not only did you employ people, but you gave

20  people opportunities, especially young people.

21          So all of that I take into account, and, from that

22  perspective, this was aberrational.  The transactions in the

23  indictment took place over three or four or five months,

24  negotiations included, and I think that over the course of the

25  arc of your career, that is aberrational, and I think in large

NAADCOLS

1    part requires a sentence outside of the range that would be

2    suggested under the guidelines.

3        I also take into consideration the fallout from what

4    happened.  The company was largely decimated in terms of its

5    value.  Many people lost their jobs.  Obviously, none of that

6    had to happen.  Obviously, I can't lay all of that on you, and

7    the decisions that you made, but it is a real result, a real

8    consequence of certain decisions that you made.

9        Now, in terms of the 3553 factors, you obviously --

10   and your attorneys make a very strong showing.  I do believe

11   that with respect to specific deterrence, that's not an issue

12   here.  I don't believe that you'll ever commit another offense.

13   I don't believe that you'll ever go before another sentencing

14   judge having committed an offense, not just because of your

15   age, but because I think that you've seen what can happen, and

16   understand the consequences that in here, in conduct such as

17   this -- in terms of general deterrence, again, I don't believe

18   that anyone will look at what's happened here and see that you,

19   in addition to everything else that you've lost, have gotten a

20   sentence of 18 months, and then decide, well, that may be worth

21   it to me.  I don't believe that that will happen.

22       So in terms of general deterrence, I believe that this

23   sentence is appropriate.  I read the letters that your friend

24   submitted and family members submitted.  I do not doubt the

25   sincerity in everything that was written in those letters.  You

1    are a person who, prior to the summer of 2014, had lead a life,

2    raised a family, built a business, were a good husband, father,

3    sibling, friend, so all of that is taken into consideration.

4        I also read the letters from your doctors.  Obviously

5    you're dealing with a very serious disease.  You will continue

6    to deal with it for some period of time.  However, I do not

7    find that the medical services that can be provided by the

8    Bureau of Prisons are insufficient to meet your needs, and as

9    has been stated, you will be out on bail pending appeal, so

10    that period you'll have the opportunity to continue to see your

11    chosen medical care providers during that entire time.

12        The charitable efforts that have been talked about

13    also go back decades.  I am frequently faced with defendants

14    who have been convicted, who after their arrest and after their

15    conviction engage in substantial charitable works in a cynical,

16    I think, effort to sway the Court.  That's not what you did.

17    You appeared to be sincere in the causes that you took on.  One

18    of them was particularly successful, and had played some role,

19    I don't know how much of a role, but certainly played some role

20    in reducing teen pregnancy in this country, which is a

21    wonderful thing indeed.  So clearly you are a person who is not

22    beyond redemption, and all of that, also, gets taken into

23    account.

24        With that, is there anything other than what has

25    already been argued why I should not impose the sentence as

NAADCOLS

1    I've indicated?

2              Mr. Lenow?

3              MR. LENOW:  No, your Honor.

4              THE COURT:  Mr. Hecker.

5              MR. HECKER:  No, your Honor.

6              THE COURT:  In that event, it is the judgment of the

7    Court that you be sentenced to 18 months on each count of

8    conviction, to be served concurrently.  That will be followed

9    by three years of supervised release on each count, also to be

10   served concurrently.

11             The standard conditions of supervised release will

12   apply.  Those conditions are set forth in the presentence

13   report at pages 47 and 48 -- I'm sorry, 47 through 49, and are

14   included in the judgment in their entirety herein.

15             The following mandatory conditions will be applied.

16   They're set forth at page 47, and they are that you not commit

17   another federal, state, or local crime; not unlawfully possess

18   a controlled substance.  I will suspend the drug testing

19   condition, because I do not believe that that is necessary in

20   this instance.  Those mandatory conditions are included in

21   their entirety in the judgment.

22             I also impose the following special conditions, which

23   are set forth at page 49.  They are included in the judgment in

24   their entirety, and they are that you must participate in an

25   outpatient mental health treatment program approved by

NAADCOLS

1  probation, and continue taking any prescribed medications

2  unless otherwise instructed by your health care provider.

