SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
————
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
————
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
————
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-2890
DIRECT FAX
(917) 777-2890
EMAIL ADDRESS
DAVID.ZORNOW@SKADDEN.COM

November 16, 2023

**VIA ECF**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    United States v. Neil Cole, 19 Cr. 869 (ER)

Dear Judge Ramos:

      On behalf of our client, Iconix International Inc., f/k/a Iconix Brand Group, Inc. ("Iconix" or the "Company"), we respectfully submit this letter requesting restitution of the necessary expenses Iconix incurred in participating in the U.S. Attorney's Office's ("USAO") criminal investigation and prosecution of the defendant, Neil Cole. As explained below, and as documented in our accompanying exhibits, Iconix incurred $7,177,009 in expenses recoverable as restitution. This total, none of which was reimbursed by insurance, is only a small fraction of the total damages that Iconix has suffered as a result of Mr. Cole's crimes.

      **I.**    **Procedural History**

      On May 19, 2023, Iconix submitted a victim impact statement requesting restitution, which we understand was reflected in the Presentence Investigation Report ("PSR"). *See* Exhibit 1 (Iconix's May 19, 2023 Victim Impact Statement). On September 27, 2023, Mr. Cole submitted a sentencing submission arguing that Iconix is not entitled to any restitution. *See* ECF No. 310 at 21-24. The Government filed a sentencing submission on October 4, 2023, in which it stated that "restitution may be made a condition of supervised release." *See* ECF No. 312 at 11. The Court so provided in Mr. Cole's Judgment of Conviction. *See* ECF No. 315 at 6 ("Restitution, if any, is imposed as a condition of supervised release.").

## II. Iconix Should be Awarded Restitution

### a. Legal Basis

In nearly identical language, both the Victim Witness Protection Act ("VWPA") and the Mandatory Victim Restitution Act ("MVRA") authorize restitution for expenditures incurred by a victim as a result of its participation in the criminal investigation and prosecution of a defendant. *See* 18 U.S.C. § 3663(b)(4) (recovery under VWPA includes "expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."); § 3663A(b)(4) (recovery under MVRA includes "expenses incurred during the participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense"); s*ee also United States v. Hastings*, No. 1:20-CR-534-GHW, 2022 WL 1785579, at *9 (S.D.N.Y. May 31, 2022) ("This Court concludes that restitution under the MVRA is available for attorneys' fees incurred in connection with services that were invited, required, requested, or otherwise induced by the Government."). The Second Circuit has upheld restitution awards to a corporate victim to recover legal fees and expenses incurred in the criminal investigation and prosecution of a former officer or employee's criminal conduct. *See, e.g.*, *United States v. Cuti*, 778 F.3d 83, 92–93 (2d Cir. 2015) (corporation's payments to its own counsel and to its employees' counsel that related to the investigation and prosecution of its former CEO for securities fraud were properly included in restitution); *United States v. Skowron*, 529 F. App'x 71, 73–75 (2d Cir. 2013) (corporation entitled to restitution for legal fees and expenses advanced to employees who participated in investigation and prosecution of defendant).

Furthermore, restitution can be ordered, as a condition of supervised release, notwithstanding Mr. Cole's convictions of Title 15 offenses. District courts are authorized by Section 3583(d) to impose, as a condition of supervised release, "any condition set forth as a discretionary condition of probation in section 3563(b)" and Section 3563(b) authorizes the court to order a defendant to "make restitution to a victim of the offense under section 3556 (but not subject to the limitation of section 3663(a) [of the VWPA] or 3663A(c)(1)(A)) [of the MVRA]." 18 U.S.C. § 3583(d); § 3563(b)(2); *see, e.g.*, *United States v. Adams*, 955 F.3d 238, 250 (2d Cir. 2020) (approving restitution order, as condition of supervised release, where defendant was convicted of an offense not covered by the MVRA or VWPA). Mr. Cole's reliance on *United States v. Petit*, 541 F. Supp. 3d 304, 306, 311 (S.D.N.Y. 2021), is misplaced because Judge Rakoff did not impose a term of supervised release in that case, and so restitution could not be made a condition of supervised release.[1]

Courts in this Circuit routinely determine that a corporate employer is eligible for restitution from former officers and employees convicted of criminal offenses that harmed the

---

[1] Judge Rakoff's view that the company in *Petit* was not a "victim" under the restitution statutes was dicta and is inconsistent with the Second Circuit's decision in *Cuti* that a company, similarly situated to Iconix, was entitled to restitution. *See* 541 F. Supp.3d 304, 311. Similarly, *United States v. Block*, No. 16-CR-595 (JPO), 2018 WL 722854 (S.D.N.Y. Feb. 6, 2018) is inapplicable here because there is no suggestion that Iconix's motives and intentions were

