# Exhibit 1

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST

NEW YORK, NY 10001

---

TEL: (212) 735-3000

FAX: (212) 735-2000

www.skadden.com

FIRM/AFFILIATE OFFICES
---
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
---
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-2890
DIRECT FAX
(917) 777-2890
EMAIL ADDRESS
DAVID.ZORNOW@SKADDEN.COM

May 19, 2023

**VIA EMAIL AND FIRST CLASS MAIL**

Ms. Stephanie M. McMahon
U.S. Probation Officer Specialist
500 Pearl Street
7th Floor
New York, NY 10007

    Re:    <u>United States v. Neil Cole, 19 Cr. 869 (ER)</u>

Dear Ms. McMahon:

    On behalf of our client, Iconix International Inc., f/k/a Iconix Brand Group, Inc. ("Iconix" or the "Company"), we submit this victim impact statement in connection with the sentencing of Neil Cole scheduled for July 25, 2023, and seek restitution, pursuant to the Victim and Witness Protection Act, 18 U.S.C. § 3663 ("VWPA"), as a condition of any period of supervised release, *see* 18 U.S.C. § 3583(d) and § 3563(b), as well as pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA").

    As you are aware, on November 28, 2022, following a four-week retrial before Judge Ramos, a jury returned guilty verdicts against Mr. Cole, the former Chief Executive Officer of Iconix, for participating in a scheme to fraudulently inflate Iconix's revenues and earnings per share, for making false filings with the U.S. Securities and Exchange Commission ("SEC"), and for misleading the conduct of audits. As discussed in detail below, Mr. Cole's criminal conduct has caused substantial financial harm to Iconix, its shareholders and current owners. We ask the Court to fashion a sentence that includes an order of restitution in addition to a significant period of incarceration.

Ms. Stephanie M. McMahon
U.S. Probation Officer Specialist
May 19, 2023
Page 2

### *Iconix Acted Promptly and Responsibly in Dealing With Allegations Arising in 2015 About Mr. Cole's Conduct*

Iconix acted as a responsible corporate citizen from the inception of this matter. After receiving a letter in 2015 from Seth Horowitz, then the Chief Operating Officer of Iconix, Iconix, which was then a public company, acted swiftly to form a Special Committee of the Board of Directors. The Special Committee retained Richards Kibbe & Orbe to conduct an independent investigation of Iconix's accounting, with the assistance of AlixPartners.

Within 48 hours after receipt of Mr. Horowitz's letter, outside counsel, at the direction of the Special Committee, contacted the staff of the SEC's Division of Corporation Finance to report the allegations and to advise the staff of the internal investigation. Even before the SEC issued a formal order of investigation in this matter in November 2015, the Special Committee provided the staff of the Division of Enforcement with the key findings of its internal investigation. Once the U.S. Attorney's Office began its investigation, Iconix cooperated fully with the government both during its investigation and with respect to the two trials of Mr. Cole. Indeed, the charges brought by both the SEC and the U.S. Attorney's Office largely reflected the Special Committee's findings. The Company's cooperation included securing the attendance of a witness at the second trial of an Iconix employee based in the U.K. whose testimony was an important element of the government's case. The Company further engaged in extensive remediation, including enhancement of its policies and procedures and the replacement of its entire executive management team, after Mr. Cole's resignation at the request of the Board of Directors.

### *Mr. Cole's Criminal Conduct and the Ensuing Investigations And Trials Have Had a Devastating Financial Impact on Iconix*

At the time of Mr. Horowitz's 2015 letter, Iconix, then a publicly-traded company, had a market capitalization of $1.64 billion and its stock price was $342.70 per share. By June 10, 2021, just before the announcement of a transaction to take Iconix private, the Company's market capitalization had plummeted to $35.48 million and its stock price was $2.45 per share. On August 2, 2021, as a result of its diminished financial position, Iconix completed a going private transaction. Iconix's stock was acquired in an all-cash transaction at $3.15 per share, which represented a 45% premium on the average stock price in the thirty-day period prior to the transaction's announcement. The deal valued Iconix at approximately $585 million. As a result, Iconix has new owners. At the time of the going-private transaction, its consolidated debt – recorded at $564.4 million as of the period ended December 31, 2020 – was more than five times its annual revenues ($108.6 million for the same period). Iconix remains heavily encumbered by its legacy liabilities.

The decimation of Iconix's financial position and its inability to continue as a public company were a direct by product of Mr. Cole's criminal conduct. The direct to retailer business has been severely impacted by a lack of renewals, which Iconix has struggled to replace in light of the commercial and reputational damage to the Company. For example, in the years following Mr. Cole's termination from Iconix, amid the negative publicity attendant to the various internal and

government investigations, nearly every direct-to-retail license was either terminated or failed to be renewed by licensees. As evidenced by the non-renewal of nearly each such license agreement over this period of time, the lost royalties alone exceeded $100 million. Iconix has also faced significant management and employee turnover. During this period, Iconix's heavy debt burden became even more expensive due to an increase in the cost of capital in light of the ongoing uncertainty relating to government and criminal proceedings involving Cole, as well as the prospect that Iconix would not continue as a going concern. As a result, Iconix has been forced to engage in significant cost-cutting measures, including employee layoffs and extended furloughs. And none of this includes the lost opportunities that have allowed Iconix's competitors to grow significantly during this time period. Even now, despite the take-private transaction in 2021 and new ownership of the business, Iconix has far from recovered from the fallout of Mr. Cole's crimes. Although Iconix's financial condition has stabilized considerably, the Company's revenue and cash flow remains a small fraction of what it was prior to the commencement of Mr. Cole's criminal scheme.

