# KAPLAN HECKER & FINK LLP

350 FIFTH AVENUE | 63ᴿᴰ FLOOR
NEW YORK, NEW YORK 10118

1050 K STREET NW | SUITE 1040
WASHINGTON, DC 20001

TEL (212) 763-0883 | FAX (212) 564-0883

WWW.KAPLANHECKER.COM

DIRECT DIAL        212.763.0889
DIRECT EMAIL       shecker@kaplanhecker.com

December 8, 2023

**BY ECF**

Hon. Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

> Re:    *United States v. Cole, 19 Cr. 869 (ER)*

Dear Judge Ramos:

We represent Neil Cole in the above-captioned matter and write in opposition to Iconix International Inc.'s ("Iconix") request for $7,177,009 in restitution.  Iconix Letter, ECF No. 323.

Iconix's dispute with Mr. Cole over their respective financial obligations to each other is not new.  The first phase of that dispute took place in civil court.  Indeed, it was Mr. Cole who was first required to go to state court to force Iconix to comply with its obligation to advance legal fees for its founder and former CEO.  Having failed to obtain its desired result in civil litigation, Iconix looked to a different forum—Mr. Cole's criminal case.  Iconix first sought to leverage the criminal case when it threatened to file a victim impact statement advocating for significant prison time if Mr. Cole did not significantly increase his offer to settle any outstanding claims with Iconix.  After having made good on that threat,[1] Iconix now seeks restitution in its latest effort to leverage this criminal case into a windfall.  But Iconix's request is inconsistent with the law and facts.  It should, therefore, be denied.

*First*, although it is the government which bears the burden of proving whether Iconix is a victim or how much restitution is owed, the government has chosen not to even attempt to meet that burden.  As a result, Iconix's request is as unprecedented as it is improper.  *Second*, to be

---

[1] *See, e.g.*, PSR ¶¶ 45-50, ECF No. 308; *id.* ¶ 46 ("We ask the Court to fashion a sentence that includes an order of restitution in addition to a significant period of incarceration…").  Iconix's initial request for restitution was for "at least $135 million".  *Id.*

KAPLAN HECKER & FINK LLP                                                                    2

entitled to restitution, Iconix must be a victim.  But the law in this District is abundantly clear that Iconix is not a victim and is not entitled to restitution.  *Third*, Iconix is also not a victim as a matter of fact or equity, and any restitution reward would act only as a windfall to Iconix.  *Last*, Iconix has failed to prove that the fees it now seeks reimbursement for were for work performed *at the request or invitation of the government*—a necessary condition for any restitution request.

Accordingly, as explained further below, Iconix's request for restitution should be denied.

## I.      ICONIX'S SOLITARY REQUEST, MADE WITHOUT THE GOVERNMENT'S SUPPORT, IS UNPRECEDENTED

As a threshold matter, because the government, who bears the burden to prove up restitution, has not requested restitution and has not supported Iconix's request for restitution, this Court should deny Iconix's unprecedented application.

As the Court noted at sentencing, "generally speaking, in ordering restitution, there is a number that the government proves up" and barring an objection, that is the number that the Court orders.  Sentencing Tr. at 14.  This is so because "it [is] the government's burden to prove, by a preponderance of the evidence," facts relevant to sentencing.  *United States v. Navarro*, 156 Fed. App'x. 384, 386 (2d Cir. 2005).  This includes proving whether a given party is a victim.  *See, e.g.*, *United States v. Reese*, 36 F. Supp. 3d 354, 359 (S.D.N.Y. 2014), *aff'd in part*, 603 F. App'x 63 (2d Cir. 2015).  And proving the amount of restitution to be ordered.  *See id.* at 362 ("The standard is the same regarding a restitution order—the [g]overnment must prove by a preponderance of the evidence that each individual lost the amount of money set forth in the [r]estitution [o]rder.").

Iconix's restitution request violates each one of these guiding principles.  It should be denied on that basis alone.  This is not a case where the government is seeking restitution on behalf of any victims, let alone a case where the government has proven or affirmed that there are any victims entitled to restitution.  *See* Sentencing Tr. at 14 ("THE COURT:  Let me ask you, on restitution, the government is not seeking restitution in this case, correct?  MR. LENOW:  We are not, your Honor . . . I think our position is that we are not taking an affirmative position here.").

Rather, this is a case where a non-party is declaring itself a victim and seeking millions of dollars in restitution from a defendant.  Counsel for Mr. Cole is unaware of any cases where a request for restitution has proceeded in a similar fashion—where the government has not taken an affirmative position and has completely deferred to the alleged victim.  The only case that the undersigned is aware of where a court allowed anything remotely like this: (1) the government opposed restitution and (2) the court denied the restitution request.  *Fed. Ins. Co. v. United States*, 882 F.3d 348, 355 (2d Cir. 2018) (government affirmatively *opposed* recognizing the company as a victim, the court allowed the company to make its case, and the court ultimately declined to impose restitution).

