SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

DIRECT DIAL
(212) 735-2890
DIRECT FAX
(917) 777-2890
EMAIL ADDRESS
DAVID.ZORNOW@SKADDEN.COM

December 12, 2023

**VIA ECF**

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

   Re:  United States v. Neil Cole, 19 Cr. 869 (ER)

Dear Judge Ramos:

  We write on behalf of our client, Iconix International Inc., f/k/a Iconix Brand Group, Inc. ("Iconix" or the "Company"), to briefly reply to defendant Neil Cole's opposition to restitution, set forth in a letter from Sean Hecker, Esq., to the Court of December 8, 2023 (ECF No. 331).

  **1. Iconix Can Request Restitution On Its Own Behalf**

  Mr. Cole is wrong to call Iconix's restitution request on its own behalf "unprecedented" and to claim that the government "has not supported Iconix's request for restitution." The Crime Victims' Rights Act ("CVRA") authorizes victims to file restitution requests in their own right in the District Court and to seek review by mandamus in the Court of Appeals. 18 U.S.C. §§ 3771(a)(6), 3771(d). The Second Circuit has held that "<u>the CVRA confers standing on victims to seek restitution on their own behalf</u>**,** rather than relegating them to bystander status while the government decides, for its own reasons and pursuant to its own strategy, whether, for whom, and in what amount to seek restitution." *Fed. Ins. Co. v. United States*, 882 F.3d 348, 359 (2d Cir. 2018) (emphasis added). And, here, the government has acknowledged that the Court can order restitution for Iconix as a condition of supervised release. *See* ECF No. 312 at 11.

Honorable Edgardo Ramos
U.S. District Judge
December 12, 2023
Page 2

### 2. Iconix Is a Victim under the Statutes

Mr. Cole is wrong to claim Iconix is not a victim within the meaning of the restitution statutes. This case is on all fours with *United States v. Cuti*, where a CEO and CFO of the corporate victim were convicted of engaging in fraudulent accounting schemes to inflate the company's reported earnings. In *Cuti*, the Second Circuit in two separate appeals upheld restitution to the victim corporation. *See United States v. Cuti*, 778 F.3d 83, 87 (2d Cir. 2015); *United States v. Cuti*, 708 Fed. Appx. 21, at 25 (2d Cir. 2017) (Summary Order). While the decisions did not expressly address what would have happened if the corporation affirmatively approved of the officers' crimes, the Court of Appeals would not have upheld the restitution order, twice, if it were inherently improper to order former executives to pay restitution to a corporate victim in these circumstances.

Mr. Cole relies on *Federal Insurance Co.*, *supra*, but the case is readily distinguishable. The Court of Appeals predicated its holding on facts not present here, including: (1) the company took affirmative responsibility for the employees' crimes, (2) the company was criminally charged and agreed to a Deferred Prosecution Agreement, and (3) the company had notice of irregularities concerning the employees' misconduct and failed to question them. *Fed. Ins. Co.*, 882 F.3d at 366 n.13, 367-68. There has been no suggestion that Iconix knew of Mr. Cole's criminal conduct before it was brought to the board of directors' attention by Mr. Horowitz, which prompted rapid self-reporting by Iconix to the SEC, nor any suggestion that Iconix has taken responsibility for Mr. Cole's criminal conduct.[1] Mr. Cole is correct about *United States v. Petit*, 541 F. Supp. 3d 304 (S.D.N.Y. 2021) containing a holding rather than dicta for the second defendant in that case. But *Petit* is not binding authority, and the Second Circuit's binding decision in *Cuti* plainly authorizes restitution here.

### 3. Iconix Is a Victim in Fact and in Equity

Mr. Cole destroyed much of Iconix's value through his crimes, leading eventually to a going private transaction at a reduced price. It is rich that Mr. Cole now asks the Court to deny restitution on that basis, claiming Iconix would somehow reap a windfall. But Iconix is seeking reimbursement only for out-of-pocket expenditures necessitated by the government investigation, as authorized by law. It is also disappointing that Mr. Cole's counsel has tried to portray legitimate settlement discussions between Mr. Cole and Iconix in a negative light. Without engaging in a "he said/he said," there is nothing inappropriate about a company pursuing a possible resolution of its restitution claims and its claim for reimbursement of advanced legal fees. When such discussions

---

[1] As reflected in the SEC's press release, Iconix agreed to injunctive relief and to pay a penalty, "[w]ithout admitting or denying the allegations." *See* Press Release, SEC, SEC Charges Iconix Brand Group and Former Top Executives with Accounting Fraud (Dec. 5, 2019). Similarly, Iconix denied any wrongdoing or liability in the class action litigation stemming from Mr. Cole's criminal conduct. *See* Stipulation of Settlement and Release at 2-3, ECF No. 147 and Final J. at 5-6, ECF No. 171, *In re Iconix Brand Group, Inc. et al.*, Case No. 1:15-cv-04860-PGG (filed Jun. 23, 2015 SDNY).

Honorable Edgardo Ramos
U.S. District Judge
December 12, 2023
Page 3

failed to produce a resolution, Iconix naturally pursued the restitution authorized by law and made its views on sentencing known to the Court.

### 4. Iconix Has Submitted Ample Support for its Request for Restitution

Mr. Cole's final argument is an attempt to cherry-pick a handful of specific time entries for scrutiny in isolation, while ignoring the robust supporting documentation submitted and the comprehensive description of the reasonable methodology employed to prepare its restitution request. This is precisely the type of evidence routinely relied upon by District Courts in determining restitution amounts. The methodology described was designed to capture only eligible expenses. To be conservative, we excluded numerous categories of attorney fee expenditures, including all of Mr. Hecker's fees in representing various Iconix personnel prior to his firm's retention by Mr. Cole. Our requested amount of reimbursement barely scratches the surface of the actual harms caused to Iconix by Mr. Cole's criminal conduct.

Mr. Cole goes too far by suggesting that the government must have specifically invited the expenditure associated with a particular attorney time entry. The standard is not nearly so narrow. The restitution statutes cover "necessary … expenses" that were either "incurred during" or "related to" "participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." *See* 18 U.S.C. §§ 3663A(b)(4) ("incurred during"), 3663(b)(4) ("related to").

For the foregoing reasons, and those in our November 16, 2023 letter to the Court (ECF No. 323), Iconix respectfully requests that the Court order Mr. Cole to pay restitution in the amount of $7,177,009, as a condition of supervised release.

Respectfully submitted,

/s/ David M. Zornow

cc (via ECF):  AUSA Jared Lenow
              Sean Hecker, Esq.