UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>– *against* –<br><br>NEIL COLE,<br><br>Defendant. | **ORDER**<br><br>19-cr-869 (ER) |

RAMOS, D.J.:

On November 28, 2022, a jury found Neil Cole guilty of securities fraud, 6 counts of making false SEC filings, and improperly influencing the conduct of audits Doc. 252. The convictions stemmed from his participation in a scheme to fraudulently inflate reported revenue and earnings per share for Iconix Brand Group, Inc. ("Iconix"), a then-publicly traded brand management company for which Cole served as chief executive officer. Specifically, Cole and another Iconix executive orchestrated a series of transactions in which they induced a Hong Kong-based international apparel licensing company to pay artificially inflated purchase prices for interests in joint business ventures, and then Iconix reimbursed the Hong Kong company for the overpayments.

On October 10, 2023, the Court sentenced Cole to 18 months of imprisonment on all counts, to run concurrently, and 3 years of supervised release on all counts, also to run concurrently. Doc. 315. The Court deferred the determination of restitution, however, and requested additional briefing on the question. *Id.* Before the Court is Iconix's motion for restitution in the amount of $7,177,009 on the basis that Iconix is a victim of Cole's criminal acts. Doc. 323. For the reasons set forth below, the motion is DENIED.

I.   BACKGROUND

Iconix alleges that Cole's criminal conduct and the ensuing investigations and trials "devastated" its financial position and even compelled Iconix to go private. Doc. 323-1 (Iconix Victim Impact Statement). Iconix alleges that it "has been burdened by not

only its own legal costs and those of [its internal investigation], but also those of its officers and employees whose legal fees have been advanced, including [Cole's]," which totaled approximately $100 million (of which more than $75 million were not covered by insurance). *Id* at 4. In comparison to its worsened financial position, Iconix alleges that Cole profited significantly from his criminal scheme. *Id.* at 5.

On this basis, Iconix asks the Court to impose restitution of $7,177,009 as a condition of Cole's supervised release. Doc. 323. This amount consists of four categories of expenses:

(1) $292,612.53 for Richards Kibbe & Orbe LLP and Perkins Coie LLP, which Iconix retained to conduct an internal investigation in 2015 and which assisted in responding to requests from the U.S. Attorney's Office ("USAO") beginning in 2018;

(2) $1,763,989.26 for Skadden, Arps, Slate, Meagher & Flom LLP, which Iconix retained to respond to SEC and USAO investigations;

(3) $558,597.76 for Ankura Consulting Group LLC, which Iconix and its outside counsel retained to manage and analyze the data associated with the SEC and USAO investigations; and

(4) $4,561,810.03 for 11 law firms that represented Iconix officers, directors, and employees who became witnesses in the USAO investigation and prosecution of Cole.

*Id.* at 3–6. Iconix specifies, however, that for purposes of its restitution request, it "isolated time charges for participation in the USAO's investigation and prosecution" and excluded any ineligible time entries, such as those regarding the SEC or internal investigations and those that were ambiguous or included block billing. *Id.*

Cole responds that Iconix is not entitled to any restitution, as it is not a victim, and the expenses for which it seeks payment are not those eligible for restitution. Doc. 331. Specifically, he argues that similar cases in this District have held that "a company is not a victim of its employee's illegal actions, taken within the scope of their employment, that benefit the company's bottom line." *Id.* at 4 (citing *Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 (2d Cir. 2018); *United States v. Petit*, 541 F. Supp. 3d 304, 309–11

(S.D.N.Y. 2011); *United States v. Block*, No. 16-cr-595 (JPO), 2018 WL 722854, at *3–5 (S.D.N.Y. Feb. 6, 2018)).  Moreover, Cole argues that the records Iconix submitted are insufficient to determine whether the fees requested are for services incurred "in connection with services that were invited, required, requested, or otherwise induced by the Government," the only category of expenses eligible for restitution.  *Id.* at 12 (quoting *United States v. Hastings*, 20-cr-534 (GHW), 2022 WL 1785579, at *9 (S.D.N.Y. May 31, 2022)).

Iconix, however, points to *United States v. Cuti*, in which it says the Second Circuit twice upheld restitution to a victim corporation.  Doc. 332 at 2 (citing 778 F.3d 83, 87 (2d Cir. 2015); 708 F. App'x 21, 2 (2d Cir. 2017)).  It also defends its methodology for preparing its restitution request, noting that its "requested amount of reimbursement barely scratches the surface of the actual harms caused to Iconix by [ ] Cole's criminal conduct."  *Id.* at 3.

