1:19-cr-00869-ER-1

# 24-

# United States Court of Appeals

## *for the*

# Second Circuit

USDC SDNY

DOCUMENT

ELECTRONICALLY FILED 5/28/2024

In Re:

ICONIX INTERNATIONAL INC.,

*Petitioner.*

_____

ON PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
IN CASE NO. 19-CR-869

## PETITION FOR A WRIT OF MANDAMUS

DAVID M. ZORNOW
CHRISTOPHER J. GUNTHER
SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
*Attorneys for Petitioner*
One Manhattan West
New York, New York 10001
(212) 735-3000

CP COUNSEL PRESS     (800) 4-APPEAL • (330163)

## CORPORATE DISCLOSURE STATEMENT

Petitioner Iconix International Inc. ("Iconix") submits the following corporate disclosure statement, as required by Federal Rules of Appellate Procedure 26.1. Iconix is a corporation organized under the laws of Delaware. Its parent company is Lancer Capital LLC, a Delaware limited liability company, and no publicly held corporation owns ten percent or more of its stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................... iii

CORPORATE DISCLOSURE STATEMENT ........................................... i

PRELIMINARY STATEMENT AND RELIEF SOUGHT ...................... 1

THE ISSUES PRESENTED ...................................................................... 6

STATEMENT OF RELEVANT FACTS .................................................... 6

    I.     COLE'S CRIMES AND HIS VICTIMIZATION OF ICONIX ......... 6

    II.    THE RESTITUTION CLAIM AND THE COURT'S RULING ........ 9

ARGUMENT ........................................................................................... 11

    I.     STANDARD OF REVIEW ................................................................ 11

    II.    THE DISTRICT COURT MISREAD AND MISAPPLIED
           THIS COURT'S DECISION IN *FEDERAL INSURANCE* ............... 12

CONCLUSION ....................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*United States v. Cuti*, 778 F.3d 83, 92-93 (2d Cir. 2015) .................................... 9, 18

*United States v. Cuti*, 708 F. App'x 21, 2 (2d Cir. 2017) ........................................18

*Fed. Ins. Co. v. United States*, 882 F.3d 348 (2d Cir. 2018) .......................... passim

*Hoefer v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*, 820 F.3d 58, 63 (2d Cir. 2016) ...............................................................................................12

*In re W.R. Huff Asset Management Co.*, 409 F.3d 555, 563 (2d Cir. 2005)............11

*Lagos v. United States*, 138 S. Ct. 1684 (2018)....................................................2, 9

*United States v. Block*, No. 16-cr-595 (JPO), 2018 WL 722854 (S.D.N.Y Feb. 6, 2018) ................................................................................................................ 18-19

*United States v. Lucien*, 347 F.3d 45, 52 (2d Cir. 2003) ........................................11

*United States v, Ojeikere*, 545 F.3d 220 (2d Cir. 2008) ................................... 13, 19

*United States v. Petit*, 541 F. Supp. 3d 304 (S.D.N.Y. 2021) .................................19

*United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006) ....................................... 12, 18

## STATUTES

18 U.S.C. § 3771(a)(6).............................................................................................11

18 U.S.C. § 3771(d)(3).............................................................................................11

18 U.S.C. §§ 3663A(a)(2).........................................................................................12

## PRELIMINARY STATEMENT AND RELIEF SOUGHT

Iconix International Inc. ("Iconix") respectfully submits this petition for mandamus under the Crime Victims' Rights Act ("CVRA") to correct the erroneous denial of its restitution claim in the United States District Court for the Southern District of New York (Ramos, J.) against criminal defendant Neil Cole.

Cole, the former Chief Executive Officer of Iconix, was convicted at the second of his two jury trials of securities fraud, six counts of making false SEC filings and improperly influencing the conduct of audits. His prosecution emerged from responsible corporate citizenship on the part of Iconix. When the Chief Operating Officer of Iconix submitted a letter to the board of directors disclosing misconduct, Iconix immediately formed a Special Committee to investigate and within 48 hours contacted the SEC Division of Corporate Finance to report the allegations and advise the SEC of the internal investigation. Even before the SEC issued a formal order of investigation, the Special Committee provided the staff of the Division of Enforcement with the key findings of its internal investigation, which were mirrored in the charges later brought by the SEC and the United States Attorney's Office ("USAO"). Having ignited the government investigations, Iconix then fully cooperated with them.

At Cole's sentencing, Iconix sought restitution of $7,177,009, which represented its costs in responding to specific investigative requests from the USAO, including the legal fees Iconix paid for officers, directors and employees of Iconix relating to their meetings with prosecutors and their testimony at the criminal trials. It was undisputed below that these classes of expenditures are reimbursable under the restitution statutes as expenses related to participation in the investigation and prosecution of the offense. *See Lagos v. United States*, 138 S. Ct. 1684 (2018). The USAO agreed that the district court had authority to impose restitution. Iconix did not seek restitution for its other significant expenditures arising from Cole's crimes, such as the costs of the Special Committee's investigation, the steep decline in its share price upon disclosure of the criminal scheme and the cost of resolving shareholder litigation.

The district court denied Iconix's restitution request on the erroneous ground that Iconix was not a victim of Cole's crimes as a matter of law. The district court began its analysis by recognizing the settled law of this Circuit that a *coconspirator* in the charged crime does not qualify as a victim under the restitution statutes. However, the district court then ventured far beyond that principle by misinterpreting this Court's decision in *Fed. Ins. Co. v. United States*, 882 F.3d 348 (2d Cir. 2018). In the district court's words, "*Federal Insurance Company* . . . held that companies were not victims of their employees' crimes

2

where the employee acted within the scope of employment and the scheme

benefitted the company, *regardless* of whether or not the company incentivized or

was otherwise complicit in the scheme." (Ex. at 8) (emphasis in original).[1] The

district judge did not recognize his discretion to evaluate Iconix as a victim based

on its role in uncovering Cole's crimes and reporting them to the authorities,

incurring as a result costs responding to the criminal investigation and prosecution.