3        You shall submit your person, and any property,

4  residence, vehicle, papers, computer, or electronic data

5  storage devices, to a search by any U.S. Probation Officer and,

6  if needed, with the assistance of law enforcement.  The search

7  is to be conducted when there is reasonable suspicion

8  concerning a violation of a condition of supervision or

9  unlawful conduct by Mr. Cole.

10       You must not incur new credit charges or open

11  additional lines of credit without the approval of probation

12  unless you are in compliance with the installment payment

13  schedule, and must provide the probation officer with any

14  requested financial information.

15       If you do not live in the district during the period

16  of supervised release, it is recommended that you be supervised

17  by the district of residence.

18       As I indicated previously, I will not impose a fine.

19  I will execute the preliminary order of forfeiture, which seeks

20  forfeiture in the amount of $790,000.  I believe approximately

21  $790,200.

22       I will await the submissions concerning restitution,

23  which, in any event, will be applied, if at all, within 90

24  days.

25       Are there any open counts?

NAADCOLS

1          MR. LENOW:  No, Judge.  And just in terms of the

2     restitution, it sounds like just from what I heard your Honor

3     saying, you will impose it as a condition of supervised

4     release, but the question is just the amount based on the

5     submissions from the company.

6          Is that correct?

7          THE COURT:  Correct.  If I impose restitution.

8          MR. LENOW:  Understood, your Honor.

9          MR. THOMAS:  Because the Court is imposing judgment

10     now, I think the conditions of supervised release have to be

11     part of the judgment.  The ultimate finding of restitution may

12     be zero, but I don't know if the Court does not impose it

13     today, that in 90 days it could.

14          THE COURT:  Yes, that's my understanding.  Do you have

15     a different understanding?  Or perhaps I'm missing something.

16          MR. LENOW:  Judge, I think it was dealt with by Judge

17     Rakoff in the decision extensively cited by the defense.  I

18     believe your Honor has to impose restitution as a condition of

19     supervised release at this point, because you are imposing the

20     judgment now, and then what can be determined later is the

21     amount.

22          THE COURT:  Okay.

23          MR. LENOW:  But I believe the condition has to be

24     imposed now.

25          THE COURT:  So restitution, if any is also imposed as

1    a condition of supervised release.

2              MR. HECKER:  And, your Honor, just for the record, we

3    would object to the imposition of restitution, because the

4    parties seeking restitution aren't a victim under the law.  I

5    also think, as a practical matter, the Court could amend the

6    judgment if it ultimately determined, notwithstanding our

7    objection, that restitution's appropriate.

8              THE COURT:  Yes.  So what I've indicated is that

9    restitution, if any, is also imposed as a condition of

10   supervised release, and, if any, will be determined over the

11   course of the next 90 days.

12             Does that address your concern, Mr. Lenow?

13             MR. LENOW:  Yes, Judge.

14             THE COURT:  Okay.  With that, I think that constitutes

15   the sentence of the Court.

16             Mr. Cole, as you obviously are aware, you have a right

17   to appeal both the conviction and the sentence.  However, there

18   are strict time limits within which you need to perfect that

19   appeal.

20             So, Mr. Hecker, will you assure me that you will

21   promptly and thoroughly discuss with Mr. Cole his appellate

22   rights?

23             MR. HECKER:  We absolutely will, your Honor.

24             THE COURT:  Now, I take it that you are making an

25   application today, Mr. Hecker to allow Mr. Cole to remain on

NAADCOLS

1    bail pending appeal.

2              MR. HECKER:  Yes, on consent from the government.

3              THE COURT:  Government does not oppose?

4              MR. LENOW:  That's correct, Judge.

5              THE COURT:  Very well.  Mr. Cole may remain on bail

6    pending appeal subject to the same conditions that he has been

7    over the last number of years.

8              Unless there's anything else, Mr. Lenow --

9              MR. LENOW:  Nothing further, Judge.  Thank you.

10             THE COURT:  Mr. Hecker?

11             MR. HECKER:  No, your Honor.  Thank you.

12             THE COURT:  In that event, we are adjourned.

13             Mr. Cole, good luck to you, sir.

14             (Adjourned)

15

16

17

18

19

20

21

22

23

24

25