Honorable Edgardo Ramos
U.S. District Judge
November 16, 2023
Page 3

company.  *See, e.g.*, *United States v. Castillo*, 93 F. App'x 273 (2d Cir. 2004); *United States v. Hatfield*, No. 06-CR-0550 (JS)(AKT), 2015 WL 13385926, at *9 (E.D.N.Y. Mar. 27, 2015); *United States v. Ebrahim*, No. 12 CR. 471 (JPO), 2013 WL 2216580, at *1–4 (S.D.N.Y. May 21, 2013); *United States v. Cummings*, 189 F. Supp. 2d 67, 77–80 (S.D.N.Y. 2002).

### b. Expenses Recoverable by Iconix

Applying the legal principles summarized above, the expenses recoverable by Iconix fall into the following four categories:

| | Service Provider Category | Total After Invoicing Review |
|---|---|---|
| 1 | Richards Kibbe & Orbe LLP / Kibbe & Orbe LLP / Perkins Coie LLP ("RKO/Perkins Coie") | $292,612.53 |
| 2 | Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") | $1,763,989.26 |
| 3 | Ankura Consulting Group LLC ("Ankura") | $558,597.76 |
| 4 | Law firms representing Iconix officers, directors, and employees ("Iconix Personnel Counsel") | $4,561,810.03 |
| | **Total:** | $7,177,009.58 |

Below we will describe each of these categories further and the steps taken to isolate expenditures related to responding to the criminal investigation and prosecution of Mr. Cole.  The calculations and detailed time entries in support of restitution are reflected in Exhibit 2 (service provider invoices)[2] and Exhibit 3 (calculation spreadsheets for each service provider category and the overall total and, in the case of the Skadden, corresponding time entries).

---

aligned with Mr. Cole, that Iconix's corporate culture and "tone at the top" were major themes at trial, or that the prosecution essentially implicated Iconix as involved in Mr. Cole's criminal scheme.  *See* 2018 WL 722854, at *2-4.

[2]  In order to comport with Section 23 of the SDNY ECF Rules & Instructions, Exhibit 2 was separated into multiple parts, by service provider, to meet single-document size limitations.  Each part of Exhibit 2 has been labeled accordingly (*e.g.*, "Exhibit 2.1 – Invoices (Akin)," "Exhibit 2.2 – Invoices (Ankura)").

Honorable Edgardo Ramos
U.S. District Judge
November 16, 2023
Page 4

### 1. RKO/Perkins Coie

The Richards Kibbe & Orbe law firm, whose relevant personnel joined Perkins Coie during the course of the engagement (collectively "RKO/Perkins Coie "), was initially retained by a Special Committee of the Iconix Board of Directors in 2015 to conduct an internal review of the issues raised when COO Seth Horowitz wrote a letter to Iconix with information regarding the accounting and revenue issues relevant to this case. The Special Committee, through counsel, notified the Securities and Exchange Commission, which subsequently sought, and was provided with, information regarding Iconix's internal investigation. The USAO's criminal investigation became known to Iconix in late 2018. RKO/Perkins Coie, thereafter, assisted in responding to requests from the USAO, due to their familiarity with the underlying conduct, and coordinated with Skadden, which had been engaged by Iconix to represent the Company in connection with both the SEC and USAO investigations.

The accompanying Exhibits 2.5 (Kibbe & Orbe), 2.8 (Perkins Coie), 2.11 (RKO), and Exhibit 3 (at pages 2-3) reflect the time entries f of RKO/Perkins Coie for work relating to participation in the USAO's investigation and prosecution of Mr. Cole. We reviewed each invoice to determine whether the entries were eligible for restitution under the case law. If a time entry (or an entire invoice) was deemed ineligible, the ineligible amount was deducted from the our restitution calculation. We excluded all time entries prior to the USAO investigation becoming known to Iconix in late 2018. Although those excluded charges attributable to RKO totaled several million dollars and resulted from Mr. Cole's crimes, for the purposes of this restitution request, we isolated time charges for participation in the USAO's investigation and prosecution of Mr. Cole, including expenses related to preparing Iconix board members for interviews and/or testimony and responding to requests for information or documents from the USAO.