### *Iconix has also Incurred Massive Expenditures In Connection with the Investigations and Litigation*

As a result of the Cole-related investigations and litigations, Iconix has been burdened by not only its own legal costs and those of the Special Committee, but also those of its officers and employees whose legal fees have been advanced, including Mr. Cole, Mr. Horowitz, and others. In total, these fees have amounted thus far to approximately $100 million. Consequently, the Company's applicable D&O coverage of $25 million has long ago been exhausted, and Iconix's direct out-of-pocket expenses have exceeded $75 million.

Mr. Cole's legal fees and expenses alone, including trial-related fees, have amounted to more than $25 million. Mr. Cole obtained a court order during his first trial requiring the Company to continue advancing fees and leaving to later the question of their "reasonableness." Further, counsel fees reimbursed directly by the Company for government witnesses who are current and former Iconix officers and directors in connection with Cole's two trials exceeded $5 million.

Despite his convictions, Mr. Cole has failed to reimburse Iconix, pursuant to the undertaking he executed, for the approximately $25 million in legal fees and costs that the company advanced for his defense. Instead, he insists that Iconix continue to pay for his defense, including the fees and costs of appealing his convictions.

In December 2019, after cooperating with the SEC during its investigation of Mr. Cole's misconduct, Iconix entered into a settlement with the SEC which included $5.5 million in civil penalties. As a result of Cole's criminal conduct, Iconix was also forced to restate its earnings for 2013, 2014 and the first two quarters of 2015, as well as to resolve resulting shareholder litigation for $6 million.

Ms. Stephanie M. McMahon
U.S. Probation Officer Specialist
May 19, 2023
Page 4

### *Mr. Cole Profited Immensely While Iconix and Its Shareholders Bore the Brunt of His Criminal Conduct*

While the Company's financial fortunes have plummeted, Mr. Cole profited handsomely. According to the Company's payroll records, Mr. Cole received more than $110 million in salary and compensation from Iconix, plus equity grants, from 2011 through 2016. This includes more than $54 million in 2014 alone, while he executed his criminal scheme, including via his exercise of stock options and sale of stock as the evidence at trial showed.

Yet, Mr. Cole has shown no remorse for his actions nor has he even attempted to compensate Iconix or its shareholders in any meaningful way. Mr. Cole certainly knew that when his actions inevitably came to light it would forever tarnish Iconix and each of its nearly thirty leading worldwide apparel and footwear brands. Mr. Cole's receipt of hundreds of millions of dollars in compensation was not enough. He chose to risk broad harm to Iconix, jeopardize the health of the company, cause losses to shareholders, and risk the job security of hundreds of dedicated employees. His greed was extraordinary. And yet, both in his testimony at two trials and in his communications with the company since his termination, he has been entirely unremorseful.

### *The Court Should Impose a Significant Period of Incarceration and Order Restitution to Iconix*

Mr. Cole has refused to take responsibility for his actions and instead continues to defend his conduct. His indifference to the havoc he wreaked on Iconix, its shareholders, and employees cries out for the imposition of a significant period of incarceration in this matter.

Further, as discussed above, in addition to the reputational and intangible harm that Mr. Cole caused through his criminal conduct, he also inflicted massive pecuniary damage on Iconix. As a result, Iconix respectfully requests, as a condition of supervised release and pursuant to the VWPA, restitution for the financial harm suffered by Iconix as a result of Mr. Cole's criminal misconduct. The Court is permitted to order, as a condition of supervised release, that the defendant make restitution to a victim of the offense in accordance with the VWPA or MVRA (without being subjected to certain limitations of the VWPA or MVRA). *See* 18 U.S.C. § 3583(d); 18 U.S.C. § 3563(b)(2); *United States v. Adams*, 955 F.3d 238, 250 (2d Cir. 2020); *see also* U.S.S.G. 5E1.1 ("In the case of an identifiable victim, the court shall . . . impose a term of probation or supervised release with a condition requiring restitution for the full amount of the victim's loss.").

In addition, Iconix seeks restitution pursuant to the MVRA. *See, e.g.*, 18 U.S.C. § 3663A(b)(4) (restitution proper to "reimburse the victim for . . . expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."); *United States v. Paul*, 634 F.3d 668, 676 (2d Cir. 2011) (noting that the MVRA provides that "in sentencing a defendant convicted of certain crimes, including securities fraud, the court must order the defendant to pay restitution to any victim of the offense"); *United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014) (victim entitled to restitution for amounts it

Ms. Stephanie M. McMahon
U.S. Probation Officer Specialist
May 19, 2023
Page 5

No. 21CR317 (DLC), 2022 WL 1806300, at *1 (S.D.N.Y. June 1, 2022) ("Offenses covered by the MVRA may include convictions for securities fraud.").

In accordance with these restitution regimes, Iconix seeks restitution for the losses it has suffered, which were directly and proximately caused by Mr. Cole's misconduct, including loss to the value of the business, losses connected with financial restatements necessitated by Mr. Cole's misconduct, legal fees and expenses incurred related to participation in the government investigations and prosecution of Mr. Cole's misconduct, and any other losses that were reasonably foreseeable by Mr. Cole and would not have been incurred but for Mr. Cole's misconduct. At present, Iconix estimates the total amount of such losses to be at least $135 million.

Very truly yours,

David M. Zornow

cc: AUSA Jared Lenow (via email)
Sean Hecker, Esq. (via email)
Kyle Harmon, Esq. (via email)