A comparison to *United States v. Hastings*, No. 20 Cr. 534, 2022 WL 1785579 (S.D.N.Y. May 31, 2022), one of the cases cited by Iconix, *see* Iconix Letter at 2, illustrates the unprecedented nature of Iconix's request.  In *Hastings*, the court ultimately concluded that "restitution under the MVRA is available for attorneys' fees incurred in connection with services that were invited, required, requested, or otherwise induced by the Government."  2022 WL 1785579, at *9.  But

KAPLAN HECKER & FINK LLP

before awarding restitution to the company, several steps were taken that clearly distinguish *Hastings* from Iconix's request to restitution.

*First*, in *Hastings*, instead of taking "no affirmative position" as it is doing here, the government actively participated in the restitution process and invited any victims who were seeking restitution to compile information substantiating their restitution requests.   *See* Government Sentencing Submission at 21, *United States v. Hastings*, No. 20 Cr. 534 (S.D.N.Y. Nov. 8, 2021), ECF No. 97.

*Second*, in *Hastings*, the court held a hearing where it examined the bills and questioned the submitting party, but more importantly, also required the government to affirm that the bills being produced reflected work that was performed at the request of the government.   The court stressed that:

> If the government is affirming that the information that the work that was done by [the "company's] counsel here was done at the invitation or the request of the government, I'll just ask you to submit an affidavit to that effect.   I invite you, counsel, to review all of the time records line by line.   I expect that any affirmation by the government regarding the scope of the work requested of counsel for [the company] will be targeted and specific or it will be blanket.   If you can affirm -- as you were about to say -- that all of this work was done at the invitation or request of the government, you will need to provide a sworn affidavit to the Court in support of that proposition.

> I cannot accept blanket representations that what appears to be a substantial internal investigation was conducted, I'll call it, because they wanted it to, but rather because the government asked for it.   If that's the case, I need a fact that supports that.

*See* Feb. 24, 2022 Hrg. Tr. at 16-17, *Hastings*, No. 20 Cr. 534, ECF No. 123; *see also Hastings*, No. 20 Cr. 534, ECF No. 127 (government's affirmation).   No such affirmation has been made here and the government has not indicated that it would review Iconix's bills and provide such an affirmation, as the court required in *Hastings*.

Notwithstanding the government's belief that Iconix's counsel may be "best positioned to advocate for the company's position," *see* Sentencing Tr. at 15, it remains the government's burden to prove that Iconix is in fact a victim and the amount of restitution they are owed, if any. The discussion that follows will show why, as a matter of law, neither the government, nor Iconix, can prove that Iconix is a victim for the purposes of restitution.   The discussion will also illustrate the significant issues presented where it is Iconix, and not the government, seeking restitution— the most significant being that it enables Iconix to make arguments that while nominally supportive of its position, are flatly inconsistent with the law and just as important, with the case that the government presented at trial and resulted in this conviction in the first place.

KAPLAN HECKER & FINK LLP

### II.     ICONIX IS NOT A VICTIM AS A MATTER OF LAW

The Court should not order restitution as a condition of supervised release because Iconix is not a victim of Mr. Cole's conduct as a matter of law.  Sentencing courts are empowered to order that a defendant "make restitution to a victim of the offense" as a condition of supervised release. 18 U.S.C. § 3563(b)(2); *see also* 18 U.S.C. § 3583(d) (granting courts discretion to order as a condition of supervised release "any condition set forth as a discretionary condition of probation in section 3563(b)").  At sentencing, both the government and Iconix conceded that this provision would be the only way Iconix could receive restitution in this case.  Sentencing Tr. at 14, 16.[2]  But, as the Second Circuit and Judges Rakoff and Oetken have held in other, similar cases, a company is not a victim of its employee's illegal actions, taken within the scope of their employment, that benefit the company's bottom line.  *See Fed. Ins. Co.*, 882 F.3d at 368; *United States v. Petit*, 541 F. Supp. 3d 304, 309-11 (S.D.N.Y. 2021) (Rakoff, J.); *United States v. Block*, No. 16 Cr. 595 (Oetken, J.), 2018 WL 722854, at *3-5 (S.D.N.Y. Feb. 6, 2018).  Because Iconix either omits or misrepresents, *see* Iconix Letter at 2-3, the holdings and applicability of these analogous cases, we address them in detail here.

In *Federal Insurance Co.*, the Second Circuit denied a subrogee's appeal requesting millions of dollars in restitution.  *Fed. Ins. Co.*, 882 F.3d at 351-52.  The insured company's former employees had been convicted of a fraudulent kickback scheme—one that the company had not known about but which it had ultimately benefited from before the scheme was discovered.  *Id.* at 352-55.  The company sought restitution for part of the payments it made in connection with a Deferred Prosecution Agreement from the employees, arguing that it was a victim of the employees' honest services fraud.  *Id.* at 355.