## II.  LEGAL STANDARD

Even where restitution is not statutorily authorized by the Mandatory Victims Restitution Act ("MVRA") or Victim and Witness Protection Act ("VWPA"), a court may, in its discretion, impose restitution as a condition of supervised release under 18 U.S.C. § 3563(b)(2).  *See United States v. Petit*, 541 F. Supp. 3d 304, 308 (S.D.N.Y. 2021).  That section provides that a court may require as a special condition of supervised release that the defendant "make restitution to a victim of the offense under section 3556 (but not subject to the limitation of section 3663(a) or 3663A(c)(1)(A))."  Tracking the definition for purposes of the MVRA and VWPA, a "victim" is "a person directly and proximately harmed as a result of" the offense for purposes of restitution ordered as a condition of supervised release as well.  *Block*, 2018 WL 722854, at *1.

## III.  DISCUSSION

Iconix's entitlement to restitution turns on two issues:  (1) whether Iconix is a victim, and (2) whether the expenses Iconix identifies are the type susceptible to

restitution. As to the former, the parties agree that the question of whether Iconix is a victim is governed by four key cases: *Block*, *Federal Insurance Company*, *Petit*, and the two decisions in *Cuti*. The Court reviews each in turn.

The *Cuti* decisions arose from the conviction of Anthony Cuti, the chief executive officer and board chairman of Duane Reade, for conspiracy to make false statements and securities fraud in connection with two fraudulent accounting schemes to inflate Duane Reade's reported earnings. 778 F.3d at 86–87. Duane Reade and the private equity firm which acquired it, Oak Hill, sought an order of restitution of approximately $53 million, largely to compensate Oak Hill for its alleged overpayment for its acquisition of Duane Reade because of Cuti's fraud. *Id.* at 88. The district court concluded that Oak Hill was entitled to restitution of certain legal fees and expenses paid to lawyers retained as part of its participation in the investigation and prosecution of Cuti's criminal case, as well as certain fees for the costs of counsel for Duane Reade employees and forensic accountancy fees for internal investigations *Id.* at 89–90. The Second Circuit in 2014 held that Oak Hill could properly be entitled to restitution for paying employees' legal fees but that the district court had inadequately parsed the expenses Oak Hill had submitted to ensure that only eligible expenses were reimbursed. *Id.* at 92–96. On remand, the district court reviewed the billing records and issued an amended restitution award, which Cuti again appealed. 708 F. App'x at 23. The Second Circuit in 2017 held that attorneys' fees for monitoring Cuti's trial were not subject to restitution and affirmed in part, and it vacated and remanded in part for the district court to again review the records to parse the properly reimbursable expenses. *Id.* at 25. The parties thereafter reached an agreement amongst themselves to the restitution award, which the district court so ordered. *United States v. Cuti*, No. 8-cr-972 (DAB), Doc. 284 (Dec. 19, 2017).

*Block* arose from the conviction of Brian Block for his preparation of fraudulent financial statements for a publicly traded real estate investment trust, for which he served as chief financial officer. 2018 WL 722854, at *1. The successor entity to Block's former

4

employer submitted a restitution request for fees the company paid to a law firm and forensic accounting firm for the company's internal investigation, another law firm the company retained to handle its cooperation with SEC and USAO investigations, and other law firms retained to represent employees.  *Id.*  Judge Oetken denied the request on the basis that the company was more accurately regarded as a coconspirator than a victim of Block's crimes.  *Id.*  He noted that companies will be liable for "the criminal acts of its employees if done on its behalf and within the scope of the employees' authority," and the test is whether the employee was performing acts he was authorized to perform and which were motivated at least in part "by an intent to benefit the corporation."  *Id.* at 2 (citations omitted).  He further noted that multiple circuit courts have held that employer-corporations cannot recover restitution as victims of their officers' or employees' crimes, but the Second Circuit has, in at least a few instances, upheld restitution awards to corporations alleged to be "victims" of their officers' or employees' crimes.  *Id.* at *2–3 (collecting cases).  But the Second Circuit never addressed whether restitution would not be available in a circumstance where the corporation was alleged to be coconspirator.  *Id.* at *3.  Given those "less-than-pellucid lines of precedent," Judge Oetken held that, "at least in the circumstances of [that] case," the company was not a victim of Block's crimes.  *Id.*  Judge Oetken noted that "Block's actions fall squarely within the scope of criminal conduct that is attributable to a corporate employer" since he was acting within the scope of his employment and for the company's benefit.  *Id.*  Moreover, even though the Government did not charge the company as a coconspirator in the case, it had repeatedly argued at trial that the corporate culture and "tone at the top" at the very least encouraged and incentivized Block's conduct.  *Id.* at *4.  Judge Oetken also considered the "public interest and the incentives that would be furthered by treating the company as a victim in these circumstances," noting that denying restitution—even for internal investigations and cooperation with the Government—incentivizes companies to "prevent

5

the circumstances that give rise to fraud and questionable accounting in the first place," whereas allowing companies "to play the victim card after the fact" does not. *Id.*