Rather, the court ruled that the questions of whether or not Iconix knew of or

approved of Cole's crimes "are beside the point, *see Fed. Ins. Co.*, 882 F.3d at 368-

69, as are any of its efforts to root out the misconduct or any of Cole's efforts to

obstruct the company's investigations." *Id.*

    The district court was wrong and fundamentally misread *Federal*

*Insurance*, in which this Court relied upon significant aggravating factors before

determining that the sentencing court acted within its discretion in denying

restitution. Among other things, this Court in *Federal Insurance* emphasized that

the company at issue, SAIC, (1) had failed to investigate an accurate

whistleblower complaint notifying SAIC of its employee's crimes; (2) had entered

into a deferred prosecution agreement with a damning Information charging SAIC

as a coconspirator; and (3) executed a "Statement of Responsibility" involving the

---

[1] Ex. refers to the court's decision below, attached as an exhibit to this Petition.

payment of more than $500 million, including criminal penalties and disgorgement of the "lion's share" of offense proceeds that wound up in SAIC's coffers.  In addition, *Federal Insurance* reasoned that the restitution claim in the district court had been made not by SAIC but rather by its insurer as subrogee, and yet the Crime Victims' Rights Act "nowhere addresses the role and rights (if any) of victims' subrogees."  882 F.3d at 355.  "Upon review of the record, [this Court] conclude[d] that the district court did not *abuse its discretion* when it determined that SAIC was sufficiently implicated in [its employee's] overall conduct to render an award of restitution to SAIC (and by extension to Federal, its subrogee) improper."  882 F.3d at 367 (emphasis added).

*Federal Insurance* does not support the blanket proposition adopted by the district judge below – *i.e.,* that a company is disqualified from being a victim under the restitution statutes whenever its employee (1) has committed crimes within the scope of employment and (2) has acted in part for the company's benefit.  To the contrary, *Federal Insurance* recognized that the district court must make a discretionary assessment, based on the facts and circumstances, as to whether the company was "sufficiently implicated in" the criminal employee's "overall conduct to render an award of restitution . . . improper."  *Id.*  There is a spectrum of corporate citizenship ranging from the bad company that effectively acts as its employee's coconspirator, on the one hand, to the good company that is

victimized by its employee, roots out his crimes and notifies the authorities, on the other.

On the facts and circumstances of this case, Iconix acted as a good company, and the district court erred by painting Iconix and all corporate employers with the same broad brush. The point is underscored by the specific well-settled categories of restitution sought by Iconix below. Given Iconix's referral of the complaint received by its board of directors to government authorities, and the Special Committee's sharing of investigative findings that became the foundation of the USAO's criminal charges, it logically followed that Iconix would incur legal costs in responding to specific requests for information from prosecutors during the criminal investigation, and in facilitating employee interviews with the USAO and trial testimony at Cole's criminal trials. That is the polar opposite of a company that is fully implicated in its employee's crime and incurs expenses in responding to a government investigation that it hopes to avoid and may not support. Nothing in the text or history of the restitution statutes, and nothing in this Court's precedents, supported the denial of Iconix's restitution claim.

This Court should grant a writ of mandamus to correct the district court's legal error and direct the district judge to evaluate Iconix's restitution claim under the proper legal standard.

## THE ISSUES PRESENTED

Did the district court err in determining the corporate employer could not be the victim of its employee's crimes as a matter of law?

Did the district court fail to exercise its discretion to determine whether, under the facts and circumstances, the corporate employer was victimized by its employee's crimes?

## STATEMENT OF RELEVANT FACTS

### I.   COLE'S CRIMES AND HIS VICTIMIZATION OF ICONIX

Cole was the founder and CEO of Iconix Brand Group, a then-publicly traded company in the business of managing and licensing consumer brands.  In 2015, Seth Horowitz, then the Chief Operating Officer of Iconix, sent a letter to its board of directors alleging misconduct in Iconix's accounting.  Upon receipt of Mr. Horowitz's letter, the board formed a Special Committee, which promptly retained the law firm of Richards Kibbe & Orbe to conduct an independent investigation.  Within 48 hours of receiving the letter, the Special Committee directed outside counsel to contact the SEC Division of Corporate Finance to report the allegations and advise the staff of the internal investigation.

In November 2015, before the SEC had issued a formal order of investigation, the Special Committee directed outside counsel to share with the

SEC Division of Enforcement the key findings of the internal investigation, and the

resulting charges brought by the SEC and the USAO largely reflected the Special

Committee's findings.[2]  It is undisputed that Iconix cooperated fully with the SEC

and the USAO.  Iconix further engaged in extensive remediation, including

obtaining Cole's resignation and replacing his entire executive management team.

  With the assistance of Iconix, the USAO then obtained an indictment

charging that Cole led a "scheme to falsely inflate Iconix's reported revenue and"

earnings per share through three corrupt joint ventures entered in 2013-14.  *United*

*States v. Cole*, 19 Cr. 869 (ER).  The fraud allowed Iconix to report revenues and

earnings that met analysts' quarterly projections.  The Indictment charged in Count

One a conspiracy to commit securities fraud, to make false SEC filings, and to

improperly influence audits.  Counts Two through Nine charged the commission of

those illegal objectives as  substantive offenses.  Finally, Count Ten charged that

Cole obstructed  justice by deleting emails and providing false information during

the SEC investigation.