### 2. Skadden

Skadden was engaged by Iconix to respond to the SEC and USAO investigations. The accompanying Exhibit 3 (at pages 4-46) reflects the time entries for Skadden that are recoverable as restitution, as well as their calculation. We reviewed all of the time entries from December 2018 to November 7, 2023. Time entries that (1) expressly or by context related to the criminal investigation and prosecution of Mr. Cole; (2) expressly or by context related to Iconix's application for restitution in this case[3]; or (3) reflect work performed during the period between

---

[3] *See, e.g.*, *Hastings*, 2022 WL 1785579, at *14 (costs associated with application for restitution are recoverable).

the indictment[4] and the end of the first trial were generally included in the restitution calculation analysis unless the time narratives or other context warranted exclusion.

We excluded the following categories of time entries: (1) entries before December 2018, (2) entries that were ambiguous and/or mixed USAO and SEC work through block billing without a time breakdown for each task, (3) entries that were ambiguous and performed during periods with a higher likelihood of involving ineligible expenses (*i.e.*, December 2018 through November 2019, when Skadden also dealt with the SEC investigation, and November 2, 2021 through November 28, 2022, a period during which work was deemed to be not "necessary" under the restitution statutes). Notably, this conservative approach resulted in the voluntary exclusion of approximately $5 million in Skadden fees and expenses for the period of December 2018 through November 2019, alone.

### 3. Ankura

Ankura is a firm which was engaged to assist Iconix and its counsel in managing and analyzing the voluminous data associated with the various investigations arising from Mr. Cole's crimes. The accompanying Exhibit 2.2 and Exhibit 3 (at pages 47-48) reflect the time entries and expenditures recoverable as restitution, and their calculation. We collected available invoices for the period January 2020 to present, so as to exclude the time period during which Ankura's database and services would have been either primarily related to the SEC investigation or a mixture of SEC and USAO work without a readily available means for identifying one from the other. Consistent with the methodology described above, we reviewed each invoice and deducted costs deemed to be ineligible for restitution.

### 4. Iconix Personnel Counsel

A number of law firms were engaged by current and former officers, directors and employees of Iconix who became witnesses in the USAO's investigation and prosecution of Mr. Cole's crimes. Iconix paid for these expenses. We retrieved the available invoices from those service providers for the period December 2018 through December 2022. We then followed the same methodology described above to exclude expenses that were deemed ineligible for restitution. The recoverable time entries are in Exhibits 2.1 (Akin), 2.3 (Frankfurt), 2.4 (Friedman), 2.6 (Latham), 2.7 (McGuireWoods), 2.9 (Petrillo), 2.10 (Pillsbury), 2.12 (Shearman),

---

[4] The criminal indictment against Mr. Cole, for which Iconix advanced and paid for legal expenses, was announced on December 5, 2019—the same day that the SEC announced a settlement with Iconix and charges against Mr. Cole and Mr. Horowitz. *See* Press Release, U.S. Dep't of Just., Former Chief Executive Officer Of Publicly Traded Brand Management Company Charged With Accounting Fraud And Obstruction Of Justice (Dec. 5, 2019); Press Release, SEC, SEC Charges Iconix Brand Group and Former Top Executives with Accounting Fraud (Dec. 5, 2019).

2.13 (Simpson Thatcher), 2.14 (Vinson), and 2.15 (Wilkie Farr), and their calculation is reflected in Exhibit 3 (at pages 49-58).

### III.  Other Substantial Expenditures Not Recoverable in Restitution

In evaluating Iconix's targeted request for restitution, the Court should consider that there were significant costs inflicted on Iconix by Mr. Cole's crimes for which Iconix is not seeking restitution. These costs are detailed in Iconix's Victim Impact Statement of May 19, 2023, attached as Exhibit 1. They include advancement to Mr. Cole of more than $23 million in legal fees and expenses during his two criminal trials, which it appears the Company will be required to recover through litigation pursuant to an undertaking. In addition, Iconix incurred millions of dollars in fees and expenses to conduct the Special Committee investigation and to respond to the SEC investigation and civil law suits, and Iconix paid $5.5 million to settle with the SEC and another $6 million to settle with civil plaintiffs.

While Mr. Cole was committing his crimes he collected large sums in compensation from Iconix. According to the Company's payroll records, Mr. Cole received more than $110 million in salary and compensation from Iconix, plus equity grants, from 2011 through 2016. This includes more than $54 million in 2014 alone, while he executed his criminal scheme, including via his exercise of stock options and sale of stock as the evidence at trial showed.

In short, the request for approximately $7.1 million in restitution is a fraction of the harm that Mr. Cole's crimes visited on Iconix.

### **CONCLUSION**

For all of the foregoing reasons, Iconix respectfully submits that Mr. Cole should be ordered to make restitution in the amount of $7,177,009, as a condition of supervised release.

Respectfully submitted,

/s/ David M. Zornow

cc (via ECF):  AUSA Jared Lenow
Sean Hecker, Esq.