The Second Circuit held that the subrogee was not entitled to this restitution.  *Id.* at 367.  It started from the premises that "coconspirators are not entitled to recover for harms inflicted on them by other conspirators during the course of their mutual scheme," *id.* (citing *United States v. Reifler*, 446 F.3d 65, 127 (2d Cir. 2006)), and that "federal law generally imposes liability on a corporation for the criminal acts of its agents taken on behalf of the corporation and within the scope of the agent's authority via the principle of *respondeat superior*, unless the offense conduct solely furthered the employee's interests at the employer's expense," *id.* at 368 (citing *United States v. Ionia Mgmt. S.A.*, 555 F.3d 303, 309 (2d Cir. 2009); *United States v. Demauro*, 581 F.2d 50, 53 (2d Cir. 1978)).  Given that the facts showed that (1) both employees had been acting within the scope of their employment when they committed their offenses and (2) the scheme ultimately benefited the company, the Circuit held that the subrogee was "precluded" from receiving restitution.  *Id.* at 352, 368-69.

Judge Oetken applied the same agency principles when assessing whether to order restitution in *Block*.  That case involved the former Chief Financial Officer of American Realty Capital Properties, Inc. ("ARCP"), Brian Block, who had been convicted of making false SEC

---

[2] Both acknowledged that neither the Mandatory Victims Restitution Act (MRVA) nor the Victim and Witness Protection Act (VWPA) authorizes restitution for the Title 15 offenses of which Mr. Cole was convicted.  Sentencing Tr. at 14, 16; *see also United States v. Petit*, 541 F. Supp. 3d 304, 306-08 (S.D.N.Y. 2021) (Rakoff, J.) (holding neither the MRVA nor the VWPA authorizes restitution for Title 15 offenses).

filings and certifications on behalf of his former employer. *Block*, 2018 WL 722854, at *1. ARCP's successor company, VEREIT, sought $35 million in restitution for expenses incurred in (1) its own internal investigation; (2) multiple government investigations (including the Justice Department's prosecution of Block as well as a related SEC investigation); and (3) legal representations of certain current and former employees of VEREIT (including Block). *Id.* Judge Oetken identified the relevant question as "whether a corporate employer can claim restitution as a 'victim' of its officer's illegal conduct when the corporation itself could have been—but was not—charged with the criminal conduct." *Id.* The answer, he concluded, is no. *Id.* at *5.

Judge Oetken, like the Second Circuit in *Federal Insurance Co.*, noted first that "coconspirators cannot be 'victims' under the restitution statutes," and second that "under appropriate circumstances, corporate entities can be held criminally liable for the illegal actions of their officers"—namely, when the officers are agents whose actions fall within the scope of their employment and benefit the company. *Id.* at *2 (citing *Reifler*, 446 F.3d at 127; *Demauro*, 581 F.2d at 53).

Based on these principles, he concluded that Block's misconduct "f[e]ll squarely within the scope of criminal conduct that is attributable to a corporate employer." *Id.* at *3. Block had inserted "fraudulent plug numbers into ARCP's quarterly filing" in order to "meet[] a key earnings metric for the current quarter." *Id.* Though he "was surely motivated by financial gain," the court concluded that "such gain was a function of anticipated gain by the company," and "the direct and proximate effect of his conduct was to inflate VEREIT's share price"—not to enrich himself at the company's expense. *Id.* Thus, "Block was acting both within the scope of his employment as an executive officer of the company and, importantly, *to benefit the company*" when he committed his offenses. *Id.* For that reason, those offenses were equally attributable to ARCP. *See id.* And, further emphasizing ARCP's position as "more of a coconspirator than a victim of Block's fraud" was the fact that even though ARCP had not been charged, the government repeatedly invoked its corporate culture and "tone at the top" at trial. *Id.* at *4.

Finally, Judge Oetken noted the importance of incentivizing companies "to prevent the circumstances that give rise to fraud and questionable accounting in the first place"—an incentive that "is not advanced by allowing a company to play the victim card after the fact." *Id.* Though the company had "cleaned house" and even changed its name following the revelations of Block's misconduct, Judge Oetken stressed that "[t]he question is not whether the company transformed itself into a victim, but whether it was genuinely a victim—as opposed to a coconspirator—at the time of the crimes." *Id.* at *4-5. Given the circumstances of Block's crimes, he concluded that it was not. *Id.* at *5.

Judge Rakoff engaged in the same analysis in *Petit* when asked to evaluate whether to order William Taylor, the former Chief Operating Officer of MiMedx, Inc. ("MiMedx")—who had been convicted of conspiracy to commit securities fraud, to make false SEC filings, and to mislead the conduct of audits—and Parker Petit, the company's former CEO—convicted of securities fraud— to pay restitution to their former employer. 541 F. Supp. 3d at 306. Relying on both *Federal Insurance Co.* and *Block,* Judge Rakoff concluded that MiMedx was not entitled to restitution because "[t]he defendants' criminal actions were within the scope of their employment and designed to benefit MiMedx." *Id.* at 310. Like Judge Oetken in *Block*, Judge Rakoff observed that:

KAPLAN HECKER & FINK LLP                                                                    6

> Although they were undoubtedly also motivated by personal financial gain, "such gain was a function of anticipated gain by the company. Indeed, the direct and proximate effect of their conduct was to inflate [MiMedx's] share price. That benefit was short-lived, of course, but only because [their] fraud and the problematic accounting [was eventually discovered]."