Approximately one week after Judge Oetken's decision in *Block*, the Second Circuit decided *Federal Insurance Company*. That case concerned a conspiracy in which a company that served as lead contractor for a project for New York City obtained bribes and kickbacks from a subcontractor in exchange for steering work to it at inflated prices. 882 F.3d at 351. The defendant employees pled guilty to five counts, and the lead contractor took responsibility for its part in the scheme and entered into a deferred prosecution agreement. *Id.* The lead contractor successfully claimed $15 million under an employee theft insurance policy on the theory that the employees' improper payments were the company's wrongfully appropriated property. *Id.* The insurance company then sought restitution of that $15 million from the convicted employees, which the Government opposed. *Id.* 351, 355. The district court denied the application because the lead contractor (and therefore the insurance company) had no entitlement to restitution as a coconspirator in the defendant employees' conduct. *Id.* at 355. The Second Circuit agreed. *Id.* at 351–52. It noted that the lead contractor company had accepted responsibility for its part in the employees' scheme to defraud the city, and "federal law generally imposes liability on a corporation for the criminal acts of its agents taken on behalf of the corporation and within the scope of the agent's authority via the principle of *respondeat superior*, unless the offense conduct solely furthered the employee's interests at the employer's expense (for instance, where the employee was embezzling from the employer)." *Id.* at 367–68. Because the employees had acted within the scope of their employment, and their scheme benefited the company at the city's expense, the company was not a victim for purposes of restitution, *regardless* of whether or not the company was willfully blind to or complicit in the scheme, which the Second Circuit held district courts did not need to consider. *Id.* at 368–69.

Judge Rakoff again took up the question of restitution for corporate employers in *Petit*. That case stemmed from the conviction of Parker H. Petit and William Taylor for securities fraud, making false statements in SEC filings, and misleading audits based on their participation in a scheme to fraudulently inflate the reported revenue of a publicly traded biomedical company for which they served as chief executive officer and chief operating officer, respectively. 541 F. Supp. 3d at 306. Judge Rakoff held that the court had no statutory authority to impose restitution on Petit, as he was not convicted of an eligible offense under the MVRA or VWPA, nor was he sentenced to supervised release. *Id.* at 307–09. Taylor was convicted of an eligible offense under the MVRA and VWPA, but Judge Rakoff held that the company was not a "victim" within the meaning of those statutes. *Id.* at 309–10 (citing *Fed Ins. Co.*, 882 F.3d at 351–52, 368–69; *Block*, 2018 WL 722854). He noted that Taylor's actions were within the scope of his employment and designed to benefit the company by inflating its share price, regardless of whether the company was criminally charged as a result of the defendants' conduct. *Id.* at 310. Moreover, Judge Rakoff rejected the company's arguments that, unlike the employees in *Block* and *Federal Insurance Company*, Taylor and Petit hid their criminal activity and obstructed the company's investigation into their misconduct. *Id.* at 311. He described such arguments as "off-base" because, regardless of how extensive the company's efforts to root out misconduct were, they do not "immunize it from liability when its employees, acting within the scope of their authority, failed to comply with the law." *Id.* (citation omitted). "Thus, the mere fact that the defendants may have misled other employees or agents of [the company] does not relieve [it] of its criminal liability under the principle of *respondeat superior*, especially where, as here, the wrongdoing was committed by [the] company's highest officers." *Id.*

Here, Iconix relies primarily on the Second Circuit's decisions in *Cuti*. Doc. 323 at 2, 2 n.1; Doc. 332 at 2. It argues that because Iconix did not know of Cole's crimes, conducted an internal investigation thereafter and cooperated with the Government, and

7

did not have a corporate culture or "tone at the top" that endorsed Cole's crimes, *Federal Insurance Company*, *Block*, and *Petit* are all distinguishable. *Id.* Iconix ignores, however, that neither of the Second Circuit's decisions in *Cuti* squarely addressed whether the company was a victim. But, when the Second Circuit was presented with precisely that question in *Federal Insurance Company* several years later, it held that companies were not victims of their employees' crimes where the employee acted within the scope of his employment and the scheme benefited the company, *regardless* of whether or not the company incentivized or was otherwise complicit in the scheme. 882 F.3d at 368–69. That is the approach that Judge Rakoff followed in *Petit* when holding that the company was not entitled to restitution even where the defendants affirmatively obstructed the company from discovering their misconduct. 541 F. Supp. 3d at 311.

The Court will follow the same approach here. Cole acted within the scope of his employment as chief executive officer of Iconix, and the scheme benefited the company by inflating its share price, as in *Petit*. *See* 541 F. Supp. 3d at 310–11. Iconix's willful blindness or complicity are beside the point, *see Fed. Ins. Co.*, 882 F.3d at 368–69, as are any of its efforts to root out the misconduct or any of Cole's efforts to obstruct the company's investigations, *see Petit*, 541 F. Supp. 3d at 310–11.

Further, because Iconix is not a victim, the Court need not reach the subsequent question of whether the expenses it submitted are eligible for restitution.

## IV.   CONCLUSION

For the foregoing reasons, Iconix's motion for restitution is DENIED.

It is SO ORDERED.

Dated:   April 26, 2024
         New York, New York

                                                          _____
                                                          EDGARDO RAMOS, U.S.D.J.