  At Cole's first trial, the jury acquitted him of the Count One

conspiracy and Count Ten obstruction charges, but could not reach a verdict on the

---

[2] The USAO required no settlement from or admissions by Iconix.  The SEC
entered into a civil settlement with Iconix involving no admission of
wrongdoing.

remaining eight substantive offenses.  At the retrial, the jury convicted Cole in

November 2022 of those remaining counts.  The district court sentenced Cole

principally to 18 months' imprisonment, deferring consideration Iconix's request

for restitution.  The USAO advised the district court that it had the authority to

grant restitution to Iconix as a condition of supervised release.[3]  *United States v.*

*Cole*, 19 Cr. 869 (ER), Dkt. 312, at 11.

      At the time of Mr. Horowitz's 2015 letter, Iconix had a market

capitalization of $1.64 billion and its stock price of $342.70 per share.  By June 10,

2021, just before the announcement of a plan to take Iconix private, the company's

market capitalization had plummeted to $35.48 million and its stock price was

$2.45 per share.  On August 21, 2021, as a result of its diminished financial

condition, Iconix completed a going private transaction whereby the public shares

were acquired in an all-cash transaction at $3.15 per share, reflecting a 45%

premium on the average stock price over the prior thirty days.  The deal valued

Iconix at $585 million, and the firm's consolidated debt of $564.4 million at year-

end 2020 was more than five times its annual revenues, excluding its significant

legal liabilities.  Today, the company's revenues and cash flows remain small

fractions of what they were prior to the commencement of Cole's criminal scheme.

---

[3]    The district court sentenced Cole to a three-year term of supervised release to
follow his period of incarceration.

While Iconix's financial fortunes plummeted, Cole profited enormously. Cole received more than $110 million in salary and other compensation from Iconix, plus equity grants, from 2011 through 2016. As the trial evidence showed, Cole's enrichment involved more than $54 million in 2014 alone, while he executed the criminal scheme, including through his exercise of stock options and sale of stock before the share price cratered at the conclusion of his criminal scheme.

## II. THE RESTITUTION CLAIM, AND THE COURT'S RULING

On November 16, 2023, Iconix submitted a letter and supporting exhibits to the district court with its targeted restitution claim for its legal expenses from participating in the USAO's investigation and prosecution of Cole. *United States v. Cole*, 19 Cr. 869 (ER), Dkt. 323; *see Lagos v. United States*, 138 S. Ct. 1684 (2018) (recognizing validity of restitution claims for expenditures in responding to prosecutors in a criminal investigation and prosecution); *see, e.g.*, *United States v. Cuti*, 778 F.3d 83, 92-93 (2d Cir. 2015) (corporation's payments to its own counsel and to its employees' counsel that related to the investigation and prosecution of its CEO for securities fraud were properly included in restitution).

Iconix was careful in its submission to segregate and document four categories of expenditures appropriately recoverable in restitution. The first category represented expenditures for the outside lawyers representing the Special

Committee in compiling and reporting information requested by the USAO after its criminal investigation became known to Iconix.  Importantly, Iconix excluded from this category the substantial legal fees incurred by the Special Committee in its internal investigation of Cole's crimes and in its remediation efforts for the Iconix.  The second category represented expenditures by Iconix for the outside lawyers' efforts to respond to subpoenas and information requests from the USAO during its criminal investigation of Cole.  Iconix excluded legal expenditures relating to the SEC investigation and other corporate legal advice.  The third category represented fees to a vendor in managing and analyzing the data housed during the criminal investigation.  The final category represented legal expenditures to the law firms that represented Iconix officers, directors and employees in connection with their meetings with the prosecutors requested by the USAO and, where applicable, in connection with their testimony at Cole's trials.  In total, Iconix itemized $7,177,009 in expenditures recoverable as restitution.

On December 8, 2023, Cole filed a lengthy opposition with the district court arguing that Iconix was not entitled to any restitution at all.  *United States v. Cole*, 19 Cr. 869 (ER), Dkt. 331.  Cole raised a host of objections, claiming that Iconix lacked standing because only the USAO could request restitution; that Iconix was "not a victim as a matter of law"; that Iconix in fact did not suffer any

financial harm; and that Iconix had failed to prove sufficiently that its legal expenditures were incurred responding to USAO requests.

In its decision below, the district court reached only Cole's argument that Iconix was not a victim as a matter of law. As noted above, the district court ruled that a corporation cannot qualify as a victim under the restitution statutes if its defendant employee acted within the scope of his employment and in part to benefit the company, regardless of whether and to what extent the company implicated itself in the employee's crimes (as opposed to rooting out and reporting them). The court concluded that "because Iconix is not a victim, the Court need not reach the subsequent question of whether the expenses it submitted are eligible for restitution." (Ex. at 8.)

## ARGUMENT

### I.   STANDARD OF REVIEW

The CVRA provides crime victims with "[t]he right to full and timely restitution as provided by law." 18 U.S.C. § 3771(a)(6). Under 18 U.S.C. § 3771(d)(3), a crime victim can assert those rights by motion in the district court in which a defendant is being prosecuted. If the requested relief is denied, the victim "may petition the court of appeals for a writ of mandamus." CVRA determinations by district courts are reviewed for abuse of discretion, *In re W.R. Huff Asset Management Co.*, 409 F.3d 555, 563 (2d Cir. 2005), as are orders of restitution

under the Mandatory Victim's Restitution Act ("MVRA"), *United States v. Lucien*, 347 F.3d 45, 52 (2d Cir. 2003). "A district court abuses its discretion when it 'bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions.'" *Hoefer v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*, 820 F.3d 58, 63 (2d Cir. 2016) (quoting *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010)).