*Id.* (alteration in original) (quoting *Block*, 2018 WL 722854, at \*3). And "the mere fact that the defendants may have misled other employees or agents of MiMedx" was irrelevant—"especially where, as here, the wrongdoing was committed by [the] company's highest officers." *Id.* at 311. Given that "MiMedx could have been—but ultimately was not—criminally charged as a result of the defendants' conduct," it was not a victim under the restitution statutes. *Id.* at 310.

The material facts in *Petit* and *Block* closely resemble those present here. Like the defendants in *Petit* and *Block*, Mr. Cole was convicted of offenses that included making false filings with the SEC and misleading the conduct of an audit. *See* ECF No. 252 (verdict form). Like those defendants, he was one of his company's "highest officers," *Petit*, 541 F. Supp. 3d at 311, when those offenses occurred—as was Seth Horowitz, Iconix's Chief Operating Officer, who pled guilty for his role in the same offenses.[3] The conduct here is also nearly identical to the conduct in *Block* and *Petit*: Mr. Cole was convicted of inserting "fraudulent plug numbers into [Iconix's] quarterly filing" in order to "meet[] a key earnings metric for the current quarter." *Compare Block*, 2018 WL 722854, at \*3 *and Petit*, 541 F. Supp. 3d at 306, *with* Sentencing Tr. at 34-35 (Court: "I believe that you knew that the two transactions involved had no economic substance . . . . [and] that you would be paying back the $5 million and $6 million. I believe that you did that because of your desire to have the company meet its revenue market consensus.").

Finally, any personal financial gains Mr. Cole expected to receive from these transactions "[were also] a function of anticipated gain by the company," just like in *Block* and *Petit*. *Petit*, 541 F. Supp. 3d at 310 (quoting *Block*, 2018 WL 722854, at \*3). "Indeed, the direct and proximate effect of [Mr. Cole's] conduct was to inflate [Iconix's] share price," *Petit*, 541 F. Supp. 3d at 310 (quoting *Block*, 2018 WL 722854, at \*3), which is why the forfeiture the government and Mr. Cole agreed to, and this Court imposed, was based on the increased value of Mr. Cole's Iconix stock, *see* ECF No. 310 at 24 (Defendant sentencing memorandum noting that "[f]ocusing on Neil's stock sale from October 2014, the parties agreed that the gain to Neil was $790,200.00"); Sentencing Tr. at 40 (imposing $790,200.00 forfeiture). And as in *Petit* and *Block*, the benefit to the company was short-lived "only because [the] fraud and the problematic accounting [was eventually discovered]." *Petit*, 541 F. Supp. 3d at 310 (quoting *Block*, 2018 WL 722854, at \*3); *see also Fed. Ins. Co.*, 882 F.3d at 353 (noting scheme's benefit to employer). Thus, as in *Petit* and *Block*, Mr. Cole's conduct occurred in his role as an agent of Iconix, meaning that conduct is equally attributable to the company itself. The SEC's decision to sue Iconix in a civil action based on the same conduct underlying Mr. Cole's criminal case, and the company's decision to agree to injunctive relief and payment of a $5.5 million penalty to resolve the matter further support this

---

[3] Not only did Mr. Horowitz enter a guilty plea, but he pled guilty to conspiracy to commit securities fraud—a charge that Mr. Cole was acquitted of. Judgment, *United States v. Horowitz*, 19 Cr. 861 (S.D.N.Y.), ECF No. 43; ECF No. 141 (Cole First Trial Verdict).

KAPLAN HECKER & FINK LLP

point.  *SEC Charges Iconix Brand Group and Former Top Executives with Accounting Fraud*, U.S. SEC, (Dec. 5, 2019), https://www.sec.gov/news/press-release/2019-251.

Iconix now argues that it nevertheless is owed restitution for the cost of its efforts to investigate and remedy Mr. Cole's actions taken as its agent.  *See* Iconix Letter at 1.  But "[the company's] efforts to root out misconduct, however extensive, do not immunize" it from responsibility for the acts of its highest officers, including its CEO and COO, in the course of their employment.  *Petit*, 541 F. Supp. 3d at 311 (internal quotation marks omitted).  As Judge Oetken observed in *Block*, "[t]he question is not whether [Iconix] transformed itself into a victim" following the revelations of the conduct, "but whether it was genuinely a victim—as opposed to a coconspirator—at the time of the crimes."  *Block*, 2018 WL 722854, at *4-5.  Like the companies in *Petit, Block*, and *Federal Insurance Co*., it conclusively was not.

Iconix's attempts to distinguish these relevant cases are highly misleading.  It urges this Court to ignore *Petit* because, "Judge Rakoff did not impose a term of supervised release in that case, and so restitution could not be made a condition of supervised release."  Iconix Letter at 2.  But there were two defendants in *Petit*.  Although Judge Rakoff held that the lack of a supervised release term prevented him from imposing restitution on defendant Petit—who was convicted of a Title 15 offense only—it presented no obstacle to imposing restitution on defendant Taylor, because he was convicted of Title 18 conspiracy.  *Petit*, 541 F. Supp. 3d at 308-09.