## II.   THE DISTRICT COURT MISREAD AND MISAPPLIED THIS COURT'S DECISION IN *FEDERAL INSURANCE*

Under the restitution statutes, "the term 'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). Recoverable restitution includes "necessary . . . expenses" that were either "incurred during" or "related to" the person's "participation in the investigation or prosecution of the offense or attendance at the proceedings related to the offense." *See* 18 U.S.C §§ 3663A(b)(4) ("incurred during"), 3663(b)(4) ("related to").

In *United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006), this Court recognized a common sense exclusion whereby a coconspirator cannot qualify as a victim of the offense that he conspired to commit. Although the issue had not been raised by the parties, the *Reifler* Court held that "any order entered under the MVRA that has the effect of treating coconspirators as 'victims,' and thereby

requires 'restitutionary' payments to the perpetrators of the offense of conviction,
contains an error so fundamental and so adversely reflecting on the public
reputation of the judicial proceedings that we may, and do, deal with it *sua
sponte*." 446 F.3d at 127. However, in *United States v, Ojeikere*, 545 F.3d 220 (2d
Cir. 2008), this Court made it clear that this coconspirator exclusion is
exceptionally narrow. *Ojeikere* held that restitution "may not be denied simply
because the victim had greedy or dishonest motives, where those intentions were
not *in pari materia* with those of the defendant." In *Ojeikere*, the victims who
gave the defendants their money in the hope of gaining from a fraud upon the
Nigerian government obtained restitution from the schemers who stole those funds.

      The district court read this Court's decision in *Federal Insurance* to
establish a blanket rule that a company cannot qualify as a "victim" under the
restitution statutes if a defendant employee committed his crime within the scope
of employment and at least in part to benefit the company. (Ex. at 8.) This was
error. Under *Federal Insurance*, a district court must undertake a careful analysis
of whether and to what extent a company is implicated in its employee's crimes,
recognizing that a coconspirator in the offense is not entitled to restitution.
Weighing those facts and circumstances, the district court must make a
discretionary judgment about whether the company is appropriately considered a
victim that should be awarded restitution. Given the express reliance on *Federal*

*Insurance* in the ruling below, it is necessary to review this Court's decision in some detail.

In *Federal Insurance*, SAIC was the lead contractor on New York City's so-called CityTime project to update the City's time management software. Carl Bell, another SAIC employee (Gerard Denault) and others were convicted of a long-running criminal conspiracy to accept millions of dollars in bribes from a subcontractor in exchange for steering work to the subcontractor at inflated rates. SAIC's insurer, Federal Insurance, paid out the proceeds of an employee theft insurance policy to SAIC (on the theory that the employees stole from SAIC by accepting bribes) and pursued restitution at Bell's sentencing as subrogee. The district court denied Federal's request for restitution, and this Court denied Federal's petition for mandamus review, holding as follows: "The district court did not abuse its discretion when it concluded that SAIC's own criminal conduct precluded it – and by extension, Federal as its subrogee – from obtaining restitution from Bell." 882 F.3d at 352.

The *Federal Insurance* decision began its legal analysis with the guiding principle in "*United States v. Reifler*, 446 F.3d 65 (2d Cir. 2006), [where this Court] held that coconspirators are not entitled to recover for harms inflicted on them by other coconspirators during the course of their mutual scheme." *Federal Insurance*, 882 F.3d at 367. This Court also recognized its decision in

14

*Ojeikere* regarding the narrowness of the coconspirator exclusion.  The *Federal Insurance* Court then turned to applying the legal principles to the facts and circumstances of the case.  There was no dispute that Bell had committed his crimes within the scope of his employment and in part to benefit SAIC.  This Court noted, in fact, that SAIC obtained the "lion's share" of the criminal proceeds from the subcontractor's inflated billings as a result of its cost-plus contract with the City.  Yet this Court did not rule that those undisputed elements foreclosed restitution.

Instead, this Court extensively examined and relied  upon the ways in which SAIC was implicated in Bell's crimes -- a task that would have been unnecessary under the blanket rule adopted by the court below in this case.  In particular, the *Federal Insurance* decision emphasized:

- When a whistleblower employee correctly complained that SAIC personnel were accepting kickbacks to steer work to the subcontractor, "SAIC dismissed the complaint without investigation and the allegations were never brought to SAIC's board of directors or the City." 882 F.3d at 352.  SAIC admitted that this failure "allow[ed] the City to be victimized repeatedly and systematically for more than seven years."  *Id*. at 354.

15

- "SAIC entered into a deferred prosecution agreement (DPA) with the government in which SAIC 'admit[ted] that it, through the conduct of certain managerial employees and others, defrauded the City' [and] 'contributed to the ability of Denault and Bell to commit their alleged crimes.'" *Id*. at 353.

- "SAIC agreed to pay $370,392,977 as restitution to the City as the victim of its offense conduct, as well as $130,000,000 as a penalty for the offense, for a total of over half a billion dollars." *Id*. at 354.

- In connection with the DPA, the government also filed a one-count information alleging that from 2003 through 2011 SAIC had *conspired* to defraud the City," including as an overt act SAIC's negotiation of its cost-plus contract clause that imposed the cost of the fraud on the City. *Id*. at 355 (emphasis added).

In short, the government had actually charged SAIC in an information with being a coconspirator, SAIC had acknowledged victimizing the City by hundreds of millions of dollars, and SAIC had turned a blind eye by ignoring a whistleblower complaint. This Court also observed that the USAO had opposed Federal Insurance's restitution request, *id*. at 355, and that "the CVRA, in particular, nowhere addresses the role and rights (if any) of victims' subrogees," *id*.