Iconix then tries to dismiss as "dicta" Judge Rakoff's holding "that the company in *Petit* was not a 'victim' under the restitution statutes."  Iconix Letter at 2 n.1.  But while that might be true for defendant Petit, it is plainly false as to defendant Taylor.  In fact, the determination that MiMedx was not a victim was the *only* basis Judge Rakoff gave for not imposing restitution on Taylor.  *See Petit*, 541 F. Supp. 3d at 309-11.  Indisputably, this holding was essential to the court's judgment as to Taylor and thus is not dicta.

Iconix's final attempt to dispose of *Petit* fails too.  It argues that *Petit* should be set aside because it "is inconsistent with the Second Circuit's decision in [*United States v.*] *Cuti*[, 778 F.3d 83, 92-93 (2d Cir. 2014)] that a company, similarly situated to Iconix, was entitled to restitution."  Iconix Letter at 2 n.1.  But Judges Rakoff and Oetken both carefully distinguished *Cuti* in their opinions in *Petit* and *Block*.  *Petit*, 541 F. Supp. 3d at 311; *Block*, 2018 WL 722854, at *3.  As they explained, "it does not appear that the issue of corporate coconspirator status or culpability was raised by the litigants or addressed by [the] court [in that case]," making *Cuti* non-precedential on the issue at hand.  *Petit*, 541 F. Supp. 3d at 311 (quoting *Block*, 2018 WL 722854, at *3).

Iconix's attempts to differentiate *Block* are no more compelling.  Iconix tries to brush the case aside (again, in a footnote) by arguing that "there is no suggestion that Iconix's motives and intentions were aligned with Mr. Cole, that Iconix's corporate culture and 'tone at the top' were major themes at trial, or that the prosecution essentially implicated Iconix as involved in Mr. Cole's criminal scheme."  Iconix Letter at 2 n.1.  Such an argument is not credible on its face.  Mr. Cole was the Founder of Iconix, and served as chairman, president, and CEO.  Their interests could not have been more aligned.

Furthermore, accepting Iconix's position would require the Court not only to ignore the agency principles articulated in *Federal Insurance Co.*, *Block*, and *Petit*, but also to completely

KAPLAN HECKER & FINK LLP

disregard the evidence the government presented at trial, including the numerous times at trial that witnesses testified about the external pressure senior management at Iconix faced to meet specific financial metrics. *See, e.g.*, Trial Tr. 130 (Government: "[A]s a member of the Iconix board of directors, was there, from your perspective, external pressure on senior management to meet certain revenue guidance?" Cuneo: "Yes."), 686 (Horowitz: "During my time as COO, Neil insisted that investors wanted to see growth over last year and over consensus."), 687 (Horowitz: "There was a need to show growth so that people could believe in the future of the company and not question our ability to sustain growth."), 581 (Defense: "[T]here is a duty on behalf of the company to try to meet shareholders' expectations, correct?" Sheinheit: "Yes." Defense: "And Mr. Cole took that seriously, did he not?" Sheinheit: "Yes."). Thus, even to the extent that "tone at the top" is an independent prong of the necessary analysis here—rather than simply further evidence of Mr. Cole's agency—the trial transcripts provide more than enough evidence to show that Iconix's tone influenced and encouraged his conduct here.[4] *Block* is not materially different from this case.

Iconix also relies on *United States v. Skowron*, 529 F. App'x 71, 73-75 (2d Cir. 2013). Iconix Letter at 2. But in addition to being a non-precedential Summary Order, *Skowron* is also easily distinguishable—and, like *Cuti*, already has been distinguished by Judges Oetken and Rakoff. First, in *Skowron*, an insider trading case, "the defendant-employee's criminal activity solely furthered the employee's interests *at the employer's expense*" and thus "could not be imputed to the corporate employer." *Petit*, 541 F. Supp. 3d at 311 (emphasis added) (internal quotation marks omitted). By contrast, here, as in *Petit*, Mr. Cole's actions were clearly for Iconix's benefit—not for his own at Iconix's expense. Second, just as in *Cuti*, the issue of "corporate coconspirator status or culpability" was neither "raised by the litigants [n]or addressed by court." *Block*, 2018 WL 722854, at *3. Thus, *Skowron* provides no support for Iconix's position.

Iconix is not, as a matter of law, a victim of the offenses of which Mr. Cole has been convicted, and as such, it is not entitled to restitution from him.

## III.   ICONIX IS NOT A VICTIM AS A MATTER OF FACT OR EQUITY

As argued above, the law in this District is clear that Iconix is not a victim as a matter of law and is not entitled to restitution. But even putting aside that decisive legal question, Iconix, and its new shareholders, are simply not a victim as a matter of fact. Because the Court requested the facts in order to make its determination, Sentencing Tr. at 19, and Iconix's letter fails to provide the relevant factual background, Mr. Cole does so here.

Iconix neglects to disclose that its current owner, Lancer Capital, acquired Iconix at a massive discount specifically because of the company's liabilities in the ongoing criminal investigation and the substantial risks associated with them. In other words, Lancer Capital has

---

[4]   This type of argument also further illuminates the unsettling predicament created by the posture of Iconix's restitution request. If the government were seeking restitution, there is no chance, based on the case they presented at trial twice, that they would argue that Mr. Cole's interests were not aligned with Iconix's at the time of this conduct.