16

at 356.  The circumstances in *Federal Insurance* were the opposite of those

surrounding Iconix's restitution claim.  Iconix was never alleged to have been a

coconspirator, made no admission to victimizing anyone, and responsibly reported

and investigated a complaint to the board of directors, precipitating a criminal

investigation and facilitating Cole's prosecution and conviction.

    Notably, *Federal Insurance* repeatedly cast its ruling not as

establishing a new blanket rule but rather as an assessment of whether the district

court had abused its discretion under the circumstances.  *See Federal Insrance*, 882

F.3d at 352 ("The district court did not abuse its discretion when it concluded that

SAIC's own criminal conduct precluded it – and, by extension, Federal as its

subrogee – from obtaining restitution"); *id*. at 366 ("Upon review of the record, we

conclude that the district court did not abuse its discretion when it determined that

SAIC was sufficiently implicated in Bell's overall conduct to render an award of

restitution . . . improper"); *id*. at 367 ("SAIC's opportunistic and self-serving

failure to question the scheme despite notice of irregularities that should have been

red flags, combined with its receipt of the lion's share of the proceeds of the crime,

suffice to justify disentitlement under *Reifler*.  Under these circumstances, the

district court acted well within its discretion in declining to treat SAIC as a victim

of its employees' crimes."); *id* at 369 ("Because Federal failed to demonstrate that

the district court abused its discretion when it denied Federal's request for

restitution, its petition for mandamus fails on the merits."). Here, the district court's ruling below did not weigh the facts and circumstances and, to the contrary, found them to be "beside the point" in view of an erroneous blanket rule.

The ruling below provided an analysis of three other cases that are worthy of mention. First, the district judge acknowledged that this Court issued two decisions in *United Sates v. Cuti*, upholding a private equity firm's claim as successor corporation for certain categories of restitution against a former CEO who was convicted of an accounting scheme to inflate reported earnings. *United States v. Cuti*, 778 F.3d 83, 87 (2d Cir. 2015) and 708 F. App'x 21, 2 (2d Cir. 2017). Although both of those rulings are at odds with the blanket approach adopted by the district court below, the district judge discounted them because "neither of the Second Circuit's decisions in *Cuti* squarely addressed whether the company was a victim." (Ex. at 8.) But it is worth remembering that the narrow coconspirator exclusion in *Reifler* was recognized by this Court *sua sponte* because its narrow rationale was so obvious. By contrast, this Court, when considering the corporate restitution claim in *Cuti* in the course of two separate appeals, perceived nothing inherently improper in awarding restitution to a corporate victim against its employee and no issue worthy of *sua sponte* consideration. And when the issue was squarely presented to this Court in *Federal Insurance*, the resulting ruling was a fact-based assessment of the extent to which the company was implicated in the

18

offense of conviction -- not an announcement of the broad legal rule divined by the district court below

Second, the district court below tried to find support for its blanket rule in Judge Oetken's decision in *United States v. Block*, No. 16-cr-595 (JPO), 2018 WL 722854 (S.D.N.Y Feb. 6, 2018).  But *Block* did not adopt a blanket rule and denied restitution because the corporate employer was "more accurately regarded as a coconspirator than a 'victim' of Block's crimes." *Id*. at *1.  In doing so, *Block* weighed "a number of considerations" arising "in the circumstances of this case." *Id*. at *3.  The *Block* decision reviewed specific items of trial evidence indicating that Block, as the chief financial officer preparing fraudulent financial statements, was responding to a corporate "tone at the top" that existed above him in the corporate hierarchy. *Id*.

Finally, the ruling below relied on Judge Rakoff's decision in *United States v. Petit*, 541 F. Supp. 3d 304 (S.D.N.Y. 2021).  But *Petit* made the precise mistake of the district judge below in divining a blanket rule from *Federal Insurance* to preclude all companies from obtaining restitution from an employee who commits crimes within the scope of employment and in part to benefit the company.  Judge Rakoff's decision, which is not binding on this Court, led the district judge below astray.

In the end, it is obvious that one coconspirator should not claim to be a victim of his own offense by seeking restitution from his coconspirator. But the wide reach of a company's *respondeat superior* liability for the crimes of its employees is fundamentally different from the liability of a knowing and willful coconspirator. Unlike a coconspirator, the good corporate citizen that investigates a whistleblower letter, reports the letter and the company's internal investigation findings to the government, and assists in the criminal investigation and prosecution of its former employee is simply not *in pari materia* with the employee. *Ojeikere*, *supra*, 545 F.3d at 222. In appropriate facts and circumstances, as here, a district court should recognize the victim status of the good corporate citizen and allow it to recoup in restitution the costs of responding to the prosecutor's investigation and prosecution.

## **CONCLUSION**

For the foregoing reasons, a writ of mandamus should be issued directing the district court to reconsider Iconix's restitution claim under the appropriate legal standard.

Dated:       May 24, 2024
             New York, New York

                         Respectfully submitted,

                         /s/ David M. Zornow

                          Christopher J. Gunther

                         Skadden, Arps, Slate, Meagher &
                         Flom LLP
                         1 Manhattan West
                         New York, NY 10001-8602
                         Telephone: (212) 735-3000
                         Facsimile: (212) 735-2000
                         David.Zornow@Skadden.com
                         *Attorneys for Iconix*

## **CERTIFICATE OF COMPLIANCE**

This Petition complies with the type-volume limitations of Fed. R.

App. P. 21(d) because it contains 4,520 words, excluding the parts of the Petition

exempted by Fed. R. App. P. 32(f).  This document complies with the typeface

requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R.

App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced

typeface using Microsoft Word 2019 in fourteen-point Times New Roman font.