KAPLAN HECKER & FINK LLP                                                                    9

already been compensated for those liabilities and risks by obtaining a valuable business for far less than its true value.

Lancer is a private equity firm owned by the family of billionaire Avram Glazer. Lancer purchased Iconix for pennies on the dollar and took it private in the Summer of 2021.[5] This was more than six years after the two relevant joint venture transactions took place, nearly two years after Mr. Cole was indicted, more than two years after the USAO opened its criminal investigation, and mere months before Mr. Cole's first trial. The day the Agreement and Plan of Merger was entered into, this Court rescheduled Mr. Cole's first trial for October of that year.[6] The transaction price reflected the reality of Iconix's ongoing legal and financial obligations, including the need to expend funds cooperating with the government's case, and the existing status of Iconix's business. Indeed, Iconix now seeks reimbursement for years of costs that were incurred before the new ownership took over.

Thus, Iconix has simply not suffered any financial harm. Any restitution award would result in a significant windfall to Iconix's new shareholders. As the Court has already acknowledged, Iconix's former stockholders are "not going to benefit from any order of restitution." Sentencing Tr. at 19. In addition to the company now being privately owned, Iconix's shareholders have already been made whole for Iconix's misstated earnings through a $6 million class action settlement agreement in 2019. Rather, the beneficiaries will be Iconix's new owners, who were in the financial position to take a risk and purchase a company with ongoing legal and financial challenges. The purchase price was plainly discounted heavily to account for the obvious liabilities associated with this criminal case. That the owners now seek to improve further on their bargain should not be aided by this Court.

Nor is Iconix entitled to restitution as a matter of equity. Laid bare, Iconix is attempting to leverage a criminal proceeding in its long-standing civil dispute with Mr. Cole over legal fees. If this were a civil proceeding, Mr. Cole and Iconix would of course engage in civil discovery—the purpose of which "is to allow the parties to litigate based on complete information because mutual knowledge of all the relevant facts . . . is essential to proper litigation." *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 643 (S.D.N.Y. 2019), *aff'd*, 2020 WL 5037573 (S.D.N.Y. Aug. 26, 2020), and *aff'd*, 2020 WL 5037573 (S.D.N.Y. Aug. 26, 2020) (internal quotation marks, alteration, and citation omitted). Iconix is desperately seeking to avoid returning to civil court where Mr. Cole could litigate with Iconix based on complete information obtained through depositions, interrogatories, and requests for production of documents. We urge the Court to reject this unseemly attempt by Iconix's new owners to seek a windfall for harms they did not suffer at the expense of Mr. Cole's liberty and ability to fully challenge Iconix's evidence, and to not wade into what is ultimately a civil dispute between Mr. Cole and Iconix.

---

[5] *See* Jean E. Palmieri, *Iconix Completes Deal to Go Private*, Women's Wear Daily (Aug. 2, 2021), https://wwd.com/feature/iconix-completes-deal-to-go-private-lancer-1234891840/ ("One of the principals of Lancer is Avram Glazer whose family owns the Tampa Bay Buccaneers who holds a majority stake in the Manchester United soccer club.").

[6] *See* Minute Entry (June 11, 2021); Iconix Brand Group, Inc., Form 8-K (June 11, 2021), https://www.sec.gov/Archives/edgar/data/857737/000110465921080251/tm2119488d1_8k.htm.

KAPLAN HECKER & FINK LLP

During Mr. Cole's first trial, in which he was acquitted of the two main counts, Iconix stopped paying Mr. Cole's legal fees and had to be ordered by a New York state court to comply with its obligations. *See* Prelim. Injunction Hr'g Tr., *Cole v. Iconix Brand Group, Inc.*, 655837/2021, Doc. No. 31 at 30-39 (N.Y. Sup. Ct. Oct. 25, 2021); *id.*, Doc. No. 32 (N.Y. Sup. Ct. Nov. 22, 2021). Mr. Cole was initially successful in that fight, with the court ruling in his favor and ordering Iconix to advance Mr. Cole's legal fees. But after Mr. Cole's second trial, Iconix once again refused to pay for Mr. Cole's legal fees and expenses, notwithstanding the fact that Mr. Cole's appeal of the judgment is pending.[7]

Having already lost once in state court, Iconix chose instead to litigate with Mr. Cole in the context of his sentencing proceeding. Iconix and Mr. Cole had been engaged in negotiations to settle their respective claims against each other before Iconix sought restitution from this Court. Mr. Cole offered Iconix millions of dollars ($4 million, to be exact, contingent on the result of Mr. Cole's appeal) to settle the ongoing dispute. In making this offer, Mr. Cole was effectively agreeing to release Iconix of its obligation to reimburse him for the costs of his second trial and his appeal (which he has paid out of pocket, even though Iconix remains obligated to advance those costs). Iconix rejected that substantial offer, however, and tried to leverage the threat of filing a victim impact statement into a higher one: it told Mr. Cole's counsel that Iconix was looking for "an offer above $4 million," and made clear that, if its demands were not met, it would file its letter with Probation. Mr. Cole declined to counter, at which point, Iconix, as threatened, filed its Impact Statement advocating that Mr. Cole receive a "significant period of incarceration." Iconix Impact Statement.[8]

Put simply, using a victim impact statement to gain leverage in a financial negotiation is not proper. Because Mr. Cole declined to increase his $4 million settlement offer, Iconix filed a letter advocating that he be imprisoned while it simultaneously withholds funds it was obligated to pay for his legal defense. Iconix's actions reflected a gross attempt to bargain Mr. Cole's money for his freedom.