Dated: May 24, 2024

/s/ Christopher J. Gunther

Skadden, Arps, Slate, Meagher &
Flom LLP
1 Manhattan West
New York, NY 10001-8602
Telephone: (212) 735-3000
Facsimile: (212) 735-2000
Christopher.Gunther@Skadden.com
*Attorneys for Iconix*

**ADDENDUM**

ADD-1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| *– against –* | **ORDER** |
| NEIL COLE, | 19-cr-869 (ER) |
| Defendant. | |

Ramos, D.J.:

On November 28, 2022, a jury found Neil Cole guilty of securities fraud, 6 counts of making false SEC filings, and improperly influencing the conduct of audits  Doc. 252. The convictions stemmed from his participation in a scheme to fraudulently inflate reported revenue and earnings per share for Iconix Brand Group, Inc. ("Iconix"), a then-publicly traded brand management company for which Cole served as chief executive officer.  Specifically, Cole and another Iconix executive orchestrated a series of transactions in which they induced a Hong Kong-based international apparel licensing company to pay artificially inflated purchase prices for interests in joint business ventures, and then Iconix reimbursed the Hong Kong company for the overpayments.

On October 10, 2023, the Court sentenced Cole to 18 months of imprisonment on all counts, to run concurrently, and 3 years of supervised release on all counts, also to run concurrently.  Doc. 315.  The Court deferred the determination of restitution, however, and requested additional briefing on the question.  *Id.*  Before the Court is Iconix's motion for restitution in the amount of $7,177,009 on the basis that Iconix is a victim of Cole's criminal acts.  Doc. 323.  For the reasons set forth below, the motion is DENIED.

## I.    BACKGROUND

Iconix alleges that Cole's criminal conduct and the ensuing investigations and trials "devastated" its financial position and even compelled Iconix to go private.  Doc. 323-1 (Iconix Victim Impact Statement).  Iconix alleges that it "has been burdened by not

ADD-2

only its own legal costs and those of [its internal investigation], but also those of its officers and employees whose legal fees have been advanced, including [Cole's]," which totaled approximately $100 million (of which more than $75 million were not covered by insurance).  *Id* at 4.  In comparison to its worsened financial position, Iconix alleges that Cole profited significantly from his criminal scheme.  *Id.* at 5.

On this basis, Iconix asks the Court to impose restitution of $7,177,009 as a condition of Cole's supervised release.  Doc. 323.  This amount consists of four categories of expenses:

(1) $292,612.53 for Richards Kibbe & Orbe LLP and Perkins Coie LLP, which Iconix retained to conduct an internal investigation in 2015 and which assisted in responding to requests from the U.S. Attorney's Office ("USAO") beginning in 2018;

(2) $1,763,989.26 for Skadden, Arps, Slate, Meagher & Flom LLP, which Iconix retained to respond to SEC and USAO investigations;

(3) $558,597.76 for Ankura Consulting Group LLC, which Iconix and its outside counsel retained to manage and analyze the data associated with the SEC and USAO investigations; and

(4) $4,561,810.03 for 11 law firms that represented Iconix officers, directors, and employees who became witnesses in the USAO investigation and prosecution of Cole.

*Id.* at 3–6.  Iconix specifies, however, that for purposes of its restitution request, it "isolated time charges for participation in the USAO's investigation and prosecution" and excluded any ineligible time entries, such as those regarding the SEC or internal investigations and those that were ambiguous or included block billing.  *Id.*

Cole responds that Iconix is not entitled to any restitution, as it is not a victim, and the expenses for which it seeks payment are not those eligible for restitution.  Doc. 331. Specifically, he argues that similar cases in this District have held that "a company is not a victim of its employee's illegal actions, taken within the scope of their employment, that benefit the company's bottom line."  *Id.* at 4 (citing *Fed. Ins. Co. v. United States*, 882 F.3d 348, 368 (2d Cir. 2018); *United States v. Petit*, 541 F. Supp. 3d 304, 309–11

**ADD-3**

(S.D.N.Y. 2011); *United States v. Block*, No. 16-cr-595 (JPO), 2018 WL 722854, at *3–5 (S.D.N.Y. Feb. 6, 2018)).  Moreover, Cole argues that the records Iconix submitted are insufficient to determine whether the fees requested are for services incurred "in connection with services that were invited, required, requested, or otherwise induced by the Government," the only category of expenses eligible for restitution.  *Id.* at 12 (quoting *United States v. Hastings*, 20-cr-534 (GHW), 2022 WL 1785579, at *9 (S.D.N.Y. May 31, 2022)).

Iconix, however, points to *United States v. Cuti*, in which it says the Second Circuit twice upheld restitution to a victim corporation.  Doc. 332 at 2 (citing 778 F.3d 83, 87 (2d Cir. 2015); 708 F. App'x 21, 2 (2d Cir. 2017)).  It also defends its methodology for preparing its restitution request, noting that its "requested amount of reimbursement barely scratches the surface of the actual harms caused to Iconix by [ ] Cole's criminal conduct."  *Id.* at 3.

## II.   LEGAL STANDARD

Even where restitution is not statutorily authorized by the Mandatory Victims Restitution Act ("MVRA") or Victim and Witness Protection Act ("VWPA"), a court may, in its discretion, impose restitution as a condition of supervised release under 18 U.S.C. § 3563(b)(2).  *See United States v. Petit*, 541 F. Supp. 3d 304, 308 (S.D.N.Y. 2021).  That section provides that a court may require as a special condition of supervised release that the defendant "make restitution to a victim of the offense under section 3556 (but not subject to the limitation of section 3663(a) or 3663A(c)(1)(A))."  Tracking the definition for purposes of the MVRA and VWPA, a "victim" is "a person directly and proximately harmed as a result of" the offense for purposes of restitution ordered as a condition of supervised release as well.  *Block*, 2018 WL 722854, at *1.