Moreover, rejecting Iconix's request for restitution in this criminal case "does not mean that it is left without recourse" to seek its supposed costs in civil litigation. *See Petit*, 541 F. Supp. 3d at 310 & n.6. After initially seeking $135 million from Mr. Cole, Iconix then made a demand for $14 million. Iconix now seeks over $7 million, conceding that only "necessary expenses" connected to the SDNY investigation and trials are recoverable as restitution (if Iconix qualified as a victim, which it does not). *See* Sentencing Tr. at 16. There is no indication that Iconix will not continue to seek millions of dollars from Mr. Cole even if the Court awards restitution here. On the contrary, Iconix will almost certainly continue to seek costs through civil litigation. In such a proceeding, Mr. Cole would have several counterclaims against Iconix, including for reimbursement for the costs of Mr. Cole's second trial—claims he is not able to raise in this restitution proceeding. In light of this, we urge the Court to not wade into this dispute, which is at

---

[7] The operative Iconix By-Laws provide that the company shall indemnify its Officer or Director until "a judgment or other final adjudication adverse to him" establishes that he is not entitled to indemnification. Art. VII.2(c), *Cole v. Iconix Brand Group, Inc.*, 655837/2021, Doc. No. 6 (N.Y. Sup. Ct. Oct. 7, 2021).

[8] We understand that the Court received a copy of Iconix's Impact Statement on October 10, 2023—the day Mr. Cole was sentenced. Sentencing Tr. at 2.

KAPLAN HECKER & FINK LLP

its core a civil dispute, which would ordinarily entitle Mr. Cole to discovery, and which will ultimately be decided by the success of Mr. Cole's appeal.

Finally, imposing restitution against Mr. Cole would create unwarranted sentencing disparities with Mr. Horowitz—a particularly inequitable proposition. *See* 18 U.S.C. § 3553(a)(6). Neither the government nor Iconix sought restitution from Mr. Horowitz, who was instrumental in causing the costs Iconix complains of now. *See* Horowitz Sentencing Tr. at 9, 12. Of course, instead of seeking restitution from Mr. Horowitz, Iconix sued him in state civil court, in February of 2022, demanding that Mr. Horowitz return more than $2 million that Iconix had advanced. Summons and Complaint, *Iconix Brand Grp. Inc. v. Horowitz*, No. 650726/2022, Doc. No. 1 at *2 (N.Y. Sup. Ct. Feb. 15, 2022). The parties ultimately agreed to discontinue the action on March 27, 2023, presumably after reaching an agreement that required Mr. Horowitz to pay some amount to Iconix. *Id.*, Doc. No. 86 (N.Y. Sup. Ct. Mar. 27, 2023).

Iconix could have taken a similar approach here. Instead, they have tried to short-circuit what should be a civil proceeding through this restitution request where it is not even clear whether Iconix has isolated from their submitted charges any fees that were incurred as part of the government's investigation and work with Mr. Horowitz, or if Iconix is effectively asking Mr. Cole to fund the costs associated with both investigations. The potential for this egregious disparity further highlights the absurdity of the government's unprecedented decision to defer to Iconix, a private third party, to unilaterally decide from which defendant it seeks restitution. We urge the Court to not allow Iconix to effectively usurp the role of the government and wield that power in a way that is inconsistent with the law, facts, and principles of equity.

## IV.   ICONIX HAS NOT PROVED THAT FEES WERE INCURRED RESPONDING TO GOVERNMENT REQUESTS

Because Iconix is not a victim as a matter of law or fact, its request for restitution should be denied. Should the Court rule otherwise, and order restitution, an amount significantly below the requested $7,177,009 should be awarded because Iconix has not demonstrated that the services underlying that request are recoverable as restitution.

Second Circuit case law limits the types of expenses recoverable as restitution. For starters, a party may not recover restitution for costs "arising from private investigations and civil proceedings." *United States v. Afriyie*, 27 F.4th 161, 171 (2d Cir.), *cert. denied*, 143 S. Ct. 326 (2022); *see also Lagos v. United States*, 138 S. Ct. 1684, 1690 (2018) (restitution under the MRVA "does not cover the costs of a private investigation that the victim chooses on its own to conduct"). Additionally, restitution is limited to expenses incurred for investigatory activities that the government "*expressly and specifically invited or requested.*" *United States v. Avenatti*, No. 19 Cr. 373, 2022 WL 452385, at *5 (S.D.N.Y. Feb. 14, 2022); *see also Hastings*, 2022 WL 1785579, at *9 ("This Court concludes that restitution under the MVRA is available for attorneys' fees incurred in connection with services that were invited, required, requested, or otherwise induced by the Government." (internal quotations and citation omitted)).[9]

---

[9] *See, e.g.*, *Cuti*, 778 F.3d at 95 ("This is not to say that fees paid to two outside law firms working side-by-side on an internal investigation may not, in theory, be treated as necessary expenses under the VWPA. However, to be

KAPLAN HECKER & FINK LLP                                                                    12

The records submitted by Iconix are not sufficient to allow Mr. Cole, the government, or the Court to determine whether the services performed resulting in the requested fees were incurred "in connection with services that were invited, required, requested, or otherwise induced by the Government." *Hastings*, 2022 WL 1785579, at *9. To the extent the Court considers awarding Iconix restitution, further process, such as an evidentiary hearing, government affirmation, and further discovery in the form of depositions and document requests, should be required.