## III.   DISCUSSION

Iconix's entitlement to restitution turns on two issues:  (1) whether Iconix is a victim, and (2) whether the expenses Iconix identifies are the type susceptible to

3

restitution.  As to the former, the parties agree that the question of whether Iconix is a
victim is governed by four key cases:  *Block*, *Federal Insurance Company*, *Petit*, and the
two decisions in *Cuti*.  The Court reviews each in turn.

The *Cuti* decisions arose from the conviction of Anthony Cuti, the chief executive
officer and board chairman of Duane Reade, for conspiracy to make false statements and
securities fraud in connection with two fraudulent accounting schemes to inflate Duane
Reade's reported earnings.  778 F.3d at 86–87.  Duane Reade and the private equity firm
which acquired it, Oak Hill, sought an order of restitution of approximately $53 million,
largely to compensate Oak Hill for its alleged overpayment for its acquisition of Duane
Reade because of Cuti's fraud.  *Id.* at 88.  The district court concluded that Oak Hill was
entitled to restitution of certain legal fees and expenses paid to lawyers retained as part of
its participation in the investigation and prosecution of Cuti's criminal case, as well as
certain fees for the costs of counsel for Duane Reade employees and forensic
accountancy fees for internal investigations  *Id.* at 89–90.  The Second Circuit in 2014
held that Oak Hill could properly be entitled to restitution for paying employees' legal
fees but that the district court had inadequately parsed the expenses Oak Hill had
submitted to ensure that only eligible expenses were reimbursed.  *Id.* at 92–96.  On
remand, the district court reviewed the billing records and issued an amended restitution
award, which Cuti again appealed.  708 F. App'x at 23.  The Second Circuit in 2017 held
that attorneys' fees for monitoring Cuti's trial were not subject to restitution and affirmed
in part, and it vacated and remanded in part for the district court to again review the
records to parse the properly reimbursable expenses.  *Id.* at 25.  The parties thereafter
reached an agreement amongst themselves to the restitution award, which the district
court so ordered.  *United States v. Cuti*, No. 8-cr-972 (DAB), Doc. 284 (Dec. 19, 2017).

*Block* arose from the conviction of Brian Block for his preparation of fraudulent
financial statements for a publicly traded real estate investment trust, for which he served
as chief financial officer.  2018 WL 722854, at *1.  The successor entity to Block's former

ADD-5

employer submitted a restitution request for fees the company paid to a law firm and forensic accounting firm for the company's internal investigation, another law firm the company retained to handle its cooperation with SEC and USAO investigations, and other law firms retained to represent employees.  *Id.*  Judge Oetken denied the request on the basis that the company was more accurately regarded as a coconspirator than a victim of Block's crimes.  *Id.*  He noted that companies will be liable for "the criminal acts of its employees if done on its behalf and within the scope of the employees' authority," and the test is whether the employee was performing acts he was authorized to perform and which were motivated at least in part "by an intent to benefit the corporation."  *Id.* at 2 (citations omitted).  He further noted that multiple circuit courts have held that employer-corporations cannot recover restitution as victims of their officers' or employees' crimes, but the Second Circuit has, in at least a few instances, upheld restitution awards to corporations alleged to be "victims" of their officers' or employees' crimes.  *Id.* at *2–3 (collecting cases).  But the Second Circuit never addressed whether restitution would not be available in a circumstance where the corporation was alleged to be coconspirator.  *Id.* at *3.  Given those "less-than-pellucid lines of precedent," Judge Oetken held that, "at least in the circumstances of [that] case," the company was not a victim of Block's crimes.  *Id.*  Judge Oetken noted that "Block's actions fall squarely within the scope of criminal conduct that is attributable to a corporate employer" since he was acting within the scope of his employment and for the company's benefit.  *Id.*  Moreover, even though the Government did not charge the company as a coconspirator in the case, it had repeatedly argued at trial that the corporate culture and "tone at the top" at the very least encouraged and incentivized Block's conduct.  *Id.* at *4.  Judge Oetken also considered the "public interest and the incentives that would be furthered by treating the company as a victim in these circumstances," noting that denying restitution—even for internal investigations and cooperation with the Government—incentivizes companies to "prevent

the circumstances that give rise to fraud and questionable accounting in the first place," whereas allowing companies "to play the victim card after the fact" does not. *Id.*

Approximately one week after Judge Oetken's decision in *Block*, the Second Circuit decided *Federal Insurance Company*. That case concerned a conspiracy in which a company that served as lead contractor for a project for New York City obtained bribes and kickbacks from a subcontractor in exchange for steering work to it at inflated prices. 882 F.3d at 351. The defendant employees pled guilty to five counts, and the lead contractor took responsibility for its part in the scheme and entered into a deferred prosecution agreement. *Id.* The lead contractor successfully claimed $15 million under an employee theft insurance policy on the theory that the employees' improper payments were the company's wrongfully appropriated property. *Id.* The insurance company then sought restitution of that $15 million from the convicted employees, which the Government opposed. *Id.* 351, 355. The district court denied the application because the lead contractor (and therefore the insurance company) had no entitlement to restitution as a coconspirator in the defendant employees' conduct. *Id.* at 355. The Second Circuit agreed. *Id.* at 351–52. It noted that the lead contractor company had accepted responsibility for its part in the employees' scheme to defraud the city, and "federal law generally imposes liability on a corporation for the criminal acts of its agents taken on behalf of the corporation and within the scope of the agent's authority via the principle of *respondeat superior*, unless the offense conduct solely furthered the employee's interests at the employer's expense (for instance, where the employee was embezzling from the employer)." *Id.* at 367–68. Because the employees had acted within the scope of their employment, and their scheme benefited the company at the city's expense, the company was not a victim for purposes of restitution, *regardless* of whether or not the company was willfully blind to or complicit in the scheme, which the Second Circuit held district courts did not need to consider. *Id.* at 368–69.