For example, Iconix seeks reimbursement for 175 Skadden entries from December 2018 to June 2021 where the narrative accompanying the time entry is simply: "Email," or "E-mail," or "Emails," or "E-mails," or "EMAIL UPDATES." *See* ECF No. 323-17 pp. 5-47. These descriptions fail to prove that the time entries relate strictly to services that were "invited, required, requested, or otherwise induced by the Government." *Hastings*, 2022 WL 1785579, at *9. Skadden may have been emailing with the government—work which might qualify for restitution—or, just as likely, emailing about attorney staffing, providing updates to its client, or engaging in common-interest communications with other parties—services that most likely do not qualify for restitution. By seeking reimbursement for these services, Iconix essentially asks the Court to accept its blanket representation that these entries all qualify for restitution, notwithstanding how vague and uninformative the entries may be. The Court in *Hastings* rejected this type of blanket representation and as a result, required the government to affirm that the services were performed at the invitation or request of the government, going so far as asking the government to "review all of the time records line by line." *See* Feb. 24, 2022 Hrg. Tr. at 16, *Hastings*, No. 1:20-CR-534-GHW, ECF No. 123. The court's direction to the government in *Hastings* underscores the importance of ensuring that the restitution award only reflects those fees associated with work that was truly performed at the request of the government.

Other submitted time entries are also unlikely to be recoverable as restitution. For example, Iconix seeks reimbursement for two Skadden entries from December 24 and 25 of 2018 that appear to relate to a letter Iconix sent to NASDAQ. *See* ECF No. 323-17 p. 5 ("Review draft NASDAQ response; Emails." and "Review draft letter to NASDAQ; Emails."). We doubt that the government asked Iconix to submit a response or draft a letter to NASDAQ, meaning that such work would not be eligible for restitution. *See Hastings*, 2022 WL 1785579, at *9. Similarly, a December 16, 2019 entry for "research re: indemnification and advance," ECF No. 323-17 p. 24, does not appear to be work performed at the request of the government. Nor do entries involving review of docket entries. *See, e.g.*, ECF No. 323-17 pp. 24, 25, 27, 35, 41, 45, 46.

Time entries submitted by entities other than Skadden suffer from the same defect. For example, a January 2021 invoice submitted by the Kibbe & Orbre firm shows time entries for emails exchanged with Mr. Cole's prior counsel at Paul Weiss regarding "defendant's questions." ECF No. 323-6 at p. 4. And an October 31, 2022 entry shows fees associated with Perkins Coie email correspondence with Mr. Cole's current counsel and Iconix's counsel regarding the Rule 17(c) subpoena the Court authorized be issued to Perkins Coie. ECF No. 323-9 at p. 4 ("Emails with J. The[n] (representing Cole) and D. Zornow regarding Rule 17(c) subpoena to Perkins

---

'necessary' for restitution, it is not enough that the expenses incurred 'helped the investigation,' . . . On remand, the question for the district court is whether the government has proved by a preponderance of evidence that some, or any, of [the] expenses were 'necessary to the investigation or prosecution' of Cuti's criminal case.").

KAPLAN HECKER & FINK LLP                                                          13

Coie."). On their face, it is clear that many of the time entries for work performed by the Richards Kibbe & Orbe and Perkins Coie law firms was not "invited, required, requested, or otherwise induced by the Government." *Hastings*, 2022 WL 1785579, at *9.

These are just a few examples of fees associated with work that was clearly not performed at the government's direction, but that Iconix now improperly seeks reimbursement. Counsel for Mr. Cole has not undertaken to identify every single instance of fees that were improperly included by Iconix and shares these examples to highlight the defective nature of Iconix's submission, and why Iconix's request should be completely denied. *See Fed. Ins. Co.*, 882 F.3d at 366 ("[R]estitution need not be imposed if the court finds that correctly calculating or apportioning restitution would be impractical or would unduly prolong the sentencing process.").

## V.    CONCLUSION

As explained above, Iconix is not a victim as a matter of law, or fact, and is therefore not entitled to restitution. Additionally, Iconix has failed to prove that the fees that it seeks reimbursement for qualify for restitution as it has not shown that such fees were incurred responding to specific government requests. Accordingly, Iconix's request for restitution should be denied.

Respectfully submitted,

Sean Hecker

cc: Assistant United States Attorneys Andrew Thomas, Jared Lenow, and Justin Rodriguez.
David Zornow, Counsel for Iconix.