Judge Rakoff again took up the question of restitution for corporate employers in *Petit*. That case stemmed from the conviction of Parker H. Petit and William Taylor for securities fraud, making false statements in SEC filings, and misleading audits based on their participation in a scheme to fraudulently inflate the reported revenue of a publicly traded biomedical company for which they served as chief executive officer and chief operating officer, respectively.  541 F. Supp. 3d at 306.  Judge Rakoff held that the court had no statutory authority to impose restitution on Petit, as he was not convicted of an eligible offense under the MVRA or VWPA, nor was he sentenced to supervised release. *Id.* at 307–09.  Taylor was convicted of an eligible offense under the MVRA and VWPA, but Judge Rakoff held that the company was not a "victim" within the meaning of those statutes.  *Id.* at 309–10 (citing *Fed Ins. Co.*, 882 F.3d at 351–52, 368–69; *Block*, 2018 WL 722854).  He noted that Taylor's actions were within the scope of his employment and designed to benefit the company by inflating its share price, regardless of whether the company was criminally charged as a result of the defendants' conduct.  *Id.* at 310. Moreover, Judge Rakoff rejected the company's arguments that, unlike the employees in *Block* and *Federal Insurance Company*, Taylor and Petit hid their criminal activity and obstructed the company's investigation into their misconduct.  *Id.* at 311.  He described such arguments as "off-base" because, regardless of how extensive the company's efforts to root out misconduct were, they do not "immunize it from liability when its employees, acting within the scope of their authority, failed to comply with the law."  *Id.* (citation omitted).  "Thus, the mere fact that the defendants may have misled other employees or agents of [the company] does not relieve [it] of its criminal liability under the principle of *respondeat superior*, especially where, as here, the wrongdoing was committed by [the] company's highest officers."  *Id.*

Here, Iconix relies primarily on the Second Circuit's decisions in *Cuti*.  Doc. 323 at 2, 2 n.1; Doc. 332 at 2.  It argues that because Iconix did not know of Cole's crimes, conducted an internal investigation thereafter and cooperated with the Government, and

ADD-8

did not have a corporate culture or "tone at the top" that endorsed Cole's crimes, *Federal Insurance Company*, *Block*, and *Petit* are all distinguishable. *Id.* Iconix ignores, however, that neither of the Second Circuit's decisions in *Cuti* squarely addressed whether the company was a victim. But, when the Second Circuit was presented with precisely that question in *Federal Insurance Company* several years later, it held that companies were not victims of their employees' crimes where the employee acted within the scope of his employment and the scheme benefited the company, *regardless* of whether or not the company incentivized or was otherwise complicit in the scheme. 882 F.3d at 368–69. That is the approach that Judge Rakoff followed in *Petit* when holding that the company was not entitled to restitution even where the defendants affirmatively obstructed the company from discovering their misconduct. 541 F. Supp. 3d at 311.

The Court will follow the same approach here. Cole acted within the scope of his employment as chief executive officer of Iconix, and the scheme benefited the company by inflating its share price, as in *Petit*. *See* 541 F. Supp. 3d at 310–11. Iconix's willful blindness or complicity are beside the point, *see Fed. Ins. Co.*, 882 F.3d at 368–69, as are any of its efforts to root out the misconduct or any of Cole's efforts to obstruct the company's investigations, *see Petit*, 541 F. Supp. 3d at 310–11.

Further, because Iconix is not a victim, the Court need not reach the subsequent question of whether the expenses it submitted are eligible for restitution.

## IV.   CONCLUSION

For the foregoing reasons, Iconix's motion for restitution is DENIED.

It is SO ORDERED.

Dated:   April 26, 2024
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.

| STATE OF NEW YORK | ) | | **AFFIDAVIT OF SERVICE** |
|---|---|---|---|
| | ) | ss.: | **BY OVERNIGHT EXPRESS** |
| COUNTY OF NEW YORK | ) | | **MAIL** |

    I, Tyrone Heath, 2179 Washington Avenue, Apt. 19, Bronx, New York 10457, being duly sworn, depose and say that deponent is not a party to the action, is over 18 years of age and resides at the address shown above or at

    **On May 24, 2024**

deponent served the within: **Petition for a Writ of Mandamus**

    **upon:**

Sean Hecker (shecker@kaplanhecker.com)  
Jeffrey Then (jthen@kaplanhecker.com)  
Kaplan Hecker & Fink LLP  
*Attorneys for Kenneth Cole*  
350 Fifth Avenue, 63rd Floor  
New York, NY 10118  

Hon. Edgardo Ramos  
United States District Judge  
Southern District of New York  
Thurgood Marshall United States Courthouse  
40 Foley Square  
New York, NY 10007  

Justin Rodriguez (justin.rodriguez@usdoj.gov)  
Jared Lenow (JLenow@usa.doj.gov)  
Assistant U.S. Attorneys  
*Attorneys for United States*  
United States Attorney's Office, Southern District of New York  
26 Federal Plaza  
New York, NY 10278  

the address(es) designated by said attorney(s) for that purpose by depositing **1** true copy(ies) of same, enclosed in a postpaid properly addressed wrapper in a Post Office Official Overnight Express Mail Depository, under the exclusive custody and care of the United States Postal Service, within the State of New York.

**Sworn to before me on May 24, 2024**

**MARIANA BRAYLOVSKIY**  
Notary Public State of New York  
No. 01BR6004935  
Qualified in Richmond County  
Commission Expires March 30, 2026

**Job# 330163**